070568.177

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

EVELYN LaJEUNESSE, Individually and as
Independent Administrator of the Estate of HENRY
LaJEUNESSE, deceased,

Plaintiffs,

v.

FORD MOTOR COMPANY, a corporation,
Defendant /Counter-Plaintiff,

v.

EVELYN LaJEUNESSE, as Independent Administrator
of the Estate of HENRY LaJEUNESSE, deceased,

Counter-Defendant.

```
FILED: AUGUST 6, 2008
08CV4436
JUDGE CASTILLO
MAGISTRATE JUDGE NOLAN

PH
```

No.

## NOTICE OF REMOVAL

Defendant Ford Motor Company ("Ford") by it attorneys, John A. Krivicich, Michael J.

Borree, and Donohue Brown Mathewson & Smyth LLC, hereby removes this action from the Circuit

Court of Cook County, Illinois, County Department, Law Division, to this Court. In support of its

notice of removal, Ford states as follows:

1.     Ford files this Notice of Removal pursuant to 28 U.S.C. §§ 1332, 1441 and 1446.

This notice is timely filed within thirty days after the receipt by Ford of the order, attached as Exhibit

A, from which it can be first ascertained that the case is one which is or has become removable,

within the meaning of 28 U.S.C. §1446 (c).

2.     Plaintiff, Evelyn LaJeunesse, commenced this action in the Circuit Court of Cook

County Illinois, County Department, Law Division, on August 6, 2007 by filing a three-count

complaint styled as *Evelyn LaJeunesse v. Ford Motor Company and Bill Kay Ford, Inc.,* case

number 07 L 8251.  (*See* Plaintiff's Complaint at Law, attached as Exhibit B.)  This case is being removed to this Court within one year of that filing.  On April 21, 2008, plaintiffs, Evelyn LaJeunesse, Individually and as Independent Administrator of the Estate of Henry LaJeunesse, deceased, filed their Second Amended Complaint.  See plaintiffs' Second Amended Complaint, attached hereto as Exhibit C.

3.    Plaintiff Evelyn LaJeunesse, Individually, is a citizen and resident of Illinois.

4.    Plaintiff Evelyn LaJeunesse, as Independent Administrator of the Estate of Henry LaJeunesse, deceased, is a citizen of Illinois.  Before his death, Henry LaJeunesse was a citizen of Illinois.

5.    Ford is a Delaware corporation with its principal place of business in Dearborn, Michigan.  Ford is not a citizen of Illinois.

6.    Bill Kay Ford, Inc. is an Illinois corporation with its principal place of business in Illinois.  Prior to August 6, 2008, this case was not removable because of the citizenship of Bill Kay Ford, Inc.  On August 6, 2008, judgment was entered in favor of Bill Kay Ford, Inc. and against plaintiffs.  See Exhibit A.

7.    Complete diversity of citizenship now exists between the remaining parties rendering this case removable.  *See* 28 U.S.C. § 1332 (a)(3); *Zenith Elecs. Corp. v. Kimball Int'l Mfg., Inc.*, 114 F. Supp. 2d 764, 768 (N.D. Ill 2000).

8.    Evelyn LaJeunesse, individually, has alleged she suffered serious personal and pecuniary injuries of a permanent nature.  Evelyn LaJeunesse, as Independent Administrator of the Estate of Henry LaJeunesse, deceased, claims survival and wrongful death damages for the death of Henry LaJeunesse.  The Estate of Henry LaJeunesse has incurred and claims recovery for medical

bills since the occurrence alleged in the Second Amended Complaint in excess of $80,983.   Based on the foregoing and the allegations of plaintiffs' second amended complaint, Ford has a good faith belief that there is at least one claim as to one plaintiff as to which the amount in controversy exceeds $75,000, exclusive of interest and costs.  *See, e.g., Rubel v. Pfizer, Inc.*, 361 F.3d 1016, 1020 (7th  Cir. 2004).  *See also Campbell v. Bayou Steel Corp.*, 338 F. Supp. 2d 896 (N.D. Ill. 2004); *McCoy v. General Motors Corp.*, 226 F. Supp. 2d 939 (N.D. Ill. 2002).

9.     Given the complete diversity of citizenship between the remaining parties and the amount in controversy, this action may be removed to this Court pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, and is done so within one year of the commencement of this action by the plaintiffs. *See, e.g., Northern Trust Co. v. Bunge Corp.*, 899 F. 2d 591, 593 (7th Cir. 1990).

10.     Defendants have provided written notice of this removal to Plaintiffs' counsel.

11.     Attached hereto as Exhibit D is the notice of removal filed this date with the Clerk of the Circuit Court of Cook County, Illinois.

12.     Attached hereto as Group Exhibit E are all other process, pleadings and orders served upon Ford in this case in the Circuit Court of Cook County.

13.     This notice is signed pursuant to F. R. Civ. P. 11.

**WHEREFORE**, Defendant Ford Motor Company respectfully removes this action to the United States District Court for the Northern District of Illinois, Eastern Division, and request that this Court assume jurisdiction over this action until the final determination thereof.

Dated: August 6, 2008.

Respectfully submitted,

Ford Motor Company

By:     s/ John A. Krivicich
        DONOHUE BROWN MATHEWSON & SMYTH LLC
        John A. Krivicich        ARDC No. 3127319
        Michael J. Borree        ARDC No. 6281054
        140 South Dearborn Street, Suite 800
        Chicago, IL  60603
        Telephone:     (312) 422-0900
        Facsimile:     (312) 422-0909

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

08CV4436
JUDGE CASTILLO
MAGISTRATE JUDGE NOLAN

PH

Evelyn La Jeunesse, Individually, et al

v.

Ford Motor Company.

No. 07 L 8251

### ORDER

This cause coming to be heard on the motion for summary judgment, notice having been given, the Court having reviewed the briefs of the parties and heard oral argument,

It Is Hereby ordered that summary judgment is entered in favor of Bill Kay Ford, Inc. and against plaintiffs Evelyn La Jeunesse Individually and as Independent Administrator of the estate of Henry La Jeunesse; said motion being granted.

This case continues as between plaintiffs and Ford Motor Company only.

Atty. No.: 32878

Name: KRIVICICH/DONAHUE BROWN

ENTERED:

Atty. for: FORD MOTOR CO./BILL KAY

Dated: _____ JUDGE JAMES D. EGAN AUG 06 2008

Address: 140 S. DEARBORN, SUITE 800

City/State/Zip: CHICAGO, ILL 60603

_____
Judge          Judge's No.

Telephone: 312 422 0972

**DOROTHY BROWN, CLERK OF THE**  **OF COOK COUNTY, ILLINOIS**

EXHIBIT
A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT - LAW DIVISION

EVELYN LaJEUNESSE,

                                    Plaintiff,

        v.                                          No

FORD MOTOR COMPANY,
a corporation; and
BILL KAY FORD, INC.,
a corporation,

                                    Defendants.     **PLAINTIFF DEMANDS TRIAL BY JURY.**



## COMPLAINT AT LAW

## <u>COUNT I</u>

**<u>Strict Liability/Ford/Personal Injury</u>**

        Plaintiff, EVELYN LaJEUNESSE, by and through her attorneys, CORBOY &

DEMETRIO, P.C., complaining of defendant, FORD MOTOR COMPANY, a corporation,

(hereinafter referred to as "FORD"), states:

        1.      Prior to 2005, defendant, FORD, designed, manufactured and sold a 2004 Ford

Focus.

        2.      At the time defendant, FORD, designed, manufactured and sold the 2004 Ford

Focus, defendant, FORD, knew or should have known the vehicle was susceptible to sudden

acceleration.

        3.      On August 10, 2005, plaintiff, EVELYN LaJEUNESSE, was a passenger in the

front seat of a 2004 Ford Focus which, without driver intent, suddenly accelerated in a parking

lot at the Crestwood Mall in Alsip, Cook County, Illinois.



EXHIBIT
B

4.      On August 10, 2005, the 2004 Ford Focus struck a wall as a result of the unexpected, sudden acceleration.

5.      On August 10, 2005, after striking the wall head-on, the airbag for the front seat passenger failed to deploy in the 2004 Ford Focus.

6.      On August 10, 2005, and when it left the control of defendant, FORD, the 2004 Ford Focus in which plaintiff, EVELYN LaJEUNESSE, was a passenger, was unreasonably dangerous in one or more of the following respects:

a.      the throttle would stick causing sudden, unintended acceleration;

b.      the actuator cables for the cruise control would become entrapped causing sudden, unintended acceleration;

c.      the cruise control system appears to be "off" when it is, in fact, "on";

d.      the electrical system failed to guard against or caused sudden unintended acceleration;

e.      the car would unexpectedly, suddenly accelerate without the driver intending it;

f.      the airbags failed to deploy in a frontal impact;

g.      the seatbelts failed to properly restrain the front seat passengers in a frontal impact.

7.      As a proximate result of one or more of these unreasonably dangerous conditions, plaintiff, EVELYN LaJEUNESSE, suffered injuries of a personal, pecuniary and permanent nature.

WHEREFORE, plaintiff, EVELYN LaJEUNESSE, demands judgment against defendant, FORD MOTOR COMPANY, a corporation, in a sum in excess of the minimum amount required

for jurisdiction in the Law Division of the Circuit Court of Cook County, Illinois.

## COUNT II

### Negligence/Ford/Personal Injury

Plaintiff, EVELYN LaJEUNESSE, by and through her attorneys, CORBOY & DEMETRIO, P.C., complaining of defendant, FORD MOTOR COMPANY, a corporation, (hereinafter referred to as "FORD"), states:

1.      Prior to 2005, defendant, FORD, designed, manufactured and sold a 2004 Ford Focus.

2.      At the time defendant, FORD, designed, manufactured and sold the 2004 Ford Focus, defendant, FORD, knew or should have known the vehicle was susceptible to sudden acceleration.

3.      On August 10, 2005, plaintiff, EVELYN LaJEUNESSE, was a passenger in the front seat of a 2004 Ford Focus which, without driver intent, suddenly accelerated in a parking lot at the Crestwood Mall in Alsip, Cook County, Illinois.

4.      On August 10, 2005, the 2004 Ford Focus struck a wall as a result of the unexpected, sudden acceleration.

5.      On August 10, 2005, after striking the wall head-on, the airbag for the front seat passenger failed to deploy in the 2004 Ford Focus.

6.      On and before August 10, 2005, FORD was negligent in one or more of the following respects:

a.      designed, manufactured, distributed and sold a 2004 Ford Focus with a throttle that would stick causing sudden, unintended acceleration;

3

b.   designed, manufactured, distributed and sold a 2004 Ford Focus with actuator cables for the cruise control that would become entrapped causing sudden, unintended acceleration;

c.   designed, manufactured, distributed and sold a 2004 Ford Focus with a cruise control system that appeared to be "off" when it was, in fact, "on";

d.   designed, manufactured, distributed and sold a 2004 Ford Focus with a faulty electrical system to protect against sudden acceleration;

e.   designed, manufactured, distributed and sold a 2004 Ford Focus that would unexpectedly, suddenly accelerate without the driver intending it;

f.   designed, manufactured, distributed and sold a 2004 Ford Focus with airbags that failed to deploy in a frontal impact;

g.   designed, manufactured, distributed and sold a 2004 Ford Focus with seatbelts that failed to properly restrain the front seat passenger in a frontal impact.

7.   As a proximate result of one or more of these acts or omissions, plaintiff, EVELYN LaJEUNESSE, suffered injuries of a personal, pecuniary and permanent nature.

WHEREFORE, plaintiff, EVELYN LaJEUNESSE, demands judgment against defendant, FORD MOTOR COMPANY, a corporation, in a sum in excess of the minimum amount required for jurisdiction in the Law Division of the Circuit Court of Cook County, Illinois.

## COUNT III

**Negligence/Bill Kay Ford/Personal Injury**

Plaintiff, EVELYN LaJEUNESSE, by and through her attorneys, CORBOY & DEMETRIO, P.C., complaining of defendant, BILL KAY FORD, INC., a corporation, (hereinafter referred to as "BILL KAY FORD") states:

4

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT - LAW DIVISION**

EVELYN LaJEUNESSE,

                    Plaintiff,

         v.

FORD MOTOR COMPANY,
a corporation; and
BILL KAY FORD, INC.,
a corporation,

                  Defendants.

No.

## A F F I D A V I T

I, **SHAWN S. KASSERMAN**, state under oath:

    1.      I am an attorney associated with Corboy & Demetrio, P.C. and am responsible for

filing of the Complaint at Law in this matter.

    2.      The total of money damages sought by plaintiff does exceed $50,000.00, exclusive

of interest and costs.

                                   _____

                                     CORBOY & DEMETRIO, P.C.
                                      By:  Shawn S. Kasserman

SUBSCRIBED and SWORN to before me
this 3ʳᵈ day of *August* , 20*07* .


*Nancy J. Hayes*
NOTARY PUBLIC

```
"OFFICIAL SEAL"
NANCY J. HAYES
Notary Public, State of Illinois
My Commission Expires 10-09-2008
```

Shawn S. Kasserman
CORBOY & DEMETRIO, P.C.
Attorneys for Plaintiff
33 North Dearborn Street, 20th Floor
Chicago, Illinois 60602
(312) 346-3191
Firm I.D. No. 02329

#02329    SSK\nh    4/19/08                                                           2007S-0120

FILED B
2008 APR 2
AM 11:01

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT - LAW DIVISION

EVELYN LaJEUNESSE, Individually and as
Independent Administrator of the Estate of
HENRY LaJEUNESSE, deceased,

                                    Plaintiff,

              v.                                    No.   07 L 8251

FORD MOTOR COMPANY,
a corporation; and
BILL KAY FORD, INC.,
a corporation,

                                    Defendants.

### SECOND AMENDED COMPLAINT AT LAW

### COUNT I

**Strict Liability/Ford/Personal Injury/Evelyn LaJeunesse**

Plaintiff, EVELYN LaJEUNESSE, by and through her attorneys, CORBOY &

DEMETRIO, P.C., complaining of defendant, FORD MOTOR COMPANY, a corporation,

(hereinafter referred to as "FORD"), states:

1.      Prior to 2005, defendant, FORD, designed, manufactured and sold a 2004 Ford

Focus.

2.      At the time defendant, FORD, designed, manufactured and sold the 2004 Ford

Focus, defendant, FORD, knew or should have known the vehicle was susceptible to sudden

acceleration.


EXHIBIT
C

3.      On August 10, 2005, plaintiff, EVELYN LaJEUNESSE, was a passenger in the front seat of a 2004 Ford Focus which, without driver intent, suddenly accelerated in a parking lot at the Crestwood Mall in Crestwood, Cook County, Illinois.

4.      On August 10, 2005, the 2004 Ford Focus struck a wall as a result of the unexpected, sudden acceleration.

5.      On August 10, 2005, after striking the wall head-on, the airbag for the front seat passenger failed to deploy in the 2004 Ford Focus.

6.      On August 10, 2005, and when it left the control of defendant, FORD, the 2004 Ford Focus in which plaintiff, EVELYN LaJEUNESSE, was a passenger, was unreasonably dangerous in one or more of the following respects:

   a.      the throttle would stick causing sudden, unintended acceleration;

   b.      the actuator cables for the cruise control would become entrapped causing sudden, unintended acceleration;

   c.      the cruise control system appears to be "off" when it is, in fact, "on";

   d.      the electrical system failed to guard against or caused sudden unintended acceleration;

   e.      the car would unexpectedly, suddenly accelerate without the driver intending it;

   f.      the airbags failed to deploy in a frontal impact;

   g.      the seatbelts failed to properly restrain the front seat passengers in a frontal impact.

7.      As a proximate result of one or more of these unreasonably dangerous conditions, plaintiff, EVELYN LaJEUNESSE, suffered injuries of a personal, pecuniary and permanent nature.

2

WHEREFORE, plaintiff, EVELYN LaJEUNESSE, demands judgment against defendant, FORD MOTOR COMPANY, a corporation, in a sum in excess of the minimum amount required for jurisdiction in the Law Division of the Circuit Court of Cook County, Illinois.

## COUNT II

**Negligence/Ford/Personal Injury/Evelyn LaJeunesse**

Plaintiff, EVELYN LaJEUNESSE, by and through her attorneys, CORBOY & DEMETRIO, P.C., complaining of defendant, FORD MOTOR COMPANY, a corporation, (hereinafter referred to as "FORD"), states:

1.     Prior to 2005, defendant, FORD, designed, manufactured and sold a 2004 Ford Focus.

2.     At the time defendant, FORD, designed, manufactured and sold the 2004 Ford Focus, defendant, FORD, knew or should have known the vehicle was susceptible to sudden acceleration.

3.     On August 10, 2005, plaintiff, EVELYN LaJEUNESSE, was a passenger in the front seat of a 2004 Ford Focus which, without driver intent, suddenly accelerated in a parking lot at the Crestwood Mall in Crestwood, Cook County, Illinois.

4.     On August 10, 2005, the 2004 Ford Focus struck a wall as a result of the unexpected, sudden acceleration.

5.     On August 10, 2005, after striking the wall head-on, the airbag for the front seat passenger failed to deploy in the 2004 Ford Focus.

6.     On and before August 10, 2005, FORD was negligent in one or more of the following respects:

3

a.    designed, manufactured, distributed and sold a 2004 Ford Focus
      with a throttle that would stick causing sudden, unintended
      acceleration;

b.    designed, manufactured, distributed and sold a 2004 Ford Focus
      with actuator cables for the cruise control that would become
      entrapped causing sudden, unintended acceleration;

c.    designed, manufactured, distributed and sold a 2004 Ford Focus
      with a cruise control system that appeared to be "off" when it was,
      in fact, "on";

d.    designed, manufactured, distributed and sold a 2004 Ford Focus
      with a faulty electrical system to protect against sudden
      acceleration;

e.    designed, manufactured, distributed and sold a 2004 Ford Focus
      that would unexpectedly, suddenly accelerate without the driver
      intending it;

f.    designed, manufactured, distributed and sold a 2004 Ford Focus
      with airbags that  failed to deploy in a frontal impact;

g.    designed, manufactured, distributed and sold a 2004 Ford Focus
      with seatbelts that failed to properly restrain the front seat
      passenger in a frontal impact.

7.    As a proximate result of one or more of these acts or omissions, plaintiff,

EVELYN LaJEUNESSE, suffered injuries of a personal, pecuniary and permanent nature.

    WHEREFORE, plaintiff, EVELYN LaJEUNESSE, demands judgment against defendant,

FORD MOTOR COMPANY, a corporation, in a sum in excess of the minimum amount required

for jurisdiction in the Law Division of the Circuit Court of Cook County, Illinois.

## <u>COUNT III</u>

### <u>Negligence/Bill Kay Ford/Personal Injury/Evelyn LaJeunesse</u>

    Plaintiff, EVELYN LaJEUNESSE, by and through her attorneys, CORBOY &

4

DEMETRIO, P.C., complaining of defendant, BILL KAY FORD, INC., a corporation,

(hereinafter referred to as "BILL KAY FORD") states:

    1.      Prior to August 10, 2005, defendant, BILL KAY FORD, sold a 2004 Ford Focus

to Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE.

    2.      At the time defendant, BILL KAY FORD, sold the 2004 Ford Focus to Henry

LaJeunesse and plaintiff, EVELYN LaJEUNESSE, it knew or should have known the 2004 Ford

Focus had a propensity for sudden, unexpected acceleration, and/or the airbags not deploying in a

frontal collision.

    3.      On August 10, 2005, plaintiff, EVELYN LaJEUNESSE, was a passenger in the

2004 Ford Focus sold by defendant, BILL KAY FORD, which, without driver intent, suddenly

accelerated in a parking lot at the Crestwood Mall in Crestwood, Cook County, Illinois.

    4.      On August 10, 2005, the 2004 Ford Focus struck a wall as a result of the

unexpected, sudden acceleration and the airbags failed to deploy.

    5.      On and before August 10, 2005, defendant, BILL KAY FORD, was negligent in

one or more respects:

        a.      failed to inform Henry LaJeunesse and plaintiff, EVELYN
               LaJEUNESSE, that the 2004 Ford Focus had a propensity for
               sudden, unexpected acceleration before selling the car to them;

        b.      failed to inform Henry LaJeunesse and plaintiff, EVELYN
               LaJEUNESSE, that the 2004 Ford Focus had a propensity for
               sudden, unexpected acceleration after selling the car to them;

        c.      failed to discover the 2004 Ford Focus had a propensity to
               suddenly and unexpectedly accelerate;

        d.      failed to warn Henry LaJeunesse and plaintiff, EVELYN
               LaJEUNESSE, that the airbags were known not to deploy in

certain frontal impacts.

6.    As a proximate result of one or more of the aforesaid negligent acts and/or omissions of defendant, BILL KAY FORD, Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE, purchased and continued to use the 2004 Ford Focus until it suddenly, unexpectedly accelerated and struck a wall without the airbags deploying, causing injuries to plaintiff, EVELYN LaJEUNESSE, of a personal, pecuniary and permanent nature.

7.    Had Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE, been informed by defendant, BILL KAY FORD, of the propensity of the 2004 Ford Focus to suddenly, unexpectedly accelerate and/or that the airbags would not deploy in a frontal impact, they would not have purchased it.

WHEREFORE, plaintiff, EVELYN LaJEUNESSE, demands judgment against defendant, BILL KAY FORD, INC., a corporation, for a sum in excess of the minimum amount required for jurisdiction in the Law Division of the Circuit Court of Cook County, Illinois.

## COUNT IV

### Strict Liability/Ford/Survival Action/Estate of Henry LaJeunesse

Plaintiff, EVELYN LaJEUNESSE, as Independent Administrator of the Estate of HENRY LaJEUNESSE, deceased, by and through her attorneys, CORBOY & DEMETRIO, P.C., complaining of defendant, FORD MOTOR COMPANY, a corporation, (hereinafter referred to as "FORD"), states:

1.    Prior to 2005, defendant, FORD, designed, manufactured and sold a 2004 Ford Focus.

2.    At the time defendant, FORD, designed, manufactured and sold the 2004 Ford

6

Focus, defendant, FORD, knew or should have known the vehicle was susceptible to sudden acceleration.

3.      On August 10, 2005, plaintiff's decedent, HENRY LaJEUNESSE, operated a 2004 Ford Focus which, without driver intent, suddenly accelerated in a parking lot at the Crestwood Mall in Crestwood, Cook County, Illinois.

4.      On August 10, 2005, the 2004 Ford Focus struck a wall as a result of the unexpected, sudden acceleration.

5.      On August 10, 2005, after striking the wall head-on, the airbag for the front seat driver failed to deploy in the 2004 Ford Focus.

6.      On August 10, 2005, and when it left the control of defendant, FORD, the 2004 Ford Focus operated by plaintiff's decedent, HENRY LaJEUNESSE, was unreasonably dangerous in one or more of the following respects:

   a.      the throttle would stick causing sudden, unintended acceleration;

   b.      the actuator cables for the cruise control would become entrapped causing sudden, unintended acceleration;

   c.      the cruise control system appears to be "off" when it is, in fact, "on";

   d.      the electrical system failed to guard against or caused sudden unintended acceleration;

   e.      the car would unexpectedly, suddenly accelerate without the driver intending it;

   f.      the airbags failed to deploy in a frontal impact;

   g.      the seatbelts failed to properly restrain the front seat passengers in a frontal impact.

7

7.     HENRY LaJEUNESSE died on April 22, 2007, and his wife, EVELYN LaJEUNESSE, brings this action on behalf of his estate.

8.     Had he survived, HENRY LaJEUNESSE would have been entitled to bring an action on his own behalf and this action survives him pursuant to 755 Illinois Compiled Statutes 5/27-6, commonly known as the Survival Act, and EVELYN LaJEUNESSE, Independent Administrator of the Estate of HENRY LaJEUNESSE, deceased, brings this action pursuant to that statute.

WHEREFORE, plaintiff, EVELYN LaJEUNESSE, Independent Administrator of the Estate of HENRY LaJEUNESSE, deceased, demands judgment against defendant, FORD MOTOR COMPANY, a corporation, in a sum in excess of the minimum amount required for jurisdiction in the Law Division of the Circuit Court of Cook County, Illinois.

## COUNT V

### Negligence/Ford/Survival Action/Estate of Henry LaJeunesse

Plaintiff, EVELYN LaJEUNESSE, Independent Administrator of the Estate of HENRY LaJEUNESSE, deceased, by and through her attorneys, CORBOY & DEMETRIO, P.C., complaining of defendant, FORD MOTOR COMPANY, a corporation, (hereinafter referred to as "FORD"), states:

1.     Prior to 2005, defendant, FORD, designed, manufactured and sold a 2004 Ford Focus.

2.     At the time defendant, FORD, designed, manufactured and sold the 2004 Ford Focus, defendant, FORD, knew or should have known the vehicle was susceptible to sudden acceleration.

8

3.     On August 10, 2005, plaintiff's decedent, HENRY LaJEUNESSE, operated a
2004 Ford Focus which, without driver intent, suddenly accelerated in a parking lot at the
Crestwood Mall in Crestwood, Cook County, Illinois.

4.     On August 10, 2005, the 2004 Ford Focus struck a wall as a result of the
unexpected, sudden acceleration.

5.     On August 10, 2005, after striking the wall head-on, the airbag for the front seat
driver failed to deploy in the 2004 Ford Focus.

6.     On and before August 10, 2005, FORD was negligent in one or more of the
following respects:

    a.     designed, manufactured, distributed and sold a 2004 Ford Focus
        with a throttle that would stick causing sudden, unintended
        acceleration;

    b.     designed, manufactured, distributed and sold a 2004 Ford Focus
        with actuator cables for the cruise control that would become
        entrapped causing sudden, unintended acceleration;

    c.     designed, manufactured, distributed and sold a 2004 Ford Focus
        with a cruise control system that appeared to be "off" when it was,
        in fact, "on";

    d.     designed, manufactured, distributed and sold a 2004 Ford Focus
        with a faulty electrical system to protect against sudden
        acceleration;

    e.     designed, manufactured, distributed and sold a 2004 Ford Focus
        that would unexpectedly, suddenly accelerate without the driver
        intending it;

    f.     designed, manufactured, distributed and sold a 2004 Ford Focus
        with airbags that  failed to deploy in a frontal impact;

    g.     designed, manufactured, distributed and sold a 2004 Ford Focus
        with seatbelts that failed to properly restrain the front seat

passenger in a frontal impact.

7.     HENRY LaJEUNESSE died on April 22, 2007, and his wife, EVELYN

LaJEUNESSE, brings this action on behalf of his estate.

8.     Had he survived, HENRY LaJEUNESSE would have been entitled to bring an

action on his own behalf and this action survives him pursuant to 755 Illinois Compiled Statutes

5/27-6, commonly known as the Survival Act, and EVELYN LaJEUNESSE, Independent

Administrator of the Estate of HENRY LaJEUNESSE, deceased, brings this action pursuant to

that statute.

WHEREFORE, plaintiff, EVELYN LaJEUNESSE, Independent Administrator of the

Estate of HENRY LaJEUNESSE, deceased,  demands judgment against defendant, FORD

MOTOR COMPANY, a corporation, in a sum in excess of the minimum amount required for

jurisdiction in the Law Division of the Circuit Court of Cook County, Illinois.

## COUNT VI

**Strict Liability/Ford/Wrongful Death/Estate of Henry LaJeunesse**

Plaintiff, EVELYN LaJEUNESSE, as Independent Administrator of the Estate of

HENRY LaJEUNESSE, deceased, by and through her attorneys, CORBOY & DEMETRIO,

P.C., complaining of defendant, FORD MOTOR COMPANY, a corporation, (hereinafter

referred to as "FORD"), states:

1.     Prior to 2005, defendant, FORD, designed, manufactured and sold a 2004 Ford

Focus.

2.     At the time defendant, FORD, designed, manufactured and sold the 2004 Ford

Focus, defendant, FORD, knew or should have known the vehicle was susceptible to sudden

10

acceleration.

3.      On August 10, 2005, plaintiff's decedent, HENRY LaJEUNESSE, operated a 2004 Ford Focus which, without driver intent, suddenly accelerated in a parking lot at the Crestwood Mall in Crestwood, Cook County, Illinois.

4.      On August 10, 2005, the 2004 Ford Focus struck a wall as a result of the unexpected, sudden acceleration.

5.      On August 10, 2005, after striking the wall head-on, the airbag for the front seat driver failed to deploy in the 2004 Ford Focus.

6.      On August 10, 2005, and when it left the control of defendant, FORD, the 2004 Ford Focus operated by plaintiff's decedent, HENRY LaJEUNESSE, was unreasonably dangerous in one or more of the following respects:

      a.      the throttle would stick causing sudden, unintended acceleration;

      b.      the actuator cables for the cruise control would become entrapped causing sudden, unintended acceleration;

      c.      the cruise control system appears to be "off" when it is, in fact, "on";

      d.      the electrical system failed to guard against or caused sudden unintended acceleration;

      e.      the car would unexpectedly, suddenly accelerate without the driver intending it;

      f.      the airbags failed to deploy in a frontal impact;

      g.      the seatbelts failed to properly restrain the front seat passengers in a frontal impact.

7.      HENRY LaJEUNESSE died on April 22, 2007, and his wife, EVELYN

LaJEUNESSE, brings this action on behalf of his estate.

8.      HENRY LaJEUNESSE left surviving him as his heirs and next of kin: EVELYN

LaJEUNESSE, his wife, DONALD LaJEUNESSE, his adult son, and LINDA MELENDEZ, his

adult daughter, all of whom sustained pecuniary loss as a result of his death including a loss of

love, guidance, affection, companionship and society.

9.      Plaintiff, EVELYN LaJEUNESSE, Independent Administrator of the Estate of

HENRY LaJEUNESSE, deceased, brings this cause of action pursuant to 740 Illinois Compiled

Statutes 180/1 *et seq.,* commonly known as the Wrongful Death Act.

WHEREFORE, plaintiff, EVELYN LaJEUNESSE, Independent Administrator of the

Estate of HENRY LaJEUNESSE, deceased, demands judgment against defendant, FORD

MOTOR COMPANY, a corporation, in a sum in excess of the minimum amount required for

jurisdiction in the Law Division of the Circuit Court of Cook County, Illinois.

## <u>COUNT VII</u>

**<u>Negligence/Ford/Wrongful Death/Estate of Henry LaJeunesse</u>**

Plaintiff, EVELYN LaJEUNESSE, Independent Administrator of the Estate of HENRY

LaJEUNESSE, deceased, by and through her attorneys, CORBOY & DEMETRIO, P.C.,

complaining of defendant, FORD MOTOR COMPANY, a corporation, (hereinafter referred to as

"FORD"), states:

1.      Prior to 2005, defendant, FORD, designed, manufactured and sold a 2004 Ford

Focus.

2.      At the time defendant, FORD, designed, manufactured and sold the 2004 Ford

Focus, defendant, FORD, knew or should have known the vehicle was susceptible to sudden

acceleration.

3.      On August 10, 2005, plaintiff's decedent, HENRY LaJEUNESSE, operated a

2004 Ford Focus which, without driver intent, suddenly accelerated in a parking lot at the

Crestwood Mall in Crestwood, Cook County, Illinois.

4.      On August 10, 2005, the 2004 Ford Focus struck a wall as a result of the

unexpected, sudden acceleration.

5.      On August 10, 2005, after striking the wall head-on, the airbag for the front seat

driver failed to deploy in the 2004 Ford Focus.

6.      On and before August 10, 2005, FORD was negligent in one or more of the

following respects:

   a.    designed, manufactured, distributed and sold a 2004 Ford Focus
         with a throttle that would stick causing sudden, unintended
         acceleration;

   b.    designed, manufactured, distributed and sold a 2004 Ford Focus
         with actuator cables for the cruise control that would become
         entrapped causing sudden, unintended acceleration;

   c.    designed, manufactured, distributed and sold a 2004 Ford Focus
         with a cruise control system that appeared to be "off" when it was,
         in fact, "on";

   d.    designed, manufactured, distributed and sold a 2004 Ford Focus
         with a faulty electrical system to protect against sudden
         acceleration;

   e.    designed, manufactured, distributed and sold a 2004 Ford Focus
         that would unexpectedly, suddenly accelerate without the driver
         intending it;

   f.    designed, manufactured, distributed and sold a 2004 Ford Focus
         with airbags that  failed to deploy in a frontal impact;

13

g.    designed, manufactured, distributed and sold a 2004 Ford Focus
with seatbelts that failed to properly restrain the front seat
passengers in a frontal impact.

7.    HENRY LaJEUNESSE died on April 22, 2007, and his wife, EVELYN

LaJEUNESSE, brings this action on behalf of his estate.

8.    HENRY LaJEUNESSE left surviving him as his heirs and next of kin: EVELYN

LaJEUNESSE, his wife, DONALD LaJEUNESSE, his adult son, and LINDA MELENDEZ, his

adult daughter, all of whom sustained pecuniary loss as a result of his death including a loss of

love, guidance, affection, companionship and society.

9.    Plaintiff, EVELYN LaJEUNESSE, Independent Administrator of the Estate of

HENRY LaJEUNESSE, deceased, brings this cause of action pursuant to 740 Illinois Compiled

Statutes 180/1 *et seq.,* commonly known as the Wrongful Death Act.

WHEREFORE, plaintiff, EVELYN LaJEUNESSE, Independent Administrator of the

Estate of HENRY LaJEUNESSE, deceased, demands judgment against defendant, FORD

MOTOR COMPANY, a corporation, in a sum in excess of the minimum amount required for

jurisdiction in the Law Division of the Circuit Court of Cook County, Illinois.

## COUNT VIII

### Negligence/Bill Kay Ford/Survival Action/Estate of Henry LaJeunesse

Plaintiff, EVELYN LaJEUNESSE, Independent Administrator of the Estate of HENRY

LaJEUNESSE, deceased, by and through her attorneys, CORBOY & DEMETRIO, P.C.,

complaining of defendant, BILL KAY FORD, INC., a corporation, (hereinafter referred to as

"BILL KAY FORD") states:

1.    Prior to August 10, 2005, defendant, BILL KAY FORD, sold a 2004 Ford Focus

14

to Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE.

    2.      At the time defendant, BILL KAY FORD, sold the 2004 Ford Focus to Henry

LaJeunesse and plaintiff, EVELYN LaJEUNESSE, it knew or should have known the 2004 Ford

Focus had a propensity for sudden, unexpected acceleration, and/or the airbags not deploying in a

frontal collision.

    3.      On August 10, 2005, plaintiff's decedent, HENRY LaJEUNESSE, operated a

2004 Ford Focus sold by defendant, BILL KAY FORD, which, without driver intent, suddenly

accelerated in a parking lot at the Crestwood Mall in Crestwood, Cook County, Illinois.

    4.      On August 10, 2005, the 2004 Ford Focus struck a wall as a result of the

unexpected, sudden acceleration and the airbags failed to deploy.

    5.      On and before August 10, 2005, defendant, BILL KAY FORD, was negligent in

one or more respects:

    a.      failed to inform Henry LaJeunesse and plaintiff, EVELYN
              LaJEUNESSE, that the 2004 Ford Focus had a propensity for
              sudden, unexpected acceleration before selling the car to them;

    b.      failed to inform Henry LaJeunesse and plaintiff, EVELYN
              LaJEUNESSE, that the 2004 Ford Focus had a propensity for
              sudden, unexpected acceleration after selling the car to them;

    c.      failed to discover the 2004 Ford Focus had a propensity to
              suddenly and unexpectedly accelerate;

    d.      failed to warn Henry LaJeunesse and plaintiff, EVELYN
              LaJEUNESSE, that the airbags were known not to deploy in
              certain frontal impacts.

    6.      As a proximate result of one or more of the aforesaid negligent acts and/or

omissions of defendant, BILL KAY FORD, Henry LaJeunesse and plaintiff, EVELYN

LaJEUNESSE, purchased and continued to use the 2004 Ford Focus until it suddenly, unexpectedly accelerated and struck a wall without the airbags deploying, causing injuries to plaintiff's decedent, HENRY LaJEUNESSE, of a personal, pecuniary and permanent nature.

7.    Had Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE, been informed by defendant, BILL KAY FORD, of the propensity of the 2004 Ford Focus to suddenly, unexpectedly accelerate and/or that the airbags would not deploy in a frontal impact, they would not have purchased it.

8.    HENRY LaJEUNESSE died on April 22, 2007, and his wife, EVELYN LaJEUNESSE, brings this action on behalf of his estate.

9.    Had he survived, HENRY LaJEUNESSE would have been entitled to bring an action on his own behalf and this action survives him pursuant to 755 Illinois Compiled Statutes 5/27-6, commonly known as the Survival Act, and EVELYN LaJEUNESSE, Independent Administrator of the Estate of HENRY LaJEUNESSE, deceased, brings this action pursuant to that statute.

WHEREFORE, plaintiff, EVELYN LaJEUNESSE, Independent Administrator of the Estate of HENRY LaJEUNESSE, deceased, demands judgment against defendant, BILL KAY FORD, INC., a corporation, for a sum in excess of the minimum amount required for jurisdiction in the Law Division of the Circuit Court of Cook County, Illinois.

## COUNT IX

### Negligence/Bill Kay Ford/Wrongful Death/Estate of Henry LaJeunesse

Plaintiff, EVELYN LaJEUNESSE, Independent Administrator of the Estate of HENRY LaJEUNESSE, deceased, by and through her attorneys, CORBOY & DEMETRIO, P.C.,

16

complaining of defendant, BILL KAY FORD, INC., a corporation, (hereinafter referred to as "BILL KAY FORD") states:

1.       Prior to August 10, 2005, defendant, BILL KAY FORD, sold a 2004 Ford Focus to Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE.

2.       At the time defendant, BILL KAY FORD, sold the 2004 Ford Focus to Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE, it knew or should have known the 2004 Ford Focus had a propensity for sudden, unexpected acceleration, and/or the airbags not deploying in a frontal collision.

3.       On August 10, 2005, plaintiff's decedent, HENRY LaJEUNESSE, operated the 2004 Ford Focus sold by defendant, BILL KAY FORD, which, without driver intent, suddenly accelerated in a parking lot at the Crestwood Mall in Crestwood, Cook County, Illinois.

4.       On August 10, 2005, the 2004 Ford Focus struck a wall as a result of the unexpected, sudden acceleration and the airbags failed to deploy.

5.       On and before August 10, 2005, defendant, BILL KAY FORD, was negligent in one or more respects:

     a.     failed to inform Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE, that the 2004 Ford Focus had a propensity for sudden, unexpected acceleration before selling the car to them;

     b.     failed to inform Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE, that the 2004 Ford Focus had a propensity for sudden, unexpected acceleration after selling the car to them;

     c.     failed to discover the 2004 Ford Focus had a propensity to suddenly and unexpectedly accelerate;

     d.     failed to warn Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE, that the airbags were known not to deploy in

17

certain frontal impacts.

6.    As a proximate result of one or more of the aforesaid negligent acts and/or omissions of defendant, BILL KAY FORD, Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE, purchased and continued to use the 2004 Ford Focus until it suddenly, unexpectedly accelerated and struck a wall without the airbags deploying, causing injuries to plaintiff, EVELYN LaJEUNESSE, of a personal, pecuniary and permanent nature.

7.    Had Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE, been informed by defendant, BILL KAY FORD, of the propensity of the 2004 Ford Focus to suddenly, unexpectedly accelerate and/or that the airbags would not deploy in a frontal impact, they would not have purchased it.

8.    HENRY LaJEUNESSE died on April 22, 2007, and his wife, EVELYN LaJEUNESSE, brings this action on behalf of his estate.

9.    HENRY LaJEUNESSE left surviving him as his heirs and next of kin: EVELYN LaJEUNESSE, his wife, DONALD LaJEUNESSE, his adult son, and LINDA MELENDEZ, his adult daughter, all of whom sustained pecuniary loss as a result of his death including a loss of love, guidance, affection, companionship and society.

10.    Plaintiff, EVELYN LaJEUNESSE, Independent Administrator of the Estate of HENRY LaJEUNESSE, deceased, brings this cause of action pursuant to 740 Illinois Compiled Statutes 180/1 *et seq.,* commonly known as the Wrongful Death Act.

WHEREFORE, plaintiff, EVELYN LaJEUNESSE, Independent Administrator of the Estate of HENRY LaJEUNESSE, deceased, demands judgment against defendant, BILL KAY

FORD, INC., a corporation, for a sum in excess of the minimum amount required for jurisdiction

in the Law Division of the Circuit Court of Cook County, Illinois.

_____
Shawn S. Kasserman

Shawn S. Kasserman, Esq.
Corboy & Demetrio, P.C.
Attorney for Plaintiff(s)
33 North Dearborn Street, 21st Floor
Chicago, Illinois  60602
(312) 346-3191
Firm I.D. No. 02329

19

070568.187

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

EVELYN LaJEUNESSE, Individually and as Independent Administrator of the Estate of HENRY LaJEUNESSE, deceased,

Plaintiffs,

v.

FORD MOTOR COMPANY,

Defendant /Counter-Plaintiff,

v.

EVELYN LaJEUNESSE, as Independent Administrator of the Estate of HENRY LaJEUNESSE, deceased,

Counter-Defendant.

No.  07 L 8251
Judge James D. Egan
Motion Call: X

## NOTICE OF FILING

To:   **Mr. Shawn Kasserman**, Corboy & Demetrio, P.C., 33 North Dearborn Street, Suite 2100, Chicago, IL  60602;  **Mr. Steve Mahoney**, Law Offices of Thaddeus J. Gustafson, Two North LaSalle Street, Suite 2510, Chicago, IL  60602

PLEASE TAKE NOTICE that on August 6, 2008 this case was removed from the Circuit Court of Cook County, Illinois to the United States District Court, Northern District of Illinois, Eastern Division.

Respectfully submitted,

FORD MOTOR COMPANY

By:   *Donohue Brown Mathewson & Smyth LLC*

Its Attorneys

DONOHUE BROWN MATHEWSON & SMYTH LLC
140 South Dearborn Street, Suite 800
Chicago, IL  60603
Telephone:   (312) 422-0900
Facsimile:   (312) 422-0909



## **PROOF OF SERVICE**

    I, Sharon Skierkiewicz, a non-attorney, on oath hereby certifies under penalties of perjury as provided by law pursuant to Ill. Rev. Stat., ch. 110, par. 1-109 [735 ILCS 5/1-109], that the above notice and any attached pleading(s) were ( ) personally delivered or (X) placed in the U.S. Mail at 140 South Dearborn Street, Chicago, Illinois, with first class postage prepaid and directed to the parties at the addresses set forth above at or before 5:00 p.m. on August 6, 2008.

_____

- 2 -

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - LAW DIVISION

EVELYN LaJEUNESSE,

                           Plaintiff,

              v.

FORD MOTOR COMPANY,
a corporation; and
BILL KAY FORD, INC.,
a corporation,

                           Defendants.

No.   07 L 8251

08CV4436

JUDGE CASTILLO

MAGISTRATE JUDGE NOLAN

PH

## AMENDED COMPLAINT AT LAW

### <u>COUNT I</u>

**<u>Strict Liability/Ford/Personal Injury</u>**

Plaintiff, EVELYN LaJEUNESSE, by and through her attorneys, CORBOY &

DEMETRIO, P.C., complaining of defendant, FORD MOTOR COMPANY, a corporation,

(hereinafter referred to as "FORD"), states:

       1.      Prior to 2005, defendant, FORD, designed, manufactured and sold a 2004 Ford

Focus.

       2.      At the time defendant, FORD, designed, manufactured and sold the 2004 Ford

Focus, defendant, FORD, knew or should have known the vehicle was susceptible to sudden

acceleration.

       3.      On August 10, 2005, plaintiff, EVELYN LaJEUNESSE, was a passenger in the

front seat of a 2004 Ford Focus which, without driver intent, suddenly accelerated in a parking

lot at the Crestwood Mall in Crestwood, Cook County, Illinois.

       4.      On August 10, 2005, the 2004 Ford Focus struck a wall as a result of the



unexpected, sudden acceleration.

5.    On August 10, 2005, after striking the wall head-on, the airbag for the front seat passenger failed to deploy in the 2004 Ford Focus.

6.    On August 10, 2005, and when it left the control of defendant, FORD, the 2004 Ford Focus in which plaintiff, EVELYN LaJEUNESSE, was a passenger, was unreasonably dangerous in one or more of the following respects:

    a.    the throttle would stick causing sudden, unintended acceleration;

    b.    the actuator cables for the cruise control would become entrapped causing sudden, unintended acceleration;

    c.    the cruise control system appears to be "off" when it is, in fact, "on";

    d.    the electrical system failed to guard against or caused sudden unintended acceleration;

    e.    the car would unexpectedly, suddenly accelerate without the driver intending it;

    f.    the airbags failed to deploy in a frontal impact;

    g.    the seatbelts failed to properly restrain the front seat passengers in a frontal impact.

7.    As a proximate result of one or more of these unreasonably dangerous conditions, plaintiff, EVELYN LaJEUNESSE, suffered injuries of a personal, pecuniary and permanent nature.

WHEREFORE, plaintiff, EVELYN LaJEUNESSE, demands judgment against defendant, FORD MOTOR COMPANY, a corporation, in a sum in excess of the minimum amount required for jurisdiction in the Law Division of the Circuit Court of Cook County, Illinois.

2

<u>COUNT II</u>

**Negligence/Ford/Personal Injury**

Plaintiff, EVELYN LaJEUNESSE, by and through her attorneys, CORBOY &

DEMETRIO, P.C., complaining of defendant, FORD MOTOR COMPANY, a corporation,

(hereinafter referred to as "FORD"), states:

      1.      Prior to 2005, defendant, FORD, designed, manufactured and sold a 2004 Ford

Focus.

      2.      At the time defendant, FORD, designed, manufactured and sold the 2004 Ford

Focus, defendant, FORD, knew or should have known the vehicle was susceptible to sudden

acceleration.

      3.      On August 10, 2005, plaintiff, EVELYN LaJEUNESSE, was a passenger in the

front seat of a 2004 Ford Focus which, without driver intent, suddenly accelerated in a parking

lot at the Crestwood Mall in Crestwood, Cook County, Illinois.

      4.      On August 10, 2005, the 2004 Ford Focus struck a wall as a result of the

unexpected, sudden acceleration.

      5.      On August 10, 2005, after striking the wall head-on, the airbag for the front seat

passenger failed to deploy in the 2004 Ford Focus.

      6.      On and before August 10, 2005, FORD was negligent in one or more of the

following respects:

      a.      designed, manufactured, distributed and sold a 2004 Ford Focus
                with a throttle that would stick causing sudden, unintended
                acceleration;

      b.      designed, manufactured, distributed and sold a 2004 Ford Focus

with actuator cables for the cruise control that would become
entrapped causing sudden, unintended acceleration;

c.    designed, manufactured, distributed and sold a 2004 Ford Focus
with a cruise control system that appeared to be "off" when it was,
in fact, "on";

d.    designed, manufactured, distributed and sold a 2004 Ford Focus
with a faulty electrical system to protect against sudden
acceleration;

e.    designed, manufactured, distributed and sold a 2004 Ford Focus
that would unexpectedly, suddenly accelerate without the driver
intending it;

f.    designed, manufactured, distributed and sold a 2004 Ford Focus
with airbags that  failed to deploy in a frontal impact;

g.    designed, manufactured, distributed and sold a 2004 Ford Focus
with seatbelts that failed to properly restrain the front seat
passenger in a frontal impact.

7.    As a proximate result of one or more of these acts or omissions, plaintiff,

EVELYN LaJEUNESSE, suffered injuries of a personal, pecuniary and permanent nature.

WHEREFORE, plaintiff, EVELYN LaJEUNESSE, demands judgment against defendant,

FORD MOTOR COMPANY, a corporation, in a sum in excess of the minimum amount required

for jurisdiction in the Law Division of the Circuit Court of Cook County, Illinois.

## COUNT III

### Negligence/Bill Kay Ford/Personal Injury

Plaintiff, EVELYN LaJEUNESSE, by and through her attorneys, CORBOY &

DEMETRIO, P.C., complaining of defendant, BILL KAY FORD, INC., a corporation,

(hereinafter referred to as "BILL KAY FORD") states:

1.    Prior to August 10, 2005, defendant, BILL KAY FORD, sold a 2004 Ford Focus

to Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE.

2.      At the time defendant, BILL KAY FORD, sold the 2004 Ford Focus to Henry
LaJeunesse and plaintiff, EVELYN LaJEUNESSE, it knew or should have known the 2004 Ford
Focus had a propensity for sudden, unexpected acceleration, and/or the airbags not deploying in a
frontal collision.

3.      On August 10, 2005, plaintiff, EVELYN LaJEUNESSE, was a passenger in the
2004 Ford Focus sold by defendant, BILL KAY FORD, which, without driver intent, suddenly
accelerated in a parking lot at the Crestwood Mall in Crestwood, Cook County, Illinois.

4.      On August 10, 2005, the 2004 Ford Focus struck a wall as a result of the
unexpected, sudden acceleration and the airbags failed to deploy.

5.      On and before August 10, 2005, defendant, BILL KAY FORD, was negligent in
one or more respects:

  a. failed to inform Henry LaJeunesse and plaintiff, EVELYN
    LaJEUNESSE, that the 2004 Ford Focus had a propensity for
    sudden, unexpected acceleration before selling the car to them;

  b. failed to inform Henry LaJeunesse and plaintiff, EVELYN
    LaJEUNESSE, that the 2004 Ford Focus had a propensity for
    sudden, unexpected acceleration after selling the car to them;

  c. failed to discover the 2004 Ford Focus had a propensity to
    suddenly and unexpectedly accelerate;

  d. failed to warn Henry LaJeunesse and plaintiff, EVELYN
    LaJEUNESSE, that the airbags were known not to deploy in
    certain frontal impacts.

6.      As a proximate result of one or more of the aforesaid negligent acts and/or
omissions of defendant, BILL KAY FORD, Henry LaJeunesse and plaintiff, EVELYN

LaJEUNESSE, purchased and continued to use the 2004 Ford Focus until it suddenly, unexpectedly accelerated and struck a wall without the airbags deploying, causing injuries to plaintiff, EVELYN LaJEUNESSE, of a personal, pecuniary and permanent nature.

7.     Had Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE, been informed by defendant, BILL KAY FORD, of the propensity of the 2004 Ford Focus to suddenly, unexpectedly accelerate and/or that the airbags would not deploy in a frontal impact, they would not have purchased it.

WHEREFORE, plaintiff, EVELYN LaJEUNESSE, demands judgment against defendant, BILL KAY FORD, INC., a corporation, for a sum in excess of the minimum amount required for jurisdiction in the Law Division of the Circuit Court of Cook County, Illinois.

_____
Robert J. Bingle

Robert J. Bingle, Esq.
Shawn S. Kasserman, Esq.
Corboy & Demetrio, P.C.
Attorney for Plaintiff(s)
33 North Dearborn Street, 21st Floor
Chicago, Illinois 60602
(312) 346-3191
Firm I.D. No. 02329

070568.5

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT - LAW DIVISION

EVELYN LaJEUNESSE,

        Plaintiff,

    v.

FORD MOTOR COMPANY, a corporation,
and BILL KAY FORD, INC., a corporation,

        Defendants.

No.  07 L 8251
Judge James D. Egan
Motion Call: X



## APPEARANCE AND JURY DEMAND

The undersigned, as attorney, enters the appearance of the defendant:

FORD MOTOR COMPANY

Defendant hereby demands a trial by jury.

*Donohue Brown Mathewson + Smyth*

DONOHUE BROWN MATHEWSON & SMYTH LLC

I.D. #32878
DONOHUE BROWN MATHEWSON & SMYTH LLC
John A. Krivicich
Michael J. Borree
140 South Dearborn Street, Suite 800
Chicago, IL  60603
Telephone:     (312) 422-0900
Facsimile:     (312) 422-0909

    I certify that a copy of the within instrument was served on all parties who have appeared and have not heretofore been found by the Court to be in default for failure to plead.

DONOHUE BROWN MATHEWSON & SMYTH LLC

CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

070568.7

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - LAW DIVISION

FILED B - 7
2007 SEP 12 AM 11: 00
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

EVELYN LaJEUNESSE,

           Plaintiff,

    v.

FORD MOTOR COMPANY, a corporation,
and BILL KAY FORD, INC., a corporation,

           Defendants.

No.  07 L 8251
Judge James D. Egan
Motion Call: X

**DEFENDANT FORD MOTOR COMPANY'S ANSWER TO PLAINTIFF'S
COMPLAINT AT LAW, AND AFFIRMATIVE DEFENSES**

Defendant, FORD MOTOR COMPANY ("Ford"), by its attorneys, DONOHUE

BROWN MATHEWSON & SMYTH LLC, as and for its answer to plaintiff's Complaint at Law,

states as follows:

**COUNT I**

**Strict Liability/Ford/Personal Injury**

    1.    Prior to 2005, defendant, FORD, designed, manufactured and sold a 2004 Ford

Focus.

**ANSWER:**    This defendant admits the allegation contained in paragraph 1, Count I of
plaintiff's Complaint at Law.

    2.    At the time defendant, FORD, designed, manufactured and sold the 2004 Ford

Focus, defendant, FORD, knew or should have known the vehicle was susceptible to sudden

acceleration.

**ANSWER:**    This defendant denies each and every allegation contained in paragraph 2, Count I
of plaintiff's Complaint at Law.

3.    On August 10, 2005, plaintiff, EVELYN LaJEUNESSE, was a passenger in the front seat of a 2004 Ford Focus which, without driver intent, suddenly accelerated in a parking lot at the Crestwood Mall in Alsip, Cook County, Illinois.

**ANSWER:**    This defendant denies each and every allegation contained in paragraph 3, Count I of plaintiff's Complaint at Law.

4.    On August 10, 2005, the 2004 Ford Focus struck a wall as a result of the unexpected, sudden acceleration.

**ANSWER:**    This defendant denies the allegation contained in paragraph 4, Count I of plaintiff's Complaint at Law.

5.    On August 10, 2005, after striking the wall head-on, the airbag for the front seat passenger failed to deploy in the 2004 Ford Focus.

**ANSWER:**    This defendant denies the allegation contained in paragraph 5, Count I of plaintiff's Complaint at Law.

6.    On August 10, 2005, and when it left the control of defendant, FORD, the 2004 Ford Focus in which plaintiff, EVELYN LaJEUNESSE, was a passenger, was unreasonably dangerous in one or more of the following respects:

a.    the throttle would stick causing sudden, unintended acceleration;

b.    the actuator cables for the cruise control would become entrapped causing sudden, unintended acceleration;

c.    the cruise control system appears to be "off" when it is, in fact, "on";

d.    the electrical system failed to guard against or caused sudden unintended acceleration;

e.    the car would unexpectedly, suddenly accelerate without the

- 2 -

driver intending it;

f.      the airbags failed to deploy in a frontal impact;

g.      the seatbelts failed to properly restrain the front seat passengers in a frontal impact.

**ANSWER:**    This defendant denies each and every allegation contained in paragraph 6, Count I of plaintiff's Complaint at Law, including sub-paragraphs a through g.

7.     As a proximate result of one or more of these unreasonably dangerous conditions, plaintiff, EVELYN LaJEUNESSE, suffered injuries of a personal, pecuniary and permanent nature.

**ANSWER:**    This defendant denies each and every allegation contained in paragraph 7, Count I of plaintiff's Complaint at Law.

**WHEREFORE**, this defendant, FORD MOTOR COMPANY, denies that the plaintiff is entitled to judgment in any sum whatsoever, and prays for judgment in its favor, with costs assessed against the plaintiff.

## COUNT II

### Negligence/Ford/Personal Injury

1.     Prior to 2005, defendant, FORD, designed, manufactured and sold a 2004 Ford Focus.

**ANSWER:**    This defendant admits the allegation contained in paragraph 1, Count II of plaintiff's Complaint at Law.

2.     At the time defendant, FORD, designed, manufactured and sold the 2004 Ford Focus, defendant, FORD, knew or should have known the vehicle was susceptible to sudden acceleration.

**ANSWER:**    This defendant denies each and every allegation contained in paragraph 2, Count II of plaintiff's Complaint at Law.

3.     On August 10, 2005, plaintiff, EVELYN LaJEUNESSE, was a passenger in the front

- 3 -

seat of a 2004 Ford Focus which, without driver intent, suddenly accelerated in a parking lot at the

Crestwood Mall in Alsip, Cook County, Illinois.

**ANSWER:**    This defendant denies each and every allegation contained in paragraph 3, Count II of
plaintiff's Complaint at Law.

4.    On August 10, 2005, the 2004 Ford Focus struck a wall as a result of the unexpected,

sudden acceleration.

**ANSWER:**    This defendant denies each and every allegation contained in paragraph 4, Count II of
plaintiff's Complaint at Law.

5.    On August 10, 2005, after striking the wall head-on, the airbag for the front seat

passenger failed to deploy in the 2004 Ford Focus.

**ANSWER:**    This defendant denies each and every allegation contained in paragraph 5, Count II of
plaintiff's Complaint at Law.

6.    On and before August 10, 2005, FORD was negligent in one or more of the following

respects:

    a.    designed, manufactured, distributed and sold a 2004 Ford
Focus with a throttle that would stick causing sudden,
unintended acceleration;

    b.    designed, manufactured, distributed and sold a 2004 Ford
Focus with actuator cables for the cruise control that would
become entrapped causing sudden, unintended acceleration;

    c.    designed, manufactured, distributed and sold a 2004 Ford Focus
with a cruise control system that appeared to be "off" when it
was, in fact, "on";

    d.    designed, manufactured, distributed and sold a 2004 Ford
Focus with a faulty electrical system to protect against
sudden acceleration;

- 4 -

    e.    designed, manufactured, distributed and sold a 2004 Ford Focus that would unexpectedly, suddenly accelerate without the driver intending it;

    f.    designed, manufactured, distributed and sold a 2004 Ford Focus with airbags that failed to deploy in a frontal impact;

    g.    designed, manufactured, distributed and sold a 2004 Ford Focus with seatbelts that failed to properly restrain the front seat passenger in a frontal impact

**ANSWER:**    This defendant denies each and every allegation contained in paragraph 6, Count II of plaintiff's Complaint at Law, including sub-paragraphs a through g.

7.    As a proximate result of one or more of these acts or omissions, plaintiff, EVELYN LaJEUNESSE, suffered injuries of a personal, pecuniary and permanent nature.

**ANSWER:**    This defendant denies the allegation contained in paragraph 7, Count II of plaintiff's Complaint at Law.

**WHEREFORE**, this defendant, FORD MOTOR COMPANY, denies that the plaintiff is entitled to judgment in any sum whatsoever, and prays for judgment in its favor, with costs assessed against the plaintiff.

**DEFENDANT DEMANDS TRIAL BY JURY**

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

1.    On information and belief, plaintiff failed to exercise due care for her own safety due to one or more of the following negligent acts and/or omissions that resulted in the alleged damages:

    a.    failed to properly use, utilize and apply the available occupant restraint;

- 5 -

b.   committed other negligent acts and/or omissions as may be disclosed during the course of discovery.

2.   Plaintiff's damages, if any, were caused by the direct and proximate result of the fault/negligence of plaintiff and constituted more than fifty percent of such cause and plaintiff's claims are therefore barred or must be comparatively reduced.

**WHEREFORE**, the defendant, Ford Motor Company, prays for judgment in its favor and against the plaintiff plus costs and any other further relief this court deems appropriate under the circumstances.

<u>**SECOND AFFIRMATIVE DEFENSE**</u>

1.   On information and belief, plaintiff knowingly failed to exercise due care for her own safety and engaged in one or more of the following culpable acts and/or omissions with knowledge that an accident such as the one described in plaintiffs' complaint could occur:

a.   failed to properly use, utilize and apply the available occupant restraint;

b.   committed other negligent acts and/or omissions as may be disclosed during the course of discovery.

2.   Such knowing acts and/or omissions constitute assumption of the risk and was a proximate cause of plaintiffs' alleged injuries and damages and constitute more than fifty percent of such cause and plaintiffs' claims are therefore barred or must be comparatively reduced.

**WHEREFORE**, the defendant, Ford Motor Company, prays for judgment in its favor and against the plaintiff plus costs and any other further relief this court deems appropriate under the circumstances.

## THIRD AFFIRMATIVE DEFENSE

1.      On information and belief, plaintiff knowingly failed to exercise due care for her own safety and engaged in one or more of the following culpable acts and/or omissions with the knowledge that an accident such as the one described in plaintiffs' complaint could occur:

    a.  failed to properly use, utilize and apply the available occupant restraint;

    b.  committed other negligent acts and/or omissions as may be disclosed during the course of discovery.

2.      Such knowing acts and/or omissions constitute misuse of the product at issue and was the proximate cause of the plaintiff's alleged injuries and damages and constitute more than fifty percent of such cause and plaintiff's claims are therefore barred or must be comparatively reduced.

**WHEREFORE**, the defendant, Ford Motor Company, prays for judgment in its favor and against the plaintiffs plus costs and any other further relief this court deems appropriate under the circumstances.

## FOURTH AFFIRMATIVE DEFENSE

The fault, if any, attributable to Ford Motor Company is less than twenty-five percent of the total fault attributable to each respective plaintiff, each defendant sued by plaintiff, Ford Motor Company, and any counter-defendant sued by Ford Motor Company, if any. Pursuant to §2-1117 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-1117, Ford Motor Company is severably liable for all damages claimed by plaintiffs, other than their past and future medical and medically related expenses.

DONOHUE BROWN MATHEWSON & SMYTH LLC


By: _____
    John A. Krivicich

I.D. #32878
DONOHUE BROWN MATHEWSON & SMYTH LLC
John A. Krivicich
Michael J. Borree
140 South Dearborn Street, Suite 800
Chicago, IL  60603
Telephone:    (312) 422-0900
Facsimile:    (312) 422-0909

- 8 -

STATE OF ILLINOIS      )
                              ) SS
COUNTY OF C O O K    )

## AFFIDAVIT

     I, John A. Krivicich, having been duly sworn on oath, state that I am an attorney licensed to practice in the State of Illinois and that within my responsibilities I have been assigned the defense of Ford Motor Company in this matter. I have reviewed the file material available to me at the time of preparation of the Answer on behalf of Ford Motor Company, and prepared and reviewed the foregoing Answer. The statements that this defendant, Ford Motor Company, is without knowledge or information sufficient to form a belief as to the truth or falsity of the plaintiff's allegation are true and correct to the best of my knowledge and belief.

 

_____

John A. Krivicich

 

 

SUBSCRIBED AND SWORN TO before me this

_12_ Day of _September_ 2007

_____
Notary Public

"OFFICIAL SEAL"
SHARON M. SKIERKIEWICZ
Notary Public, State of Illinois
My Commission Expires 2/9/10

070568.9

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT - LAW DIVISION

EVELYN LaJEUNESSE,

       Plaintiff,

  v.

FORD MOTOR COMPANY, a corporation,
and BILL KAY FORD, INC., a corporation,

       Defendants.

No.  07 L 8251
Judge James D. Egan
Motion Call: X

## PROTECTIVE ORDER

THIS CAUSE coming on to be heard on the Motion of defendant, FORD MOTOR COMPANY, for entry of a Protective Order on a 2004 Ford Focus which is the subject of plaintiff's Complaint at Law herein, due notice having been given and the Court being advised in the premises:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

1.    Defendant's Motion is granted;

2.    A Protective Order is hereby entered on the 2004 Ford Focus which is the subject of plaintiffs' Complaint at Law;

3.    Except as provided in paragraph 4, no party in this lawsuit or third person shall move, replace, destroy, alter, modify or dismantle said subject vehicle and its component parts from their post-accident condition.

4.    The parties and all third persons, their attorneys, experts, agents, employees and others over whom they have control shall not, without prior written notice to all parties, inspect, disassemble or modify the subject vehicle or any component parts unless each party, with its

representatives, has an adequate opportunity to be present and to observe and/or document such activities.

   5.    This Protective Order shall remain in effect until further order of Court or by Stipulation of all parties.

                                    JUDGE JAMES D. EGAN    SEP 20 2007

                        ENTERED:

                        _____
                        JUDGE                    DATE

I.D. #32878
DONOHUE BROWN MATHEWSON & SMYTH LLC
John A. Krivicich
Michael J. Borree
140 South Dearborn Street, Suite 800
Chicago, IL 60603
Telephone:    (312) 422-0900
Facsimile:    (312) 422-0909

- 2 -

070568.13

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - LAW DIVISION

EVELYN LaJEUNESSE,

       Plaintiff,

     v.

FORD MOTOR COMPANY, a corporation, and
BILL KAY FORD, INC., a corporation,

       Defendants.

No.  07 L 8251
Judge James D. Egan
Motion Call: X

FILED-16
07 SEP 12 AM 10:54
DOROTHY BROWN
CLERK OF CIRCUIT COURT
LAW DIVISION

## NOTICE OF MOTION

TO:  Shawn Kasseman, Corboy & Demetrio, P.C., 33 North Dearborn Street, Suite 2100,
     Chicago, IL 60602

     PLEASE TAKE NOTICE that on _____9-20-07_____, at _9:30_ a.m./p.m.,
or as soon thereafter as this motion may be heard, we shall appear before the Honorable Judge James
D. Egan, or any Judge sitting in its place or stead, in the Courtroom usually occupied by them in
Room 2205 in the Richard J. Daley Center, Chicago, IL, and, present Ford Motor Company's Motion
for Protective Order, a copy of which is attached hereto.

*Donohue Brown Mathewson & Smyth LLC*
DONOHUE BROWN MATHEWSON & SMYTH LLC

I.D. #32878
DONOHUE BROWN MATHEWSON & SMYTH LLC
John A. Krivicich
140 South Dearborn Street, Suite 800
Chicago, IL  60603
Telephone:   (312) 422-0900
Facsimile:    (312) 422-0909

## PROOF OF SERVICE

     I, Sharon Skierkiewicz, a non-attorney, on oath hereby certifies under penalties of perjury as provided
by law pursuant to Ill. Rev. Stat., ch. 110, par. 1-109 [735 ILCS 5/1-109], that the above notice and any
attached pleading(s) were ( ) personally delivered or (X) placed in the U.S. Mail at 140 South Dearborn Street,
Chicago, Illinois, with first class postage prepaid and directed to the parties at the addresses set forth above at
or before 5:00 p.m. on September 12, 2007.

070568.8

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT - LAW DIVISION

EVELYN LaJEUNESSE,

      Plaintiff(s),

    v.

FORD MOTOR COMPANY, a corporation,
and BILL KAY FORD, INC., a corporation,

      Defendant(s).

No. 07 L 8251
Judge James D. Egan
Motion Call: X

## FORD MOTOR COMPANY'S MOTION FOR PROTECTIVE ORDER

Defendant, FORD MOTOR COMPANY ("Ford"), by and through its attorneys, and pursuant to Illinois Supreme Court Rule 201(c)(1), moves this Court for entry of a protective order regarding a certain 2004 Ford Focus described in plaintiff's Complaint at Law. In support of its motion, this defendant states as follows:

1.     Plaintiff in this case have filed a complaint against Ford, for personal injury allegedly sustained as a result of a vehicular accident which occurred on or about August 10, 2005.

2.     Plaintiffs complaint sounds in strict tort liability. Plaintiff's complaint alleges, *inter alia*, that the subject vehicle was in an unreasonably dangerous and defective condition when it left the control of this defendant and that said condition caused the injury alleged in plaintiff's complaint.

3.     The condition of the subject vehicle when it left the control of this defendant, and at the time of the occurrence alleged in plaintiffs' complaint, are material and form the gist of all of the plaintiff's causes of action.

4.     Any alteration of this evidence from its post-accident condition would irreparably and prejudicially affect this defendant's ability to defend its interest in this matter.

5.    A copy of Ford's proposed protective order regarding the subject vehicle is attached

hereto as Exhibit A.

WHEREFORE, this defendant, FORD MOTOR COMPANY, requests the entry of a

protective order on the subject 2004 Ford Focus, enjoining any person from in any way altering,

modifying, destroying and/or dismantling the 2004 Ford Focus or its component parts from their

post-accident condition, all of which are the subject of plaintiff's complaint, unless according to an

order entered by this Court or the agreement of the parties.

DONOHUE BROWN MATHEWSON & SMYTH LLC

By: _____
John A. Krivicich

I.D. #32878
DONOHUE BROWN MATHEWSON & SMYTH LLC
John A. Krivicich
Michael J. Borree
140 South Dearborn Street, Suite 800
Chicago, IL  60603
Telephone:    (312) 422-0900
Facsimile:     (312) 422-0909

- 2 -

070568.9

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT - LAW DIVISION

EVELYN LaJEUNESSE,

          Plaintiff,

   v.

FORD MOTOR COMPANY, a corporation,
and BILL KAY FORD, INC., a corporation,

          Defendants.

No.   07 L 8251
Judge James D. Egan
Motion Call: X

### PROTECTIVE ORDER

THIS CAUSE coming on to be heard on the Motion of defendant, FORD MOTOR COMPANY, for entry of a Protective Order on a 2004 Ford Focus which is the subject of plaintiff's Complaint at Law herein, due notice having been given and the Court being advised in the premises:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

1.     Defendant's Motion is granted;

2.     A Protective Order is hereby entered on the 2004 Ford Focus which is the subject of plaintiffs' Complaint at Law;

3.     Except as provided in paragraph 4, no party in this lawsuit or third person shall move, replace, destroy, alter, modify or dismantle said subject vehicle and its component parts from their post-accident condition.

4.     The parties and all third persons, their attorneys, experts, agents, employees and others over whom they have control shall not, without prior written notice to all parties, inspect, disassemble or modify the subject vehicle or any component parts unless each party, with its


EXHIBIT
A

representatives, has an adequate opportunity to be present and to observe and/or document such activities.

5.     This Protective Order shall remain in effect until further order of Court or by Stipulation of all parties.

ENTERED:

_____
JUDGE                                    DATE

I.D. #32878
DONOHUE BROWN MATHEWSON & SMYTH LLC
John A. Krivicich
Michael J. Borree
140 South Dearborn Street, Suite 800
Chicago, IL  60603
Telephone:     (312) 422-0900
Facsimile:      (312) 422-0909

070568.18

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT - LAW DIVISION

EVELYN LaJEUNESSE,

        Plaintiff,

    v.

FORD MOTOR COMPANY, a corporation,
and BILL KAY FORD, INC., a corporation,

        Defendants.

and

FORD MOTOR COMPANY,

        Third-Party Plaintiff,

    v.

HENRY LaJEUNESSE,

        Third-Party Defendant.

No.  07 L 8251
Judge James D. Egan
Motion Call: X

## ORDER

THIS CAUSE, coming to be heard, on Defendant/Third-Party Plaintiff Ford Motor Company's, Motion For Leave To Issue Third-Party Complaint For Contribution against Henry LaJeunesse and to issue summons, due notice having been given, and the Court being fully advised in the premises, it is hereby ordered that:

1.     Defendant/Third-Party Plaintiff, Ford Motor Company's Motion is granted;
2.     Leave is given to Defendant/Third-Party Plaintiff, Ford Motor Company, to file its third-party complaint for contribution against Henry LaJeunesse with summons to issue.

ENTER

JUDGE

ENTERED 2007
JUDGE JAMES EGAN-1522
SEP 2 4 2007
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

I.D. #32878
DONOHUE BROWN MATHEWSON & SMYTH LLC
John A. Krivicich
Michael J. Borree
140 South Dearborn Street, Suite 800
Chicago, IL 60603
Telephone:      (312) 422-0900
Facsimile:      (312) 422-0909

070568.16

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT - LAW DIVISION

EVELYN LaJEUNESSE,

          Plaintiff,

       v.

FORD MOTOR COMPANY, a corporation,
and BILL KAY FORD, INC., a corporation,

          Defendants,

**AND**

FORD MOTOR COMPANY,

          Third-Party Plaintiff,

       v.

HENRY LaJEUNESSE,

          Third-Party Defendant.

No.  07 L 8251
Judge James D. Egan
Motion Call: X

## THIRD PARTY COMPLANT FOR CONTRIBUTION - HENRY LAJEUNESSE

    NOW COMES defendant, FORD MOTOR COMPANY ("Ford"), by and through its attorneys in this regard, John A. Krivicich, Michael J. Borree and DONOHUE BROWN MATHEWSON & SMYTH LLC, for its third party complaint for contribution against third-party defendant HENRY LaJEUNESSE states as follows:

    1. Plaintiff, EVELYN LaJEUNESSE, has filed a complaint against FORD et al, alleging strict liability against said defendant with respect to a vehicle accident that allegedly occurred on August 10, 2005 involving a certain 2004 Ford Focus. Defendant FORD has now denied all material allegations of the Plaintiff's complaint.

2. On August 10, 2005, third-party defendant, HENRY LaJEUNESSE, had a duty of care as the operator of his automobile for his own safety and for the safety of persons in his vehicle, including plaintiff. In derogation of that duty, third-party defendant HENRY LaJEUNESSE was negligent in the operation of said vehicle in one or more of the following respects:

    (a)    Failed to keep his vehicle in a proper lane of traffic;

    (b)    Failed to brake to avoid a collision;

    (c)    Failed to reduce his speed to avoid a collision;

    (d)    Was otherwise careless and negligent.

3. As a direct and proximate result of the negligence of third-party defendant HENRY LaJEUNESSE, the vehicle he was driving collided with the garage located at 4924 East Circle Drive, Crestwood, Illinois, causing injury to the plaintiff EVELYN LaJEUNESSE's person and the Plaintiff has sustained economic and non-economic damages of a personal and pecuniary nature, including but not limited to medical expenses and hospital expenses and will continue to incur medical expenses in the future.

4. In the event that Ford is found liable to the plaintiff, EVELYN LaJEUNESSE, which liability is specifically denied, then it will only be as a direct and proximate result of one or more of the aforesaid negligent and/or careless acts committed by third-party defendant HENRY LaJEUNESSE.

5. Pursuant to 740 ILCS 100/0.01, on August 10, 2005, and at all other relevant times, there existed a right of contribution among joint tortfeasors in the State of Illinois. In the event that Ford is found liable to the plaintiff and required to pay more than its pro rata share of liability, which

- 2 -

liability is expressly denied, then Ford is entitled to recovery from HENRY LaJEUNESSE by way of contribution in such an amount as is commensurate with the relative degree of culpability or fault attributable to HENRY LaJEUNESSE.

6. Ford asserts this counterclaim for contribution in the alternative, and specifically denies all allegations of wrongdoing contained in the Plaintiff's complaint, and by asserting this counterclaim for contribution, in no ways admits any liability for plaintiff's damages or the truth of any averments as to plaintiff.

**WHEREFORE**, Third-Party Plaintiff FORD MOTOR COMPANY prays that if judgment is entered in favor of the plaintiff and against Ford under the complaint in this matter, that judgment then be entered against third-party defendant HENRY LaJEUNESSE, in an amount equal to the relative share of the fault attributable to his acts and/or omissions.

**DEFENDANT/THIRD-PARTY PLAINTIFF DEMANDS TRIAL BY JURY.**

DONOHUE BROWN MATHEWSON & SMYTH LLC

By: _____
John A. Krivicich

I.D. #32878
DONOHUE BROWN MATHEWSON & SMYTH LLC
John A. Krivicich
Michael J. Borree
140 South Dearborn Street, Suite 800
Chicago, IL 60603
Telephone: (312) 422-0900
Facsimile: (312) 422-0909

- 3 -

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Evelyn LaJeunesse

v.

Ford Motor Co. and Bill Kay Ford, Inc.

line #3

No.   07 - L - 008251

### ORDER

This cause coming to be heard on defendant Bill Kay Ford, Inc.'s Motion to extend time to answer or otherwise plead, Notice having been given to the parties and the Court being fully advised in the premises, It Is Hereby Ordered:

① Bill Kay Ford, Inc.'s Motion is GRANTED, and its answer or other responsive pleading is due on or before October 29, 2007.

Atty. No.: 40970

Name: Gordon & Karr LLP / jhw

Atty. for: defendant Bill Kay Ford

Address: 150 N. Wacker Dr., Ste 1650

City/State/Zip: Chicago IL 60606

Telephone: (312) 377-4450

ENTERED:

Dated:

ENTERED
JUDGE JAMES EGAN - 1522
SEP 2 5 2007
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Judge                  Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

#02329    SSK\nh    10/4/07                                                                    2007S-0120

FILED B - 7
2007 OCT -4 PM
DOROTHY BROWN
OF THE CIRCUIT COURT
OF COOK COUNTY, IL

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - LAW DIVISION

EVELYN LaJEUNESSE,

                    Plaintiff,

                v.

FORD MOTOR COMPANY,
a corporation; and
BILL KAY FORD, INC.,
a corporation,

                    Defendants.

No. 07 L 8251 X

### PLAINTIFF'S RESPONSE TO AFFIRMATIVE DEFENSES
### OF DEFENDANT, FORD MOTOR COMPANY

      Plaintiff, EVELYN LaJEUNESSE, by and through her attorneys, Corboy & Demetrio,

P.C., in response to the Affirmative Defenses of defendant, FORD MOTOR COMPANY, a

corporation, states:

### FIRST AFFIRMATIVE DEFENSE

      1.      Plaintiff denies each and every allegation contained in Paragraph 1 of defendant's

First Affirmative Defense, including sub-parts (a) through (b).

      2.      Plaintiff denies each and every allegation contained in Paragraph 2 of defendant's

First Affirmative Defense.

### SECOND AFFIRMATIVE DEFENSE

      1.      Plaintiff denies each and every allegation contained in Paragraph 1 of defendant's

Second Affirmative Defense, including sub-parts (a) through (b).

2.    Plaintiff denies each and every allegation contained in Paragraph 2 of defendant's Second Affirmative Defense.

### THIRD AFFIRMATIVE DEFENSE

.    Plaintiff denies each and every allegation contained in Paragraph 1 of defendant's Third Affirmative Defense, including sub-parts (a) through (b).

2.    Plaintiff denies each and every allegation contained in Paragraph 2 of defendant's Third Affirmative Defense.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff denies each and every allegation contained in Paragraph 1 of defendant's Fourth Affirmative Defense.

Respectfully submitted,
**Corboy & Demetrio, P.C.**

By: _____

Shawn S. Kasserman

Corboy & Demetrio, P.C.
Attorneys for Plaintiff
33 North Dearborn Street
21st Floor
Chicago, Illinois 60602
(312) 346-3191
Firm I.D. 02329

070568.30

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - LAW DIVISION

EVELYN LaJEUNESSE,

                  Plaintiffs, Plaintiff,

     v.

FORD MOTOR COMPANY, a corporation, and
BILL KAY FORD, INC., a corporation,

and

FORD MOTOR COMPANY,

                  Third-Party Plaintiff,

     v.

HENRY LaJEUNESSE,

                Third-Party Defendant.

No.  07 L 8251
Judge James D. Egan
Motion Call: X

## ORDER

THIS CAUSE coming to be heard on the routine motion of defendant, FORD MOTOR COMPANY, to allow its answer, affirmative defenses and third party complaint as to plaintiff's complaint at law to stand as and for its answer, affirmative defenses and third party complaint in response to plaintiff's amended complaint at law, notice having been given, and the Court being fully advised in the premises:

IT IS HEREBY ORDERED that said motion is granted.

ENTERED: _____ JUDGE JAMES D. EGAN   OCT 1 5 2007

                Judge                       Judge's No.

I.D. #32878
DONOHUE BROWN MATHEWSON & SMYTH LLC
John A. Krivicich
Michael J. Borree
140 South Dearborn Street, Suite 800
Chicago, IL  60603
Telephone:    (312) 422-0900
Facsimile:    (312) 422-0909

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT - LAW DIVISION

EVELYN LaJEUNESSE,

          Plaintiff(s),

    v.

FORD MOTOR COMPANY, a corporation,
and BILL KAY FORD, INC., a corporation,
and
FORD MOTOR COMPANY,

       Third-Party Plaintiff,

    v.

HENRY LaJEUNESSE,

       Third-Party Defendant.

No.  07 L 8251
Judge James D. Egan
Motion Call: X



FILED
Law Div. - 2205
OCT 15 2007
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

### FORD MOTOR COMPANY'S ROUTINE MOTION TO LET ANSWER AND AFFIRMATIVE DEFENSES STAND

Defendant, FORD MOTOR COMPANY, by and through its attorneys in this regard, John A.

Krivicich, Michael J. Borree, and DONOHUE BROWN MATHEWSON & SMYTH LLC, and

respectfully moves this Honorable Court for an order allowing its answer, affirmative defenses and

third party complaint as to plaintiff's complaint at law to stand as and for its answer, affirmative

defenses and third party complaint in response to plaintiff's amended complaint at law.

               Respectfully submitted,

               FORD MOTOR COMPANY

By: _____
            John A. Krivicich, One of its Attorneys

I.D. #32878
DONOHUE BROWN MATHEWSON & SMYTH LLC
John A. Krivicich
Michael J. Borree
140 South Dearborn Street, Suite 800
Chicago, IL  60603
Telephone:    (312) 422-0900
Facsimile:    (312) 422-0909

070568.30

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - LAW DIVISION

EVELYN LaJEUNESSE,

                 Plaintiffs, Plaintiff,

     v.

FORD MOTOR COMPANY, a corporation, and
BILL KAY FORD, INC., a corporation,

and

FORD MOTOR COMPANY,

                 Third-Party Plaintiff,

     v.

HENRY LaJEUNESSE,

                 Third-Party Defendant.

No.   07 L 8251
Judge James D. Egan
Motion Call: X

## ORDER

THIS CAUSE coming to be heard on the routine motion of defendant, FORD MOTOR COMPANY, to allow its answer, affirmative defenses and third party complaint as to plaintiff's complaint at law to stand as and for its answer, affirmative defenses and third party complaint in response to plaintiff's amended complaint at law, notice having been given, and the Court being fully advised in the premises:

IT IS HEREBY ORDERED that said motion is granted. JUDGE JAMES D. EGAN   OCT 1 5 2007

ENTERED: _____

                       Judge                    Judge's No.

I.D. #32878
DONOHUE BROWN MATHEWSON & SMYTH LLC
John A. Krivicich
Michael J. Borree
140 South Dearborn Street, Suite 800
Chicago, IL  60603
Telephone:    (312) 422-0900
Facsimile:    (312) 422-0909

070568.37

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT - LAW DIVISION

EVELYN LaJEUNESSE,

        Plaintiff,

    v.

FORD MOTOR COMPANY, a corporation,
and BILL KAY FORD, INC., a corporation,

        Defendants,

and

FORD MOTOR COMPANY,

        Third-Party Plaintiff,

    v.

HENRY LaJEUNESSE,

        Third-Party Defendant.

08CV4436
JUDGE CASTILLO
MAGISTRATE JUDGE NOLAN

PH

No. 07 L 8251
Judge James D. Egan
Motion Call: X

### ORDER

THIS CAUSE, coming on to be heard on the motion of the defendant, BILL KAY FORD, INC., for substitution of counsel, due notice having been given, the Court being fully advised in the premises;

**IT IS HEREBY ORDERED** that:

1.    DONOHUE BROWN MATHEWSON & SMYTH LLC. is allowed to substitute its appearance as counsel for the defendant, BILL KAY FORD, INC., in lieu of GORDON & KARR, who are granted leave to withdraw.

ENTER:

_____
Judge                      Judge's No.

JUDGE JAMES D. EGAN   OCT 2 2 2007

070568.36

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT - LAW DIVISION

EVELYN LaJEUNESSE,

        Plaintiff,

    v.

FORD MOTOR COMPANY, a corporation,
and BILL KAY FORD, INC., a corporation,

        Defendant,

and

FORD MOTOR COMPANY,

        Third-Party Plaintiff,

    v.

HENRY LaJEUNESSE,

        Third-Party Defendant.

No.  07 L 8251
Judge James D. Egan
Motion Call: X

## MOTION FOR LEAVE TO SUBSTITUTE COUNSEL

Defendant, BILL KAY FORD, INC. respectfully moves this Court for an order granting

Donohue Brown Mathewson & Smyth LLC leave to substitute as counsel in lieu of Gordon & Karr,

withdrawn.  A copy of a substitution of counsel form signed by counsel is attached as Exhibit A.

WHEREFORE, this defendant, BILL KAY FORD, INC. respectfully requests that this Court

enter an order consistent with the foregoing and for any further relief that this Court deems just.

BILL KAY FORD, INC.

By: _____

One of Its Attorneys

I.D. #32878
DONOHUE BROWN MATHEWSON & SMYTH LLC
John A. Krivicich
Michael J. Borree
140 South Dearborn Street, Suite 800
Chicago, IL  60603
Telephone:    (312) 422-0900
Facsimile:    (312) 422-0909

070568.32

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - LAW DIVISION

EVELYN LaJEUNESSE,

    v.

FORD MOTOR COMPANY, a corporation,
and BILL KAY FORD, INC., a corporation,

    and

FORD MOTOR COMPANY,

        Third-Party Plaintiff,

    v.

HENRY LaJEUNESSE,

        Third-Party Defendant.

No.  07 L 8251
Judge James D. Egan
Motion Call: X

### SUBSTITUTION OF ATTORNEYS

WE HEREBY WITHDRAW our appearance for the defendant, BILL KAY FORD, INC.

GORDON & KARR, LLP

By: _____
    Stuart D. Gordon
    150 N. Wacker Drive, Suite 1650
    Chicago, IL 60606
    Telephone:   (312) 377-4450

WE HEREBY ENTER our appearance as attorneys for defendant BILL KAY FORD, INC.

DONOHUE BROWN MATHEWSON & SMYTH LLC

By: _____
    John A. Krivicich
    140 South Dearborn Street, Suite 800
    Chicago, IL 60603
    Telephone:   (312) 422-0900



070568.37

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT - LAW DIVISION

EVELYN LaJEUNESSE,

        Plaintiff,

    v.

FORD MOTOR COMPANY, a corporation,
and BILL KAY FORD, INC., a corporation,

        Defendants,

and

FORD MOTOR COMPANY,

        Third-Party Plaintiff,

    v.

HENRY LaJEUNESSE,

        Third-Party Defendant.

No.  07 L 8251
Judge James D. Egan
Motion Call: X

## ORDER

THIS CAUSE, coming on to be heard on the motion of the defendant, BILL KAY FORD, INC., for

substitution of counsel, due notice having been given, the Court being fully advised in the premises;

**IT IS HEREBY ORDERED** that:

1.    DONOHUE  BROWN  MATHEWSON  &  SMYTH LLC. is allowed to substitute

    its appearance as counsel for the defendant, BILL KAY FORD, INC.,  in lieu of

    GORDON & KARR, who are granted leave to withdraw.

        ENTER:

        _____

        Judge            Judge's No.

I.D. #32878
DONOHUE BROWN MATHEWSON & SMYTH LLC
John A. Krivicich
Michael J. Borree
140 South Dearborn Street, Suite 800
Chicago, IL  60603
Telephone:     (312) 422-0900
Facsimile:     (312) 422-0909

070568.31

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT - LAW DIVISION

EVELYN LaJEUNESSE,

        Plaintiff(s),

    v.

FORD MOTOR COMPANY, a corporation,
and BILL KAY FORD, INC., a corporation,

and

FORD MOTOR COMPANY,

        Third-Party Plaintiff,

    v.

HENRY LaJEUNESSE,

        Third-Party Defendant.

No.   07 L 8251
Judge James D. Egan
Motion Call: X

## BILL KAY FORD, INC.'S ANSWER, AFFIRMATIVE DEFENSES AND THIRD-PARTY COMPLAINT AS TO PLAINTIFF'S AMENDED COMPLAINT AT LAW

Defendant, BILL KAY FORD, INC.'s, by its attorneys, DONOHUE BROWN

MATHEWSON & SMYTH LLC, as and for its answer, affirmative defenses and third-party

complaint to plaintiff's amended complaint at law, states as follows:

### COUNTS I and II

This defendant makes no answer to Counts I and II of plaintiff's amended complaint at

law, because said counts are not directed to it.  To the extent that any allegation in said counts

could be deemed to be directed to this defendant, defendant denies said allegations.

## COUNT III

1.     Prior to August 10, 2005, defendant, BILL KAY FORD, sold a 2004 Ford Focus to Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE.

**ANSWER:**    This defendant states that it is without knowledge or information sufficient to

form a belief as to the truth or falsity of the allegations contained in paragraph 1 of Count III of

the plaintiff's complaint at law, and therefore said allegations are denied.

2.     At the time defendant, BILL KAY FORD, sold the 2004 Ford Focus to Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE, it knew or should have known the 2004 Ford Focus had a propensity for sudden, unexpected acceleration, and/or the airbags not deploying in a frontal collision.

**ANSWER:**    This defendant denies the allegations contained in paragraph 2 of Count III of the

plaintiff's complaint at law.

3.     On August 10, 2005, plaintiff, EVELYN LaJEUNESSE, was a passenger in the 2004 Ford Focus sold by defendant, BILL KAY FORD, which, without driver intent, suddenly accelerated in a parking lot at the Crestwood Mall in Crestwood, Cook County, Illinois.

**ANSWER:**    This defendant states that it is without knowledge or information sufficient to

form a belief as to the truth or falsity of the allegations contained in paragraph 3 of Count III of

the plaintiff's complaint at law, and therefore said allegations are denied.

4.     On August 10, 2005, the 2004 Ford Focus struck a wall as a result of the unexpected, sudden acceleration and the airbags failed to deploy.

**ANSWER:**    This defendant states that it is without knowledge or information sufficient to

form a belief as to the truth or falsity of the allegations contained in paragraph 4 of Count III of

the plaintiff's complaint at law, and therefore said allegations are denied.

- 2 -

5.    On and before August 10, 2005, defendant, BILL KAY FORD, was negligent in one or more respects:

      a.    failed to inform Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE, that the 2004 Ford Focus had a propensity for sudden, unexpected acceleration before selling the car to them;

      b.    failed to inform Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE, that the 2004 Ford Focus had a propensity for sudden, unexpected acceleration after selling the car to them;

      c.    failed to discover the 2004 Ford Focus had a propensity to suddenly and unexpectedly accelerate;

      d.    failed to warn Henry LaJeunesse and plaintiff, EVELYN LaJELTNESSE, that the airbags were known not to deploy in certain frontal impacts.

**ANSWER:**    This defendant denies each and every allegation contained in paragraph 5 of Count III of the plaintiff's complaint at law, including subparagraphs (a) through (d) thereof.

6.    As a proximate result of one or more of the aforesaid negligent acts and/or omissions of defendant, BILL KAY FORD, Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE, purchased and continued to use the 2004 Ford Focus until it suddenly, unexpectedly accelerated and struck a wall without the airbags deploying, causing injuries to plaintiff, EVELYN LaJEUNESSE, of a personal, pecuniary and permanent nature.

**ANSWER:**    This defendant denies the allegations contained in paragraph 6 of Count III of the plaintiff's complaint at law.

7.    Had Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE, been informed by defendant, BILL KAY FORD, of the propensity of the 2004 Ford Focus to suddenly, unexpectedly accelerate and/or that the airbags would not deploy in a frontal impact, they would not have purchased it.

**ANSWER:**    This defendant denies all allegations as to a sudden acceleration and as to an airbag defect in the 2004 Ford Focus. This defendant states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations con-

- 3 -

tained in paragraph 7 of Count III of the plaintiff's(s') complaint at law, and therefore said allegations are denied.

**WHEREFORE**, this defendant, BILL KAY FORD, INC., denies that the plaintiff is entitled to judgment in any sum whatsoever, and prays for judgment in its favor, with costs assessed against the plaintiff.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

1.    On information and belief, plaintiff failed to exercise due care for her own safety due to one or more of the following negligent acts and/or omissions that resulted in the alleged damages:

    a.    failed to properly use, utilize and apply the available occupant restraint;

    b.    committed other negligent acts and/or omissions as may be disclosed during the course of discovery.

2.    Plaintiff's damages, if any, were caused by the direct and proximate result of the fault/negligence of plaintiff and constituted more than fifty percent of such cause and plaintiff's claims are therefore barred or must be comparatively reduced.

**WHEREFORE**, the defendant, Bill Kay Ford, Inc., prays for judgment in its favor and against the plaintiff plus costs and any other further relief this court deems appropriate under the circumstances.

## SECOND AFFIRMATIVE DEFENSE

1.　　On information and belief, plaintiff knowingly failed to exercise due care for her own safety and engaged in one or more of the following culpable acts and/or omissions with knowledge that an accident such as the one described in plaintiffs' complaint could occur:

　　　a.　　failed to properly use, utilize and apply the available occupant restraint;

　　　b.　　committed other negligent acts and/or omissions as may be disclosed during the course of discovery.

2.　　Such knowing acts and/or omissions constitute assumption of the risk and was a proximate cause of plaintiffs' alleged injuries and damages and constitute more than fifty percent of such cause and plaintiffs' claims are therefore barred or must be comparatively reduced.

**WHEREFORE**, the defendant, Bill Kay Ford, Inc., prays for judgment in its favor and against the plaintiff plus costs and any other further relief this court deems appropriate under the circumstances.

## THIRD AFFIRMATIVE DEFENSE

1.　　On information and belief, plaintiff knowingly failed to exercise due care for her own safety and engaged in one or more of the following culpable acts and/or omissions with the knowledge that an accident such as the one described in plaintiffs' complaint could occur:

　　　a.　　failed to properly use, utilize and apply the available occupant restraint;

　　　b.　　committed other negligent acts and/or omissions as may be disclosed during the course of discovery.

2.　　Such knowing acts and/or omissions constitute misuse of the product at issue and was the proximate cause of the plaintiff's alleged injuries and damages and constitute more than fifty percent of such cause and plaintiff's claims are therefore barred or must be comparatively reduced.

**WHEREFORE**, the defendant, Bill Kay Ford, Inc., prays for judgment in its favor and against the plaintiffs plus costs and any other further relief this court deems appropriate under the circumstances.

## FOURTH AFFIRMATIVE DEFENSE

The fault, if any, attributable to Bill Kay Ford, Inc. is less than twenty-five percent of the total fault attributable to each respective plaintiff, each defendant sued by plaintiff, Bill Kay Ford, Inc., and any counter-defendant sued by Bill Kay Ford, Inc., if any.  Pursuant to §2-1117 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-1117, Bill Kay Ford, Inc. is severally liable for all damages claimed by plaintiffs, other than their past and future medical and medically related expenses.

## THIRD PARTY COMPLANT FOR CONTRIBUTION  - HENRY LaJEUNESSE

NOW COMES defendant, BILL KAY FORD, INC., by and through its attorneys in this regard, John A. Krivicich, Michael J. Borree and DONOHUE BROWN MATHEWSON & SMYTH LLC, for its third party complaint for contribution against third-party defendant HENRY LaJEUNESSE states as follows:

1.      Plaintiff, EVELYN LaJEUNESSE, has filed a complaint against Bill Kay Ford, Inc. et al, alleging strict liability against said defendant with respect to a vehicle accident that allegedly occurred on August 10, 2005 involving a certain 2004 Ford Focus in which HENRY LaJEUNESSE was the driver.  Defendant Bill Kay Ford, Inc. has now denied all material allegations of the Plaintiff's complaint.

2.      On August 10, 2005, third-party defendant, HENRY LaJEUNESSE, had a duty of care as the operator of his automobile for his own safety and for the safety of persons in his vehicle,

- 6 -

including plaintiff.  In derogation of that duty, third-party defendant HENRY LaJEUNESSE was

negligent in the operation of said vehicle in one or more of the following respects:

> (a)    Failed to keep his vehicle in a proper lane of traffic;
>
> (b)    Failed to brake to avoid a collision;
>
> (c)    Failed to reduce his speed to avoid a collision;
>
> (d)    Was otherwise careless and negligent.

3.    As a direct and proximate result of the negligence of third-party defendant

HENRY LaJEUNESSE, the vehicle he was driving collided with the garage located at 4924 East

Circle Drive, Crestwood, Illinois, causing injury to the plaintiff EVELYN LaJEUNESSE's

person and the Plaintiff has sustained economic and non-economic damages of a personal and

pecuniary nature, including but not limited to medical expenses and hospital expenses and will

continue to incur medical expenses in the future.

4.    In the event that Bill Kay Ford, Inc. is found liable to the plaintiff, EVELYN

LaJEUNESSE, which liability is specifically denied, then it will only be as a direct and proximate

result of one or more of the aforesaid negligent and/or careless acts committed by third-party

defendant HENRY LaJEUNESSE.

5.    Pursuant to 740 ILCS 100/0.01, on August 10, 2005, and at all other relevant times,

there existed a right of contribution among joint tortfeasors in the State of Illinois.  In the event that

Ford is found liable to the plaintiff and required to pay more than its pro rata share of liability, which

liability is expressly denied, then Ford is entitled to recovery from HENRY LaJEUNESSE by way of

contribution in such an amount as is commensurate with the relative degree of culpability or fault

attributable to HENRY LaJEUNESSE.

- 7 -

6.    Ford asserts this counterclaim for contribution in the alternative, and specifically denies all allegations of wrongdoing contained in the Plaintiff's complaint, and by asserting this counterclaim for contribution, in no ways admits any liability for plaintiff's damages or the truth of any averments as to plaintiff.

**WHEREFORE**, Third-Party Plaintiff BILL KAY FORD, INC. prays that if judgment is entered in favor of the plaintiff and against Ford under the complaint in this matter, that judgment then be entered against third-party defendant HENRY LaJEUNESSE, in an amount equal to the relative share of the fault attributable to his acts and/or omissions.

**DEFENDANT/THIRD-PARTY PLAINTIFF DEMANDS TRIAL BY JURY**.

Respectfully submitted,

DONOHUE BROWN MATHEWSON & SMYTH LLC

By: _____
John A. Krivicich

I.D. #32878
DONOHUE BROWN MATHEWSON & SMYTH LLC
John A. Krivicich
Michael J. Borree
140 South Dearborn Street, Suite 800
Chicago, IL 60603
Telephone:    (312) 422-0900
Facsimile:    (312) 422-0909

- 8 -

STATE OF ILLINOIS      )
                       )SS.
COUNTY OF COOK         )

## **AFFIDAVIT**

    I, John A. Krivicich, having been duly sworn on oath, state that I am an attorney licensed to practice on the State of Illinois and that within my responsibilities I have been assigned the defense of Ford Motor Company in this matter. I have reviewed the file material available to me at the time of preparation of the Answer on behalf of Ford Motor Company, and prepared and reviewed the foregoing Answer. The statements that this defendant, Ford Motor Company, is without knowledge or information sufficient to form a belief as to the truth or falsity of the plaintiff's allegation are true and correct to the best of my knowledge and belief.

_10/16/07_
Dated

_____
John A. Krivicich

[x]    Under penalties as provided by law pursuant to Section 5/1-109 of the Code of Civil Procedure, the above certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the signature above certifies as aforesaid that he verily believes the same to be true.

- 7 -

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| SUMMONS | ALIAS - SUMMONS   CCG N001-10M-1-07-05 ( ) |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, <u>LAW</u> DIVISION

(Name all parties)

Evelyn LaJeunesse  v.Ford Motor Company, et al.  and
BILL KAY FORD, INC. - Third Party Plaintiff

v.

HENRY LaJEUNESSE - Third Party Defendant

No. <u>07 L 8251</u>

PLEASE SERVE:

HENRY LaJEUNESS
6823 Park Lane
Palos Heights, IL 60463

**SUMMONS**

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room <u>801</u>, Chicago, Illinois 60602

| | | |
|---|---|---|
| ❑ District 2 - Skokie<br>5600 Old Orchard Rd.<br>Skokie, IL 60077 | ❑ District 3 - Rolling Meadows<br>2121 Euclid<br>Rolling Meadows, IL 60008 | ❑ District 4 - Maywood<br>1500 Maybrook Ave.<br>Maywood, IL 60153 |
| ❑ District 5 - Bridgeview<br>10220 S. 76th Ave.<br>Bridgeview, IL 60455 | ❑ District 6 - Markham<br>16501 S. Kedzie Pkwy.<br>Markham, IL 60426 | ❑ Child Support<br>28 North Clark St., Room 200<br>Chicago, Illinois 60602 |

You must file within 30 days after service of this Summons, not counting the day of service.
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: <u>32878</u>

Name: J. Krivicich/Donohue Brown Mathewson & Smyth

Atty. for: <u>Third Party Plaintiff</u>

Address: <u>140 S. Dearborn, #800</u>

City/State/Zip: <u>Chicago, IL 60603</u>

Telephone: <u>312-422-0900</u>

Service by Facsimile Transmission will be accepted at: _____

WITNESS, _____, OCT 2 3 2007

_____
Clerk of Court

Date of service: _____
(To be inserted by officer on copy left with defendant or other person)

(Area Code)   (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

070568.42

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT - LAW DIVISION

EVELYN LaJEUNESSE,

       Plaintiff,

    v.

FORD MOTOR COMPANY, a corporation,
and BILL KAY FORD, INC., a corporation,

       Defendant,

and

FORD MOTOR COMPANY,

       Third-Party Plaintiff,

    v.

HENRY LaJEUNESSE,

       Third-Party Defendant.

No.  07 L 8251
Judge James D. Egan
Motion Call: X

## DEFENDANT BILL KAY FORD, INC.'S MOTION FOR SUMMARY JUDGMENT

    Defendant BILL KAY FORD, INC. ("Bill Kay Ford"), by and through its attorneys in this regard, John A. Krivicich, Michael J. Borree, and DONOHUE BROWN MATHEWSON & SMYTH LLC, pursuant to 735 ILCS 5/2-1005(c), respectfully moves this Court for an order granting it summary judgment on Count III of Plaintiff's Amended Complaint at Law.  In support of its Motion, Bill Kay Ford states as follows:

### I.    Background

    This action arises out of an automobile accident that occurred in the parking lot of Crestwood Mall in Crestwood, Illinois on August 10, 2005, while plaintiff Evelyn LaJeunesse occupied the front

passenger seat of a 2004 Ford Focus that the driver lost control of and crashed into the brick wall of a garage.

Plaintiff alleges in her complaint that defendant Ford Motor Company defectively designed and manufactured the subject vehicle, and as a result, the vehicle had a propensity to accelerate suddenly and unexpectedly, and its airbag would fail to deploy in frontal impacts. As to Bill Kay Ford, Count III of plaintiff's complaint sounds in negligence and alleges that Bill Kay Ford knew or should have known that the vehicle was susceptible to sudden acceleration and that the airbags were known not to deploy in certain frontal impacts. (See Pl.'s Compl., Ex. A, Count III). Further, as a proximate cause of this alleged negligence, plaintiff claims the subject vehicle unexpectedly and suddenly accelerated and caused a collision that injured plaintiff.

Bill Kay Ford had no involvement in the design, manufacture, or assembly of the subject vehicle. The sales and service records for the subject vehicle indicate that Bill Kay Ford did nothing to cause or contribute to the alleged condition of the vehicle. (See Aff. William Koloseike, Ex. B, ¶6). Likewise, nobody at Bill Kay Ford had any knowledge of the alleged defects that claimed to have caused plaintiff's injuries nor reason to know those conditions. (See Ex. B, ¶8).

For the reasons set forth below, Bill Kay Ford moves for judgment in its favor on plaintiff's count of negligence against it, pursuant to Section 2-1005(c) of the Illinois Code of Civil Procedure.

## II.    There Is No Genuine Issue Of Material Fact That Bill Kay Ford Did Not Design, Manufacture Or Assemble The Subject Vehicle Or Knew Or Had Reason To Believe The Subject Vehicle Had The Conditions Alleged By Plaintiff.

A negligence action requires the plaintiff to prove: (1) that the defendant owed a duty of reasonable care; (2) that the defendant breached its duty; (3) that defendant's breach proximately caused the plaintiff's injuries; and (4) damages. *Calles v. Scripto-Tokai Corp.*, 224 Ill. 2d 247, 270,

864 N.E.2d 249, 263 (2007) (citing *Ward v. K Mart Corp.*, 136 Ill. 2d 132, 140, 554 N.E.2d 223, 226 (1990)).

A defendant is entitled to summary judgment when the pleadings, depositions, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2007). Where there is no dispute as to the material facts or where reasonable minds cannot differ in an interpretation of those facts, this Court must grant summary judgment for the movant. *James v. Ingalls Meml. Hosp.*, 299 Ill. App. 3d 627, 630, 701 N.E.2d 207, 209 (1st Dist. 1998). Here, no genuine issue of material fact remains with respect to the allegations listed in count III of plaintiff's complaint at law.

While the plaintiff in this case alleges various negligent acts, all of the acts relate to the design and manufacture of the vehicle, which Bill Kay Ford had no part in. (See Ex. B, ¶6). Bill Kay Ford did not contribute to nor cause any of the alleged conditions in the vehicle. (See Ex. B, ¶6). Bill Kay Ford merely sold the subject vehicle. (See Ex. B, ¶¶5, 7). Further, in his sworn affidavit, Mr. Koloseike, the president of Bill Kay Ford, states that at the time of sale, no one at Bill Kay Ford had any knowledge of whether the alleged defects existed in the subject vehicle or not; and neither he nor anyone else at Bill Kay Ford would have any reason to believe that the subject vehicle had the alleged conditions. (See Ex. B, ¶¶8-9).

There is no basis in the record to hold Bill Kay Ford liable on a negligence theory for the alleged sudden acceleration and failure of an airbag to deploy in this case.

III.  **Summary Judgment Must Be Entered In Favor Of Bill Kay Ford.**

Illinois courts hold that to establish a negligence claim for a defective product, a plaintiff must prove that either (1) the defendant deviated from the standard of care exercised by others in the industry followed at the time the product was designed or (2) that the defendant knew of should have known, in the exercise of ordinary care, that the product was unreasonably dangerous and that the defendant failed to warn of its dangerous propensity.  *Blue v. Envtl. Engr., Inc.,* 215 Ill. 2d 78, 96 838 N.E.2d 1128, 1141 (2005) (citing *Carrizales v. Rheem Mfg. Co.,* 226 Ill. App. 3d 20, 36, 589 N.E.2d 569, 580 (1st Dist. 1991) and *Baltus v. Weaver Div. of Kidde & Co.,* 199 Ill. App. 3d 821, 830, 557 N.E.2d 580, 586 (1st Dist. 1990)).

A.  **Plaintiff Cannot Establish That Bill Kay Ford Deviated From The Standard Of Care.**

Plaintiff cannot establish a negligence claim against Bill Kay Ford by proving that Bill Kay Ford deviated from the standard of care of other automobile motor vehicle retailers. Bill Kay Ford is a motor vehicle retail dealer. Bill Kay Ford neither designed nor manufactured the subject vehicle. (See Ex. B, ¶5). Bill Kay Ford is not the designer, manufacturer, or assembler of the components comprising the engine, drivetrain, brakes or supplemental restraint system in the subject 2004 Ford Focus and did not contribute to the design or manufacture of that vehicle. (See Ex. B, ¶6). Accordingly, it is not possible to find Bill Kay Ford deviated from the standard of care of either motor vehicle manufacturers or retailers.

B.  **Plaintiff Cannot Establish That Bill Kay Ford Knew Or Should Have Known, In The Exercise Of Ordinary Care, That The Subject Vehicle Had The Alleged Conditions.**

In addition to lack of proof that Bill Kay Ford designed, manufactured or assembled the subject vehicle, plaintiff also cannot prove that Bill Kay Ford knew or should have known of the subject vehicle's alleged dangerous propensities and failed to warn plaintiff. To successfully prove a negligence claim on such a theory, the plaintiff must plead facts establishing that the defendant knew or should have known of the risk and failed to warn. *Carrizales*, 226 Ill. App. 3d at 37-38, 589 N.E.2d at 581. Plaintiff cannot offer any evidence that Bill Kay Ford knew or should have known of the vehicle's alleged conditions (even assuming them to be true) and failed to warn plaintiff thereby.

As president of Bill Kay Ford, William Koloseike attests in his affidavit that he has personal knowledge of the standard of care among new motor vehicle retail dealers. Further, Bill Kay Ford did not deviate from the standard of care in its sale and service of the subject 2004 Ford Focus. (See Ex. B, ¶¶11-12). The standard of care as to the sale of a new motor vehicle involves performing a pre-sale multi-point inspection on the vehicle which Bill Kay Ford performed as to this vehicle. This inspection is not intended to and cannot in any way assess whether or not a vehicle is subject to sudden unintended acceleration or under what conditions the supplemental restraint system will or will not deploy. (See Ex. B, ¶7). The standard of ordinary care in this industry also does not require that a dealer request or review test or other data from the manufacturer regarding a vehicle's potential for unexpected acceleration (if any) or conditions under which the airbag will or will not deploy. (See Ex. B, ¶¶ 10-11). Further, the standard of care in this industry does not require that sales and service personnel have the engineering capability to determine whether a specific vehicle could unintentionally and suddenly accelerate or had a supplemental restraint system that might not deploy in a specific accident. (See Ex. B, ¶8). Finally, dealers in this industry have neither the facilities nor the equipment to evaluate whether or not such conditions exist in a vehicle.

- 5 -

Plaintiff can present no evidence showing that Bill Kay Ford deviated from the standard of care. Bill Kay Ford, on the other hand, has demonstrated the standard of care in the motor vehicle retail industry and that it did not deviate from that standard. Accordingly, Bill Kay Ford cannot be negligent, as alleged by plaintiff, nor liable to her.

## IV.   CONCLUSION

WHEREFORE, for the foregoing reasons, this defendant, BILL KAY FORD, INC., respectfully requests that this Court enter an Order entering judgment in its favor and against plaintiff on Count III of Plaintiff's Amended Complaint at Law and for any further relief this Court deems just.

Respectfully submitted,

BILL KAY FORD, INC.

By: _____

One of Its Attorneys

I.D. #32878
DONOHUE BROWN MATHEWSON & SMYTH LLC
John A. Krivicich
Michael J. Borree
140 South Dearborn Street, Suite 800
Chicago, IL 60603
Telephone:   (312) 422-0900
Facsimile:   (312) 422-0909

- 6 -

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - LAW DIVISION

EVELYN LaJEUNESSE,

                                    Plaintiff,

        v.                                              No.    07 L 8251

FORD MOTOR COMPANY,
a corporation; and
BILL KAY FORD, INC.,
a corporation,

                                    Defendants.

## AMENDED COMPLAINT AT LAW

## COUNT I

**Strict Liability/Ford/Personal Injury**

        Plaintiff, EVELYN LaJEUNESSE, by and through her attorneys, CORBOY &

DEMETRIO, P.C., complaining of defendant, FORD MOTOR COMPANY, a corporation,

(hereinafter referred to as "FORD"), states:

        1.      Prior to 2005, defendant, FORD, designed, manufactured and sold a 2004 Ford

Focus.

        2.      At the time defendant, FORD, designed, manufactured and sold the 2004 Ford

Focus, defendant, FORD, knew or should have known the vehicle was susceptible to sudden

acceleration.

        3.      On August 10, 2005, plaintiff, EVELYN LaJEUNESSE, was a passenger in the

front seat of a 2004 Ford Focus which, without driver intent, suddenly accelerated in a parking

lot at the Crestwood Mall in Crestwood, Cook County, Illinois.

        4.      On August 10, 2005, the 2004 Ford Focus struck a wall as a result of the



EXHIBIT

A

unexpected, sudden acceleration.

5.    On August 10, 2005, after striking the wall head-on, the airbag for the front seat passenger failed to deploy in the 2004 Ford Focus.

6.    On August 10, 2005, and when it left the control of defendant, FORD, the 2004 Ford Focus in which plaintiff, EVELYN LaJEUNESSE, was a passenger, was unreasonably dangerous in one or more of the following respects:

    a.    the throttle would stick causing sudden, unintended acceleration;

    b.    the actuator cables for the cruise control would become entrapped causing sudden, unintended acceleration;

    c.    the cruise control system appears to be "off" when it is, in fact, "on";

    d.    the electrical system failed to guard against or caused sudden unintended acceleration;

    e.    the car would unexpectedly, suddenly accelerate without the driver intending it;

    f.    the airbags failed to deploy in a frontal impact;

    g.    the seatbelts failed to properly restrain the front seat passengers in a frontal impact.

7.    As a proximate result of one or more of these unreasonably dangerous conditions, plaintiff, EVELYN LaJEUNESSE, suffered injuries of a personal, pecuniary and permanent nature.

WHEREFORE, plaintiff, EVELYN LaJEUNESSE, demands judgment against defendant, FORD MOTOR COMPANY, a corporation, in a sum in excess of the minimum amount required for jurisdiction in the Law Division of the Circuit Court of Cook County, Illinois.

## COUNT II

**Negligence/Ford/Personal Injury**

Plaintiff, EVELYN LaJEUNESSE, by and through her attorneys, CORBOY &

DEMETRIO, P.C., complaining of defendant, FORD MOTOR COMPANY, a corporation,

(hereinafter referred to as "FORD"), states:

1.    Prior to 2005, defendant, FORD, designed, manufactured and sold a 2004 Ford

Focus.

2.    At the time defendant, FORD, designed, manufactured and sold the 2004 Ford

Focus, defendant, FORD, knew or should have known the vehicle was susceptible to sudden

acceleration.

3.    On August 10, 2005, plaintiff, EVELYN LaJEUNESSE, was a passenger in the

front seat of a 2004 Ford Focus which, without driver intent, suddenly accelerated in a parking

lot at the Crestwood Mall in Crestwood, Cook County, Illinois.

4.    On August 10, 2005, the 2004 Ford Focus struck a wall as a result of the

unexpected, sudden acceleration.

5.    On August 10, 2005, after striking the wall head-on, the airbag for the front seat

passenger failed to deploy in the 2004 Ford Focus.

6.    On and before August 10, 2005, FORD was negligent in one or more of the

following respects:

   a.    designed, manufactured, distributed and sold a 2004 Ford Focus
          with a throttle that would stick causing sudden, unintended
          acceleration;

   b.    designed, manufactured, distributed and sold a 2004 Ford Focus

3

with actuator cables for the cruise control that would become
entrapped causing sudden, unintended acceleration;

c.      designed, manufactured, distributed and sold a 2004 Ford Focus
with a cruise control system that appeared to be "off" when it was,
in fact, "on";

d.      designed, manufactured, distributed and sold a 2004 Ford Focus
with a faulty electrical system to protect against sudden
acceleration;

e.      designed, manufactured, distributed and sold a 2004 Ford Focus
that would unexpectedly, suddenly accelerate without the driver
intending it;

f.      designed, manufactured, distributed and sold a 2004 Ford Focus
with airbags that failed to deploy in a frontal impact;

g.      designed, manufactured, distributed and sold a 2004 Ford Focus
with seatbelts that failed to properly restrain the front seat
passenger in a frontal impact.

7.      As a proximate result of one or more of these acts or omissions, plaintiff,

EVELYN LaJEUNESSE, suffered injuries of a personal, pecuniary and permanent nature.

WHEREFORE, plaintiff, EVELYN LaJEUNESSE, demands judgment against defendant,

FORD MOTOR COMPANY, a corporation, in a sum in excess of the minimum amount required

for jurisdiction in the Law Division of the Circuit Court of Cook County, Illinois.

## COUNT III

**Negligence/Bill Kay Ford/Personal Injury**

Plaintiff, EVELYN LaJEUNESSE, by and through her attorneys, CORBOY &

DEMETRIO, P.C., complaining of defendant, BILL KAY FORD, INC., a corporation,

(hereinafter referred to as "BILL KAY FORD") states:

1.      Prior to August 10, 2005, defendant, BILL KAY FORD, sold a 2004 Ford Focus

4

to Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE.

2.    At the time defendant, BILL KAY FORD, sold the 2004 Ford Focus to Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE, it knew or should have known the 2004 Ford Focus had a propensity for sudden, unexpected acceleration, and/or the airbags not deploying in a frontal collision.

3.    On August 10, 2005, plaintiff, EVELYN LaJEUNESSE, was a passenger in the 2004 Ford Focus sold by defendant, BILL KAY FORD, which, without driver intent, suddenly accelerated in a parking lot at the Crestwood Mall in Crestwood, Cook County, Illinois.

4.    On August 10, 2005, the 2004 Ford Focus struck a wall as a result of the unexpected, sudden acceleration and the airbags failed to deploy.

5.    On and before August 10, 2005, defendant, BILL KAY FORD, was negligent in one or more respects:

    a.    failed to inform Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE, that the 2004 Ford Focus had a propensity for sudden, unexpected acceleration before selling the car to them;

    b.    failed to inform Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE, that the 2004 Ford Focus had a propensity for sudden, unexpected acceleration after selling the car to them;

    c.    failed to discover the 2004 Ford Focus had a propensity to suddenly and unexpectedly accelerate;

    d.    failed to warn Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE, that the airbags were known not to deploy in certain frontal impacts.

6.    As a proximate result of one or more of the aforesaid negligent acts and/or omissions of defendant, BILL KAY FORD, Henry LaJeunesse and plaintiff, EVELYN

LaJEUNESSE, purchased and continued to use the 2004 Ford Focus until it suddenly, unexpectedly accelerated and struck a wall without the airbags deploying, causing injuries to plaintiff, EVELYN LaJEUNESSE, of a personal, pecuniary and permanent nature.

7.    Had Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE, been informed by defendant, BILL KAY FORD, of the propensity of the 2004 Ford Focus to suddenly, unexpectedly accelerate and/or that the airbags would not deploy in a frontal impact, they would not have purchased it.

WHEREFORE, plaintiff, EVELYN LaJEUNESSE, demands judgment against defendant, BILL KAY FORD, INC., a corporation, for a sum in excess of the minimum amount required for jurisdiction in the Law Division of the Circuit Court of Cook County, Illinois.

_____
Robert J. Bingle

Robert J. Bingle, Esq.
Shawn S. Kasserman, Esq.
Corboy & Demetrio, P.C.
Attorney for Plaintiff(s)
33 North Dearborn Street, 21st Floor
Chicago, Illinois 60602
(312) 346-3191
Firm I.D. No. 02329

070568.44

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT - LAW DIVISION

EVELYN LaJEUNESSE,

           Plaintiff,

    v.

FORD MOTOR COMPANY, a corporation,
and BILL KAY FORD, INC., a corporation,

           Defendant,

and

FORD MOTOR COMPANY,

           Third-Party Plaintiff,

    v.

HENRY LaJEUNESSE,

           Third-Party Defendant.

No.  07 L 8251
Judge James D. Egan
Motion Call: X

## AFFIDAVIT

I, William Koloseike, being first duly sworn upon oath, states and deposes that I have personal knowledge of the contents of this affidavit and could competently testify as follows:

1.    I am the President of Bill Kay Ford, Inc. ("Bill Kay Ford"), and have personal knowledge of the business operations and ordinary course of business of Bill Kay Ford. I also have personal knowledge of the standard of care exercised by motor vehicle retail dealers such as Bill Kay Ford in the sale of a new motor vehicle, such as the subject 2004 Ford Focus. My knowledge of the foregoing is based upon my years in the motor vehicle dealer business, including my years as owner and president of Bill Kay Ford.

EXHIBIT
B

2.     I have reviewed and have personal knowledge of Bill Kay Ford's sales and service records that pertain to the sale of the subject 2004 Ford Focus to Henry and Evelyn LaJeunesse.

3.     Those sales and service records, which are attached to my affidavit as Exhibit 1, were made and maintained in the regular course of business at Bill Kay Ford and it was the regular course of business of Bill Kay Ford to create and retain such records.

4.     I have reviewed Count III of the Amended Complaint at Law in *LaJeunesse v. Ford Motor Company, et al.*

5.     The vehicle at issue in plaintiff's complaint at law, a 2004 Ford Focus, was designed, manufactured, and assembled by Ford Motor Company and its component suppliers; Bill Kay Ford was not such a supplier.

6.     Bill Kay Ford is not the manufacturer of the subject 2004 Ford Focus and did not exercise any control over the design or manufacture of that vehicle. Based upon the service records for the subject vehicle, no one at Bill Kay Ford performed any service on the engine or brake components of the vehicle, nor its supplemental restraint system. Bill Kay Ford did not create or contribute to cause any of the alleged conditions that are claimed to have caused the injuries and damages alleged in this lawsuit.

7.     The subject 2004 Ford Focus was originally sold to Henry and Evelyn LaJeunesse on July 14, 2004. As a new vehicle sold to a retail customer, Bill Kay Ford would have performed a routine multi-point inspection prior to sale. Such an inspection would not test whether a vehicle was or was not subject to sudden unintended acceleration or had a supplemental restraint system that would or would not deploy under specific conditions. No retailer of new motor vehicles routinely conducts such an inspection or performs tests for such conditions.

8.      At the time of the sale of the subject vehicle to Henry and Evelyn LaJeunesse, and to the present, no one at Bill Kay Ford had any knowledge of the alleged conditions that are claimed to have caused the injuries and damages alleged in this lawsuit or whether those alleged conditions do or do not exist.  Specifically, there is no one employed at Bill Kay Ford with the engineering background and capability to determine whether a specific vehicle would unintentionally and suddenly accelerate or had a supplemental restraint system that might not deploy in a specific accident.  New motor vehicle retail dealers do not routinely employ such personnel.

9.      For the above reasons, at the time of the sale of the subject vehicle to Henry and Evelyn LaJeunesse, no one at Bill Kay Ford had any reason to believe that the subject vehicle was allegedly unsafe or dangerous, or that the alleged conditions existed in the subject vehicle.

10.     Bill Kay Ford Ford had no reason to request from Ford Motor Company any test results, data or other information about the subject vehicle's capacity, if any, to suddenly accelerate and/or the airbags to not deploy in a specific frontal collision, nor would anyone from Bill Kay Ford have had the knowledge or expertise to evaluate said test results, data or other information.  In this regard, Bill Kay Ford and its personnel reasonably rely upon the engineering expertise of Ford Motor Company similarly to other motor vehicle retailers.

11.     The standard of care among motor vehicle retail dealers such as Bill Kay Ford does not require the employment of personnel with an engineering background adequate to determine whether a particular vehicle has the conditions alleged by plaintiff and does not require such an assessment of a particular vehicle at the time of sale or service.

12.     Bill Kay Ford exercised ordinary care in its sale and service of the subject 2004 Ford Focus and in the exercise of ordinary care, did not know nor could it have known, that the subject

2004 Ford Focus had the conditions alleged (assuming plaintiff's allegations are true).  It therefore also had no way, in the exercise of ordinary care, to warn of those alleged conditions, assuming those conditions existed in the vehicle at the time of sale of the subject 2004 Ford Focus.  Bill Kay Ford did not deviate from that standard of care in connection with the sale and service of the subject 2004 Ford Focus.

FURTHER AFFIANT SAYETH NOT.

_____
William Koloseike

SUBSCRIBED AND SWORN
to before me this 19th day
of November , 2007

_____
NOTARY PUBLIC

OFFICIAL SEAL
BRENDA I BRYAN
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:06/25/11

-4-

# Bill Kay

DEAL NO 50582
CTL NO 50582

## BILL KAY FORD
14633 S. Cicero
Midlothian, IL 60445
1-708-388-3000


TO AFFIDAVIT

**NEW**

**PURCHASE CONTRACT/ BILL OF SALE**

PURCHASE CONTRACT FOR ☒ NEW ☐ DEMO
DATE  07/14/2004

| | |
|---|---|
| SALESPERSON | PARIS HAYNES |

| YEAR | MAKE/MODEL | BODY TYPE |
|---|---|---|
| 2004 | FORD FOCU | 5D |

| VIN NUMBER | COLOR TRIM |
|---|---|
| 1FAFP34334W191126 | BEIGE |

| STOCK NUMBER | MILEAGE |
|---|---|
| C40139 | 12 |

MILEAGE
If 50 miles or more are shown on the car:

Initials ___ (a) The vehicle was driven by an employee of the Dealership, OR

Initials ___ (b) The vehicle was previously delivered to a buyer but returned to the Dealership, OR

Initials ___ (c) The vehicle was used by another but was never titled to anyone

(Cross out provision not applicable)

| | | |
|---|---|---|
| CASH PRICE OF VEHICLE | $ | 17275.00 |
| | | N/A |
| | | N/A |
| | | N/A |
| | | N/A |
| DOCUMENTARY SERVICE FEE | | 53.52 |
| SPECIAL BENEFITS PROGRAM | | N/A |
| **TOTAL** | $ | 17328.52 |
| ILLINOIS SALES TAX | | 1114.69 |
| OTHER TAXES (if any)  CCFLATTX | | 15.00 |
| COOK COUNTY TAX  CC.75 | | 119.43 |
| **CASH PRICE OF VEHICLE** | | 18577.64 |
| LICENSE, TRANSFER TITLE DRIVE AWAY FEE | | 80.00 |
| SERVICE CONTRACT SOLD BY BILL KAY | | 500.00 |
| **TOTAL PURCHASE PRICE** | | 19157.64 |
| CASH DOWN PAYMENT | | 3000.00 |
| TRADE IN ALLOWANCE | | 1404.38 |
| DUE BASED UPON NOTE IN ___ DAYS | | N/A |
| REBATES APPLIED | | 3000.00 |
| TOTAL DOWN PAYMENT | | 7404.38 |
| **UNPAID CASH BALANCE DUE** | $ | 11753.26 |

NOTICE: TO THE NEGOTIATED CASH SALE PRICE OF EACH VEHICLE, NO MORE THAN THE DOC. FEE MAY BE ADDED FOR DEALER COSTS AND OVERHEAD. THE ONLY OTHER ADDITIONAL CHARGES PER...

CO HENRY LAJEUNESSE  05/21/20

| CUSTOMER NAME | DATE OF BIRTH |
|---|---|
| EVELYN F LAJEUNESSE | 12/26/24 |

| STREET ADDRESS |
|---|
| 6823 PARK LANE |

| CITY, STATE, ZIP |
|---|
| PALOS HEIGHTS IL 60463 |

BUSINESS ADDRESS

CITY, STATE, ZIP

| RESIDENCE PHONE | BUSINESS PHONE |
|---|---|
| (708)448-7759 | |

| DRIVERS LICENSE NUMBER |
|---|
| L252-2062-4967  L252-3902-0145 |

| SOCIAL SECURITY NUMBER |
|---|
| 344129672 323123624 |

### TRADE-IN VEHICLE

| YEAR | MAKE/MODEL | COLOR |
|---|---|---|
| 1991 | CHEV LUMI | N/A |

| VIN # | MILEAGE |
|---|---|
| 2G1WN54T6M9128177 | 92216 |

| VIN # | MILEAGE |
|---|---|
| N/A | |

| BALANCE OWED TO # N/A | ACCT. # |
|---|---|

ADDRESS

| | | |
|---|---|---|
| USED CAR ALLOWANCE (USED CAR ALLOWANCE DOES NOT ALWAYS REFLECT ACTUAL CASH VALUE) | $ | 1404.38 |
| ESTIMATED BALANCE OWED ON CAR (SUBJECT TO VERIFICATION) | $ | N/A |
| NET ALLOWANCE ON USED CAR (TRANSFER TO LEFT COLUMN) | $ | 1404.38 |

I UNDERSTAND AND AGREE TO TRADE-IN THE VEHICLE DESCRIBED ABOVE TO DEALER UNDER THE TERMS SET FORTH ABOVE AND ON THE REVERSE SIDE. IF THE BALANCE DUE ON THE TRADE-IN VEHICLE THE CUSTOMER IS SELLING IS AN AMOUNT GREATER THAN SHOWN ABOVE, THE CUSTOMER AGREES TO PAY THE ADDITIONAL AMOUNT IN CASH UPON REQUEST. I certify that the above information about my trade-in is correct.

SIGNATURE OF CUSTOMER  _Henry J. Lajeunesse_

NOTICE: DEALER SPECIFICALLY MAKES NO REPRESENTATION AS TO ANY AIR BAG ON THIS VEHICLE. PLEASE REFER TO THE MANUFACTURER'S WARRANTIES AND SPECIFICATIONS.

Initials ___ THE VEHICLE REFERENCED IN THIS CONTRACT IS SOLD AS EQUIPPED AT TIME OF DELIVERY.

Initials ___ THIS CONTRACT DOES NOT PROVIDE ANY RIGHT TO RESCISSION OR A TRIAL PERIOD.

**WARRANTY DISCLAIMERS AND OTHER INFORMATION**

# WE OWE
## (CONTRACT RIDER)

448-7759.

Name of Customer _____EVELYN F LAJEUNESSE HENRY LAJEUNESS_____Date of Purchase Contract _____07/14/2004_____

Address of Customer_____6823 PARK LANE PALOS HEIGHTS IL 60463_____

Charge to Contract for Purchase of Stock No. _____C40139_____Make _____FORD_____

Model ____FOCUS_____Year _____2004_____Serial No._____1FAFP34334W191126_____

Dealer will provide the customer with the following free of extra charge:

TOUCH UP PAINT $4.00

QCP.

By signing this rider, the Customer acknowledges that only the above items are due.  The Customer must return the vehicle to Dealer for completion of these items within 30 days after delivery.

This rider, when signed by both parties constitutes part of the Purchase Contract between the parties described above.  Except as specifically set forth in the rider, the Purchase Contract remains in full force and effect.

**BILL KAY FORD - MIDLOTHIAN, INC.**

By_____

Customer    EVELYN F LAJEUNESSE

HENRY LAJEUNESSE

Customer

# ODOMETER DISCLOSURE STATEMENT

FEDERAL LAW (AND STATE LAW, IF APPLICABLE) REQUIRES THAT YOU STATE THE MILEAGE UPON
TRANSFER OF OWNERSHIP. FAILURE TO COMPLETE OR PROVIDING A FALSE STATEMENT MAY
RESULT IN A FINE OR IMPRISONMENT.

I, __BILL KAY FORD__ STATE THAT
(TRANSFEROR'S NAME - SELLER - PRINT)

THE ODOMETER NOW READS __12__ MILES AND TO THE
ODOMETER READING (NO TENTHS)
BEST OF MY KNOWLEDGE THAT IT REFLECTS THE ACTUAL MILEAGE OF THE VEHICLE DESCRIBED
BELOW, UNLESS ONE OF THE FOLLOWING STATEMENTS IS CHECKED.

☐ (1) I HEREBY CERTIFY THAT TO THE BEST OF MY KNOWLEDGE THE ODOMETER READING
REFLECTS THE AMOUNT OF MILEAGE IN EXCESS OF ITS MECHANICAL LIMITS.

☐ (2) I HEREBY CERTIFY THAT THE ODOMETER READING IS NOT THE ACTUAL MILEAGE.
**WARNING - ODOMETER DISCREPANCY**

| MAKE | MODEL | BODY TYPE |
|------|-------|-----------|
| FORD | FOCUS | SD |

| VEHICLE IDENTIFICATION NO. | YEAR | DEALER STOCK NO. |
|----------------------------|------|------------------|
| 1FAFP34334W191126 | 2004 | C40139 |

TRANSFEROR'S SIGNATURE (SELLER)    (PRINTED NAME)
X _(signature)_    MELISSA A BRANSON

TRANSFEROR'S STREET ADDRESS (SELLER)
(CITY) 14633 S. CICERO AVENUE (STATE) (ZIP CODE)
MIDLOTHIAN, IL    60445
DATE OF SALE 07/14/04

TRANSFEREE'S SIGNATURE (BUYER)    (PRINTED NAME)
X _(signature)_    EVELYN F LAJEUNESSE

TRANSFEREE'S SIGNATURE (CO-BUYER)    (PRINTED NAME)
X _(signature)_    HENRY LAJEUNESSE

TRANSFEREE'S NAME (BUYER)
EVELYN F LAJEUNESSE HENRY LAJEUNESSE

TRANSFEREE'S STREET ADDRESS (BUYER)
(CITY) 6623 PARK LANE (STATE) (ZIP CODE)
PALOS HEIGHTS IL 60463

580.6 REV. 4/02

EXTRA COPY (STATE COPY IF NECESSARY)

TCI 514

**CHECK ON**

| PLATES (7) | ONLY | OR PLATES ONLY |
| (3) | | |

☐ PLATES ONLY  ☒ TITLE & TRANSFER OF PLATES (8)  ☐ CORRECTED IDENTIFICATION CARD ONLY  ☐ DUPLICATE IDENTIFICATION CARD ONLY

**OWNER INFORMATION**

| 5. OWNER'S IL DRIVER'S LICENSE NO. | 6. DATE OF BIRTH | 7. SEX | 8. OWNER(S) NAME | FIRST | MIDDLE | LAST |
|---|---|---|---|---|---|---|
| L252-2062-4967 | 12/28/24 | ☐ M ☒ F | (1) EVELYN F LAJEUNESSE | | | |

| CO-OWNER'S IL DRIVER'S LICENSE NO. | DATE OF BIRTH | SEX | |
|---|---|---|---|
| L252-3902-0145 | 05/21/20 | ☒ M ☐ F | (2) HENRY LAJEUNESSE |

| 9. COUNTY | 10. RESIDENCE/BUSINESS ADDRESS |
|---|---|
| COOK | 6823 PARK LANE |

| COUNTY CODE (see next page for list of codes) | CITY | ZIP CODE |
|---|---|---|
| 016 | PALOS HEIGHTS    IL | 60463 |

**VEHICLE INFORMATION**

| 11. CURRENT ODOMETER READING (No tenths) | GVWR OVER 16,000 LBS. | 12. VEHICLE IDENTIFICATION NUMBER | UNIT NUMBER FOR OWNER'S USE |
|---|---|---|---|
| 12 | ☐ YES | 1FAFP34334W191126 | |

ODOMETER READING STATED IS: (Check one box)
☒ ACTUAL MILEAGE  ☐ NOT ACTUAL MILEAGE  ☐ IN EXCESS OF MECHANICAL LIMITS

| 13. YEAR | 14. MAKE OF VEHICLE | 15. MODEL | 16. BODY STYLE |
|---|---|---|---|
| 2004 | FORD | FOCUS | SD |

| 17. PURCHASE DATE | | | 18. REBUILT VEHICLE | 19. MOTORCYCLE NO. C.C. | 20. VEHICLE COLOR | | 21. RENTAL VEHICLE | 22. FILE NUMBER (if applicable) |
|---|---|---|---|---|---|---|---|---|
| 07 / 14 / 2004 | NEW ☒  USED ☐ | | ☐ FLOOD  ☐ REBUILT | | UPPER  LOWER  BEIGE | | ☐ YES | LEASED VEHICLE ☐ YES |
| MONTH  DAY  YEAR | | | | | | | | |

| 23. SURRENDER TITLE NUMBER AND STATE OF ISSUANCE | 24. For RV, RT, Truck Trailer & Bus Only. | NO. AXLES | GROSS WEIGHT | TYPE OF FUEL GAS DIESEL OTHER | VEHICLE OPERATED INTRA STATE | INTER STATE | FOR HIRE YES NO |
|---|---|---|---|---|---|---|---|
| MSO          STATE | | | | | | | |

**MAIL TO**

| 25. TITLE MAILING INSTRUCTIONS (if different from above and no lienholder) | 26. PLATES/STICKER MAILING INSTRUCTIONS (if different from above) |
|---|---|
| NAME | NAME |
| STREET | STREET |
| CITY          STATE          ZIP | CITY          STATE          ZIP |

*Please Staple Here*

**LIENHOLDER**

| 27. FIRST LIENHOLDER NAME AND ADDRESS | 28. SECOND LIENHOLDER NAME AND ADDRESS |
|---|---|
| NAME: FORD MOTOR CREDIT | NAME |
| STREET  PO BOX 105704 | STREET |
| CITY  ATLANTA    GA    30348 | CITY          STATE          ZIP |

**TRANSFER**

| PREVIOUS VEHICLE INFORMATION | 29. VEHICLE IDENTIFICATION NUMBER | 30. YEAR | 31. MAKE OF VEHICLE |
|---|---|---|---|
| | 2G1WN54T6M9128177 | 1991 | CHEVROLET |

| 32. GROSS WEIGHT/NO. C.C. | 33. DISPOSITION OF PREVIOUS VEHICLE | DATE OF DISPOSITION | OFFICE USE ONLY |
|---|---|---|---|
| | ☐ SOLD  ☐ SALVAGED  ☐ STOLEN  ☐ JUNKED  ☐ STORED | 07/14/04 / | |

**OTHER**

| 34. FROM WHOM DID YOU BUY? | 35. IF PURCHASED FROM DEALER, DEALER MUST SIGN AND GIVE DEALER NUMBER | DEALER NUMBER 382 | OFFICE CLASS CODE |
|---|---|---|---|
| NAME  BILL KAY FORD | | | |
| ADDRESS  14633 S. CICERO AVENUE  MIDLOTHIAN, IL    60445 | 36. ARE YOUR PLATES NOW SUSPENDED OR REVOKED?  ☐ YES  ☐ NO | 37. USUAL FEES: TITLE: $65  LICENSE PLATES: $78 (PASSENGER/PICKUP TRUCK)  TRANSFER OF LICENSE PLATES $15  OTHER FEES: PLEASE CALL TOLL FREE 1-800-252-8980 | |

I/we hereby affirm the information provided is true and correct and, when applicable, will abide by the Mandatory Insurance Law requiring liability insurance throughout the registration period. If applying for title for a motor vehicle nine (9) years old or newer, I/we also acknowledge awareness of the odometer certification made by the seller.

| 38. SIGN HERE | 39. (OPTIONAL) DAYTIME TELEPHONE NUMBER |
|---|---|
| X (1) *Evelyn F. Lajeunesse*  X (2) *Henry J. Lajeunesse* | (708)448-7759 |

YOUR SIGNATURE ON THE APPLICATION AUTHORIZES THE SECRETARY OF STATE TO LOWER THE AMOUNT OF YOUR CHECK IF FEE SUBMITTED IS GREATER THAN THE REQUIRED FEE FOR MAIL-IN TRANSACTIONS.

| 40. T.R.F. NUMBER |
|---|

| AUDITORS USE ONLY | TAX TIN. NUMBER |
|---|---|
| $  1ST  2ND  3RD  4TH | 376998290 |

REMITTER AGENCY/DRIVERS FACILITY STAMP NAME HERE ONLY

# ST-556 Sales Tax Transaction Return
(R-6/03)

(For Vehicles, Watercraft, Aircraft, Trailers, and Mobile Homes)

Do not write above this line.

| NS | CA | ED | RC | TL | |
|----|----|----|----|----|--|

Tax return no.: 37699829-0
IBT no.: 5510-4444
Taxable location no.: 016-0042-7 001
Taxable location name: MIDLOTHIAN
Dealer's license no.:
Rev: 03
Form: 016

BILL KAY FORD INC
14633 CICERO AVE
MIDLOTHIAN IL  60445-2556

(630) 968-2900 EXT.# 3338

## 1 Write the buyer's name and address

Name: EVELYN F LAJEUNESSE          HENRY LAJEUNESSE

Street: 6823 PARK LANE     City: * PALOS HEIGHTS     State: IL     ZIP: 60463

## 2 Describe the item sold

☒ A Vehicle      ☐ B Watercraft      ☐ C Aircraft
☐ D Trailer      ☐ E Mobile Home

☒ New      ☐ Used

Identification no. 1FAFP34334W191126

Year 2004     Make FORD

Body style and model  SD     FOCUS

## 3 Write the date of delivery

JUL 14 2004
Month day year

(This return is due no later than 20 days after the date of delivery.)

## 4 Describe the trade-in, if any

Item traded in  AUTO

Identification no. 2G1WN54T6M9128177

Year 91     Make CHEVROLET

Body style and model SD     LUMINA

## 5 Is the sale exempt from tax?

If so, check the correct box below, and complete Section 6, Lines 1 and 2.

☐ A Out-of-state buyer
drive-away permit no./lic. plate no._____ state_____

☐ B Sold for resale     buyer's IBT no._____

☐ C Exempt organization (government, school, religious, or charitable) tax-exempt no. E_____

☐ D Sold to an interstate carrier for hire for use as rolling stock
Certificate of authority no._____

☐ E Sold for rental use
buyer's IBT no._____

☐ F CDF sales tax exemption

☐ G Other (describe)_____

Under penalties of perjury, we state that we have examined this return, including any schedules and statements, and to the best of our knowledge, it is true, correct, and complete. If the seller has taken a qualified trade-in, we also state that the buyer has properly assigned and surrendered the title of the trade-in to the seller.

Signature of buyer(s) _____     Date 07/14/2004

Signature of seller _____     Date 07/14/2004

This form is authorized as outlined by the Illinois tax laws and the Illinois Vehicle Code. Disclosure of this information is REQUIRED. Failure to provide information could result in penalties. This form has been approved by the Forms Management Center.     IL-492-1556

**ATTACH PAYMENT HERE**

## 6 Write the price, and figure the tax

You must complete Lines 1 and 2 even if no tax is due.     (Round to nearest dollar)

1 Total price, including accessories, federal excise tax, freight, dealer preparation, labor, and documentary fees. ............... 17328.52

2 Total trade-in credit or value. .............. 1404.00

3 Amount subject to tax [Line 1 - Line 2] ...... 15924.14

4 Tax [Line 3 x .0700*] (If you made this sale from a temporary sales location, see the instructions.) 1115.00

*Ln 3 x .0800 if Chicago Buyer

5 Use tax for certain districts - (see instructions)
Do not report home rule use tax below.

a. County _____
b. City _____ N/A
c. Township _____

6 Total tax [Line 4 + Line 5]. ............... 1115.00

7 Retailer's allowance if filed on time
[Line 6 x .0175 ]. .................... 20.00

8 Net tax due [Line 6 - Line 7] ............. 1095.00

9 Prior overpayment (see instructions) ........ N/A

10 Credit for previously paid tax (see instructions) N/A

On the line below, write the tax return number of the Form ST-556 on which you previously paid tax to an Illinois dealer.

Tax return no. N/A

11 Excess tax collected. .................... N/A

12 Total tax due
[Line 8 - Line 9 - Line 10 + Line 11] ....... 1095.00

13 Credit memorandum (see instructions) ...... N/A

14 Amount due [Line 12 - Line 13]. ........... 1095.00

Dealer's check no. _____

Do not write below this line.

Date received by Illinois state government  Copy 1 - Revenue's

C40139

## CERTIFICATE OF ORIGIN FOR A VEHICLE



**DATE**
FEBRUARY 17, 2004

**INVOICE NO.**
W191126    0

**VEHICLE IDENTIFICATION NO.**
1FAFP34334W191126

**YEAR**
2004

**MAKE**
FORD

**BODY TYPE**
FOCUS 4-DOOR

**SHIPPING WEIGHT**
2593 LBS

**H.P.S.A.E.**
17.11

**G.V.W.R.**
NVR

**NO. CYLS.**
4

**SERIES OR MODEL**
P34

I, the undersigned authorized representative of the company, firm or corporation named below, hereby certify that the new vehicle described above is the property of the said company, firm or corporation and is transferred on the above date and under the Invoice Number indicated to the following distributor or dealer.

**NAME OF DISTRIBUTOR, DEALER, ETC.**

Gullo Ford-Mercury of Conroe
925 I-45 South
Conroe   TX  77301

52B166                                    B06852249

It is further certified that this was the first transfer of such new motor vehicle in ordinary trade and commerce.

MEMO DATA (NOT A LIEN)

FINANCE SOURCE  910003                FORD MOTOR COMPANY

                                      BY
                                      (SIGNATURE OF AUTHORIZED REPRESENTATIVE)      (AGENT)

BANK ONE
P O Box 71, Dept. AZ
Phoenix              AZ
            85001                     DEARBORN, MICHIGAN
                                      (CITY - STATE)

Each undersigned seller certifies to the best of his knowledge, information and belief under penalty of law that the vehicle is new and has not been registered in this or any state at the time of delivery and the vehicle is not subject to any security interests other than those disclosed herein and warrant title to the vehicle. FOR VALUE RECEIVED I TRANSFER THE VEHICLE DESCRIBED ON THE FACE OF THIS CERTIFICATE TO:

NAME OF PURCHASER(S)  **Bill Kay Ford**
ADDRESS  **14633 S Cicero Midlothian, IL 60445**

I certify to the best of my knowledge that the odometer reading is _____ No Tenths

DEALER  NAME OF DEALERSHIP  DEALER'S LICENSE NUMBER  P351245  Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn to me
State of  **IL**  before this _____ day of _____ 20___
County of  **mont**  Notary Public

USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION

---

NAME OF PURCHASER(S)  **EVELYNE &HENRY LAJEUNESSE**
ADDRESS  **6823 PARK LANE PALOS HEIGHTS IL 60463**

I certify to the best of my knowledge that the odometer reading is  **12**  No Tenths

DEALER  **BILL KAY FORD  2128**  Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn to me
State of  before this _____ day of _____ 20___
County of  Notary Public

USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION

---

NAME OF PURCHASER(S)
ADDRESS

I certify to the best of my knowledge that the odometer reading is _____ No Tenths

DEALER  NAME OF DEALERSHIP  DEALER'S LICENSE NUMBER  Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn to me
State of  before this _____ day of _____ 20___
County of  Notary Public

USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION

---

NAME OF PURCHASER(S)
ADDRESS

I certify to the best of my knowledge that the odometer reading is _____ No Tenths

DEALER  NAME OF DEALERSHIP  DEALER'S LICENSE NUMBER  Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn to me
State of  before this _____ day of _____ 20___
County of  Notary Public

USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION

---

Federal law requires you to state the odometer mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.
I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked. Odometer Reading _____ No Tenths. □ The mileage stated is in excess of its mechanical limits. □ The odometer reading is not the actual mileage.
WARNING ODOMETER DISCREPANCY.

Signature(s) of Seller(s) _____  Date of Statement _____  Date of Sale _____
Printed Name(s) of Seller(s) _____  Dealer's No. _____  Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn to me
Signature(s) of Purchaser(s) _____  before this _____ day of _____ 20___
Printed Name(s) of Purchaser(s) _____  Notary Public
Company Name (if Applicable) _____  State of _____
Address of Purchaser(s) _____  County of _____

USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION

1st lien in favor of  **FORD MOTOR CREDIT**
whose address is  **P O BOX 105704 ATLANTA GA 30348**
2nd lien in favor of
whose address is



| INVOICE STOCK NO | INVOICE DATE | ORDER NO. | COMMENT/V.I.N | AMOUNT | ACCOUNT NO. | NET AMOUNT |
|---|---|---|---|---|---|---|
| | 071904 | TAXES LAJEUNESSE | | | | 1,095.00 |
| | | | | 1,555 | 10010 | 1,095.00 |
| | | | | | 21500 | 1,114.69 |
| | | | | | 91000 | -19.69 |
| | | | | | | |
| | | | | TOTAL | 10010 | 1,095.00 |

DETACH AT PERFORATION BEFORE DEPOSITING CHECK            REMITTANCE ADVICE

**Bill Kay** FORD
14633 S. Cicero Avenue
Midlothian, Illinois 60445
(708) 388-3000

**BANK≡ONE**
Bank One, NA
Chicago, Il

1555    2-17

| DATE | | PAY THIS AMOUNT | | AMOUNT OF CHECK |
|---|---|---|---|---|
| 19JUL04 | | *******1,095 DOLLARS 00 CENTS | | *****1,095.00 |

BILL KAY FORD INC
VOID AFTER 90 DAYS

113

TO THE ORDER OF
DEPARTMENT OF REVENUE
STATE OF ILLINOIS

*************************
*** NOT NEGOTIABLE ***
*************************

**FILE COPY**

| NO. 1554 ISSUED BY: RAMIREZ, BERTHA MIDLOTHIAN, IL 60445 | | | | | | |
|---|---|---|---|---|---|---|
| INVOICE CK NO. | INVOICE DATE | PURCHASE ORDER NO. | COMMENT V.I.N | AMOUNT | ACCOUNT NO | NET AMOUNT |
| | 071904 | PLATES LAJEUNESSE | | | | 80.0 |
| | | | | 1554 | 10010 | 80.0 |
| | | | | 50582 | 23110 | 80.0 |
| | | | | TOTAL | 10010 | 80.0 |

DETACH AT PERFORATION BEFORE DEPOSITING CHECK                    REMITTANCE ADVICE



BILL KAY FORD
15333 S. Cicero Avenue
Midlothian, Illinois 60445
(708) 388-3000

BANK ONE
Bank One, N.A.
Chicago, IL

1554    21710

| DATE | | PAY THIS AMOUNT | | | AMOUNT OF CHECK |
|---|---|---|---|---|---|
| 19001004 | | *********80 | DOLLARS | 00 CENTS | *********80.00 |

112

BILL KAY FORD INC
VOID AFTER 90 DAYS

TO THE ORDER OF    SECRETARY OF STATE
STATE OF ILLINOIS

*** NOT NEGOTIABLE ***

FILE COPY

Print Page Click Here

OASIS RESULT:
1FAFP34334W191126

© Copyright 2002-2007 Ford Motor Company. All rights reserved.

09/04/2007
14:48:04
FCXWS446

## VEHICLE INFORMATION

| | | |
|---|---|---|
| VEHICLE DESCRIPTION | BODY STYLE | ENGINE |
| 2004 FOCUS | 4 DR SEDAN SE | 2.0L EFI DOHC ZETEC |
| TRANSMISSION | AXLE CODE | ENGINE CALIBRATION |
| 4F27E AUTOMATIC | XX | 3AK1AZ0A |

## NO WARNING MESSAGES FOUND FOR THIS VIN

## ARN MESSAGES

ATTENTION TECHNICIANS AND SERVICE MANAGERS:
BEFORE REPLACING FS-10 A/C COMPRESSOR (19703), PLEASE SEE TSB 06-04-09

## GENERAL WARRANTY INFORMATION

| | | |
|---|---|---|
| WARRANTY START DATE | BUILD DATE | SALE MILEAGE |
| 07/14/2004 | 02/26/2004 | 00012 |

## OUTSTANDING FIELD SERVICE ACTIONS

05S27
REAR DOOR LATCH CORROSION

## EXTENDED COVERAGES

0999 - USA 2004 NEW 60/100,000 POWERTRAINCARE W/ROADSIDE
STANDARD DEDUCTIBLE: 100 USD
OWNER NAME: EVELYNE LAJEUNESSE
OPTIONS:
EXPIRATION DATE: 07/14/2009
DISTANCE: 100,000
RENTAL: 28 UP TO 10 DAYS
TOWING: 0 USD
CONTRACT SOLD BY: USA 09966
ESP CONTRACT START DATE: 07/14/2004

0759 - USA 2004 NEW 72/60,000 PREMIUMCARE W/ROADSIDE ASSIST
STANDARD DEDUCTIBLE: 100 USD
OWNER NAME: EVELYNE LAJEUNESSE
OPTIONS: $100,DED
EXPIRATION DATE: 07/14/2010
DISTANCE: 60,000
RENTAL: 28 UP TO 10 DAYS
TOWING: 0 USD
CONTRACT SOLD BY: USA 09966
ESP CONTRACT START DATE: 07/14/2004

## WARRANTY REPAIR HISTORY

NO RECENT REPAIR HISTORY ON VEHICLE

**Click Here for Full Warranty History**

On-line 187s
END OF OASIS REPORT FOR 1FAFP34334W191126



**509131**

CUSTOMER #:50582

WORKORDER

EVELYN F LAJEUNESSE
6823 PARK LANE
PALOS HEIGHTS, IL 60463
HOME:708-448-7759 BUS:

PAGE 1

14633 S. Cicero Avenue
Midlothian, Illinois 60445
(708) 388-3000

SERVICE ADVISOR: 7275 REEVES,BRIAN

| COLOR | YEAR | MAKE/MODEL | VIN | LICENSE | MILEAGE IN/OUT | TAG |
|-------|------|------------|-----|---------|----------------|-----|
| BEIGE | 04 | FORD FOCUS | 1FAFP34334W191126 | | 635/635 | T635 |

| DEL DATE | PROD. DATE | WARR. EXP. | PROMISED | PO NO. | RATE | PAYMENT | INV. DATE |
|----------|------------|------------|----------|--------|------|---------|-----------|
| | | | ** WAITER ** | | | CASH | |

| R.O. OPENED | READY | OPTIONS: STK:C40139 DLR:41052 |
|-------------|-------|-------------------------------|
| 18FEB2005 12:57 | | ENG:2.0_Liter_DOHC_ZETEC |

LINE OP CODE   TECH.   TYPE   DESCRIPTIONS/INSTRUCTIONS
# A   MA1           IN     OIL AND FILTER CHANGE,CHECK ALL FLUID LEVELS,ADJUST
                           TIRE PRESSURES,LUBE GREASE FITTINGS AND STEERING STOPS
                           IF EQUIPPED,LUBE CHASSIS,AND PERFORM MULTI-POINT
                           INSPECTION

*MPI, LOF, Tire & Fluids Chck Done*



ENTERED FEB 18 2005

Not Responsible for Loss or Damage to Vehicle or Articles left in vehicle in case of fire, theft or any other cause beyond our control. I hereby authorize the above repair work to be done along with the necessary material, and hereby grant you and/or your employees permission to operate the vehicle described on streets, highways or elsewhere for the purpose of testing and/or inspection. An express mechanic's lien is hereby acknowledged on the above vehicle to secure the amount of repair thereto.

X _____
            CUSTOMER'S SIGNATURE

_____
DEALER, OR GENERAL MANAGER OR AUTHORIZED PERSON   (DATE)

PRELIMINARY ESTIMATE $ _____

| | | | |
|---|---|---|---|
| AUTHORIZED BY   X | | | |
| REVISED ESTIMATE (1) | DATE | TIME | BY |
| REVISED ESTIMATE (2) | | | |
| REVISED ESTIMATE (3) | | | |

I HEREBY ACKNOWLEDGE THAT I WAS NOTIFIED & GAVE ORAL APPROVA
OF THE ABOVE REVISED ESTIMATES:

TECHNICIAN COPY

CUSTOMER #:50582

EVELYN F LAJEUNESSE
6823 PARK LANE
PALOS HEIGHTS, IL 60463
HOME:708-448-7759 BUS:

**505966**

WORKORDER

PAGE 1

**Bill Kay** FORD
Blue Oval Certified

14633 S. Cicero Avenue
Midlothian, Illinois 60445
(708) 388-3000

Blue Oval Certified

SERVICE ADVISOR: 7304 DOMINO,JIM

| COLOR | YEAR | MAKE/MODEL | VIN | LICENSE | MILEAGE IN/OUT | TAG |
|-------|------|------------|-----|---------|----------------|-----|
| BEIGE | 04 | FORD FOCUS | 1FAFP34334W191126 | | 25/ | |

| DEL DATE | PROD. DATE | WARR. EXP. | PROMISED | PO NO. | RATE | PAYMENT | INV. DATE |
|----------|-----------|-----------|----------|--------|------|---------|-----------|
| | | | / | | | CASH | |

| R.O. OPENED | READY | OPTIONS: STK:C40139 DLR:41052 |
|-------------|-------|-------------------------------|
| 17NOV2004 14:59 | | ENG:2.0_Liter_DOHC_ZETEC |

LINE OP CODE   TECH.  TYPE  DESCRIPTIONS/INSTRUCTIONS
# A  NAC              IN    SUPPLY TOUCH-UP PAINT



Not Responsible for Loss or Damage to Vehicle or Articles left in vehicle in case of fire, theft or any other cause beyond our control. I hereby authorize the above repair work to be done along with the necessary material, and hereby grant you and/or your employees permission to operate the vehicle described on streets, highways or elsewhere for the purpose of testing and/or inspection. An express mechanic's lien is hereby acknowledged on the above vehicle to secure the amount of repair thereto.

X _____
                    CUSTOMER'S SIGNATURE

_____
DEALER, OR GENERAL MANAGER OR AUTHORIZED PERSON   (DATE)

PRELIMINARY ESTIMATE  $ _____

AUTHORIZED BY  X _____

| | DATE | TIME | BY |
|-------------------|------|------|----|
| REVISED ESTIMATE (1) | | | |
| REVISED ESTIMATE (2) | | | |
| REVISED ESTIMATE (3) | | | |

I HEREBY ACKNOWLEDGE THAT I WAS NOTIFIED & GAVE ORAL APPROVA OF THE ABOVE REVISED ESTIMATES:

CUSTOMER #:

**5 0 1 5 2 4**

WORKORDER

PAGE 1


**Bill Kay** FORD

14633 S. Cicero Avenue
Midlothian, Illinois 60445
(708) 388-3000

HOME:                    BUS:

SERVICE ADVISOR: 7275 REEVES, BRIAN

| COLOR | YEAR | MAKE/MODEL | VIN | LICENSE | MILEAGE IN/ OUT | TAG |
|-------|------|-----------|-----|---------|-----------------|-----|
| BEIGE | 04 | FORD FOCUS | 1FAFP34334W191126 | | 0/ 13 | TC401 |

| DEL DATE | PROD. DATE | WARR. EXP. | PROMISED | P.O. NO. | RATE | PAYMENT | INV. DATE |
|----------|-----------|-----------|----------|----------|------|---------|-----------|
| | | | | | | CASH | |

| R.O. OPENED | READY | OPTIONS: STK:C40139 DLR:41052 |
|-------------|-------|-------------------------------|
| 12JUL2004 12:54 | | ENG:2.0_Liter_DOHC_ZETEC |

*#8  8582*

LINE OP CODE   TECH TYPE   DESCRIPTIONS/INSTRUCTIONS
# A  PATS        IN    CUT AND PROGRAM (2ND) KEY

*Cut + Program Ignition Keys .5*



JUL 1 2 2004

---

Not Responsible for Loss or Damage to Vehicle or Articles left in vehicle in case of fire, theft or any other cause beyond our control. I hereby authorize the above repair work to be done along with the necessary material, and hereby grant you and/or your employees permission to operate the vehicle described on streets, highways or elsewhere for the purpose of testing and/or inspection. An express mechanic's lien is hereby acknowledged on the above vehicle to secure the amount of repair thereto.

X _____
             CUSTOMER'S SIGNATURE

PRELIMINARY ESTIMATE $ _____

AUTHORIZED BY  X

| | DATE | TIME | BY |
|--|------|------|----|
| REVISED ESTIMATE (1) | | | |
| REVISED ESTIMATE (2) | | | |
| REVISED ESTIMATE (3) | | | |

I HEREBY ACKNOWLEDGE THAT I WAS NOTIFIED & GAVE ORAL APPROVAL OF THE ABOVE REVISED ESTIMATES:

DEALER, OR GENERAL MANAGER OR AUTHORIZED PERSON  (DATE)

TECHNICIAN COPY

# WE OWE
## (CONTRACT RIDER)

Name of Customer __EVELYN F LAJEUNESSE HENRY LAJEUNESS__ Date of Purchase Contract __07/12/2004__

Address of Customer __6823 PARK LANE PALOS HEIGHTS IL 60463__

Charge to Contract for Purchase of Stock No. __C40139__ Make __FORD__

__FOCUS__ __2004__ __1FAFP34334W191126__

Model _____ Year _____ Serial No. _____

Dealer will provide the customer with the following free of extra charge:

2 OIL CHANGES
CUT & PROGRAM 2ND KEY

By signing this rider, the Customer acknowledges that only the above items are due. The Customer must return the vehicle to Dealer for completion of these items within 30 days after delivery.

This rider, when signed by both parties constitutes part of the Purchase Contract between the parties described above. Except as specifically setforth in the rider, the Purchase Contract remains in full force and effect.

## Bill KAY FORD - MIDLOTHIAN, INC.

By _____

EVELYN F LAJEUNESSE
_____
Customer

HENRY LAJEUNESSE
_____

070568.59

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - LAW DIVISION

EVELYN LaJEUNESSE,

                Plaintiffs,

v.

FORD MOTOR COMPANY, a corporation, and
BILL KAY FORD, INC., a corporation,

                Defendants,

and

FORD MOTOR COMPANY, BILL KAY FORD,
INC.

           Third-Party Plaintiffs,

    v.

HENRY LaJEUNESSE,

        Third-Party Defendant,

No.  07 L 8251
Judge James D. Egan
Motion Call: X

   08CV4436
   JUDGE CASTILLO
   MAGISTRATE JUDGE NOLAN

   PH

**THIRD-PARTY PLAINTIFFS' MOTION TO APPOINT A
SPECIAL REPRESENTATIVE FOR DECEASED HENRY LaJEUNESSE**

NOW COME defendants/third-party plaintiffs FORD MOTOR COMPANY (hereinafter

"Ford"), and BILL KAY FORD, INC. ("Bill Kay"), by and through their attorneys John A. Krivicich,

Michael J. Borree and DONOHUE BROWN MATHEWSON & SMYTH LLC, and pursuant to 735

ILCS 5/13-209, moving this Honorable Court for the entry of an order appointing a special

representative for third-party defendant HENRY LaJEUNESSE, deceased, for the purposes of

defending this action.  In support thereof, Ford states as follows:

1.      The plaintiff's complaint in this matter results from a motor vehicle accident that occurred on August 10, 2005. The plaintiff's complaint pleads causes of action against Ford and Bill Kay alleging that a 2004 Ford Focus operated by Henry LaJeunesse was defective at the time of the occurrence, causing personal injuries to plaintiff Evelyn LaJeunesse.

2.      On September 24, 2007, Ford filed a third-party complaint for contribution against Henry LaJeunesse (after being granted leave of court), and a summons was issued. A copy of Ford's third-party complaint for contribution is attached hereto as Exhibit A.

3.      On October 23, 2007, Bill Kay filed its answer and affirmative defenses to the plaintiff's amended complaint, as well as a third-party complaint for contribution against Henry LaJeunesse, (and a summons was issued). A copy of Bill Kay's answer, affirmative defenses and third-party complaint is attached hereto as Exhibit B.

4.      On November 13, 2007, Steve Mahoney, an attorney for the insurance company that issued a policy of automobile insurance to Mr. LaJeunesse, contacted John Krivicich, counsel for Ford and Bill Kay, informing Mr. Krivicich of Henry LaJeunesse's unfortunate passing. A copy of a correspondence from Mr. Krivicich to Mr. Mahoney is attached hereto as Exhibit C.

5.      Presently, Ford and Bill Kay are unaware as to whether a petition for letters of office for Mr. LaJeunesse's estate has been filed. Ford and Bill Kay are unaware as to whether a representative has been appointed for Henry LaJeunesse's estate. See Exhibit C.

6.      735 ILCS 5/13-209(b)(2) states as follows:

(b)    If a person against whom an action may be brought dies before the expiration of the time limited for the commencement thereof, and the cause of action survives, and is not otherwise barred:

(2) if no petition has been filed for letters of office for the deceased's estate, the court upon motion of a person entitled to bring an action and after the notice to the party's

heirs or legatees as the court directs and without opening an estate, may appoint a special representative for the deceased party for the purposes of defending the action.

735 ILCS 5/13-209.  (West 2006).

7.      Third-party plaintiffs Ford and Bill Kay's cause of action against Henry LaJeunesse was not barred by the applicable statute of limitations and the third-party complaints survive Mr. LaJeunesse's death.  Ford and Bill Kay therefore request that this Honorable Court appoint a special representative for purposes of defending this action.

WHEREFORE, defendants/third-party plaintiffs FORD MOTOR COMPANY and BILL KAY FORD, INC. now respectfully request that this Honorable Court enter an order appointing a special representative for third-party defendant HENRY LaJEUNESSE, deceased, for the purposes of defending this action, or for such other relief this Honorable Court deems just and appropriate.

Respectfully Submitted,

DONOHUE BROWN MATHEWSON & SMYTH LLC

By:      _____

John A. Krivicich

I.D. #32878
DONOHUE BROWN MATHEWSON & SMYTH LLC
John A. Krivicich
Michael J. Borree
140 South Dearborn Street, Suite 800
Chicago, IL  60603
Telephone:      (312) 422-0900
Facsimile:      (312) 422-0909

070568.16

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT - LAW DIVISION

EVELYN LaJEUNESSE,

        Plaintiff,

    v.

FORD MOTOR COMPANY, a corporation,
and BILL KAY FORD, INC., a corporation,

        Defendants,

**AND**

FORD MOTOR COMPANY,

        Third-Party Plaintiff,

    v.

HENRY LaJEUNESSE,

        Third-Party Defendant.

No.  07 L 8251
Judge James D. Egan
Motion Call: X

## THIRD PARTY COMPLANT FOR CONTRIBUTION - HENRY LAJEUNESSE

NOW COMES defendant, FORD MOTOR COMPANY ("Ford"), by and through its attorneys in this regard, John A. Krivicich, Michael J. Borree and DONOHUE BROWN MATHEWSON & SMYTH LLC, for its third party complaint for contribution against third-party defendant HENRY LaJEUNESSE states as follows:

1. Plaintiff, EVELYN LaJEUNESSE, has filed a complaint against FORD et al, alleging strict liability against said defendant with respect to a vehicle accident that allegedly occurred on August 10, 2005 involving a certain 2004 Ford Focus. Defendant FORD has now denied all material allegations of the Plaintiff's complaint.



2. On August 10, 2005, third-party defendant, HENRY LaJEUNESSE, had a duty of care as the operator of his automobile for his own safety and for the safety of persons in his vehicle, including plaintiff. In derogation of that duty, third-party defendant HENRY LaJEUNESSE was negligent in the operation of said vehicle in one or more of the following respects:

    (a)    Failed to keep his vehicle in a proper lane of traffic;

    (b)    Failed to brake to avoid a collision;

    (c)    Failed to reduce his speed to avoid a collision;

    (d)    Was otherwise careless and negligent.

3.    As a direct and proximate result of the negligence of third-party defendant HENRY LaJEUNESSE, the vehicle he was driving collided with the garage located at 4924 East Circle Drive, Crestwood, Illinois, causing injury to the plaintiff EVELYN LaJEUNESSE's person and the Plaintiff has sustained economic and non-economic damages of a personal and pecuniary nature, including but not limited to medical expenses and hospital expenses and will continue to incur medical expenses in the future.

4.    In the event that Ford is found liable to the plaintiff, EVELYN LaJEUNESSE, which liability is specifically denied, then it will only be as a direct and proximate result of one or more of the aforesaid negligent and/or careless acts committed by third-party defendant HENRY LaJEUNESSE.

5.    Pursuant to 740 ILCS 100/0.01, on August 10, 2005, and at all other relevant times, there existed a right of contribution among joint tortfeasors in the State of Illinois. In the event that Ford is found liable to the plaintiff and required to pay more than its pro rata share of liability, which

- 2 -

liability is expressly denied, then Ford is entitled to recovery from HENRY LaJEUNESSE by way of contribution in such an amount as is commensurate with the relative degree of culpability or fault attributable to HENRY LaJEUNESSE.

      6.    Ford asserts this counterclaim for contribution in the alternative, and specifically denies all allegations of wrongdoing contained in the Plaintiff's complaint, and by asserting this counterclaim for contribution, in no ways admits any liability for plaintiff's damages or the truth of any averments as to plaintiff.

      **WHEREFORE**, Third-Party Plaintiff FORD MOTOR COMPANY prays that if judgment is entered in favor of the plaintiff and against Ford under the complaint in this matter, that judgment then be entered against third-party defendant HENRY LaJEUNESSE, in an amount equal to the relative share of the fault attributable to his acts and/or omissions.

**DEFENDANT/THIRD-PARTY PLAINTIFF DEMANDS TRIAL BY JURY.**

                             DONOHUE BROWN MATHEWSON & SMYTH LLC

By: _____
                        John A. Krivicich

I.D. #32878
DONOHUE BROWN MATHEWSON & SMYTH LLC
John A. Krivicich
Michael J. Borree
140 South Dearborn Street, Suite 800
Chicago, IL 60603
Telephone:    (312) 422-0900
Facsimile:    (312) 422-0909

070568.31

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT - LAW DIVISION

EVELYN LaJEUNESSE,

        Plaintiff(s),

   v.

FORD MOTOR COMPANY, a corporation,
and BILL KAY FORD, INC., a corporation,

and

FORD MOTOR COMPANY,

        Third-Party Plaintiff,

   v.

HENRY LaJEUNESSE,

        Third-Party Defendant.

No.   07 L 8251
Judge James D. Egan
Motion Call: X

## BILL KAY FORD, INC.'S ANSWER, AFFIRMATIVE DEFENSES AND THIRD-PARTY COMPLAINT AS TO PLAINTIFF'S AMENDED COMPLAINT AT LAW

Defendant, BILL KAY FORD, INC.'s, by its attorneys, DONOHUE BROWN

MATHEWSON & SMYTH LLC, as and for its answer, affirmative defenses and third-party

complaint to plaintiff's amended complaint at law, states as follows:

### COUNTS I and II

This defendant makes no answer to Counts I and II of plaintiff's amended complaint at

law, because said counts are not directed to it.  To the extent that any allegation in said counts

could be deemed to be directed to this defendant, defendant denies said allegations.



## COUNT III

1.    Prior to August 10, 2005, defendant, BILL KAY FORD, sold a 2004 Ford Focus to Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE.

**ANSWER:**    This defendant states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 1 of Count III of the plaintiff's complaint at law, and therefore said allegations are denied.

2.    At the time defendant, BILL KAY FORD, sold the 2004 Ford Focus to Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE, it knew or should have known the 2004 Ford Focus had a propensity for sudden, unexpected acceleration, and/or the airbags not deploying in a frontal collision.

**ANSWER:**    This defendant denies the allegations contained in paragraph 2 of Count III of the plaintiff's complaint at law.

3.    On August 10, 2005, plaintiff, EVELYN LaJEUNESSE, was a passenger in the 2004 Ford Focus sold by defendant, BILL KAY FORD, which, without driver intent, suddenly accelerated in a parking lot at the Crestwood Mall in Crestwood, Cook County, Illinois.

**ANSWER:**    This defendant states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 3 of Count III of the plaintiff's complaint at law, and therefore said allegations are denied.

4.    On August 10, 2005, the 2004 Ford Focus struck a wall as a result of the unexpected, sudden acceleration and the airbags failed to deploy.

**ANSWER:**    This defendant states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 4 of Count III of the plaintiff's complaint at law, and therefore said allegations are denied.

- 2 -

5.    On and before August 10, 2005, defendant, BILL KAY FORD, was negligent in one or more respects:

  a. failed to inform Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE, that the 2004 Ford Focus had a propensity for sudden, unexpected acceleration before selling the car to them;

  b. failed to inform Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE, that the 2004 Ford Focus had a propensity for sudden, unexpected acceleration after selling the car to them;

  c. failed to discover the 2004 Ford Focus had a propensity to suddenly and unexpectedly accelerate;

  d. failed to warn Henry LaJeunesse and plaintiff, EVELYN LaJELTNESSE, that the airbags were known not to deploy in certain frontal impacts.

**ANSWER:**    This defendant denies each and every allegation contained in paragraph 5 of Count III

of the plaintiff's complaint at law, including subparagraphs (a) through (d) thereof.

6.    As a proximate result of one or more of the aforesaid negligent acts and/or omissions of defendant, BILL KAY FORD, Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE, purchased and continued to use the 2004 Ford Focus until it suddenly, unexpectedly accelerated and struck a wall without the airbags deploying, causing injuries to plaintiff, EVELYN LaJEUNESSE, of a personal, pecuniary and permanent nature.

**ANSWER:**    This defendant denies the allegations contained in paragraph 6 of Count III of the

plaintiff's complaint at law.

7.    Had Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE, been informed by defendant, BILL KAY FORD, of the propensity of the 2004 Ford Focus to suddenly, unexpectedly accelerate and/or that the airbags would not deploy in a frontal impact, they would not have purchased it.

**ANSWER:**    This defendant denies all allegations as to a sudden acceleration and as to an

airbag defect in the 2004 Ford Focus.  This defendant states that it is without knowledge or

information sufficient to form a belief as to the truth or falsity of the remaining allegations con-

- 3 -

tained in paragraph 7 of Count III of the plaintiff's(s') complaint at law, and therefore said

allegations are denied.

WHEREFORE, this defendant, BILL KAY FORD, INC., denies that the plaintiff is

entitled to judgment in any sum whatsoever, and prays for judgment in its favor, with costs assessed

against the plaintiff.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

1.    On information and belief, plaintiff failed to exercise due care for her own safety

due to one or more of the following negligent acts and/or omissions that resulted in the alleged

damages:

> a.    failed to properly use, utilize and apply the available occupant restraint;
>
> b.    committed other negligent acts and/or omissions as may be disclosed
>    during the course of discovery.

2.    Plaintiff's damages, if any, were caused by the direct and proximate result of the

fault/negligence of plaintiff and constituted more than fifty percent of such cause and plaintiff's

claims are therefore barred or must be comparatively reduced.

WHEREFORE, the defendant, Bill Kay Ford, Inc., prays for judgment in its favor and

against the plaintiff plus costs and any other further relief this court deems appropriate under the

circumstances.

### SECOND AFFIRMATIVE DEFENSE

- 4 -

1.    On information and belief, plaintiff knowingly failed to exercise due care for her own safety and engaged in one or more of the following culpable acts and/or omissions with knowledge that an accident such as the one described in plaintiffs' complaint could occur:

      a.    failed to properly use, utilize and apply the available occupant restraint;

      b.    committed other negligent acts and/or omissions as may be disclosed during the course of discovery.

2.    Such knowing acts and/or omissions constitute assumption of the risk and was a proximate cause of plaintiffs' alleged injuries and damages and constitute more than fifty percent of such cause and plaintiffs' claims are therefore barred or must be comparatively reduced.

**WHEREFORE**, the defendant, Bill Kay Ford, Inc., prays for judgment in its favor and against the plaintiff plus costs and any other further relief this court deems appropriate under the circumstances.

## THIRD AFFIRMATIVE DEFENSE

1.    On information and belief, plaintiff knowingly failed to exercise due care for her own safety and engaged in one or more of the following culpable acts and/or omissions with the knowledge that an accident such as the one described in plaintiffs' complaint could occur:

      a.    failed to properly use, utilize and apply the available occupant restraint;

      b.    committed other negligent acts and/or omissions as may be disclosed during the course of discovery.

2.    Such knowing acts and/or omissions constitute misuse of the product at issue and was the proximate cause of the plaintiff's alleged injuries and damages and constitute more than fifty percent of such cause and plaintiff's claims are therefore barred or must be comparatively reduced.

- 5 -

**WHEREFORE**, the defendant, Bill Kay Ford, Inc., prays for judgment in its favor and against the plaintiffs plus costs and any other further relief this court deems appropriate under the circumstances.

### FOURTH AFFIRMATIVE DEFENSE

The fault, if any, attributable to Bill Kay Ford, Inc. is less than twenty-five percent of the total fault attributable to each respective plaintiff, each defendant sued by plaintiff, Bill Kay Ford, Inc., and any counter-defendant sued by Bill Kay Ford, Inc., if any. Pursuant to §2-1117 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-1117, Bill Kay Ford, Inc. is severably liable for all damages claimed by plaintiffs, other than their past and future medical and medically related expenses.

### THIRD PARTY COMPLANT FOR CONTRIBUTION - HENRY LaJEUNESSE

NOW COMES defendant, BILL KAY FORD, INC., by and through its attorneys in this regard, John A. Krivicich, Michael J. Borree and DONOHUE BROWN MATHEWSON & SMYTH LLC, for its third party complaint for contribution against third-party defendant HENRY LaJEUNESSE states as follows:

1.    Plaintiff, EVELYN LaJEUNESSE, has filed a complaint against Bill Kay Ford, Inc. et al, alleging strict liability against said defendant with respect to a vehicle accident that allegedly occurred on August 10, 2005 involving a certain 2004 Ford Focus in which HENRY LaJEUNESSE was the driver. Defendant Bill Kay Ford, Inc. has now denied all material allegations of the Plaintiff's complaint.

2.    On August 10, 2005, third-party defendant, HENRY LaJEUNESSE, had a duty of care as the operator of his automobile for his own safety and for the safety of persons in his vehicle,

including plaintiff.  In derogation of that duty, third-party defendant HENRY LaJEUNESSE was

negligent in the operation of said vehicle in one or more of the following respects:

      (a)    Failed to keep his vehicle in a proper lane of traffic;

      (b)    Failed to brake to avoid a collision;

      (c)    Failed to reduce his speed to avoid a collision;

      (d)    Was otherwise careless and negligent.

3.    As a direct and proximate result of the negligence of third-party defendant

HENRY LaJEUNESSE, the vehicle he was driving collided with the garage located at 4924 East

Circle Drive, Crestwood, Illinois, causing injury to the plaintiff EVELYN LaJEUNESSE's

person and the Plaintiff has sustained economic and non-economic damages of a personal and

pecuniary nature, including but not limited to medical expenses and hospital expenses and will

continue to incur medical expenses in the future.

4.    In the event that Bill Kay Ford, Inc. is found liable to the plaintiff, EVELYN

LaJEUNESSE, which liability is specifically denied, then it will only be as a direct and proximate

result of one or more of the aforesaid negligent and/or careless acts committed by third-party

defendant HENRY LaJEUNESSE.

5.    Pursuant to 740 ILCS 100/0.01, on August 10, 2005, and at all other relevant times,

there existed a right of contribution among joint tortfeasors in the State of Illinois.  In the event that

Ford is found liable to the plaintiff and required to pay more than its pro rata share of liability, which

liability is expressly denied, then Ford is entitled to recovery from HENRY LaJEUNESSE by way of

contribution in such an amount as is commensurate with the relative degree of culpability or fault

attributable to HENRY LaJEUNESSE.

6.    Ford asserts this counterclaim for contribution in the alternative, and specifically denies all allegations of wrongdoing contained in the Plaintiff's complaint, and by asserting this counterclaim for contribution, in no ways admits any liability for plaintiff's damages or the truth of any averments as to plaintiff.

**WHEREFORE,** Third-Party Plaintiff BILL KAY FORD, INC. prays that if judgment is entered in favor of the plaintiff and against Ford under the complaint in this matter, that judgment then be entered against third-party defendant HENRY LaJEUNESSE, in an amount equal to the relative share of the fault attributable to his acts and/or omissions.

**DEFENDANT/THIRD-PARTY PLAINTIFF DEMANDS TRIAL BY JURY.**

Respectfully submitted,

DONOHUE BROWN MATHEWSON & SMYTH LLC

By:  _____
John A. Krivicich

I.D. #32878
DONOHUE BROWN MATHEWSON & SMYTH LLC
John A. Krivicich
Michael J. Borree
140 South Dearborn Street, Suite 800
Chicago, IL  60603
Telephone:    (312) 422-0900
Facsimile:    (312) 422-0909

STATE OF ILLINOIS       )
                        )SS.
COUNTY OF COOK          )

## **AFFIDAVIT**

I, John A. Krivicich, having been duly sworn on oath, state that I am an attorney licensed to practice on the State of Illinois and that within my responsibilities I have been assigned the defense of Ford Motor Company in this matter. I have reviewed the file material available to me at the time of preparation of the Answer on behalf of Ford Motor Company, and prepared and reviewed the foregoing Answer. The statements that this defendant, Ford Motor Company, is without knowledge or information sufficient to form a belief as to the truth or falsity of the plaintiff's allegation are true and correct to the best of my knowledge and belief.

_10/16/07_
Dated

_John A. Krivicich_

[x]    Under penalties as provided by law pursuant to Section 5/1-109 of the Code of Civil Procedure, the above certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the signature above certifies as aforesaid that he verily believes the same to be true.

- 7 -

**DONOHUE BROWN MATHEWSON & SMYTH LLC**

Sherri M. Arrigo
Stetson F. Atwood
Norman J. Barry, Jr.
Mark H. Boyle
Donald J. Brown, Jr.
Mark M. Burden
Karen K. DeGrand
Richard H. Donohue
John J. Duffy
Richard B. Foster
John A. Krivicich
J. Kent Mathewson
Anthony M. Pinto
Robert W. Smyth, Jr.
L. Michael Tarpey

Attorneys at Law
140 South Dearborn
Suite 800
Chicago, Illinois 60603
Telephone  (312) 422-0900
Fax  (312) 422-0909
www.dbmslaw.com

Michael J. Borree
Brian A. Corby
Edward E. Fu
Kristin M. Gruss
Matthew J. Healy
Timothy L. Hogan
Michael P. Kelley
Bryan J. Kirsch
Nicholas L. Lopuszynski
Charles S. Ofstein
John P. Seaman
James D. Sloan
Kathryn M. Stalmack
Todd J. Stalmack

*Of Counsel*
Louis J. Banciu *

* Admitted in MI

Writer's Direct Line (312) 422-0972
john.krivicich@dbmslaw.com

November 15, 2007

**VIA FACSIMILE ((312) 782-1104)**
Mr. Steve Mahoney
Law Offices of Thaddeus J. Gustafson
Two North LaSalle Street
Suite 2510
Chicago, IL  60602

Re:  LaJeunesse v Ford Motor Company
     Court No.:    07 L 8251
     Our File:     070568

Dear Steve:

     Thank you for informing me on November 13, 2007 of the death of Henry LaJeunesse.  Please advise me of the date of death and whether a petition for letters of office for his estate has been filed, and if so, in whose name and in which county.

     By copy of this letter to Mr. Kasserman, I am asking for the same information from his client, Mr. LaJeunesse's widow.

     Very truly yours,

     John A. Krivicich

JAK/sms/55
cc:   Shawn Kasserman (via fax)
     Michael J. Borree (via email)



EXHIBIT
C

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

_La Junesse_ , **Plaintiff(s)**

Case No. _07 L 8251_

v.

_Ford Motor Co. et al_ , **Defendant(s)**

Motion Call " _X_ " Line #: _17_

## MASTER CALENDAR MOTION COURTROOMS CASE MANAGEMENT ORDER

(Please check off all pertinent paragraphs and circle proper party name.)

(8230) ___ **1.** Category #1 (18 Month Discovery)    (8232) _✓_ **1a.** Category #2 (28 Month Discovery)

(4296) ___ **2.** Written discovery & 213(f)(1) and (2) disclosures to be completed by _____ ;

(4218) ___ **3.** Oral Discovery & 213(f)(1) and (2) depositions to be completed by _____ ;

(4218) ___ **4.** Treating physicians depositions to be completed by _____ ;

(4288) ___ **5.** Subpoenas for treating physicians depositions to be issued by _____ ;

(4296) _✓_ **6.** _π_ shall complete outstanding written discovery by _1-4-08_ ;

(4218) ___ **7.** _____ shall be presented for deposition by _____ ;

(4206) ___ **8.** Plaintiff/Defendant/Add. Party shall answer 213 (f)(3) interrogatories by _____ ;

(4218) ___ **9.** Plaintiff's 213(f)(3) witnesses to be deposed by _____ ;

(4218) ___ **10.** Defendant's 213(f)(3) witnesses to be deposed by _____ ;

(4218) ___ **11.** Additional party's 213(f)(3) witnesses to be deposed by _____ ;

(4619) _✓_ **12.** The matter is continued for subsequent Case Management Conference on _2-7-08_
at _10:30_ (AM/PM) in Room _2205_ for:

(A) ___ Proper Service    (B) ___ Appearance of Defendants    (C) ___ Case Value

(D) ___ Pleading Status    (E) ___ Discovery Status    (F) ___ Pre-Trial/Settlement

(G) _✓_ Other: _parties have to 2-4-08 to take the dep of_
_affiant for purposes of mot or for summary judgment_
_Pl. to file response to pending estate mot on & respond_
_and or amend or rest. mot. to strike on 2-7-08_

(4005) ___ **13.** Case is dismissed for want of prosecution.(4040) ___ The case is voluntarily dismissed under
735 ILCS 5/2-1009.

**NOTICE:**

\* Failure of any party to comply with this Case Management Order will be a basis for Rule 219(c) sanctions.

\* Failure of any party to enforce this Case Management Order
will constitute a waiver of such discovery by that party.

\* All cases arriving on the Trial Call in Courtroom 2005 must
have all discovery in Lines 2 through 11 completed.

\* A copy of this order is to be sent to each party by his/her counsel
within 10 (ten) days of the initial Case Management Date.

JUDGE JAMES D. EGAN    DEC 0 5 2007

Judge's Stamp

Atty. No.: _02329_

Name: _Robert Portray & Demetrio_

Atty. for: _π_

Address: _33 N Dearborn_

City/State/Zip: _Chgo, Il 60602_

Telephone: _312 346 3191_

ENTERED:

_____    _____
Judge                      Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

ORIGINAL

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, PROBATE DIVISION

*Pleading*
*07 0568*

Estate of

**HENRY LAJEUNESSE**

}

No.  **2007 P 008184**

Docket

**Deceased**

Page

## LETTERS OF OFFICE - DECEDENT'S ESTATE

**EVELYN F. LAJEUNESSE** _____ has been appointed

**Independent** _____ **Executor** _____ of the estate of

**HENRY LAJEUNESSE** _____, deceased,

who died **Sunday, April 22, 2007** _____, and is authorized to to take possession of and collect the

estate of the decedent and to do all acts required by law.

WITNESS,  **December 10, 2007** _____

**Dorothy Brown**
**Clerk of the Circuit Court**

( SEAL )

## CERTIFICATE

I certify that this is a copy of the letters of office now in force in this estate.

WITNESS,  **December 10, 2007** _____

AMW

*Dorothy Brown*
Clerk of Court

---

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

#02329    SSK\nh    12/10/07                                                    2007S-0120

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - LAW DIVISION

EVELYN LaJEUNESSE,

                                    Plaintiff,

                    v.                                    No. 07 L 8251 X

FORD MOTOR COMPANY,
a corporation; and
BILL KAY FORD, INC.,
a corporation,

                                    Defendants.

## PLAINTIFF'S RESPONSE TO AFFIRMATIVE DEFENSES OF DEFENDANT, BILL KAY FORD, INC. TO PLAINTIFF'S AMENDED COMPLAINT AT LAW

Plaintiff, EVELYN LaJEUNESSE, by and through her attorneys, Corboy & Demetrio,

P.C., in response to the Affirmative Defenses of defendant, BILL KAY FORD, INC., a

corporation, to Plaintiff's Amended Complaint at Law states:

### FIRST AFFIRMATIVE DEFENSE

1.      Plaintiff denies each and every allegation contained in Paragraph 1 of defendant's

First Affirmative Defense, including sub-parts (a) through (b).

2.      Plaintiff denies each and every allegation contained in Paragraph 2 of defendant's

First Affirmative Defense.

### SECOND AFFIRMATIVE DEFENSE

1.      Plaintiff denies each and every allegation contained in Paragraph 1 of defendant's

Second Affirmative Defense, including sub-parts (a) through (b).

2.      Plaintiff denies each and every allegation contained in Paragraph 2 of defendant's Second Affirmative Defense.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff denies each and every allegation contained in Paragraph 1 of defendant's Third Affirmative Defense, including sub-parts (a) through (b).

2.      Plaintiff denies each and every allegation contained in Paragraph 2 of defendant's Third Affirmative Defense.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff denies each and every allegation contained in Paragraph 1 of defendant's Fourth Affirmative Defense but further states it is a legal conclusion requiring no response.


Respectfully submitted,
**Corboy & Demetrio, P.C.**

By: _____
Shawn S. Kasserman


Corboy & Demetrio, P.C.
Attorneys for Plaintiff
33 North Dearborn Street
21st Floor
Chicago, Illinois 60602
(312) 346-3191
Firm I.D. 02329

#02329    SSK\nh    12/10/07                                          2007S-0120 

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT - LAW DIVISION

EVELYN LaJEUNESSE,

                Plaintiff,

       v.                    No.  07 L 8251 X

FORD MOTOR COMPANY, a corporation,
and BILL KAY FORD, INC., a corporation,

                Defendants.

### <u>ORDER</u>

**THIS CAUSE** coming on to be heard on Motion of Plaintiff, EVELYN LaJEUNESSE,

due Notice having been given, and the Court being fully advised in the premises;

**IT IS HEREBY ORDERED:**

That leave be and hereby is granted to file Plaintiff's Response to Affirmative Defenses
of Defendant, BILL KAY FORD, INC., to Plaintiff's Amended Complaint at Law, instanter.

JUDGE JAMES D. EGAN   DEC 1 7 2007

........................................................, 20........

**ENTER**

..........................................................

**JUDGE**

Shawn S. Kasserman
CORBOY & DEMETRIO, P.C.
Attorneys for Plaintiff
33 North Dearborn Street, 21st Floor
Chicago, Illinois  60602
(312) 346-3191
#02329

070568.72

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT - LAW DIVISION**

EVELYN LaJEUNESSE,

              Plaintiff,

    v.

FORD MOTOR COMPANY, a corporation, and
BILL KAY FORD, INC., a corporation,

              Defendants,

**AND**

FORD MOTOR COMPANY and BILL KAY FORD,
INC.,

              Third-Party Plaintiffs,

    v.

EVELYN LaJEUNESSE, as Independent Executor of
the Estate of HENRY LaJEUNESSE, deceased,

              Third-Party Defendant.

08CV4436

JUDGE CASTILLO

MAGISTRATE JUDGE NOLAN

PH

No.  07 L 8251
Judge James D. Egan
Motion Call: X

## ORDER

THIS CASE COMING TO BE HEARD on Third Party Plaintiffs' motion, pursuant to ILCS

5/13-209(c), to file Amended Third Party Complaint, notice having been given and the Court being

advised in the premises,

**IT IS HEREBY ORDERED:**

      1.    Said Motion is GRANTED; and

      2.    Leave is given to Third Party Plaintiffs to file their Amended Third Party

Complaint, service of same to be made on counsel for Evelyn LaJeunesse.

            ENTERED:          JUDGE JAMES D. EGAN   JAN 15 2008

            By:    _____

                  JUDGE

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - LAW DIVISION

EVELYN LaJEUNESSE,

          Plaintiff,

    v.

FORD MOTOR COMPANY, a corporation,
and BILL KAY FORD, INC., a corporation,

          Defendants,

**AND**

FORD MOTOR COMPANY, BILL KAY
FORD, INC.

          Third-Party Plaintiff,

    v.

EVELYN LaJEUNESE, as Independent
Executor of the Estate of HENRY
LaJEUNESSE, deceased

          Third-Party Defendant.

No.  07 L 8251
Judge James D. Egan
Motion Call: X

FILED-12
2000 JAN -7 AM II: 03
DOROTHY BROWN
CLERK OF CIRCUIT COURT
LAW DIVISION

## THIRD-PARTY PLAINTIFFS' MOTION TO FILE AN AMENDED THIRD-PARTY COMPLAINT

    NOW COME defendants/third-party plaintiffs FORD MOTOR COMPANY ("Ford"), and

BILL KAY FORD, INC., ("Bill Kay"), by and through their attorneys John A. Krivicich, Michael J.

Borree, and DONOHUE BROWN MATHEWSON & SMYTH LLC, moving this Honorable Court

for the entry of an order allowing the third-party plaintiffs to file an amended third-party complaint,

instanter.  In support thereof, the third-party plaintiffs state as follows:

1.     The plaintiff's complaint in this matter results from a motor vehicle accident that occurred on August 10, 2005. The plaintiff's complaint pleads causes of action against Ford and Bill Kay alleging that a 2004 Ford Focus operated by Henry LaJeunesse was defective at the time of the occurrence, causing personal injuries to plaintiff Evelyn LaJeunesse.

2.     On September 24, 2007, Ford filed a third-party complaint for contribution against Henry LaJeunesse (after being granted leave of court), and a summons was issued. A copy of Ford's third-party complaint for contribution is attached hereto as Exhibit A.

3.     On October 23, 2007, Bill Kay filed its answer and affirmative defenses to the plaintiff's amended complaint, as well as a third-party complaint for contribution against Henry LaJeunesse, (and a summons was issued). A copy of Bill Kay's answer, affirmative defenses and third-party complaint is attached hereto as Exhibit B.

4.     On November 13, 2007, Steve Mahoney, an attorney for the insurance company that issued a policy of automobile insurance to Mr. LaJeunesse, contacted John Krivicich, counsel for Ford and Bill Kay, informing Mr. Krivicich of Henry LaJeunesse's unfortunate passing. A copy of a correspondence from Mr. Krivicich to Mr. Mahoney is attached hereto as Exhibit C.

5.     After counsel for Ford and Bill Kay were informed of the passing of Henry LaJeunesse, the third-party plaintiffs promptly filed a motion for appointment of a special representative for purposes of defending this action. A copy of the third-party plaintiffs' motion to appoint a special representative is attached hereto as Exhibit D.

6.     On December 5, 2007, this Honorable Court entered an order continuing hearing on Ford's motion to appoint a special representative to allow plaintiff to open an estate for decedent, Henry LaJeunesse. A copy of the Court's order of December 5, 2007 is attached hereto as Exhibit E.

7.    On or about December 18, 2007, counsel for plaintiff Evelyn LaJeunesse informed counsel for the third-party plaintiffs that letters of office had been issued for Mr. LaJeunesse's estate, and Evelyn LaJeunesse had been appointed as Independent Executor of her late husband's estate. A copy of a correspondence from Shawn Kasserman, counsel for the plaintiff, to Michael Borree, is attached hereto as Exhibit F.

8.    Ford and Bill Kay now respectfully request that this Honorable Court grant the third-party plaintiffs leave of court to file an amended third-party complaint, instanter. Counsel for Ms. LaJeunesse has agreed to accept service of the third-party complaint on behalf of Evelyn LaJeunesse, as Independent Executor of the Estate of Henry LaJeunesse. A copy of third-party plaintiff's amended third-party complaint and an e-mail from Mr. Kasserman agreeing to accept service are attached hereto, respectively, as Exhibits G and H.

WHEREFORE, third-party plaintiffs FORD MOTOR COMPANY and BILL KAY FORD, INC. now respectfully request that they be allowed leave of court to file an amended third-party complaint, instanter, substituting Evelyn LaJeunesse as third-party defendant, in her capacity as Independent Executor of the Estate of Henry LaJeunesse, deceased.

Respectfully Submitted,

DONOHUE BROWN MATHEWSON & SMYTH LLC

By: _____
John A. Krivicich

I.D. #32878
DONOHUE BROWN MATHEWSON & SMYTH LLC
John A. Krivicich
Michael J. Borree
140 South Dearborn Street, Suite 800
Chicago, IL 60603
Telephone:    (312) 422-0900
Facsimile:    (312) 422-0909

070568.16

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT - LAW DIVISION

EVELYN LaJEUNESSE,

        Plaintiff,

  v.

FORD MOTOR COMPANY, a corporation,
and BILL KAY FORD, INC., a corporation,

        Defendants,

**AND**

FORD MOTOR COMPANY,

        Third-Party Plaintiff,

  v.

HENRY LaJEUNESSE,

        Third-Party Defendant.

No.  07 L 8251
Judge James D. Egan
Motion Call: X

### THIRD PARTY COMPLANT FOR CONTRIBUTION - HENRY LAJEUNESSE

NOW COMES defendant, FORD MOTOR COMPANY ("Ford"), by and through its
attorneys in this regard, John A. Krivicich, Michael J. Borree and DONOHUE BROWN
MATHEWSON & SMYTH LLC, for its third party complaint for contribution against third-party
defendant HENRY LaJEUNESSE states as follows:

1. Plaintiff, EVELYN LaJEUNESSE, has filed a complaint against FORD et al, alleging
strict liability against said defendant with respect to a vehicle accident that allegedly occurred on
August 10, 2005 involving a certain 2004 Ford Focus.  Defendant FORD has now denied all material
allegations of the Plaintiff's complaint.


EXHIBIT
A

2. On August 10, 2005, third-party defendant, HENRY LaJEUNESSE, had a duty of care as the operator of his automobile for his own safety and for the safety of persons in his vehicle, including plaintiff. In derogation of that duty, third-party defendant HENRY LaJEUNESSE was negligent in the operation of said vehicle in one or more of the following respects:

      (a)    Failed to keep his vehicle in a proper lane of traffic;

      (b)    Failed to brake to avoid a collision;

      (c)    Failed to reduce his speed to avoid a collision;

      (d)    Was otherwise careless and negligent.

3. As a direct and proximate result of the negligence of third-party defendant HENRY LaJEUNESSE, the vehicle he was driving collided with the garage located at 4924 East Circle Drive, Crestwood, Illinois, causing injury to the plaintiff EVELYN LaJEUNESSE's person and the Plaintiff has sustained economic and non-economic damages of a personal and pecuniary nature, including but not limited to medical expenses and hospital expenses and will continue to incur medical expenses in the future.

4. In the event that Ford is found liable to the plaintiff, EVELYN LaJEUNESSE, which liability is specifically denied, then it will only be as a direct and proximate result of one or more of the aforesaid negligent and/or careless acts committed by third-party defendant HENRY LaJEUNESSE.

5. Pursuant to 740 ILCS 100/0.01, on August 10, 2005, and at all other relevant times, there existed a right of contribution among joint tortfeasors in the State of Illinois. In the event that Ford is found liable to the plaintiff and required to pay more than its pro rata share of liability, which

- 2 -

liability is expressly denied, then Ford is entitled to recovery from HENRY LaJEUNESSE by way of contribution in such an amount as is commensurate with the relative degree of culpability or fault attributable to HENRY LaJEUNESSE.

6.    Ford asserts this counterclaim for contribution in the alternative, and specifically denies all allegations of wrongdoing contained in the Plaintiff's complaint, and by asserting this counterclaim for contribution, in no ways admits any liability for plaintiff's damages or the truth of any averments as to plaintiff.

**WHEREFORE**, Third-Party Plaintiff FORD MOTOR COMPANY prays that if judgment is entered in favor of the plaintiff and against Ford under the complaint in this matter, that judgment then be entered against third-party defendant HENRY LaJEUNESSE, in an amount equal to the relative share of the fault attributable to his acts and/or omissions.

**DEFENDANT/THIRD-PARTY PLAINTIFF DEMANDS TRIAL BY JURY.**

DONOHUE BROWN MATHEWSON & SMYTH LLC

By: _____

John A. Krivicich

I.D. #32878
DONOHUE BROWN MATHEWSON & SMYTH LLC
John A. Krivicich
Michael J. Borree
140 South Dearborn Street, Suite 800
Chicago, IL 60603
Telephone:    (312) 422-0900
Facsimile:    (312) 422-0909

- 3 -

070568.31

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT - LAW DIVISION

EVELYN LaJEUNESSE,

               Plaintiff(s),

    v.

FORD MOTOR COMPANY, a corporation,
and BILL KAY FORD, INC., a corporation,

and

FORD MOTOR COMPANY,

               Third-Party Plaintiff,

    v.

HENRY LaJEUNESSE,

               Third-Party Defendant.

No.  07 L 8251
Judge James D. Egan
Motion Call: X

## BILL KAY FORD, INC.'S ANSWER, AFFIRMATIVE DEFENSES AND THIRD-PARTY COMPLAINT AS TO PLAINTIFF'S AMENDED COMPLAINT AT LAW

Defendant, BILL KAY FORD, INC.'s, by its attorneys, DONOHUE BROWN

MATHEWSON & SMYTH LLC, as and for its answer, affirmative defenses and third-party

complaint to plaintiff's amended complaint at law, states as follows:

### COUNTS I and II

This defendant makes no answer to Counts I and II of plaintiff's amended complaint at

law, because said counts are not directed to it. To the extent that any allegation in said counts

could be deemed to be directed to this defendant, defendant denies said allegations.



## COUNT III

1.     Prior to August 10, 2005, defendant, BILL KAY FORD, sold a 2004 Ford Focus to Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE.

**ANSWER:**    This defendant states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 1 of Count III of the plaintiff's complaint at law, and therefore said allegations are denied.

2.     At the time defendant, BILL KAY FORD, sold the 2004 Ford Focus to Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE, it knew or should have known the 2004 Ford Focus had a propensity for sudden, unexpected acceleration, and/or the airbags not deploying in a frontal collision.

**ANSWER:**    This defendant denies the allegations contained in paragraph 2 of Count III of the plaintiff's complaint at law.

3.     On August 10, 2005, plaintiff, EVELYN LaJEUNESSE, was a passenger in the 2004 Ford Focus sold by defendant, BILL KAY FORD, which, without driver intent, suddenly accelerated in a parking lot at the Crestwood Mall in Crestwood, Cook County, Illinois.

**ANSWER:**    This defendant states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 3 of Count III of the plaintiff's complaint at law, and therefore said allegations are denied.

4.     On August 10, 2005, the 2004 Ford Focus struck a wall as a result of the unexpected, sudden acceleration and the airbags failed to deploy.

**ANSWER:**    This defendant states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 4 of Count III of the plaintiff's complaint at law, and therefore said allegations are denied.

5.    On and before August 10, 2005, defendant, BILL KAY FORD, was negligent in one or more respects:

      a.    failed to inform Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE, that the 2004 Ford Focus had a propensity for sudden, unexpected acceleration before selling the car to them;

      b.    failed to inform Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE, that the 2004 Ford Focus had a propensity for sudden, unexpected acceleration after selling the car to them;

      c.    failed to discover the 2004 Ford Focus had a propensity to suddenly and unexpectedly accelerate;

      d.    failed to warn Henry LaJeunesse and plaintiff, EVELYN LaJELTNESSE, that the airbags were known not to deploy in certain frontal impacts.

**ANSWER:**    This defendant denies each and every allegation contained in paragraph 5 of Count III

of the plaintiff's complaint at law, including subparagraphs (a) through (d) thereof.

6.    As a proximate result of one or more of the aforesaid negligent acts and/or omissions of defendant, BILL KAY FORD, Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE, purchased and continued to use the 2004 Ford Focus until it suddenly, unexpectedly accelerated and struck a wall without the airbags deploying, causing injuries to plaintiff, EVELYN LaJEUNESSE, of a personal, pecuniary and permanent nature.

**ANSWER:**    This defendant denies the allegations contained in paragraph 6 of Count III of the

plaintiff's complaint at law.

7.    Had Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE, been informed by defendant, BILL KAY FORD, of the propensity of the 2004 Ford Focus to suddenly, unexpectedly accelerate and/or that the airbags would not deploy in a frontal impact, they would not have purchased it.

**ANSWER:**    This defendant denies all allegations as to a sudden acceleration and as to an

airbag defect in the 2004 Ford Focus. This defendant states that it is without knowledge or

information sufficient to form a belief as to the truth or falsity of the remaining allegations con-

- 3 -

tained in paragraph 7 of Count III of the plaintiff's(s') complaint at law, and therefore said allegations are denied.

WHEREFORE, this defendant, BILL KAY FORD, INC., denies that the plaintiff is entitled to judgment in any sum whatsoever, and prays for judgment in its favor, with costs assessed against the plaintiff.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

1. On information and belief, plaintiff failed to exercise due care for her own safety due to one or more of the following negligent acts and/or omissions that resulted in the alleged damages:

      a.    failed to properly use, utilize and apply the available occupant restraint;

      b.    committed other negligent acts and/or omissions as may be disclosed during the course of discovery.

2. Plaintiff's damages, if any, were caused by the direct and proximate result of the fault/negligence of plaintiff and constituted more than fifty percent of such cause and plaintiff's claims are therefore barred or must be comparatively reduced.

WHEREFORE, the defendant, Bill Kay Ford, Inc., prays for judgment in its favor and against the plaintiff plus costs and any other further relief this court deems appropriate under the circumstances.

## SECOND AFFIRMATIVE DEFENSE

- 4 -

1.    On information and belief, plaintiff knowingly failed to exercise due care for her own safety and engaged in one or more of the following culpable acts and/or omissions with knowledge that an accident such as the one described in plaintiffs' complaint could occur:

    a.    failed to properly use, utilize and apply the available occupant restraint;

    b.    committed other negligent acts and/or omissions as may be disclosed during the course of discovery.

2.    Such knowing acts and/or omissions constitute assumption of the risk and was a proximate cause of plaintiffs' alleged injuries and damages and constitute more than fifty percent of such cause and plaintiffs' claims are therefore barred or must be comparatively reduced.

**WHEREFORE**, the defendant, Bill Kay Ford, Inc., prays for judgment in its favor and against the plaintiff plus costs and any other further relief this court deems appropriate under the circumstances.

## THIRD AFFIRMATIVE DEFENSE

1.    On information and belief, plaintiff knowingly failed to exercise due care for her own safety and engaged in one or more of the following culpable acts and/or omissions with the knowledge that an accident such as the one described in plaintiffs' complaint could occur:

    a.    failed to properly use, utilize and apply the available occupant restraint;

    b.    committed other negligent acts and/or omissions as may be disclosed during the course of discovery.

2.    Such knowing acts and/or omissions constitute misuse of the product at issue and was the proximate cause of the plaintiff's alleged injuries and damages and constitute more than fifty percent of such cause and plaintiff's claims are therefore barred or must be comparatively reduced.

WHEREFORE, the defendant, Bill Kay Ford, Inc., prays for judgment in its favor and against the plaintiffs plus costs and any other further relief this court deems appropriate under the circumstances.

## FOURTH AFFIRMATIVE DEFENSE

The fault, if any, attributable to Bill Kay Ford, Inc. is less than twenty-five percent of the total fault attributable to each respective plaintiff, each defendant sued by plaintiff, Bill Kay Ford, Inc., and any counter-defendant sued by Bill Kay Ford, Inc., if any.  Pursuant to §2-1117 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-1117, Bill Kay Ford, Inc. is severally liable for all damages claimed by plaintiffs, other than their past and future medical and medically related expenses.

## THIRD PARTY COMPLANT FOR CONTRIBUTION - HENRY LaJEUNESSE

NOW COMES defendant, BILL KAY FORD, INC., by and through its attorneys in this regard, John A. Krivicich, Michael J. Borree and DONOHUE BROWN MATHEWSON & SMYTH LLC, for its third party complaint for contribution against third-party defendant HENRY LaJEUNESSE states as follows:

1.      Plaintiff, EVELYN LaJEUNESSE, has filed a complaint against Bill Kay Ford, Inc. et al, alleging strict liability against said defendant with respect to a vehicle accident that allegedly occurred on August 10, 2005 involving a certain 2004 Ford Focus in which HENRY LaJEUNESSE was the driver.  Defendant Bill Kay Ford, Inc. has now denied all material allegations of the Plaintiff's complaint.

2.      On August 10, 2005, third-party defendant, HENRY LaJEUNESSE, had a duty of care as the operator of his automobile for his own safety and for the safety of persons in his vehicle,

- 6 -

including plaintiff. In derogation of that duty, third-party defendant HENRY LaJEUNESSE was negligent in the operation of said vehicle in one or more of the following respects:

      (a)    Failed to keep his vehicle in a proper lane of traffic;

      (b)    Failed to brake to avoid a collision;

      (c)    Failed to reduce his speed to avoid a collision;

      (d)    Was otherwise careless and negligent.

3.    As a direct and proximate result of the negligence of third-party defendant HENRY LaJEUNESSE, the vehicle he was driving collided with the garage located at 4924 East Circle Drive, Crestwood, Illinois, causing injury to the plaintiff EVELYN LaJEUNESSE's person and the Plaintiff has sustained economic and non-economic damages of a personal and pecuniary nature, including but not limited to medical expenses and hospital expenses and will continue to incur medical expenses in the future.

4.    In the event that Bill Kay Ford, Inc. is found liable to the plaintiff, EVELYN LaJEUNESSE, which liability is specifically denied, then it will only be as a direct and proximate result of one or more of the aforesaid negligent and/or careless acts committed by third-party defendant HENRY LaJEUNESSE.

5.    Pursuant to 740 ILCS 100/0.01, on August 10, 2005, and at all other relevant times, there existed a right of contribution among joint tortfeasors in the State of Illinois. In the event that Ford is found liable to the plaintiff and required to pay more than its pro rata share of liability, which liability is expressly denied, then Ford is entitled to recovery from HENRY LaJEUNESSE by way of contribution in such an amount as is commensurate with the relative degree of culpability or fault attributable to HENRY LaJEUNESSE.

6.      Ford asserts this counterclaim for contribution in the alternative, and specifically denies all allegations of wrongdoing contained in the Plaintiff's complaint, and by asserting this counterclaim for contribution, in no ways admits any liability for plaintiff's damages or the truth of any averments as to plaintiff.

**WHEREFORE**, Third-Party Plaintiff BILL KAY FORD, INC. prays that if judgment is entered in favor of the plaintiff and against Ford under the complaint in this matter, that judgment then be entered against third-party defendant HENRY LaJEUNESSE, in an amount equal to the relative share of the fault attributable to his acts and/or omissions.

**DEFENDANT/THIRD-PARTY PLAINTIFF DEMANDS TRIAL BY JURY.**


Respectfully submitted,

DONOHUE BROWN MATHEWSON & SMYTH LLC


By:      _____
John A. Krivicich

I.D. #32878
DONOHUE BROWN MATHEWSON & SMYTH LLC
John A. Krivicich
Michael J. Borree
140 South Dearborn Street, Suite 800
Chicago, IL  60603
Telephone:    (312) 422-0900
Facsimile:     (312) 422-0909

STATE OF ILLINOIS          )
                           )SS.
COUNTY OF COOK             )

## AFFIDAVIT

I, John A. Krivicich, having been duly sworn on oath, state that I am an attorney licensed to practice on the State of Illinois and that within my responsibilities I have been assigned the defense of Ford Motor Company in this matter. I have reviewed the file material available to me at the time of preparation of the Answer on behalf of Ford Motor Company, and prepared and reviewed the foregoing Answer. The statements that this defendant, Ford Motor Company, is without knowledge or information sufficient to form a belief as to the truth or falsity of the plaintiff's allegation are true and correct to the best of my knowledge and belief.

_10/16/07_
Dated

_____
John A. Krivicich

[x]     Under penalties as provided by law pursuant to Section 5/1-109 of the Code of Civil Procedure, the above certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the signature above certifies as aforesaid that he verily believes the same to be true.

- 7 -

## DONOHUE BROWN MATHEWSON & SMYTH LLC

Sherri M. Arrigo
Stetson F. Atwood
Norman J. Barry, Jr.
Mark H. Boyle
Donald J. Brown, Jr.
Mark M. Burden
Karen K. DeGrand
Richard H. Donohue
John J. Duffy
Richard B. Foster
John A. Krivicich
J. Kent Mathewson
Anthony M. Pinto
Robert W. Smyth, Jr.
L. Michael Tarpey

Attorneys at Law
140 South Dearborn
Suite 800
Chicago, Illinois 60603
Telephone (312) 422-0900
Fax (312) 422-0909
www.dbmslaw.com

Michael J. Borree
Brian A. Corby
Edward E. Fu
Kristin M. Gruss
Matthew J. Healy
Timothy L. Hogan
Michael P. Kelley
Bryan J. Kirsch
Nicholas L. Lopuszynski
Charles S. Ofstein
John P. Seaman
James D. Sloan
Kathryn M. Stalmack
Todd J. Stalmack

*Of Counsel*
Louis J. Banciu *

* Admitted in MI

Writer's Direct Line (312) 422-0972
john.krivicich@dbmslaw.com

November 15, 2007

**VIA FACSIMILE ((312) 782-1104)**
Mr. Steve Mahoney
Law Offices of Thaddeus J. Gustafson
Two North LaSalle Street
Suite 2510
Chicago, IL 60602

Re:   LaJeunesse v Ford Motor Company
      Court No.:    07 L 8251
      Our File:     070568

Dear Steve:

Thank you for informing me on November 13, 2007 of the death of Henry LaJeunesse. Please advise me of the date of death and whether a petition for letters of office for his estate has been filed, and if so, in whose name and in which county.

By copy of this letter to Mr. Kasserman, I am asking for the same information from his client, Mr. LaJeunesse's widow.

Very truly yours,

John A. Krivicich

JAK/sms/55
cc:   Shawn Kasserman (via fax)
      Michael J. Borree (via email)



070568.59

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT - LAW DIVISION

EVELYN LaJEUNESSE,

      Plaintiffs,

v.

FORD MOTOR COMPANY, a corporation, and
BILL KAY FORD, INC., a corporation,

      Defendants,

and

FORD MOTOR COMPANY, BILL KAY FORD,
INC.

      Third-Party Plaintiffs,

v.

HENRY LaJEUNESSE,

      Third-Party Defendant,

No.  07 L 8251
Judge James D. Egan
Motion Call: X

FILED
2007 DEC -3 PM 2:39
DOROTHY BROWN
CLERK OF CIRCUIT COURT
LAW DIVISION

### THIRD-PARTY PLAINTIFFS' MOTION TO APPOINT A
### SPECIAL REPRESENTATIVE FOR DECEASED HENRY LaJEUNESSE

      NOW COME defendants/third-party plaintiffs FORD MOTOR COMPANY (hereinafter

"Ford"), and BILL KAY FORD, INC. ("Bill Kay"), by and through their attorneys John A. Krivicich,

Michael J. Borree and DONOHUE BROWN MATHEWSON & SMYTH LLC, and pursuant to 735

ILCS 5/13-209, moving this Honorable Court for the entry of an order appointing a special

representative for third-party defendant HENRY LaJEUNESSE, deceased, for the purposes of

defending this action.  In support thereof, Ford states as follows:



1.     The plaintiff's complaint in this matter results from a motor vehicle accident that occurred on August 10, 2005. The plaintiff's complaint pleads causes of action against Ford and Bill Kay alleging that a 2004 Ford Focus operated by Henry LaJeunesse was defective at the time of the occurrence, causing personal injuries to plaintiff Evelyn LaJeunesse.

2.     On September 24, 2007, Ford filed a third-party complaint for contribution against Henry LaJeunesse (after being granted leave of court), and a summons was issued. A copy of Ford's third-party complaint for contribution is attached hereto as Exhibit A.

3.     On October 23, 2007, Bill Kay filed its answer and affirmative defenses to the plaintiff's amended complaint, as well as a third-party complaint for contribution against Henry LaJeunesse, (and a summons was issued). A copy of Bill Kay's answer, affirmative defenses and third-party complaint is attached hereto as Exhibit B.

4.     On November 13, 2007, Steve Mahoney, an attorney for the insurance company that issued a policy of automobile insurance to Mr. LaJeunesse, contacted John Krivicich, counsel for Ford and Bill Kay, informing Mr. Krivicich of Henry LaJeunesse's unfortunate passing. A copy of a correspondence from Mr. Krivicich to Mr. Mahoney is attached hereto as Exhibit C.

5.     Presently, Ford and Bill Kay are unaware as to whether a petition for letters of office for Mr. LaJeunesse's estate has been filed. Ford and Bill Kay are unaware as to whether a representative has been appointed for Henry LaJeunesse's estate. See Exhibit C.

6.     735 ILCS 5/13-209(b)(2) states as follows:

(b)   If a person against whom an action may be brought dies before the expiration of the time limited for the commencement thereof, and the cause of action survives, and is not otherwise barred:

(2) if no petition has been filed for letters of office for the deceased's estate, the court upon motion of a person entitled to bring an action and after the notice to the party's

heirs or legatees as the court directs and without opening an estate, may appoint a special representative for the deceased party for the purposes of defending the action.

735 ILCS 5/13-209. (West 2006).

7.      Third-party plaintiffs Ford and Bill Kay's cause of action against Henry LaJeunesse was not barred by the applicable statute of limitations and the third-party complaints survive Mr. LaJeunesse's death.  Ford and Bill Kay therefore request that this Honorable Court appoint a special representative for purposes of defending this action.

WHEREFORE, defendants/third-party plaintiffs FORD MOTOR COMPANY and BILL KAY FORD, INC. now respectfully request that this Honorable Court enter an order appointing a special representative for third-party defendant HENRY LaJEUNESSE, deceased, for the purposes of defending this action, or for such other relief this Honorable Court deems just and appropriate.

Respectfully Submitted,

DONOHUE BROWN MATHEWSON & SMYTH LLC

By: _____

John A. Krivicich

I.D. #32878
DONOHUE BROWN MATHEWSON & SMYTH LLC
John A. Krivicich
Michael J. Borree
140 South Dearborn Street, Suite 800
Chicago, IL  60603
Telephone:     (312) 422-0900
Facsimile:      (312) 422-0909

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

**COPY**

_La Jeunesse_ _____ Plaintiff(s)    }    Case No. _07 L 8251_

v.

_Ford Motor Co. et al_ _____ Defendant(s)    }    Motion Call " _X_ " Line #: _17_

## MASTER CALENDAR MOTION COURTROOMS CASE MANAGEMENT ORDER

(Please check off all pertinent paragraphs and circle proper party name.)

(8230) _____ 1. Category #1 (18 Month Discovery)    (8232) ✓ 1a. Category #2 (28 Month Discovery)

(4296) _____ 2. Written discovery & 213(f)(1) and (2) disclosures to be completed by _____;

(4218) _____ 3. Oral Discovery & 213(f)(1) and (2) depositions to be completed by _____;

(4218) _____ 4. Treating physicians depositions to be completed by _____;

(4288) _____ 5. Subpoenas for treating physicians depositions to be issued by _____;

(4296) ✓ 6.  _π_  shall complete outstanding written discovery by _1-4-08_ ;

(4218) _____ 7. _____ shall be presented for deposition by _____;

(4206) _____ 8. Plaintiff/Defendant/Add. Party shall answer 213 (f)(3) interrogatories by _____;

(4218) _____ 9. Plaintiff's 213(f)(3) witnesses to be deposed by _____;

(4218) _____ 10. Defendant's 213(f)(3) witnesses to be deposed by _____;

(4218) _____ 11. Additional party's 213(f)(3) witnesses to be deposed by _____;

(4619) ✓ 12. The matter is continued for subsequent Case Management Conference on _2-7-08_
at _10:30_ AM/PM in Room _2205_ for:

(A) ___Proper Service    (B) ___Appearance of Defendants    (C) ___Case Value

(D) ___Pleading Status    (E) ___Discovery Status    (F) ___Pre-Trial/Settlement

(G) ___Other: _Parties have to 2-4-08 to take the dep of_
_affiant for purposes of mot on for summary judgment_
_#4 to pl Karhani's Estate. Motion is entered_
_and continued to next MC π to recover on 10-1-08_

(4005) _____ 13. Case is dismissed for want of prosecution.(4040) _____ The case is voluntarily dismissed under
735 ILCS 5/2-1009.

**NOTICE:**

* Failure of any party to comply with this Case Management Order will be a basis for Rule 219(c) sanctions.
* Failure of any party to enforce this Case Management Order
  will constitute a waiver of such discovery by that party.
* All cases arriving on the Trial Call in Courtroom 2005 must
  have all discovery in Lines 2 through 11 completed.
* A copy of this order is to be sent to each party by his/her counsel
  within 10 (ten) days of the initial Case Management Date.

JUDGE JAMES D. EGAN    DEC 05 2007

Judge's Stamp

Atty. No.: _02329_
Name: _Robert Conboy & Demetrio_
Atty. for: _π_
Address: _33 N. Dearborn_        ENTERED: _____
City/State/Zip: _Chgo, IL 60602_
Telephone: _312 346 3191_        _____
                                      Judge

**EXHIBIT**
**E**

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, I

LAW OFFICES

# CORBOY & DEMETRIO
### A PROFESSIONAL CORPORATION

RECEIVED
DEC 2 4 2007
By 070568
JAC/MJB

21ST FLOOR
33 NORTH DEARBORN STREET
CHICAGO, ILLINOIS 60602

SHAWN S. KASSERMAN
e-mail: ssk@corboydemetrio.com

TELEPHONE
(312) 346-3191

TELECOPIER
(312) 346-5562

T.D.D.
(312) 236-3191

December 18, 2007

Michael J. Borree, Esq.
Donohue Brown Mathewson & Smith, Ltd.
140 South Dearborn Street, Suite 800
Chicago, Illinois 60603

> **Re:**   *LaJeunesse v. Ford Motor Company, et al.*
> *Court No.  07 L 8251*
> *File No.: 2007S-0120*

Mr. Borree,

Enclosed please find a copy of the Letters of Office - Decedent's Estate with regard to Evelyn LaJeunesse being appointed as Independent Executor of the estate of Henry LaJeunesse.

Very truly yours,

Shawn S. Kasserman

nh
Enclosure



EXHIBIT
F

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, PROBATE DIVISION

*pleading*
*07 0768*

Estate of

HENRY LAJEUNESSE

No. **2007 P 008184**

Docket

Deceased

Page

## LETTERS OF OFFICE - DECEDENT'S ESTATE

**EVELYN F. LAJEUNESSE** _____ has been appointed

Independent _____ Executor _____ of the estate of

**HENRY LAJEUNESSE** _____ , deceased,

who died **Sunday, April 22, 2007** _____ , and is authorized to to take possession of and collect the

estate of the decedent and to do all acts required by law.

WITNESS, **December 10, 2007** _____

**Dorothy Brown**
Clerk of the Circuit Court

SEAL

## CERTIFICATE

I certify that this is a copy of the letters of office now in force in this estate.

WITNESS, **December 10, 2007** _____

AMW

*Dorothy Brown*

Clerk of Court

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

070568.16

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT - LAW DIVISION

EVELYN LaJEUNESSE,

      Plaintiff,

    v.

FORD MOTOR COMPANY, a corporation,
and BILL KAY FORD, INC., a corporation,

      Defendants,

**AND**

FORD MOTOR COMPANY, BILL KAY
FORD, INC.

      Third-Party Plaintiff,

    v.

EVELYN LaJEUNESE, as Independent
Executor of the Estate of HENRY
LaJEUNESSE, deceased

      Third-Party Defendant.

No. 07 L 8251
Judge James D. Egan
Motion Call: X

### AMENDED THIRD PARTY COMPLANT FOR CONTRIBUTION - EVELYN LAJEUNESSE, AS INDEPENDENT EXECUTOR OF THE ESTATE OF HENRY LAJEUNESSE

NOW COME defendants, FORD MOTOR COMPANY ("Ford"), and BILL KAY FORD,

INC., by and through their attorneys in this regard, John A. Krivicich, Michael J. Borree and

DONOHUE BROWN MATHEWSON & SMYTH LLC, for their third party complaint for

contribution against third-party defendant EVELYN LaJEUNESE, as Independent Executor of the

Estate of HENRY LaJEUNESSE, deceased, stating as follows:


EXHIBIT G

1.     Plaintiff, EVELYN LaJEUNESSE, has filed a complaint against Ford et al, alleging strict liability against Ford with respect to a vehicle accident that allegedly occurred on August 10, 2005 involving a certain 2004 Ford Focus.  Defendants Ford and Bill Kay Ford, Inc. have now denied all material allegations of the Plaintiff's complaint.

2.     On August 10, 2005, third-party defendant's decedent, HENRY LaJEUNESSE, had a duty of care as the operator of his automobile for his own safety and for the safety of persons in his vehicle, including plaintiff.  In derogation of that duty, third-party defendant's decedent HENRY LaJEUNESSE was negligent in the operation of said vehicle in one or more of the following respects:

      (a)     Failed to keep his vehicle in a proper lane of traffic;

      (b)     Failed to brake to avoid a collision;

      (c)     Failed to reduce his speed to avoid a collision;

      (d)     Was otherwise careless and negligent.

3.     As a direct and proximate result of the negligence of third-party defendant's decedent, HENRY LaJEUNESSE, the vehicle he was driving collided with the garage located at 4924 East Circle Drive, Crestwood, Illinois, causing injury to the plaintiff EVELYN LaJEUNESSE's person and the Plaintiff has allegedly sustained economic and non-economic damages of a personal and pecuniary nature, including but not limited to medical expenses and hospital expenses and will continue to incur medical expenses in the future.

4.     On April 22, 2007, HENRY LaJEUNESSE passed away.

5.     On December 10, 2007, EVELYN LaJEUNESSE was appointed Independent Executor of the Estate of HENRY LaJEUNESSE, pursuant to letters of office issued by the Circuit Court of Cook County, Probate Division.

- 2 -

6.     This instant action against third-party defendant, EVELYN LaJEUNESSE, as Independent Executor of the Estate of HENRY LaJEUNESSE, deceased, is brought pursuant to the provisions of 735 ILCS 5/13-209(c).

6.     In the event that Ford and/or Bill Kay Ford, Inc. are found liable to the plaintiff, EVELYN LaJEUNESSE, which liability is specifically denied, then it will only be as a direct and proximate result of one or more of the aforesaid negligent and/or careless acts committed by third-party defendant EVELYN LaJEUNESSE's decedent, HENRY LaJEUNESSE.

7.     Pursuant to 740 ILCS 100/0.01, on August 10, 2005, and at all other relevant times, there existed a right of contribution among joint tortfeasors in the State of Illinois. In the event that Ford and/or Bill Kay Ford, Inc. are found liable to the plaintiff and required to pay more than their pro rata share of liability, which liability is expressly denied, then Ford is entitled to recovery from EVELYN LaJEUNESSE, as Independent Executor of the Estate of HENRY LaJEUNESSE, deceased, by way of contribution in such an amount as is commensurate with the relative degree of culpability or fault attributable to the third-party defendant's decedent, HENRY LaJEUNESSE.

8.     Ford and Bill Kay Ford, Inc. assert this counterclaim for contribution in the alternative, and specifically deny all allegations of wrongdoing contained in the Plaintiff's complaint, and by asserting this counterclaim for contribution, in no way admit any liability for plaintiff's damages or the truth of any averments as to plaintiff.

WHEREFORE, Third-Party Plaintiffs FORD MOTOR COMPANY and BILL KAY FORD, INC. pray that if judgment is entered in favor of the plaintiff and against Ford and or Bill Kay Ford, Inc., under the complaint in this matter, that judgment then be entered against third-party defendant EVELYN LaJEUNESSE, as Independent Administrator of the Estate of HENRY LaJEUNESSE, in

- 3 -

an amount equal to the relative share of the fault attributable to the third-party defendant's decedent's acts and/or omissions.

**DEFENDANT/THIRD-PARTY PLAINTIFFS DEMAND TRIAL BY JURY.**

DONOHUE BROWN MATHEWSON & SMYTH LLC

By: _____

John A. Krivicich

I.D. #32878
DONOHUE BROWN MATHEWSON & SMYTH LLC
John A. Krivicich
Michael J. Borree
140 South Dearborn Street, Suite 800
Chicago, IL 60603
Telephone:    (312) 422-0900
Facsimile:    (312) 422-0909

- 4 -

## Michael Borree

| | |
|---|---|
| **From:** | Nancy Hayes [Nhayes@corboydemetrio.com] on behalf of Shawn S Kasserman [Ssk@corboydemetrio.com] |
| **Sent:** | Friday, January 04, 2008 9:23 AM |
| **To:** | Michael Borree |
| **Subject:** | RE: LaJeunesse v. Ford |

Mr. Borree,

Shawn will accept service of the third party amended complaint on behalf of Evenlyn LaJeunesse.

Nancy Hayes
Assistant to Shawn Kasserman
Corboy & Demetrio

---

**From:** Michael Borree [mailto:borree@dbmslaw.com]
**Sent:** Friday, January 04, 2008 8:18 AM
**To:** Shawn S Kasserman
**Cc:** John Krivicich
**Subject:** LaJeunesse v. Ford

Shawn,
I left you a brief voice message this morning regarding this case. John Krivicich and I received your letter of December 18, 2007, enclosing the letters of office appointing Evelyn LaJeunesse as executor for her husband Henry's estate. We will be moving to file an amended third-party complaint, naming Evelyn as third-party defendant in her capacity as executor of Henry's estate. Under the governing statute, (735 ILCS 5/13-209), service upon her in this capacity is required. Will you accept service of the amended third-party complaint on her behalf?

Thanks.
Mike

Michael J. Borree
Donohue Brown Mathewson & Smyth, LLC
140 South Dearborn, Suite 800
Chicago, IL 60603
Tel   (312) 422-4802
Fax  (312) 422-0909
michael.borree@dbmslaw.com



1/4/2008

070568.72

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - LAW DIVISION

EVELYN LaJEUNESSE,

                Plaintiff,

    v.

FORD MOTOR COMPANY, a corporation, and
BILL KAY FORD, INC., a corporation,

                Defendants,

**AND**

FORD MOTOR COMPANY and BILL KAY FORD,
INC.,

                Third-Party Plaintiffs,

    v.

EVELYN LaJEUNESSE, as Independent Executor of
the Estate of HENRY LaJEUNESSE, deceased,

                Third-Party Defendant.

No.  07 L 8251
Judge James D. Egan
Motion Call: X

## <u>ORDER</u>

THIS CASE COMING TO BE HEARD on Third Party Plaintiffs' motion, pursuant to ILCS

5/13-209(c), to file Amended Third Party Complaint, notice having been given and the Court being

advised in the premises,

**IT IS HEREBY ORDERED**:

    1.    Said Motion is GRANTED; and

    2.    Leave is given to Third Party Plaintiffs to file their Amended Third Party

Complaint, service of same to be made on counsel for Evelyn LaJeunesse.

                ENTERED:

By:   _____

          JUDGE

I.D. #32878
DONOHUE BROWN MATHEWSON & SMYTH LLC
John A. Krivicich
Michael J. Borree
140 South Dearborn Street, Suite 800
Chicago, IL  60603
Telephone:    (312) 422-0900
Facsimile:    (312) 422-0909

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

_La Jounesse_

v.                                    Plaintiff(s)          Case No. _07 L 8251_

_Ford_

                                      Defendant(s)          Motion Call " _X_ " Line #: _24_

## MASTER CALENDAR MOTION COURTROOMS CASE MANAGEMENT ORDER
### (Please check off all pertinent paragraphs and circle proper party name.)

(8230) _____ 1. Category #1 (18 Month Discovery)          (8232) _____ 1a. Category #2 (28 Month Discovery)

(4296) _X_ 2. Written discovery & 213(f)(1) and (2) disclosures to be completed by _7/28/08_ ;

(4218) _____ 3. Oral Discovery & 213(f)(1) and (2) depositions to be completed by _____ ;

(4218) _____ 4. Treating physicians depositions to be completed by _____ ;

(4288) _____ 5. Subpoenas for treating physicians depositions to be issued by _____ ;

(4296) _____ 6. _____ shall complete outstanding written discovery by _____ ;

(4218) _____ 7. _____ shall be presented for deposition by _____ ;

(4206) _____ 8. Plaintiff/Defendant/Add. Party shall answer 213 (f)(3) interrogatories by _____ ;

(4218) _____ 9. Plaintiff's 213(f)(3) witnesses to be deposed by _____ ;

(4218) _____ 10. Defendant's 213(f)(3) witnesses to be deposed by _____ ;

(4218) _____ 11. Additional party's 213(f)(3) witnesses to be deposed by _____ ;

(4619) _X_ 12. The matter is continued for subsequent Case Management Conference on _March 10, 2008_
       at _10:30_ AM/PM in Room _2205_ for:
       (A) ___ Proper Service   (B) ___ Appearance of Defendants   (C) ___ Case Value
       (D) ___ Pleading Status  (E) ___ Discovery Status           (F) ___ Pre-Trial/Settlement
       (G) _X_ Other: _Plaintiff to complete deposition of Defendant Kay's Service_
       _Manager By 2/28/08_

(4005) _____ 13. Case is dismissed for want of prosecution.(4040) _____ The case is voluntarily dismissed under
       735 ILCS 5/2-1009.

**NOTICE:**

* Failure of any party to comply with this Case Management Order will be a basis for Rule 219(c) sanctions.
* Failure of any party to enforce this Case Management Order
  will constitute a waiver of such discovery by that party.
* All cases arriving on the Trial Call in Courtroom 2005 must
  have all discovery in Lines 2 through 11 completed.
* A copy of this order is to be sent to each party by his/her counsel
  within 10 (ten) days of the initial Case Management Date.

Atty. No.: _32878_

Name: _DBMS / Brian Corby_

Atty. for: _△_

Address: _140 S Dearborn, Suite 800_

City/State/Zip: _Chicago, IL 60603_

Telephone: _312-422-0900_

JUDGE JAMES D. EGAN    FEB 07 2008

                                            Judge's Stamp

ENTERED:

_____    _____
Judge              Judge's No.

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Evelyn La Jeunese
plaintiff ;
Third party defendant

v.

No. 07 L 8251

Ford Motor Co; Bill Kay Ford

Defendants ;
Third Party Plaintiffs

### ORDER

This Cause Coming to be heard on Bill Kay Ford Inc's Motion To Extend Time for Deposition of Bill Kay Ford, Inc. Service Manager, parties present and the Court fully Advised in the premises, IT IS HEREBY ORDERED:

① Motion to Extend Time for Deposition of Bill Kay Ford Service Manager is granted;

② Case management scheduled on March 10, 2008 is hereby Stricken and continued to April 21, 2008 at 1000 Am and case in Ct Rm 2205.

Atty. No.: 32878

Name: Donohue Brown Mathewson Smyth

Atty. for: Ford & Bill Kay Ford

Address: 140 S. Dearborn Ste 800

City/State/Zip: CHICAGO IL 60603

Telephone: (312) 422-0900

ENTERED:

Dated: _____ , _____

JUDGE JAMES D. EGAN    FEB 19 2008

_____
Judge                    Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

070568.84

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT - LAW DIVISION

EVELYN LaJEUNESSE,

        Plaintiff,

  v.

FORD MOTOR COMPANY, a corporation,
and BILL KAY FORD, INC., a corporation,

Defendants

AND

FORD MOTOR COMPANY and BILL
KAY FORD, INC.,

        Third-Party Plaintiffs,

  v.

EVELYN LaJEUNESSE, as Independent
Executor of the Estate of HENRY
LaJEUNESSE, deceased,

        Third-Party Defendant.

No.  07 L 8251
Judge James D. Egan
Motion Call: X



## MOTION TO EXTEND TIME FOR DEPOSITION OF BILL KAY FORD, INC. SERVICE MANAGER

      Defendant, BILL KAY FORD, INC., by its attorneys, moves the Court for an order extending

the time for completion of the deposition of Brian Reeves, Service Manager, Bill Kay Ford, by

twenty-eight (28) days to and including April 3, 2008. In support of this motion, defendant states as

follows:

      1.     At the court-ordered case management conference on February 7, 2008, plaintiff

requested the deposition of Brian Reeves, Service Manager, Bill Kay Ford before responding to Bill

Kay Ford, Inc.'s pending motion for summary judgment. The Court ordered that that deposition proceed on or before February 28, 2008, and continued the case management conference to March 10, 2008 at 10:30 a.m.

2.　　Counsel for defendants Ford Motor Company and Bill Kay Ford was unable to personally attend the February 7, 2008 case management conference, and therefore unable to inform the Court that counsel presently has scheduled depositions or is out-of-town, and therefore unavailable, on February 14, 15, 18, 19, 21, 22, 25, 26, 27 and 28.

**WHEREFORE**, defendant BILL KAY FORD, INC., requests an extension of time of an additional twenty-eight (28) days, from February 28, 2008 to and including April 3, 2008, to produce Mr. Reeves for discovery deposition. Defendant further requests that the case management conference set for March 10, 2008 at 10:30 a.m., be continued to that date or after for the purpose of setting a briefing schedule on defendant Bill Kay Ford, Inc.'s motion for summary judgment.

BILL KAY FORD, INC.

By: _____
One of Its Attorneys

I.D. #32878
DONOHUE BROWN MATHEWSON & SMYTH LLC
John A. Krivicich
Michael J. Borree
140 South Dearborn Street, Suite 800
Chicago, IL 60603
Telephone:　(312) 422-0900
Facsimile:　(312) 422-0909

- 2 -

Order                                                          CCG N002-300M-2/24/05 (                    )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Evelyn LaJeunesse

v.                                          No.  07 L 9251

Ford Motor Co. & Bill Kay Ford
                    Defendants and
              Third party plaintiffs

### ORDER

This matter before the Court for Case Management It Is Hereby Ordered:
1. Discovery on defendants Motion for Summary Judgment shall be completed by Jun 10, 200
2. The matter is continued until June 10, 2008 @ 10⁵⁵ for further case management
3. The case management date of April 24th 2008 at 10⁰⁰ Am is stricken
4. Plaintiff is granted leave of Court to File an amended Complaint adding Evelyn LaJeunesse as Independent Administrator of the Estate of Henry LaJeunesse as a party plaintiff, inclunter
5. Third-party defendant Evelyn LaJeunesse, independent administrator of the Estate of Henry La Jeunesse is granted 28 days to file an answer to the Third Party Complaint
6. Evelyn LaJeunesse shall answer outstanding written discovery w/in 28 days

Atty. No.:  02329

Name:  Kazserich

Atty. for:  TT

Address:  33 N. Dearborn

City/State/Zip:  Ch10/Illinois

Telephone:  712 346-3191

ENTERED:

Dated:

**ENTERED**
JUDGE JAMES EGAN-1522
APR 21 2008
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Judge                                          Judge's No.

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

070568.114

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT - LAW DIVISION

EVELYN LaJEUNESSE, Individually and as
Independent Administrator of the Estate of
HENRY LaJEUNESSE, deceased,

    Plaintiff,

        v.

FORD MOTOR COMPANY, a corporation,
and BILL KAY FORD, INC., a corporation,

Defendants/Counter-Plaintiffs,

        v.

EVELYN LaJEUNESSE, as Independent
Administrator of the Estate of HENRY
LaJEUNESSE, deceased,

Counter-Defendant.

08CV4436
JUDGE CASTILLO
MAGISTRATE JUDGE NOLAN

PH

No.  07 L 8251
Judge James D. Egan
Motion Call: X

## DEFENDANTS' ANSWERS, AFFIRMATIVE DEFENSES AND COUNTERCLAIM FOR
## CONTRIBUTION TO PLAINTIFF'S SECOND AMENDED COMPLAINT AT LAW

      Defendants, FORD MOTOR COMPANY and BILL KAY FORD, INC., by their attorneys,

answers Plaintiff's Second Amended Complaint at Law as follows:

### COUNT I



**Strict Liability/Ford/Personal Injury/Evelyn LaJeunesse**

      1.     Prior to 2005, defendant, FORD, designed, manufactured and sold a 2004 Ford

Focus.

**ANSWER:**    Defendants admit that Ford designed, manufactured and sold a 2004 Ford Focus
                model, but denies the remaining allegations contained in paragraph 1, Count I of
                plaintiff's Second Amended Complaint at Law.

2.      At the time defendant, FORD, designed, manufactured and sold the 2004 Ford Focus,

defendant, FORD, knew or should have known the vehicle was susceptible to sudden acceleration.

**ANSWER:**    Defendants deny each and every allegation contained in paragraph 2, Count I of
plaintiff's Second Amended Complaint at Law.

3.      On August 10, 2005, plaintiff, EVELYN LaJEUNESSE, was a passenger in the front

seat of a 2004 Ford Focus which, without driver intent, suddenly accelerated in a parking lot at the

Crestwood Mall in Crestwood, Cook County, Illinois.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to
where Evelyn LaJeunesse was seated. Further answering, defendants deny each
and every remaining allegation contained in paragraph 3, Count I of plaintiff's
Second Amended Complaint at Law.

4.      On August 10, 2005, the 2004 Ford Focus struck a wall as a result of the unexpected,

sudden acceleration.

**ANSWER:**    Defendants deny each and every allegation contained in paragraph 4, Count I of
plaintiff's Second Amended Complaint at Law.

5.      On August 10, 2005, after striking the wall head-on, the airbag for the front seat

passenger failed to deploy in the 2004 Ford Focus.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to
the truth or falsity of the allegations contained in paragraph 5 of Count I of the
plaintiff's Second Amended Complaint at Law, and therefore said allegations are
denied.

6.      On August 10, 2005, and when it left the control of defendant, FORD, the 2004 Ford

Focus in which plaintiff, EVELYN LaJEUNESSE, was a passenger, was unreasonably dangerous in

one or more of the following respects:

       a.      the throttle would stick causing sudden, unintended acceleration;

- 2 -

    b.    the actuator cables for the cruise control would become entrapped causing sudden, unintended acceleration;

    c.    the cruise control system appears to be "off" when it is, in fact, "on";

    d.    the electrical system failed to guard against or caused sudden unintended acceleration;

    e.    the car would unexpectedly, suddenly accelerate without the driver intending it;

    f.    the airbags failed to deploy in a frontal impact;

    g.    the seatbelts failed to properly restrain the front seat passengers in a frontal impact.

**ANSWER:**    Defendants deny each and every allegation contained in paragraph 6, Count I of plaintiff's Second Amended Complaint at Law, including sub-paragraphs a through g.

7.    As a proximate result of one or more of these unreasonably dangerous conditions,

plaintiff, EVELYN LaJEUNESSE, suffered injuries of a personal, pecuniary and permanent nature.

**ANSWER:**    Defendants deny each and every allegation contained in paragraph 7, Count I of plaintiff's Second Amended Complaint at Law.

**WHEREFORE,** Defendants deny that the plaintiff is entitled to judgment in any sum

whatsoever, and prays for judgment in their favor, with costs assessed against the plaintiff.

## COUNT II

**Negligence/Ford/Personal Injury/Evelyn LaJeunesse**

1.    Prior to 2005, defendant, FORD, designed, manufactured and sold a 2004 Ford Focus.

**ANSWER:**    Defendants admit that Ford designed, manufactured and sold a 2004 Ford Focus model, but denies the remaining allegations contained in paragraph 1, Count II of plaintiff's Second Amended Complaint at Law.

- 3 -

2.    At the time defendant, FORD, designed, manufactured and sold the 2004 Ford Focus,

defendant, FORD, knew or should have known the vehicle was susceptible to sudden acceleration.

**ANSWER:**    Defendants deny the allegations contained in paragraph 2, Count II of plaintiff's
Second Amended Complaint at Law.

3.    On August 10, 2005, plaintiff, EVELYN LaJEUNESSE, was a passenger in the front

seat of a 2004 Ford Focus which, without driver intent, suddenly accelerated in a parking lot at the

Crestwood Mall in Crestwood, Cook County, Illinois.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to
where Evelyn LaJeunesse was seated. Further answering, defendants deny each
and every remaining allegation contained in paragraph 3, Count II of plaintiff's
Second Amended Complaint at Law.

4.    On August 10, 2005, the 2004 Ford Focus struck a wall as a result of the unexpected,

sudden acceleration.

**ANSWER:**    Defendants deny the allegations contained in paragraph 4, Count II of plaintiff's
Second Amended Complaint at Law.

5.    On August 10, 2005, after striking the wall head-on, the airbag for the front seat

passenger failed to deploy in the 2004 Ford Focus.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the
truth or falsity of the allegations contained in paragraph 5 of Count II of the plaintiff's
Second Amended Complaint at Law, and therefore said allegations are denied.

6.    On and before August 10, 2005, FORD was negligent in one or more of the following

respects:

    a.    designed, manufactured, distributed and sold a 2004 Ford Focus with a
throttle that would stick causing sudden, unintended acceleration;

    b.    designed, manufactured, distributed and sold a 2004 Ford Focus with
actuator cables for the cruise control that would become entrapped causing

- 4 -

sudden, unintended acceleration;

c.     designed, manufactured, distributed and sold a 2004 Ford Focus with a cruise control system that appeared to be "off" when it was, in fact, "on";

d.     designed, manufactured, distributed and sold a 2004 Ford Focus with a faulty electrical system to protect against sudden acceleration;

e.     designed, manufactured, distributed and sold a 2004 Ford Focus that would unexpectedly, suddenly accelerate without the driver intending it;

f.     designed, manufactured, distributed and sold a 2004 Ford Focus with airbags that failed to deploy in a frontal impact;

g.     designed, manufactured, distributed and sold a 2004 Ford Focus with seatbelts that failed to properly restrain the front seat passenger in a frontal impact.

**ANSWER:**    Defendants deny each and every allegation contained in paragraph 6, Count II of plaintiff's Second Amended Complaint at Law, including sub-paragraphs a through g.

7.     As a proximate result of one or more of these acts or omissions, plaintiff, EVELYN LaJEUNESSE, suffered injuries of a personal, pecuniary and permanent nature.

**ANSWER:**    Defendants deny the allegations contained in paragraph 7, Count II of plaintiff's Second Amended Complaint at Law.

**WHEREFORE,** Defendants deny that the plaintiff is entitled to judgment in any sum whatsoever, and prays for judgment in their favor, with costs assessed against the plaintiff.

## COUNT III

### Negligence/Bill Kay Ford/Personal Injury/Evelyn LaJeunesse

1.     Prior to August 10, 2005, defendant, BILL KAY FORD, sold a 2004 Ford Focus to Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 1 of Count III of the

- 5 -

plaintiff's Second Amended Complaint at Law, and therefore said allegations are denied.

2.    At the time defendant, BILL KAY FORD, sold the 2004 Ford Focus to Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE, it knew or should have known the 2004 Ford Focus had a propensity for sudden, unexpected acceleration, and/or the airbags not deploying in a frontal collision.

**ANSWER:**    Defendants deny the allegations contained in paragraph 2 of Count III of plaintiff's Second Amended Complaint at Law.

3.    On August 10, 2005, plaintiff, EVELYN LaJEUNESSE, was a passenger in the 2004 Ford Focus sold by defendant, BILL KAY FORD, which, without driver intent, suddenly accelerated in a parking lot at the Crestwood Mall in Crestwood, Cook County, Illinois.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to where Evelyn LaJeunesse was seated.  Further answering, defendants deny each and every remaining allegation contained in paragraph 3, Count III of plaintiff's Second Amended Complaint at Law.

4.    On August 10, 2005, the 2004 Ford Focus struck a wall as a result of the unexpected, sudden acceleration and the airbags failed to deploy.

**ANSWER:**    Defendants deny the allegations contained in paragraph 4 of Count III of plaintiff's Second Amended Complaint at Law.

5.    On and before August 10, 2005, defendant, BILL KAY FORD, was negligent in one or more respects:

        a.    failed to inform Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE, that the 2004 Ford Focus had a propensity for sudden, unexpected acceleration before selling the car to them;

        b.    failed to inform Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE, that the 2004 Ford Focus had a propensity for sudden, unexpected acceleration after selling the car to them;

- 6 -

c.      failed to discover the 2004 Ford Focus had a propensity to suddenly and
        unexpectedly accelerate;

d.      failed to warn Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE,
        that the airbags were known not to deploy in certain frontal impacts.

**ANSWER:**      Defendants deny each and every allegation contained in paragraph 5 of Count III
                 of the plaintiff's Second Amended Complaint at Law, including subparagraphs (a)
                 through (d) thereof.

6.      As a proximate result of one or more of the aforesaid negligent acts and/or omissions
of defendant, BILL KAY FORD, Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE,
purchased and continued to use the 2004 Ford Focus until it suddenly, unexpectedly accelerated and
struck a wall without the airbags deploying, causing injuries to plaintiff, EVELYN LaJEUNESSE, of
a personal, pecuniary and permanent nature.

**ANSWER:**      Defendants deny each and every allegation contained in paragraph 6 of Count III
                 of the plaintiff's Second Amended Complaint at Law.

7.      Had Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE, been informed by
defendant, BILL KAY FORD, of the propensity of the 2004 Ford Focus to suddenly, unexpectedly
accelerate and/or that the airbags would not deploy in a frontal impact, they would not have
purchased it.

**ANSWER:**      Defendants deny each and every allegation contained in paragraph 7 of Count III
                 of the plaintiff's Second Amended Complaint at Law.

**WHEREFORE**, Defendants deny that the plaintiff is entitled to judgment in any sum
whatsoever, and prays for judgment in their favor, with costs assessed against the plaintiff.

## COUNT IV

### Strict Liability/Ford/Survival Action/Estate of Henry LaJeunesse

- 7 -

1.    Prior to 2005, defendant, FORD, designed, manufactured and sold a 2004 Ford

Focus.

**ANSWER:**    Defendants admit that Ford designed, manufactured and sold a 2004 Ford Focus
model, but denies the remaining allegations contained in paragraph 1, Count IV of
plaintiff's Second Amended Complaint at Law.

2.    At the time defendant, FORD, designed, manufactured and sold the 2004 Ford Focus,

defendant, FORD, knew or should have known the vehicle was susceptible to sudden acceleration.

**ANSWER:**    Defendants deny the allegations contained in paragraph 2, Count IV of plaintiff's
Second Amended Complaint at Law.

3.    On August 10, 2005, plaintiffs decedent, HENRY LaJEUNESSE, operated a 2004

Ford Focus which, without driver intent, suddenly accelerated in a parking lot at the Crestwood Mall

in Crestwood, Cook County, Illinois.

**ANSWER:**    Defendants deny the allegations contained in paragraph 3, Count IV of plaintiff's
Second Amended Complaint at Law.

4.    On August 10, 2005, the 2004 Ford Focus struck a wall as a result of the unexpected,

sudden acceleration.

**ANSWER:**    Defendants deny the allegations contained in paragraph 4, Count IV of plaintiff's
Second Amended Complaint at Law.

5.    On August 10, 2005, after striking the wall head-on, the airbag for the front seat

driver failed to deploy in the 2004 Ford Focus.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to
the truth or falsity of the allegations contained in paragraph 5 of Count IV of the
plaintiff's Second Amended Complaint at Law, and therefore said allegations are
denied.

- 8 -

6.    On August 10, 2005, and when it left the control of defendant, FORD, the 2004 Ford Focus operated by plaintiff's decedent, HENRY LaJEUNESSE, was unreasonably dangerous in one or more of the following respects:

a.    the throttle would stick causing sudden, unintended acceleration;

b.    the actuator cables for the cruise control would become entrapped causing sudden, unintended acceleration;

c.    the cruise control system appears to be "off" when it is, in fact, "on";

d.    the electrical system failed to guard against or caused sudden unintended acceleration;

e.    the car would unexpectedly, suddenly accelerate without the driver intending it;

f.    the airbags failed to deploy in a frontal impact;

g.    the seatbelts failed to properly restrain the front seat passengers in a frontal impact.

**ANSWER:**    Defendants deny the allegations contained in paragraph 6, Count IV of plaintiff's Second Amended Complaint at Law, including subparagraphs (a) through (g).

7.    HENRY LaJEUNESSE died on April 22, 2007, and his wife, EVELYN LaJEUNESSE, brings this action on behalf of his estate.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 7 of Count IV of the plaintiff's Second Amended Complaint at Law, and therefore said allegations are denied.

8.    Had he survived, HENRY LaJEUNESSE would have been entitled to bring an action on his own behalf and this action survives him pursuant to 755 Illinois Compiled Statutes 5/27-6,

commonly known as the Survival Act, and EVELYN LaJEUNESSE, Independent Administrator of

the Estate of HENRY LaJEUNESSE, deceased, brings this action pursuant to that statute.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 8 of Count IV of the plaintiff's Second Amended Complaint at Law, and therefore said allegations are denied.

**WHEREFORE**, Defendants deny that the plaintiff is entitled to judgment in any sum

whatsoever, and prays for judgment in their favor, with costs assessed against the plaintiff.

## COUNT V

### Negligence/Ford/Survival Action/Estate of Henry LaJeunesse

1.    Prior to 2005, defendant, FORD, designed, manufactured and sold a 2004 Ford

Focus.

**ANSWER:**    Defendants admit that Ford designed, manufactured and sold a 2004 Ford Focus model, but denies the remaining allegations contained in paragraph 1, Count V of plaintiff's Second Amended Complaint at Law.

2.    At the time defendant, FORD, designed, manufactured and sold the 2004 Ford Focus,

defendant, FORD, knew or should have known the vehicle was susceptible to sudden acceleration.

**ANSWER:**    Defendants deny the allegations contained in paragraph 2, Count V of plaintiff's Second Amended Complaint at Law.

3.    On August 10, 2005, plaintiff's decedent, HENRY LaJEUNESSE, operated a 2004

Ford Focus which, without driver intent, suddenly accelerated in a parking lot at the Crestwood Mall

in Crestwood, Cook County, Illinois.

**ANSWER:**    Defendants deny the allegations contained in paragraph 3, Count V of plaintiff's Second Amended Complaint at Law.

4.      On August 10, 2005, the 2004 Ford Focus struck a wall as a result of the unexpected,

sudden acceleration.

**ANSWER:**    Defendants deny the allegations contained in paragraph 4, Count V of plaintiff's
Second Amended Complaint at Law.

5.      On August 10, 2005, after striking the wall head-on, the airbag for the front seat

driver failed to deploy in the 2004 Ford Focus.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to
the truth or falsity of the allegations contained in paragraph 5 of Count V of the
plaintiff's Second Amended Complaint at Law, and therefore said allegations are
denied.

6.      On and before August 10, 2005, FORD was negligent in one or more of the following

respects:

a.    designed, manufactured, distributed and sold a 2004 Ford Focus with a
throttle that would stick causing sudden, unintended acceleration;

b.    designed, manufactured, distributed and sold a 2004 Ford Focus with
actuator cables for the cruise control that would become entrapped causing
sudden, unintended acceleration;

c.    designed, manufactured, distributed and sold a 2004 Ford Focus with a
cruise control system that appeared to be "off' when it was, in fact, "on";

d.    designed, manufactured, distributed and sold a 2004 Ford Focus with a
faulty electrical system to protect against sudden acceleration;

e.    designed, manufactured, distributed and sold a 2004 Ford Focus that
would unexpectedly, suddenly accelerate without the driver intending it;

f.    designed, manufactured, distributed and sold a 2004 Ford Focus with
airbags that failed to deploy in a frontal impact;

g.    designed, manufactured, distributed and sold a 2004 Ford Focus with
seatbelts that failed to properly restrain the front seat passenger in a frontal
impact.

**ANSWER:**    Defendants deny the allegation contained in paragraph 6, Count V of plaintiff's Second Amended Complaint at Law including subparagraphs (a) through (g).

7.    HENRY LaJEUNESSE died on April 22, 2007, and his wife, EVELYN LaJEUNESSE, brings this action on behalf of his estate.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 7 of Count V of the plaintiff's Second Amended Complaint at Law, and therefore said allegations are denied.

8.    Had he survived, HENRY LaJEUNESSE would have been entitled to bring an action on his own behalf and this action survives him pursuant to 755 Illinois Compiled Statutes 5/27-6, commonly known as the Survival Act, and EVELYN LaJEUNESSE, Independent Administrator of the Estate of HENRY LaJEUNESSE, deceased, brings this action pursuant to that statute.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 8 of Count V of the plaintiff's Second Amended Complaint at Law, and therefore said allegations are denied.

**WHEREFORE**, Defendants deny that the plaintiff is entitled to judgment in any sum whatsoever, and prays for judgment in their favor, with costs assessed against the plaintiff.

## COUNT VI

### Strict Liability/Ford/Wrongful Death/Estate of Henry LaJeunesse

1.    Prior to 2005, defendant, FORD, designed, manufactured and sold a 2004 Ford Focus.

**ANSWER:**    Defendants admit that Ford designed, manufactured and sold a 2004 Ford Focus model, but denies the remaining allegations contained in paragraph 1, Count VI of plaintiff's Second Amended Complaint at Law.

- 12 -

2.    At the time defendant, FORD, designed, manufactured and sold the 2004 Ford Focus, defendant, FORD, knew or should have known the vehicle was susceptible to sudden acceleration.

**ANSWER:**    Defendants deny the allegations contained in paragraph 2, Count VI of plaintiff's Second Amended Complaint at Law.

3.    On August 10, 2005, plaintiff's decedent, HENRY LaJEUNESSE, operated a 2004 Ford Focus which, without driver intent, suddenly accelerated in a parking lot at the Crestwood Mall in Crestwood, Cook County, Illinois.

**ANSWER:**    Defendants deny the allegations contained in paragraph 3, Count VI of plaintiff's Second Amended Complaint at Law.

4.    On August 10, 2005, the 2004 Ford Focus struck a wall as a result of the unexpected, sudden acceleration.

**ANSWER:**    Defendants deny the allegations contained in paragraph 4, Count VI of plaintiff's Second Amended Complaint at Law.

5.    On August 10, 2005, after striking the wall head-on, the airbag for the front seat driver failed to deploy in the 2004 Ford Focus.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 8 of Count V of the plaintiff's Second Amended Complaint at Law, and therefore said allegations are denied.

6.    On August 10, 2005, and when it left the control of defendant, FORD, the 2004 Ford Focus operated by plaintiff's decedent, HENRY LaJEUNESSE, was unreasonably dangerous in one or more of the following respects:

      a.    the throttle would stick causing sudden, unintended acceleration;

      b.    the actuator cables for the cruise control would become entrapped causing sudden, unintended acceleration;

- 13 -

    c.     the cruise control system appears to be "off" when it is, in fact, "on";

    d.     the electrical system failed to guard against or caused sudden unintended acceleration;

    e.     the car would unexpectedly, suddenly accelerate without the driver intending it;

    f.     the airbags failed to deploy in a frontal impact;

    g.     the seatbelts failed to properly restrain the front seat passengers in a frontal impact.

**ANSWER:**    Defendants deny the allegations contained in paragraph 6, Count VI of plaintiff's Second Amended Complaint at Law, including subparagraphs (a) through (g).

7.    HENRY LaJEUNESSE died on April 22, 2007, and his wife, EVELYN LaJEUNESSE, brings this action on behalf of his estate.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 7 of Count VI of the plaintiff's Second Amended Complaint at Law, and therefore said allegations are denied.

8.    HENRY LaJEUNESSE left surviving him as his heirs and next of kin: EVELYN LaJEUNESSE, his wife, DONALD LaJEUNESSE, his adult son, and LINDA MELENDEZ, his adult daughter, all of whom sustained pecuniary loss as a result of his death including a loss of love, guidance, affection, companionship and society.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 8 of Count VI of the plaintiff's Second Amended Complaint at Law, and therefore said allegations are denied.

9.    Plaintiff, EVELYN LaJEUNESSE, Independent Administrator of the Estate of HENRY LaJEUNESSE, deceased, brings this cause of action pursuant to 740 Illinois Compiled Statutes 180/1 et seq., commonly known as the Wrongful Death Act.

- 14 -

**ANSWER:**    Defendants deny the allegations contained in paragraph 9, Count VI of plaintiff's Second Amended Complaint at Law.

**WHEREFORE,** Defendants deny that the plaintiff is entitled to judgment in any sum whatsoever, and prays for judgment in their favor, with costs assessed against the plaintiff.

## COUNT VII

### Negligence/Ford/Wrongful Death/Estate of Henry LaJeunesse

1.    Prior to 2005, defendant, FORD, designed, manufactured and sold a 2004 Ford Focus.

**ANSWER:**    Defendants admit that Ford designed, manufactured and sold a 2004 Ford Focus model, but denies the remaining allegations contained in paragraph 1, Count VII of plaintiff's Second Amended Complaint at Law.

2.    At the time defendant, FORD, designed, manufactured and sold the 2004 Ford Focus, defendant, FORD, knew or should have known the vehicle was susceptible to sudden acceleration.

**ANSWER:**    Defendants deny the allegations contained in paragraph 2, Count VII of plaintiff's Second Amended Complaint at Law.

3.    On August 10, 2005, plaintiffs decedent, HENRY LaJEUNESSE, operated a 2004 Ford Focus which, without driver intent, suddenly accelerated in a parking lot at the Crestwood Mall in Crestwood, Cook County, Illinois.

**ANSWER:**    Defendants deny the allegations contained in paragraph 3, Count VII of plaintiff's Second Amended Complaint at Law.

4.    On August 10, 2005, the 2004 Ford Focus struck a wall as a result of the unexpected, sudden acceleration.

**ANSWER:**    Defendants deny the allegations contained in paragraph 4, Count VII of plaintiff's Second Amended Complaint at Law.

5.    On August 10, 2005, after striking the wall head-on, the airbag for the front seat

driver failed to deploy in the 2004 Ford Focus.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to
the truth or falsity of the allegations contained in paragraph 5 of Count VII of the
plaintiff's Second Amended Complaint at Law, and therefore said allegations are
denied.

6.    On and before August 10, 2005, FORD was negligent in one or more of the following

respects:

       a.    designed, manufactured, distributed and sold a 2004 Ford Focus with a
throttle that would stick causing sudden, unintended acceleration;

       b.    designed, manufactured, distributed and sold a 2004 Ford Focus with
actuator cables for the cruise control that would become entrapped causing
sudden, unintended acceleration;

       c.    designed, manufactured, distributed and sold a 2004 Ford Focus with a
cruise control system that appeared to be "off" when it was, in fact, "on";

       d.    designed, manufactured, distributed and sold a 2004 Ford Focus with a
faulty electrical system to protect against sudden acceleration;

       e.    designed, manufactured, distributed and sold a 2004 Ford Focus that
would unexpectedly, suddenly accelerate without the driver intending it;

       f.    designed, manufactured, distributed and sold a 2004 Ford Focus with
airbags that failed to deploy in a frontal impact;

       g.    designed, manufactured, distributed and sold a 2004 Ford Focus with
seatbelts that failed to properly restrain the front seat passengers in a
frontal impact.

**ANSWER:**    Defendants deny the allegations contained in paragraph 6, Count VII of plaintiff's
Second Amended Complaint at Law, including subparagraphs (a) through (g).

7.    HENRY LaJEUNESSE died on April 22, 2007, and his wife, EVELYN

LaJEUNESSE, brings this action on behalf of his estate.

- 16 -

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 7 of Count VII of the plaintiff's Second Amended Complaint at Law, and therefore said allegations are denied.

8.    HENRY LaJEUNESSE left surviving him as his heirs and next of kin: EVELYN

LaJEUNESSE, his wife, DONALD LaJEUNESSE, his adult son, and LINDA MELENDEZ, his

adult daughter, all of whom sustained pecuniary loss as a result of his death including a loss of love,

guidance, affection, companionship and society.


**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 8 of Count VII of the plaintiff's Second Amended Complaint at Law, and therefore said allegations are denied.

9.    Plaintiff, EVELYN LaJEUNESSE, Independent Administrator of the Estate of

HENRY LaJEUNESSE, deceased, brings this cause of action pursuant to 740 Illinois Compiled

Statutes 180/1 et seq., commonly known as the Wrongful Death Act.

**ANSWER:**    Defendants deny the allegations contained in paragraph 6, Count VII of plaintiff's Second Amended Complaint at Law.

**WHEREFORE,** Defendants deny that the plaintiff is entitled to judgment in any sum

whatsoever, and prays for judgment in their favor, with costs assessed against the plaintiff.

## COUNT VIII

### Negligence Bill Kay Ford/Survival Action/Estate of Henry LaJeunesse

1.    Prior to August 10, 2005, defendant, BILL KAY FORD, sold a 2004 Ford Focus to

Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE.

**ANSWER:**    Defendants admit that Ford designed, manufactured and sold a 2004 Ford Focus model, but denies the remaining allegations contained in paragraph 1, Count VIII

- 17 -

of plaintiff's Second Amended Complaint at Law.

2.    At the time defendant, BILL KAY FORD, sold the 2004 Ford Focus to Henry

LaJeunesse and plaintiff, EVELYN LaJEUNESSE, it knew or should have known the 2004 Ford

Focus had a propensity for sudden, unexpected acceleration, and/or the airbags not deploying in a

frontal collision.

**ANSWER:**    Defendants deny the allegations contained in paragraph 2, Count VIII of plaintiff's
Second Amended Complaint at Law.

3.    On August 10, 2005, plaintiff's decedent, HENRY LaJEUNESSE, operated a 2004

Ford Focus sold by defendant, BILL KAY FORD, which, without driver intent, suddenly accelerated

in a parking lot at the Crestwood Mall in Crestwood, Cook County, Illinois.

**ANSWER:**    Defendants deny the allegations contained in paragraph 3, Count VIII of plaintiff's
Second Amended Complaint at Law.

4.    On August 10, 2005, the 2004 Ford Focus struck a wall as a result of the unexpected,

sudden acceleration and the airbags failed to deploy.

**ANSWER:**    Defendants deny the allegations contained in paragraph 4, Count VIII of plaintiff's
Second Amended Complaint at Law.

5.    On and before August 10, 2005, defendant, BILL KAY FORD, was negligent in one

or more respects:

    a.    failed to inform Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE,
that the 2004 Ford Focus had a propensity for sudden, unexpected
acceleration before selling the car to them;

    b.    failed to inform Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE,
that the 2004 Ford Focus had a propensity for sudden, unexpected
acceleration after selling the car to them;

    c.    failed to discover the 2004 Ford Focus had a propensity to suddenly and
unexpectedly accelerate;

- 18 -

      d.    failed to warn Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE, that the airbags were known not to deploy in certain frontal impacts.

**ANSWER:**    Defendants deny the allegations contained in paragraph 5, Count VIII of plaintiff's Second Amended Complaint at Law including subparagraphs (a) through (d).

    6.    As a proximate result of one or more of the aforesaid negligent acts and/or omissions of defendant, BILL KAY FORD, Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE, purchased and continued to use the 2004 Ford Focus until it suddenly, unexpectedly accelerated and struck a wall without the airbags deploying, causing injuries to plaintiff's decedent, HENRY LaJEUNESSE, of a personal, pecuniary and permanent nature.

**ANSWER:**    Defendants deny the allegations contained in paragraph 6, Count VIII of plaintiff's Second Amended Complaint at Law.

    7.    Had Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE, been informed by defendant, BILL KAY FORD, of the propensity of the 2004 Ford Focus to suddenly, unexpectedly accelerate and/or that the airbags would not deploy in a frontal impact, they would not have purchased it.

**ANSWER:**    Defendants deny the allegations contained in paragraph 7, Count VIII of plaintiff's Second Amended Complaint at Law.

    8.    HENRY LaJEUNESSE died on April 22, 2007, and his wife, EVELYN LaJEUNESSE, brings this action on behalf of his estate.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 8 of Count VIII of the plaintiff's Second Amended Complaint at Law, and therefore said allegations are denied.

    9.    Had he survived, HENRY LaJEUNESSE would have been entitled to bring an action on his own behalf and this action survives him pursuant to 755 Illinois Compiled Statutes 5/27-6,

commonly known as the Survival Act, and EVELYN LaJEUNESSE, Independent Administrator of

the Estate of HENRY LaJEUNESSE, deceased, brings this action pursuant to that statute.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 9 of Count VIII of the plaintiff's Second Amended Complaint at Law, and therefore said allegations are denied.

   **WHEREFORE**, Defendants deny that the plaintiff is entitled to judgment in any sum

whatsoever, and prays for judgment in their favor, with costs assessed against the plaintiff.

## COUNT IX

**Negligence/Bill Kay Ford/Wrongful Death/Estate of Henry LaJeunesse**

   1.    Prior to August 10, 2005, defendant, BILL KAY FORD, sold a 2004 Ford Focus to

Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE.

**ANSWER:** Defendants admit that Ford designed, manufactured and sold a 2004 Ford Focus model, but denies the remaining allegations contained in paragraph 1, Count IX of plaintiff's Second Amended Complaint at Law.

   2.    At the time defendant, BILL KAY FORD, sold the 2004 Ford Focus to Henry

LaJeunesse and plaintiff, EVELYN LaJEUNESSE, it knew or should have known the 2004 Ford

Focus had a propensity for sudden, unexpected acceleration, and/or the airbags not deploying in a

frontal collision.

**ANSWER:** Defendants deny the allegations contained in paragraph 2, Count IX of plaintiff's Second Amended Complaint at Law.

   3.    On August 10, 2005, plaintiff's decedent, HENRY LaJEUNESSE, operated the 2004

Ford Focus sold by defendant, BILL KAY FORD, which, without driver intent, suddenly accelerated

in a parking lot at the Crestwood Mall in Crestwood, Cook County, Illinois.

**ANSWER:** Defendants deny the allegations contained in paragraph 3, Count IX of plaintiff's

- 20 -

Second Amended Complaint at Law.

4.    On August 10, 2005, the 2004 Ford Focus struck a wall as a result of the unexpected,

sudden acceleration and the airbags failed to deploy.

**ANSWER:**    Defendants deny the allegations contained in paragraph 4, Count IX of plaintiff's
Second Amended Complaint at Law.

5.    On and before August 10, 2005, defendant, BILL KAY FORD, was negligent in one

or more respects:

   a.    failed to inform Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE,
         that the 2004 Ford Focus had a propensity for sudden, unexpected
         acceleration before selling the car to them;

   b.    failed to inform Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE,
         that the 2004 Ford Focus had a propensity for sudden, unexpected
         acceleration after selling the car to them;

   c.    failed to discover the 2004 Ford Focus had a propensity to suddenly and
         unexpectedly accelerate;

   d.    failed to warn Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE,
         that the airbags were known not to deploy in certain frontal impacts.

**ANSWER:**    Defendants deny the allegations contained in paragraph 5, Count IX of plaintiff's
Second Amended Complaint at Law including subparagraphs (a) through (d).

6.    As a proximate result of one or more of the aforesaid negligent acts and/or omissions

of defendant, BILL KAY FORD, Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE,

purchased and continued to use the 2004 Ford Focus until it suddenly, unexpectedly accelerated and

struck a wall without the airbags deploying, causing injuries to plaintiff, EVELYN LaJEUNESSE, of

a personal, pecuniary and permanent nature.

**ANSWER:**    Defendants deny the allegations contained in paragraph 6, Count IX of plaintiff's
Second Amended Complaint at Law.

7.    Had Henry LaJeunesse and plaintiff, EVELYN LaJEUNESSE, been informed by defendant, BILL KAY FORD, of the propensity of the 2004 Ford Focus to suddenly, unexpectedly accelerate and/or that the airbags would not deploy in a frontal impact, they would not have purchased it.

**ANSWER:**    Defendants deny the allegations contained in paragraph 7, Count IX of plaintiff's Second Amended Complaint at Law.

8.    HENRY LaJEUNESSE died on April 22, 2007, and his wife, EVELYN LaJEUNESSE, brings this action on behalf of his estate.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 8 of Count IX of the plaintiff's Second Amended Complaint at Law, and therefore said allegations are denied.

9.    HENRY LaJEUNESSE left surviving him as his heirs and next of kin: EVELYN LaJEUNESSE, his wife, DONALD LaJEUNESSE, his adult son, and LINDA MELENDEZ, his adult daughter, all of whom sustained pecuniary loss as a result of his death including a loss of love, guidance, affection, companionship and society.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 9 of Count IX of the plaintiff's Second Amended Complaint at Law, and therefore said allegations are denied.

10.    Plaintiff, EVELYN LaJEUNESSE, Independent Administrator of the Estate of HENRY LaJEUNESSE, deceased, brings this cause of action pursuant to 740 Illinois Compiled Statutes 180/1 et seq., commonly known as the Wrongful Death Act.

**ANSWER:**    Defendants deny the allegations contained in paragraph 10, Count IX of plaintiff's Second Amended Complaint at Law.

**WHEREFORE,** Defendants deny that the plaintiff is entitled to judgment in any sum

whatsoever, and prays for judgment in their favor, with costs assessed against the plaintiff.

## AFFIRMATIVE DEFENSES TO COUNTS I - III

### FIRST AFFIRMATIVE DEFENSE

1.    On information and belief, plaintiff EVELYN LaJEUNESSE failed to exercise due care for her own safety due to one or more of the following negligent acts and/or omissions that resulted in the alleged damages:

      a.    failed to properly use, utilize and apply the available occupant restraint;

      b.    committed other negligent acts and/or omissions as may be disclosed during the course of discovery.

2.    Plaintiff's damages, if any, were caused by the direct and proximate result of the fault/negligence of plaintiff and constituted more than fifty percent of such cause and plaintiff's claims are therefore barred or must be comparatively reduced.

**WHEREFORE**, Defendants pray for judgment in their favor and against the plaintiff plus costs and any other further relief this court deems appropriate under the circumstances.

### SECOND AFFIRMATIVE DEFENSE

1.    On information and belief, plaintiff EVELYN LaJEUNESSE knowingly failed to exercise due care for her own safety and engaged in one or more of the following culpable acts and/or omissions with knowledge that an accident such as the one described in plaintiffs' complaint could occur:

      a.    failed to properly use, utilize and apply the available occupant restraint;

      b.    committed other negligent acts and/or omissions as may be disclosed during the course of discovery.

- 23 -

2.     Such knowing acts and/or omissions constitute assumption of the risk and was a proximate cause of plaintiffs' alleged injuries and damages and constitute more than fifty percent of such cause and plaintiffs' claims are therefore barred or must be comparatively reduced.

**WHEREFORE**, Defendants pray for judgment in their favor and against the plaintiff plus costs and any other further relief this court deems appropriate under the circumstances.

### THIRD AFFIRMATIVE DEFENSE

1.     On information and belief, plaintiff EVELYN LaJEUNESSE knowingly failed to exercise due care for her own safety and engaged in one or more of the following culpable acts and/or omissions with the knowledge that an accident such as the one described in plaintiffs' complaint could occur:

      a.    failed to properly use, utilize and apply the available occupant restraint;

      b.    committed other negligent acts and/or omissions as may be disclosed during the course of discovery.

2.     Such knowing acts and/or omissions constitute misuse of the product at issue and was the proximate cause of the plaintiff's alleged injuries and damages and constitute more than fifty percent of such cause and plaintiff's claims are therefore barred or must be comparatively reduced.

**WHEREFORE**, Defendants pray for judgment in their favor and against the plaintiffs plus costs and any other further relief this court deems appropriate under the circumstances.

### AFFIRMATIVE DEFENSES TO COUNTS IV - IX

### FOURTH AFFIRMATIVE DEFENSE

- 24 -

1.     On information and belief, plaintiff HENRY LaJEUNESSE failed to exercise due care for his own safety due to one or more of the following negligent acts and/or omissions that resulted in the alleged damages:

> a.     failed to properly use, utilize and apply the available occupant restraint;
>
> b.     failed to keep his vehicle in a proper lane of traffic;
>
> c.     failed to brake to avoid a collision;
>
> d.     failed to reduce his speed to avoid a collision.

2.     Plaintiff's damages, if any, were caused by the direct and proximate result of the fault/negligence of plaintiff and constituted more than fifty percent of such cause and plaintiff's claims are therefore barred or must be comparatively reduced.

**WHEREFORE**, Defendants pray for judgment in their favor and against the plaintiff plus costs and any other further relief this court deems appropriate under the circumstances.

## FIFTH AFFIRMATIVE DEFENSE

1.     On information and belief, plaintiff HENRY LaJEUNESSE knowingly failed to exercise due care for his own safety and engaged in one or more of the following culpable acts and/or omissions with knowledge that an accident such as the one described in plaintiffs' complaint could occur:

> a.     failed to properly use, utilize and apply the available occupant restraint;
>
> b.     failed to keep his vehicle in a proper lane of traffic;
>
> c.     failed to brake to avoid a collision;
>
> d.     failed to reduce his speed to avoid a collision.

2.     Such knowing acts and/or omissions constitute assumption of the risk and was a proximate cause of plaintiffs' alleged injuries and damages and constitute more than fifty percent of such cause and plaintiffs' claims are therefore barred or must be comparatively reduced.

**WHEREFORE**, Defendants pray for judgment in their favor and against the plaintiff plus costs and any other further relief this court deems appropriate under the circumstances.

## SIXTH AFFIRMATIVE DEFENSE

1.     On information and belief, plaintiff HENRY LaJEUNESSE knowingly failed to exercise due care for his own safety and engaged in one or more of the following culpable acts and/or omissions with the knowledge that an accident such as the one described in plaintiffs' complaint could occur:

     a.     failed to properly use, utilize and apply the available occupant restraint;

     b.     failed to keep his vehicle in a proper lane of traffic;

     c.     failed to brake to avoid a collision;

     d.     failed to reduce his speed to avoid a collision.

2.     Such knowing acts and/or omissions constitute misuse of the product at issue and was the proximate cause of the plaintiff's alleged injuries and damages and constitute more than fifty percent of such cause and plaintiff's claims are therefore barred or must be comparatively reduced.

**WHEREFORE**, Defendants pray for judgment in their favor and against the plaintiffs plus costs and any other further relief this court deems appropriate under the circumstances.

## SEVENTH AFFIRMATIVE DEFENSE (TO ALL COUNTS)

The fault, if any, attributable to defendants Ford Motor Company and/or Bill Kay Ford, Inc. is less than twenty-five percent of the total fault attributable to each respective plaintiff, each defendant sued by plaintiff, Ford Motor Company and Bill Kay Ford, Inc., and any counter-defendant sued by Ford Motor Company and/or Bill Kay Ford, Inc., if any. Pursuant to §2-1117 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-1117, Ford Motor Company and Bill Kay Ford, Inc. are severably liable for all damages claimed by plaintiffs, other than their past and future medical and medically related expenses.

## COUNTERCLAIM FOR CONTRIBUTION - ESTATE OF HENRY LAJEUNESSE

NOW COMES defendants/counter-plaintiffs, FORD MOTOR COMPANY and BILL KAY FORD, INC. (hereinafter "defendants"), by and through their attorneys in this regard, John A. Krivicich, Michael J. Borree and DONOHUE BROWN MATHEWSON & SMYTH LLC, for their counterclaim for contribution against counter-defendant EVELYN LaJEUNESSE, as Independent Administrator of the Estate of HENRY LaJEUNESSE states as follows:

1.    Plaintiff, EVELYN LaJEUNESSE, Individually, filed a complaint against defendants alleging strict liability and negligence with respect to a vehicle accident that allegedly occurred on August 10, 2005 involving a certain 2004 Ford Focus in which HENRY LaJEUNESSE was the driver. Defendants have denied all material allegations of the Plaintiff EVELYN LaJEUNESSE'S complaint.

2.    On August 10, 2005, HENRY LaJEUNESSE, had a duty of care as the operator of the automobile for his own safety and for the safety of persons in his vehicle, including plaintiff,

- 27 -

EVELYN LaJEUNESSE, Individually. In derogation of that duty, HENRY LaJEUNESSE was

negligent in the operation of said vehicle in one or more of the following respects:

    (a)    Failed to keep his vehicle in a proper lane of traffic and otherwise control his vehicle;

    (b)    Failed to brake to avoid a collision;

    (c)    Failed to reduce his speed to avoid a collision;

    (d)    Was otherwise careless and negligent.

3.    As a direct and proximate result of the negligence of HENRY LaJEUNESSE, the

vehicle he was driving collided with the garage located at 4924 East Circle Drive, Crestwood,

Illinois, causing injury to the plaintiff EVELYN LaJEUNESSE's person and the Plaintiff has

allegedly sustained economic and non-economic damages of a personal and pecuniary nature,

including but not limited to medical expenses and hospital expenses and will continue to incur

medical expenses in the future.

4.    In the event that defendants, or either of them, are found liable to the plaintiff,

EVELYN LaJEUNESSE, which liability is specifically denied, then it will only be as a direct and

proximate result of one or more of the aforesaid negligent and/or careless acts committed by HENRY

LaJEUNESSE.

5.    Pursuant to 740 ILCS 100/0.01, on August 10, 2005, and at all other relevant times,

there existed a right of contribution among joint tortfeasors in the State of Illinois. In the event that

defendants, or either of them are found liable to the plaintiff, EVELYN LaJEUNESSE, Individually,

and required to pay more than their pro rata share of liability, which liability is expressly denied, then

defendants are is entitled to recovery from The Estate of HENRY LaJEUNESSE by way of contribution in such an amount as is commensurate with the relative degree of culpability or fault attributable to HENRY LaJEUNESSE.

6.    Defendants assert this counterclaim for contribution in the alternative, and specifically deny all allegations of wrongdoing contained in Plaintiff, EVELYN LaJEUNESSE'S complaint, and by asserting this counterclaim for contribution, in no way admit any liability for plaintiff's damages or the truth of any averments as to plaintiff, EVELYN LaJEUNESSE, Individually.

**WHEREFORE**, Defendants/Counter-Plaintiffs FORD MOTOR COMPANY and BILL KAY FORD, INC. pray that if judgment is entered in favor of the plaintiff and against Ford Motor Company and/or Bill Kay Ford, Inc. under the complaint in this matter brought by EVELYN LaJEUNESSE, Individually, that judgment then be entered against counter-defendant, EVELYN LaJEUNESSE, as Independent Administrator of the Estate of HENRY LaJEUNESSE, in an amount equal to the relative share of the fault attributable to his acts and/or omissions.

**DEFENDANTS/COUNTER-PLAINTIFFS DEMAND TRIAL BY JURY.**

DEFENDANTS/COUNTER-PLAINTIFFS,
FORD MOTOR COMPANY and BILL KAY FORD, INC.

By: _____
One of Their Attorneys

I.D. #32878
DONOHUE BROWN MATHEWSON & SMYTH LLC
John A. Krivicich
140 South Dearborn Street, Suite 800
Chicago, IL 60603
Telephone:    (312) 422-0900
Facsimile:    (312) 422-0909

STATE OF ILLINOIS          )
                           ) SS
COUNTY OF C O O K          )

### AFFIDAVIT

I, John A. Krivicich, having been duly sworn on oath, state that I am an attorney licensed to practice in the State of Illinois and that within my responsibilities I have been assigned the defense of the defendants, Ford Motor Company and Bill Kay Ford, Inc., in this matter.  I have reviewed the file material available to me at the time of preparation of the Answer on behalf of Ford Motor Company and Bill Kay Ford, Inc., and prepared and reviewed the foregoing Answer. The statements that these defendants Ford Motor Company and Bill Kay Ford, Inc., are without knowledge or information sufficient to form a belief as to the truth or falsity of the plaintiff's allegation are true and correct to the best of my knowledge and belief.

_____
John A. Krivicich

SUBSCRIBED AND SWORN TO before me this

_16th_ Day of __May__ , 2008

_____
Notary Public

```
♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦
♦    "OFFICIAL SEAL"      ♦
♦  SHARON M. SKIERKIEWICZ ♦
♦  Notary Public, State of Illinois ♦
♦  My Commission Expires 2/9/10 ♦
♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦
```

- 30 -

070568.118

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - LAW DIVISION



EVELYN LaJEUNESSE, Individually and as
Independent Administrator of the Estate of HENRY
LaJEUNESSE, deceased,

        Plaintiffs,

    v.

FORD MOTOR COMPANY, a corporation, and BILL
KAY FORD, INC., a corporation,

        Defendants / Third-Party Plaintiffs,

    v.

EVELYN LaJEUNESSE, as Independent Executor of the
Estate of HENRY LaJEUNESSE, deceased,

        Third-Party Defendant.

No.  07 L 8251
Judge James D. Egan
Motion Call: X

## ROUTINE MOTION FOR QUALIFIED PROTECTIVE ORDER

NOW COME defendants, FORD MOTOR COMPANY and BILL KAY FORD, INC.

(hereinafter "Ford"), by and through its attorneys in this regard, Michael J. Borree, John A. Krivicich

and DONOHUE BROWN MATHEWSON & SMYTH LLC, pursuant to 42 U.S.C.§1320(d) and 45

CFR Parts 160 and 164 (HIPAA), hereby requests that this Court enter a Qualified Protective Order,

stating as follows:

    1.     Plaintiff has filed a case alleging negligence arising out of an automobile accident

involving EVELYN LAJEUNESSE.

    2.     Treating physicians, hospitals, and other health care providers disclosed by plaintiff in

this case, are all "covered entities" as defined by 45 CFR 160.103.  HIPAA prohibits covered entities

1

from disclosing protected health information in judicial proceedings other than by authorization or qualified protective order. 45 CFR § 164.512(e).

3.     These covered entities are all in possession of "protected health information" ("PHI") as defined by 45 CFR 160.103 and 160.501, in the form of medical records (imaging, test results, insurance documents, notes, orders, labs, correspondence, pathology, prescription records, etc.) pertaining to EVELYN LAJEUNESSE.

4.     Both the prosecution and defense of this case will require that all parties, their attorneys, their attorneys' agents, consultants and various witnesses and other personnel receive and review copies of the PHI pertaining to EVELYN LAJEUNESSE, which is in the treating providers' possession.

**WHEREFORE**, defendants FORD MOTOR COMPANY and BILL KAY FORD, INC. respectfully request that this Court enter the proposed order permitting the use and disclosure of PHI created or received by any covered entity who has provided health care to Evelyn LaJeunesse for any purpose connected with the pending litigation

DONOHUE BROWN MATHEWSON & SMYTH LLC

By: _____

John A. Krivicich

I.D. #32878
DONOHUE BROWN MATHEWSON & SMYTH LLC
Michael J. Borree
John A. Krivicich
140 South Dearborn Street, Suite 800
Chicago, IL 60603
Telephone:     (312) 422-0900
Facsimile:     (312) 422-0909

2

070568.121

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - LAW DIVISION

EVELYN LaJEUNESSE, Individually and as
Independent Administrator of the Estate of HENRY
LaJEUNESSE, deceased,

        Plaintiffs,

    v.

FORD MOTOR COMPANY, a corporation, and
BILL KAY FORD, INC., a corporation,

        Defendants / Third-Party Plaintiffs,

    v.

EVELYN LaJEUNESSE, as Independent Executor
of the Estate of HENRY LaJEUNESSE, deceased,

        Third-Party Defendant.

No.  07 L 8251
Judge James D. Egan
Motion Call: X

## ORDER PURSUANT TO HIPAA

THIS MATTER having come to be heard on the motion of defendants, FORD MOTOR

COMPANY and BILL KAY FORD, INC., for the entry of a Qualified Protective Order, due notice

having been given, and the court being fully advised in the premises:

IT IS HEREBY ORDERED AS FOLLOWS:

1.    The current parties (and their attorneys) and any future parties (and their attorneys) to
the above-captioned matter are hereby authorized to receive, subpoena, and transmit "protected
health information" (also referred to herein as "PHI") pertaining to EVELYN LAJEUNESSE, to the
extent and subject to the conditions outlined herein.

2.    For the purpose of this Qualified Protective Order, "PHI" or "protected health
information" shall have the same scope and definition as set forth in 45 CFR 160.103 and 160.501
without limiting their generality of the foregoing, "PHI" includes, but is not limited to, health
information, including demographic information, relating to either (a) the past, present or future
physical or mental condition of an individual, (b) the provision of care to an individual, or (c) the

1

payment for care provided to an individual, which identifies the individual or which reasonably could be expected, to identify the individual.

3.     All "covered entities" (as defined by 45 CFR 160.103) are hereby authorized to disclose PHI pertaining to EVELYN LAJEUNESSE, to all attorneys now of record in this matter or who may become of record in the future of this litigation.

4.     The parties and their attorneys shall be permitted to use the PHI of EVELYN LAJEUNESSE in any manner that is reasonably connected with the above-captioned litigation. This includes, but is not limited to, disclosure to the parties, their attorneys of record, the attorneys' firms (i.e., attorneys, support staff, agents, and consultants), the parties' insurers, experts, consultants, court personnel, court reporters, copy services, trial consultants, jurors, venire members, and other entities involved in the litigation process.

5.     At the conclusion of the litigation (which shall be defined as the point at which final orders disposing of the entire case as to any defendant have been entered, or the time at which all trial and appellate proceedings have been exhausted as to any defendant), that defendant and any person or entity in possession of PHI received from that defendant pursuant to paragraph 4 of this order shall destroy any and all copies of the PHI pertaining to EVELYN LAJEUNESSE, except: 1) the defendant that is no longer in the litigation may retain PHI generated by him/her/it; and 2) the remaining defendants in the litigation, and persons or entities receiving PHI from those defendants pursuant to paragraph 4 of this order, may retain PHI in their possession.

6.     This order shall not control or limit the use of protected health information pertaining to EVELYN LAJEUNESSE that comes into the possession of any party or any party's attorney from a source other than a "covered entity," (as that term is defined in 45 CFR 160.103).

7.     Nothing in this order authorizes defense counsel to obtain medical records or information through means other than the formal discovery requests, subpoenas, depositions, pursuant to a patient authorization or through attorney-client communications. Likewise, nothing in this order relieves any party from complying with the requirements of the Illinois Mental Health and Developmental Disabilities Confidentiality Act (740 ILCS 110/1 et seq.), the AIDS Confidentiality Act (410 ILCS 305/1 et seq.), or state and federal law that protects certain drug and alcohol records (20 ILCS 301/30-5, 42 USC 290dd-3 and 290ee-3, and 42 CFR Part 2).

_____ , 2008

ENTER:

_____

Judge

ENTERED

JUDGE JAMES  Judge's No. 2

MAY 19 2008

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

2

I.D. #32878
DONOHUE BROWN MATHEWSON & SMYTH LLC
Michael J. Borree
John A. Krivicich
140 South Dearborn Street, Suite 800
Chicago, IL  60603
Telephone:    (312) 422-0900
Facsimile:     (312) 422-0909

```
                                              )
                                              )
         -Vs-                                 )    No.
                                              )
                                              )
                                              )
                                              )
```

## BRIEFING SCHEDULE ORDER

This matter has come before the Court on the Motion(s) of

_____ for (to) _____

_____

The Court being advised herby sets the following briefing schedule:

(4231)   1)   **MOVANT(S)** Name_____ has _____ days

         until _____ to file **BRIEF in SUPPORT.**

(4231)   2)   **RESPONDENT(S)** Name_____ has _____ days

         thereafter until _July 8, 2008_____ to **RESPOND.**

(4231)   3)   **MOVANT(S)** Name_Bill Kay Ford___ has _14_ days

         therafter until _July 22, 2008_____ to **REPLY.**

(4217)   4)   The **CLERK STATUS** on the **MOTION(S)** is set for _July 28, 2008_
              at 8:45 a.m in Court Room 2205 Chambers.

(4251)   5)   **COURTESY COPIES** of all pleadings, motions, briefs, transcripts, or other
              documents are to be furnished by the **MOVANT/RESPONDENTS** at the
              **CLERK STATUS ONLY.**

_____   6)   The **HEARING DATE** on the Motion(S) is _August 6, 2008_

              at _11:00_ a.m in **COURT ROOM** 2205.

_____   7)   OTHER _____
              _July 8, 2008_____ 8-6-08

**NOTICE:**   **FAILURE TO PROVIDE COURTESY COPIES WILL RESULT IN HAVING SAID
              MOTION(s) OR HEARING DATES STRICKEN.**

```
Atty.No:
Name:                                    _____ 20____
Atty.for:
Address:                                 ENTERED
City:
Telephone:
                                         _____
                                         JUDGE
```

#02329                                SSK\ema                                2007S-0120

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT - LAW DIVISION

|  |  |
|---|---|
| EVELYN LaJEUNESSE, et al., | 08CV4436<br>JUDGE CASTILLO<br>MAGISTRATE JUDGE NOLAN |
| Plaintiffs, | |
| v. | PH |
| | No. 07 L 8251 X |
| FORD MOTOR COMPANY, a corporation;<br>and BILL KAY FORD, INC.,<br>a corporation, | |
| Defendants. | |

### PLAINTIFF'S RESPONSE TO DEFENDANT,
### BILL KAY FORD, INC.'S, MOTION FOR SUMMARY JUDGMENT

Plaintiff, EVELYN LaJEUNESSE, by her attorneys, Corboy & Demetrio, P.C., responds

to the summary judgment motion of defendant, BILL KAY FORD, INC., a corporation, as

follows:

### INTRODUCTION

On August 10, 2005, Evelyn LaJeunesse was a passenger in a 2004 Ford Focus that

suddenly and unexpectedly accelerated, crashing into a wall.  The airbags on the Focus failed to

deploy.  As a result of this collision, LaJeunesse severely injured her femur, hip, and right arm.

The subject Focus (VIN 1FAFP34334W191126) was purchased by LaJeunesse and her

husband from defendant on July 14, 2004.   From the time of purchase until the date of the

occurrence, the LaJeunesses were never informed or warned of any defects involving the Focus.

Evidence exists that Bill Kay knew, or should have known, about the defects of the 2004 Ford

Focus–notably, that the throttle sticks, causing sudden acceleration, and that the airbag deployment system is known to fail in some frontal impacts. Whether Bill Kay knew, or should have known, of the Focus's defects is a question of fact for the jury, and therefore, summary judgment must be denied.

## ARGUMENT

A plaintiff may establish a negligence claim for a defective product by: (1) pleading facts that show defendant deviated from the standard of care that other manufacturers in his industry followed at the time the product was designed; or (2) pleading facts that show defendant knew or should have known, in the exercise of ordinary care, that its product was unreasonably dangerous and defendant failed to warn of its dangerous propensity. Carrizales v. Rheem Mfg. Co., 226 Ill. App. 3d 20, 36 (1st Dist. 1991).

Here, Bill Kay failed to inform or warn the LaJeunesses of the unsafe and dangerous conditions of the subject Focus. Although Bill Kay, through its agents, does not admit to knowledge of these unsafe and dangerous conditions, ample evidence exists that they should have known of these conditions.

The testimony of Brian Reeves, service director of Bill Kay, demonstrates that defendant's system for tracking defects was inadequate:

Q:   Is there any system to keep track of recurrent complaints?
A:   As far as – complaints as far as on personnel or complaints on vehicles?
Q:   On vehicles.
A:   *On vehicles, no.*
Q:   What is Ford's Service System?
A:   Ford's Service System?
Q:   Ford's Service System, do you that term?
A:   It's not ringing any bell. Might not have the correct name. Are you talking about –

Q:    Well, the technical service bulletins, you get those by receiving them from Ford or by logging on, correct?
A:    Correct.
Q:    What is it you're logging on to?
A:    You're logging on to Ford's dealer website. It's a dealership-only, it's a franchisee-only website.
Q:    Are you familiar with the National Highway Transportation Safety Administration?
A:    Yes, I'm familiar.
Q:    Have you ever visited their website?
A:    *No, I have not.*
Q:    Do you know whether or not their website maintains a listing of reported problems with various vehicles?
A:    I've never visited, so I would not know that.
Q:    Has anyone ever told you that?
A:    No.
Q:    As part of your training, either with Bill Kay or Fairfield or Domino, were you ever trained to monitor or look at the NHTSA website?
A:    *No.*
       (Exhibit A, Discovery Deposition of Brian Reeves, at 36-38) (*emphasis added*).

In particular, Reeves was aware that another 2004 Focus model, the SVT, had been issued

a technical service bulletin (TSB) for a known sudden surge defect:

Q:    Is that a document that you would have printed out at Bill Kay's request?
A:    Yes.
Q:    And then what are the pages that come after that document?
A:    The fourth page is a TSB for a surge and steady cruise for '04 Focus, SVT model only. And "SVT" stands for Special Vehicle, which is not the type of Focus in question. This basically is a high-performance vehicle.
       . . .
Q:    Do you know what the difference is between the cruise control as equipped on the vehicle at issue versus a cruise control that's equipped on the SPV?
A:    Sure. SVT.
Q:    "SVT"?
A:    Yes. Special Vehicle. And it's a different motor, so it's a complete different system, complete different network.
       . . .
Q:    Where it states on page 4, "SVT only," does that mean that the bulletin is for SVT only or the cruise control system on the SVT model is unique to the SVT model?
A:    It's saying that this bulletin applies only to Focuses that are SVT that might exhibit these concerns.

3

Q:    Do you know whether or not the cruise control mechanism on the SVT is different than the cruise control installed on non-SVT models for the 2004 Ford Focus?

A:    More than likely, the SVT, in most cases, probably does not have a cruise control; most of them are probably going to be manual shift. Not that that matters, but with an SVT, I honestly couldn't tell you. I didn't engineer it so . . . . But I would assume it would be different because it is two different type of setups.
(Exhibit A, at 26-28).

Reeves testified further regarding the likelihood of a sticking throttle or a "surge" in Ford vehicles:

Q:    . . . have you ever had a complaint by a customer regarding either a surge or a sticking throttle that you could not attribute to aftermarket floor mats or confusion of pedals?

A:    You're combining two different aspects of a vehicle. You can get a surge from a performance issue or from a misfire, which is completely different from a binding throttle.

Q:    Explain to me what you mean by "misfire."

A:    If an engine misfires– misfires when the engine is not performing properly– so use, for instance, a four-cylinder motor– if one of those cylinders does not fire properly, when it falls to that cylinder for the performance and it's not there, the engine is going to lag. When it now falls to the next cylinder that is firing, the engine's going to perform. It's going to have a drop and then a return, so it's going to feel like a surge.

Q:    What other reasons are there for a surge?

A:    What other reasons are there for a surge? There could be numerous issues. You can have an issue with the drive train, an issue with the transmission, anything.

Q:    Have you had any reports made to Bill Kay by any customer regarding surges in any model year Ford Focus that you attributed to either drive train or the transmission?

A:    *Sure. Yes, we have.*
(Exhibit A, at 42-43) (*emphasis added*).

Reeves' testimony that he was aware of the TSB regarding the SVT surge, and that customers had reported complaints of surges, provides evidence that Bill Kay should have known about sudden acceleration in the subject Focus.

Besides Reeves, William Koloseike, as president and part-owner of Bill Kay Ford, should have known that the 2004 Ford Focus was unreasonably dangerous. Koloseike's testimony

4

demonstrates that he does not adequately monitor Bill Kay's tracking of safety defects in its

vehicles:

Q:    What system do you use at Bill Kay Ford to monitor or keep track of different
      problems that are occurring with the use of Ford vehicles?
A:    *Boy, that's hard to pin down.*
Q:    Well, I'll get more specific with you in the future, but what I want to know right
      now is whether or not, as you sit here, you're able to describe for me what tools
      are out there or what ability you have to, for instance, determine whether or not a
      product has been recalled?
A:    There are on-line sources available to check for a particular product problem that
      would be available to us.
Q:    And how do you know that?
A:    Just general knowledge. Every manufacturer has it. . .
Q:    With regard to the Ford Focus, have you checked the on-line sources to determine
      whether or not there have been any problems with either sudden acceleration or
      airbag deployment failure on the 2004 Ford Focus?
A:    *Apart from that check on that list there, no.*
Q:    Okay. And these on-line sources that you're referring to, can you be more
      specific, where they would be located or what they're called or what you Google?
A:    It's not on line with regard to the general public. It's specifically a log-in that's
      available to the dealership. *I forget the–there's an acronym for it, but I don't
      know what it is.*
            . . .
Q:    I'm trying to figure out if there is anything else.
A:    Any other source for information other than that?
Q:    Yes.
A:    No, just the general discussion amongst technicians if they're experiencing a
      recurring problem within the shop and would advise each other as to the repair or
      the frequency of it. If cars come in on a regular basis with a similar problem, then
      they might identify it.
Q:    And did you discuss this with any of the technicians at Bill Kay Ford?
A:    *No.*
Q:    And when I say discuss this, did you inquire as to whether or not they had
      experienced any problems with sudden acceleration or airbag deployment failure
      in 2004?
A:    *No, the technicians directly, no.*
      (Exhibit B, Discovery Deposition of William Koloseike, at 21-24) (*emphasis
      added*).

Koloseike further testified regarding Bill Kay's monitoring, or lack thereof, of the

5

communication process involving defects found in Ford vehicles:

> Q:   And what is your understanding as to what a technical service bulletin is?
> A:   It's information-sharing of potential issues with cars that have been experienced either through the warranty system that they've made either computer-generated records or accumulating that a particular repair has been done on a model and they come up with a repair for it and they notify the dealer's service departments on what corrective action to take with regard to that problem.
> . . .
>
> Q:   And what is the process at Bill Kay Ford in terms of monitoring that system?
> A:   *I don't believe it has to be monitored.* I believe they just automatically send you either an e-mail or the bulletins by some sort of response system either printed out, fax-wise or review them on your computer. I'm not sure what the technology was in 2007 [sic].
> . . .
>
> Q:   Do you know whether or not NHTSA has a website which would list consumer complaints regarding different make and model vehicles?
> A:   No, I don't know.
> Q:   So if the NHTSA website contained—or let me ask you a better question. Is there anybody at Bill Kay Ford whose responsibility it would be to follow and track whether or not any vehicles that Bill Kay Ford is selling has been listed in the – or had service bulletins published in the NHTSA website regarding potential problems?
> A:   *I didn't know there was a NHTSA website with that information, so . . .*
> Q:   So the answer would be –
> A:   *There wouldn't be anybody assigned to that task to monitor it.*
>      (Exhibit B, at 31-34) (*emphasis added*).

Finally, Koloseike testified that Bill Kay's technicians would likely hear complaints

regarding vehicles:

> Q:   What is the process you follow when a customer who has purchased a vehicle from you comes to you with a complaint regarding the performance of the vehicle?
> A:   As a dealer or as a dealership?
> Q:   Tell me the distinction.
> A:   Well, generally speaking, I'm not on the service drive taking complaints, you know, writing up service repair orders. If it gets to the level where somebody is unhappy with the way they were treated, they went to the service manager and didn't find satisfaction, it would get to me and the I would, you know, follow through and try to find where the problem was then what we would do to correct it.

Q:    Okay.
A:    As a dealership, if you had a problem with your car, you would bring it into the service department and report it to a service advisor and then they would ask you, you know, what's wrong and when does it happen and that type of thing.  And then we would write a repair order and have a technician diagnose if it there was in fact a problem, try to get it to duplicate the problem.
Q:    And I'm assuming none of that would be to your level unless it was a real problem?
A:    *No, I wouldn't normally talk to every customer.*
Q:    It would be Mr. Reeves or somebody working for Mr. Reeves?
A:    *The technician, yeah.*  Somebody that would be working for Mr. Reeves would be the service advisor, which when you pull into a dealership, the service entrance, the door opens, you go inside and the first person to greet you would be the service advisor.
(Exhibit B, at 37-39) *(emphasis added)*.

Koloseike admitted that he does not talk to the technicians regarding vehicle complaints. Without a system in place that ensures open communication between management and the technicians, Bill Kay is inhibiting the flow of information regarding defects.  Thus, Bill Kay was shielded from information that it *should have known* involving the defects of the 2004 Ford Focus.

The testimony of Reeves and Koloseike, taken individually or on the whole, creates a question of fact as to whether Bill Kay should have known of the 2004 Ford Focus's defects.

## CONCLUSION

The Court should not grant Bill Kay's motion for summary judgment as material issues of fact exist regarding its role in warning LaJeunesse of the defects of the Focus.  It is axiomatic that summary judgment is a drastic means of disposing of litigation, and it should only be allowed when the right of the moving party is clear and free from doubt.  Jones v. Chicago HMO, 191 Ill.2d 278 (2000).  In determining whether Bill Kay is entitled to summary judgment, this court must construe the pleadings, depositions, admissions and affidavits strictly against the

7

Defendant, and liberally in favor of the Plaintiff. <u>O'Banner v. McDonald's Corp.</u>, 173 Ill. 2d

208, 211 (1996). Summary judgment must be awarded with caution to avoid preempting a

litigant's right to trial by jury or the right to fully present the factual basis of a case where a

material dispute may exist. <u>Davila v. Yellow Cab. Co.</u>, 333 Ill. App. 3d 592, 594-95 (1st Dist.

2002). A triable issue of fact exists where there is a dispute as to a material fact or where,

although the facts are not in dispute, reasonable minds might differ in drawing inferences from

those facts. <u>Id.</u> at 595.

WHEREFORE, plaintiff, EVELYN LaJEUNESSE, requests that this Court enter an order

denying the summary judgment motion of defendant, Bill Kay Ford, Inc.

Respectfully submitted,
**Corboy & Demetrio, P.C.**

By: _____

Shawn S. Kasserman

Corboy & Demetrio, P.C.
Attorneys for Plaintiff
33 North Dearborn Street
21st Floor
Chicago, Illinois 60602
(312) 346-3191
Firm I.D. 02329

Page 1

STATE OF ILLINOIS   )
                    )  SS:
COUNTY OF C O O K   )

      IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
            COUNTY DEPARTMENT - LAW DIVISION

EVELYN LaJEUNESSE,                    )
            Plaintiff                 )
      -vs-                            )No. 02 L. 8252
FORD MOTOR COMPANY, et al.,           )
            Defendants.               )
- - - - - - - - - - - - - - - - - - - - - - - - - - - )
FORD MOTOR COMPANY,                   )
            Third-Party Plaintiff,    )
      -vs-                            )
HENRY LaJEUNESSE,                     )
            Third-Party Defendant.    )


        The deposition of BRIAN REEVES, called
as a witness for examination, taken pursuant to the
provisions of the Code of Civil Procedure and the
Rules of the Supreme Court of the State of Illinois
pertaining to the taking of depositions for the
purpose of discovery, taken before MICHELLE M.
PAOLETTI, a Notary Public within and for the County
of Cook, State of Illinois, and a Certified
Shorthand Reporter of said state, CSR No. 84-4531,
at Bill Kay Ford, 14633 South Cicero Avenue,
Chicago, Illinois, on the 9th day of June, A.D.
2008, at 11:15 a.m.



EXHIBIT
A

1   BY MR. KIRSCHNER:

2       Q.    Sir, I'm going to hand you what's marked

3   as Exhibit 2.  Take a look at that, and tell me

4   what that document is.

5       A.    The first three pages are a blanket

6   listing of any TSBs that Ford Motor company had for

7   2004 Focus.

8       Q.    Is that the document that you would have

9   printed out at Bill Kay's request?

10      A.    Yes.

11      Q.    And then what are the pages that come

12  after that document?

13      A.    The fourth page is a TSBs for a surge

14  and steady cruise for '04 Focus, SVT model only.

15  And "SVT" stands for Special Vehicle, which is not

16  the type of Focus in question.  This basically is a

17  high-performance vehicle.

18             The next page or two pages are a copy of

19  what would be performed by the original buying

20  dealership from Ford.  It's a new-car prep sheet.

21  It's the inspection form that they fill out.

22      Q.    Do you know what the difference is

23  between the cruise control as equipped on the

24  vehicle at issue versus a cruise control that's

Page 27

1    equipped on the SPV?

2        A.    Sure.   SVT.

3        Q.    "SVT"?

4        A.    Yes, Special Vehicle.

5              And it's a different motor, so it's a

6    complete different system, complete different

7    network.

8        MR. KRIVICICH:  The question also assumes

9    facts not in evidence.  I thought he didn't know

10   whether this vehicle had cruise control.

11       MR. KIRSCHNER:  I'm just responding to the

12   question.  He's indicating it's different on this

13   vehicle --

14   BY THE WITNESS:

15       A.    It states right there, "SVT only."

16   BY MR. KIRSCHNER:

17       Q.    Where it states on Page 4, "SVT only,"

18   does that mean that the bulletin is for SVT only or

19   the cruise control system on the SVT model is

20   unique to the SVT model?

21       A.    It's saying that this bulletin applies

22   only to Focuses that are SVT that might exhibit

23   these concerns.

24       Q.    Do you know whether or not the cruise

1   control mechanism on the SVT is different than the

2   cruise control installed on non-SVT models for the

3   2004 Ford Focus?

4       A.    More than likely, the SVT, in most

5   cases, probably does not have a cruise control;

6   most of them are probably going to be manual shift.

7   Not that that matters, but with an SVT, I honestly

8   couldn't tell you.  I didn't engineer it so...

9           But I would assume it would be different

10  because it is two different type of setups.

11      Q.    Other than printing out the bulletin, do

12  you have any knowledge as to the reason or cause

13  for the sudden surge in the 2004 Ford Focus SVT

14  model?

15      A.    Just what -- that known concern that

16  could happen that Ford provided.

17      Q.    Was that something -- strike that.

18          Were any surges involving a 2004 Ford

19  Focus SVT model ever reported to Bill Kay?

20      A.    No, we weren't a certified SVT, so,

21  therefore, we would not have had them.

22      Q.    Did you run any technical service

23  bulletin searches for sudden surges in Ford Focus

24  models for years other than 2004?

1    ignition off, and it returns to the speed you were

2    at.

3         Q.    Is there a minimum speed at which you

4    have to be moving in order to use the "resume"

5    function?

6         A.    On most vehicles, you have to be going

7    over 30 -- I believe it's 30 to 35 miles per hour

8    for the cruise control system to work at all.

9         Q.    Back on the date of purchase by Bill Kay

10   in 2004 at the dealership to the present, has Bill

11   Kay instituted any type of system for monitoring or

12   keeping track of any recurrent complaints or

13   problems with Ford vehicle?

14        A.    Just what we obtain through Ford motor

15   company.

16        Q.    I'm speaking in terms of complaints that

17   are made to Bill Kay by its customers.  Is there

18   any system to keep track of recurrent complaints?

19        A.    As far as -- complaints as far as on

20   personnel or complaints on vehicles?

21        Q.    On vehicles.

22        A.    On vehicles, no.

23        Q.    What is Ford's Service System?

24        A.    Ford's Service System?

Page 37

1    Q.    Ford's Service System, do you know that

2    term?

3    A.    It's not ringing any bell.  Might not

4    have the correct name.  Are you talking about --

5    Q.    Well, the technical service bulletins,

6    you get those by receiving them from Ford or by

7    logging on, correct?

8    A.    Correct.

9    Q.    What is it your logging on to?

10   A.    You're logging on to Ford's dealer

11   website.  It's a dealership-only, it's a

12   franchisee-only website.

13   Q.    Are you familiar with the National

14   Highway Transportation Safety Administration?

15   A.    Yes, I'm familiar.

16   Q.    Have you ever visited their website?

17   A.    No, I have not.

18   Q.    Do you know whether or not their website

19   maintains a listing of reported problems with

20   various vehicles?

21   A.    I've never visited, so I would not know

22   that.

23   Q.    Has anyone ever told you that?

24   A.    No.

Page 38

1      Q.    As part of your training, either with

2  Bill Kay or Fairfield or Domino, were you ever

3  trained to monitor or look at the NHTSA website?

4      A.    No.

5      Q.    You mentioned earlier the

6  throttle-sticking issue with respect to aftermarket

7  floor mats?

8      A.    Mm-hm.

9      Q.    Have you ever had a customer report to

10 you or to Bill Kay a problem with an engaging

11 throttle?

12     A.    With an engaging throttle?  Not being

13 able to depress the throttle?

14     Q.    No, with unexpected acceleration.  A

15 throttle engaging when it's not expected to engage.

16     MR. KRIVICICH:  Asked and answer.  He's

17 already given you testimony on his experience with

18 sticking throttles.

19     MR. KIRSCHNER:  I'm not asking about sticking

20 throttles.

21 BY MR. KIRSCHNER:

22     Q.    You can answer the question.

23     MR. KRIVICICH:  Same objection.

24          Go ahead and answer.

Page 42

1    that point, we would submit the payment through

2    Ford, and that's where they would have the

3    information that a vehicle was in and what repair

4    was done.

5         Q.    Do you know what percent of Bill Kay's

6    overall new car sales are Ford Focuses?

7         A.    I do not.

8         Q.    Do you recall with respect to the

9    Ford-Taurus issue what the cause was for the

10   non-disengagement of the cruise control?

11        A.    I believe it might have been something

12   within the throttle body.  I'm not 100 percent

13   sure.

14        Q.    Putting aside the Ford Taurus, have you

15   ever had a complaint by a customer regarding either

16   a surge or a sticking throttle that you could not

17   attribute to aftermarket floor mats or confusion of

18   pedals?

19        A.    You're combining two different aspects

20   of a vehicle.  You can get a surge from a

21   performance issue or from a misfire, which is

22   completely different from a binding throttle.

23        Q.    Explain to me what you mean by the

24   "misfire."

569f633a-df9c-455d-bda4-86d14c7049e9

Page 43

1        A.    If an engine misfires -- misfires when

2    the engine is not performing properly -- so use,

3    for instance, a four-cylinder motor -- if one of

4    those cylinders does not fire properly, when it

5    fall to that cylinder for the performance and it's

6    not there, the engine is going to lag.  When it now

7    falls to the next cylinder that is firing, the

8    engine's going to perform.  It's going to have a

9    drop and then a return, so it's going to feel like

10   a surge.

11       Q.    What other reasons are there for a

12   surge?

13       A.    What other reasons are there for a

14   surge?  There could be numerous issues.  You can

15   have an issue with the drive train, an issue with

16   the transmission, anything.

17       Q.    Have you had any reports made to Bill

18   Kay by any customers regarding surges in any model

19   year Ford Focus that you attributed to either drive

20   train or the transmission?

21       A.    Sure.  Yes, we have.

22       Q.    In running your technical service

23   bulletin searches for 2004 Ford Focus, did you come

24   across any recurrent issues of surges involving

Page 1

STATE OF ILLINOIS )
                  )  SS:
COUNTY OF C O O K )


        IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
              COUNTY DEPARTMENT - LAW DIVISION


EVELYN LaJEUNESSE,                    )
        Plaintiff,                    )
                                      )
    -vs-                              )
                                      )
FORD MOTOR COMPANY, et al.,           )
        Defendants.                   )
    _____ )
                                      ) No. 07 L 8251
FORD MOTOR COMPANY,                   )
        Third-Party Plaintiff,        )
                                      )
    -vs-                              )
                                      )
HENRY LaJEUNESSE,                     )
        Third-Party Defendant.        )



        The deposition of WILLIAM KOLOSEIKE, taken

in the above-entitled cause pursuant to the Code of

Civil Procedure of the State of Illinois, and the

Rules of the Supreme Court thereof, pertaining to

the taking of depositions, for the purpose of

discovery, taken before Maria E. Shockey, CSR and

Notary Public within and for the County of Kane and

State of Illinois, at 601 Ogden Avenue, Lisle,

Illinois, commencing at the hour of 3:05 p.m. on the

5th day of February, A.D., 2008.

**EXHIBIT**

B

1    strike that.

2                      What system do you use at Bill Kay

3    Ford to monitor or keep track of different problems

4    that are occurring with the use of Ford vehicles?

5                      MR. KRIVICICH:   Object to the form of

6            the question, vague and ambiguous.

7                      THE WITNESS:   Boy, that's hard to pin

8            down.

9    BY MR. KASSERMAN:

0            Q.      Well, I'll get more specific with you

1    in the future, but what I want to know right now is

2    whether or not, as you sit here, you're able to

3    describe for me what tools are out there or what

4    ability you have to, for instance, determine whether

5    or not a product has been recalled?

6            A.      They are on-line sources available to

7    check for a particular product problem that would be

8    available to us.

9            Q.      And how do you know that?

0            A.      Just general knowledge.   Every

1    manufacturer has it.

2            Q.      With regard to the Ford Focus, have

3    you checked the on-line sources to determine whether

4    or not there have been any problems with either

William Kolosefke

Word Index

Page 22

1    sudden acceleration or airbag deployment failure on

2    the 2004 Ford Focus?

3                MR. KRIVICICH:  Apart from that check?

4                THE WITNESS:  Apart from that check on

5          that list there, no.

6    BY MR. KASSERMAN:

7          Q.    Okay.  And these on-line sources that

8    you're referring to, can you be more specific, where

9    they would be located or what they're called or what

10   you Google?

11         A.    It's not on line with regard to the

12   general public.  It's specifically a log-in that's

13   available to the dealership.  I forget the --

14   there's an acronym for it, but I don't know what it

15   is.

16         Q.    And you may have answered this

17   question and if you did, I apologize to both you and

18   your lawyer, but did you conduct that search

19   pursuant to the on-line log-in system that's

20   available to the dealerships?

21               MR. KRIVICICH:  I'll just object,

22         asked and answered.  He made a request for a

23         search of TSB applicable to the vehicle and

24         that's what he testified to before.

Page 23

1    BY MR. KASSERMAN:

2          Q.      Okay.  And I just want to make sure I

3    understand that you're referring to the same thing

4    that you just described.

5                 MR. KRIVICICH:  Right.  And if you're

6             asking him about something else, by all means

7             go ahead and ask.  I don't know that there is

8             but ...

9    BY MR. KASSERMAN:

10         Q.      I'm trying to find out if there is

11   anything else.

12         A.      Any other source for information other

13   than that?

14         Q.      Yes.

15         A.      No, just the general discussion

16   amongst technicians if they're experiencing a

17   recurring problem within the shop and would advise

18   each other as to the repair or the frequency of it.

19   If cars come in on a regular basis with a similar

20   problem, then they might identify it.

21         Q.      And did you discuss this with any of

22   the technicians at Bill Kay Ford?

23         A.      No.

24         Q.      And when I say discuss this, did you

1   inquire as to whether or not they had experienced

2   any problems with sudden acceleration or airbag

3   deployment failure in 2004?

4          A.     No, the technicians directly, no.

5          Q.     Okay.  You did have that conversation

6   with Mr. Reeves; is that correct?

7          A.     Yes.

8          Q.     Anybody else?

9          A.     No.

10          Q.     Tell me about your conversation with

11   Mr. Reeves.

12          A.     Well, I believe when we received the

13   lawsuit that was filed, I asked -- I read briefly,

14   you know, what the extent of the lawsuit read and

15   that it was a problem with a Ford product, and I

16   needed to ask him if there was anything that -- if

17   he was familiar with any kind of problem with that

18   and he said no, he was not.

19          Q.     Where were you when you had that

20   conversation?

21          A.     It could have been at the dealership;

22   it could have been on the phone.  I couldn't tell

23   you exactly.

24          Q.     Okay.  So you know the conversation

1    your understanding as to the search you had Brian

2    Reeves do.

3              A.      He ran a listing of any and all

4    technical service bulletins that were ever issued on

5    a 2004 Ford Focus.

6              Q.      And what is your understanding as to

7    what a technical service bulletin is?

8              A.      It's an information-sharing of

9    potential issues with cars that have been

10   experienced either through the warranty system that

11   they've made either computer-generated records or

12   accumulating that a particular repair has been done

13   on a model and then they come up with a repair for

14   it and they notify the dealer's service departments

15   on what corrective action to take with regard to

16   that problem.

17                       And sometimes it has to do with a

18   particular, you know, run of material that might be

19   defective from a different supplier.  It's hard to

20   say what causes it.  They do have a sytem of

21   communicating that to dealerships.

22             Q.      And what is the process at Bill Kay

23   Ford in terms of monitoring that system?

24             A.      I don't believe it has to be

Page 32

1    monitored.  I believe they just automatically send

2    you either an e-mail or the bulletins by some sort

3    of response system either printed out, fax-wise or

4    review them on your computer.  I'm not sure what the

5    technology was in 2007.

6         Q.     Yeah, I'm probably asking a trickier

7    question than it needs to be.

8                Who reads these TSBs as they come

9    into the dealership, is that something you do?

.0         A.     The service director, yeah.

.1         Q.     Okay.  In your affidavit you used the

.2    phrase standard of care, if I recall correctly.

.3    What do you mean when you say standard of care?

.4         A.     General practice, you know, the level

.5    of skill that we have in our dealership, the level

.6    of training that they need in order to be trained up

.7    to a certain level that I think you can find as

.8    standard in any Ford dealership that they would hold

.9    you to to have your technicians trained at a certain

.0    level and follow certain guidelines when they treat

.1    customers in a particular way.

.2         Q.     And what involvement have you had with

.3    other Ford dealerships?

.4         A.     Involvement with other Ford

Word Index

1    dealerships?

2        Q.    In terms of learning what they do and

3    don't do, if they develop your understanding as to

4    what the standard of care is.

5        A.    With other Ford dealers -- could you

6    restate that question again?

7        Q.    What familiarity do you have with

8    other Ford dealerships which would have contributed

9    to your understanding of what the standard of care

10   is?

11       A.    It wouldn't be direct interaction with

12   other dealerships, it would have been having been in

13   this business, you know, for 25, 30 years that I

14   would have accumulated a working knowledge of what a

15   level of care would be at a new car dealership,

16   whether it be Ford and/or Chrysler, Chevrolet,

17   whatever.

18       Q.    Okay.  So in your opinion or your -- I

19   guess your opinion that it would be pretty much the

20   same for a dealership whether a Chevy or --

21       A.    Yeah, a new car dealership.  It would

22   have certain standards that it would follow and you

23   can expect to receive that in pretty much any

24   dealership.

Page 34

1          Q.      Do you know what NHTSA is?

2          A.      I'm sorry?

3          Q.      NHTSA, N-H-T-S-A.

4          A.      The National Highway Traffic Safety

5     Administration, yes.

6          Q.      Okay.  Have you ever in your -- strike

7     that.

8                  Do you know whether or not NHTSA

9     has a website which would list consumer complaints

10    regarding different make and model vehicles?

11         A.      No, I don't know.

12         Q.      So if the NHTSA website contained --

13    or let me ask you a better question.

14                 Is there anybody at Bill Kay Ford

15    whose responsibility it would be to follow and track

16    whether or not any vehicles that Bill Kay Ford is

17    selling has been listed in the -- or had service

18    bulletins published in the NHTSA website regarding

19    potential problems?

20         A.      I didn't know there was a NHTSA

21    website with that information, so ...

22         Q.      So the answer would be --

23         A.      There wouldn't be anybody assigned to

24    that task to monitor it.

1    are where they're supposed to be, there's no dings,

2    dents on it so the customer can take delivery of it

3    without any problems and that all the accessories

4    worked on the vehicle, the radio, you know, the

5    gauges worked, the lights worked, taillights, turn

6    signals, all that kind of thing.

7         Q.    Airbag function would not have been

8    tested?

9         A.    No.  It has a system that tells you if

10   there's something wrong.  It flashes on the

11   dashboard or something if it's not functioning

12   correctly.

13        Q.    Is there a list that Mr. Hays (sic)

14   would have filled out or somebody would have filled

15   out when the car was sold?

16        A.    Mr. Hays (sic)?

17        Q.    Paris Hays -- or Haynes.

18        A.    There would have been a delivery form.

19   It should be somewhere.

20        Q.    Okay.

21        A.    It would be reviewing the appearance

22   of the vehicle more than anything.

23        Q.    What is the process you follow when a

24   customer who has purchased a vehicle from you comes

Word Index

1   to you with a complaint regarding the performance of

2   the vehicle?

3          A.      As a dealer or as a dealership?

4          Q.      Tell me the distinction.

5          A.      Well, generally speaking, I'm not on

6   the service drive taking complaints, you know,

7   writing up service repair orders.  If it gets to the

8   level where somebody is unhappy with the way they

9   were treated, they went to the service manager and

10  didn't find satisfaction, it would get to me and

11  then I would, you know, follow through and try to

12  find out where the problem was and then what we

13  could do to correct it.

14         Q.      Okay.

15         A.      As a dealership, if you had a problem

16  with your car, you would bring it into the service

17  department and report it to a service advisor and

18  then they would ask you, you know, what's wrong and

19  when does it happen and that type of thing.  And

20  then we would write a repair order and have a

21  technician diagnose it if there was in fact a

22  problem, try to get it to duplicate the problem.

23         Q.      And I'm assuming none of that would

24  rise to your level unless it was a real problem?

Word Index

1          A.      No, I wouldn't normally talk to every

2    customer.

3          Q.      It would be Mr. Reeves or somebody

4    working for Mr. Reeves?

5          A.      The technician, yeah.  Somebody that

6    would be working for Mr. Reeves would be the service

7    advisor, which when you pull into a dealership, the

8    service entrance, the door opens, you go inside and

9    the first person to greet you would be the service

10   advisor.

11         Q.      Now, is the service department

12   required to make any formal notice to Ford when

13   there is a problem reported with one of the safety

14   features of a vehicle?

15         A.      It would be reported through the

16   warranty repair system if there was in fact a

17   problem.  If it was a condition that a customer

18   reported, the same process would take place.  There

19   would be a repair order that would be generated and

20   then the repair would be written up, it's condition,

21   and then what the cause of it was and then what the

22   repair would have been.  And it would have been

23   submitted to Ford for reimbursement because we

24   repair things under warranty and get reimbursed by

Word Index

070568.159

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT - LAW DIVISION

EVELYN LaJEUNESSE, Individually and as
Independent Administrator of the Estate of
HENRY LaJEUNESSE, deceased,

Plaintiff,

v.

FORD MOTOR COMPANY, a corporation,
and BILL KAY FORD, INC., a corporation,

Defendants /Counter-Plaintiffs,

v.

EVELYN LaJEUNESSE, as Independent
Administrator of the Estate of HENRY
LaJEUNESSE, deceased,

Counter-Defendant.

08CV4436
JUDGE CASTILLO
MAGISTRATE JUDGE NOLAN

PH

No. 07 L 8251
Judge James D. Egan
Motion Call: X

## BILL KAY FORD, INC'S REPLY TO PLAINTIFF'S RESPONSE TO BILL KAY FORD, INC'S MOTION FOR SUMMARY JUDGMENT

BILL KAY FORD, INC. ("Bill Kay"), by its attorneys, for its reply to plaintiffs' response to

Bill Kay's motion for summary judgment, states as follows:

Plaintiffs point to red herrings in an effort to create a genuine issue of material fact to defeat

Bill Kay's motion for summary judgment. The facts and law upon which Bill Kay's motion is

premised remain uncontradicted.

Bill Kay is a retail automobile dealer sued only in negligence. It is not a designer or

manufacturer of vehicles. To defeat summary judgment for Bill Kay, plaintiffs must prove a genuine

issue of material fact that (1) Bill Kay deviated from the standard of care exercised by other dealers

in the retail automobile industry or (2) that Bill Kay knew of, or should have known, in the exercise

of ordinary care, that the product was unreasonably dangerous, and thereafter failed to warn of its dangerous propensity. *Blue v. Environmental Engineering*, 215 Ill.2d 78, 96, 838 N.E.2d 1128, 1141 (2005).

1.    **Deviation From The Standard Of Care**.

Plaintiffs allege that their 2004 Ford Focus had design defects in that it could accelerate suddenly, and that its airbag would fail to deploy in frontal impacts.

Plaintiffs have completely failed to contradict Bill Kay's evidence of the standard of care for automobile dealers where a vehicle allegedly has such hidden design defects. There is no evidence cited whatsoever that a retail motor vehicle dealer can or should discover those defects had it followed the standard of care applicable to motor vehicle dealers, much less inform or warn plaintiffs of them. Having not proffered any evidence in this regard, plaintiffs have also completely failed therefore to demonstrate any genuine issue of material fact that Bill Kay deviated from the standard of care applicable to a retail motor vehicle dealer as to this vehicle and its alleged defects. The affidavit of Mr. Koloseike and the testimony of Mr. Reeves are unrebutted.

2.    **Actual Knowledge**.

Plaintiffs have also completely failed to proffer any evidence that as to the subject vehicle and its alleged defects that Bill Kay *actually knew* this product was unreasonably dangerous, and thereby failed to warn of its alleged dangerous propensity.

There is no evidence that when this vehicle was in Bill Kay Ford's possession it accelerated suddenly, or that there was any hint that such a condition could occur.

Similarly, there is no evidence as to this vehicle, that Bill Kay Ford had any information whatsoever that an airbag might not deploy in a frontal collision.

- 2 -

Accordingly, plaintiffs have completely failed to create a genuine issue of material fact as to this prong of the *Blue* test.

**3.    Imputed Knowledge**.

The *only* argument plaintiffs make is that Bill Kay *should have known* of the alleged conditions in this vehicle. In this regard, plaintiffs' "evidence" is nothing more than innuendo and speculation that the alleged conditions existed in the subject vehicle, and that Bill Kay should have known about them.

A.    Airbag Non-Deployment.

None of the testimony cited by plaintiffs involve directly or indirectly, the airbag system in a 2004 Ford Focus. Plaintiffs having completely failed to cite any evidence in any way regarding this subject, Bill Kay's motion for summary judgment must be granted in Bill Kay's favor and against plaintiffs, as to Count III, par. 5(d), that Bill Kay "failed to warn Henry LaJeunesse and plaintiff Evelyn LaJeunesse that the airbags were known not to deploy in certain frontal impacts."

B.    Sudden Acceleration.

Plaintiffs do not provide this Court with the complete unedited transcripts of the discovery depositions of William Koloseike and Brian Reeves, upon which they rely, so those transcripts are appended to this reply. An accurate review of the testimony of these witnesses establishes no genuine issue of material fact sufficient to defeat Bill Kay's motion.

a.    **Brian Reeves**:

Mr. Reeves testified directly as follows:

> Q.    With respect to your tenure as the service manager or service director for either Bill Kay, Domino, or Fairfield Ford, have you ever reviewed any service bulletins that were issued by

Ford pertaining to sticking of the cruise control throttle on the Ford Focus for any year?

A.    I've never heard of any problems like that.

The only time we ever experienced any type of throttle binding or sticking of that, it's normally customer-induced by having more than the factory mat in the foot well or by hitting both pedals at the same time, by not having their foot properly placed.

*Deposition of Brian Reeves, p. 11*

Q.    Have you ever, yourself, had any complaints from customers about throttles sticking involving a Ford Focus?

A.    None.

*Deposition of Brian Reeves, p. 18*

Q.    You had mentioned earlier that there was some technical service bulletins that you pulled in response to this case?

A.    Correct.

Q.    At whose direction were those pulled?

A.    Bill Kay actually called and inquired.

Q.    And what did he ask you to look foe?

A.    He called to see if there were any TSBs or SSMs, which are Special Service Messages, pertaining to an '04 Focus for - - I mean, I don't remember the exact conversation, but I'm sure it was towards anything within the safety restraint or, you know, throttle concerns.

Q.    And what did you find?

A.    I did not find anything that was in there that was pertaining.

Q.    You said you turned over several technical service bulletins?

A.    No, I printed that year of bulletins, and there was nothing that was actually pertaining to those concerns.

- 4 -

*Deposition of Brian Reeves, pp. 23-24.* See also, Reeves Deposition, pp. 54, line 21 – p. 58, line 19.

Notwithstanding this testimony, plaintiffs rely on Mr. Reeves' testimony regarding a 2004 Ford Focus SVT, which Mr. Reeves testified and plaintiffs concede, is a completely different, high-performance vehicle, with a different engine, drive train, and electrical network.

*Deposition of Brian Reeves, p. 27*

Plaintiffs also omit Mr. Reeves' testimony:

> Q.    As you sit here today, do you know whether or not there have been any reports of sudden surges in any other Ford Focus models other than for the year 2004?
>
> A.    To my knowledge, no.
>
> Q.    And would that be because you haven't run the report for the years?
>
> A.    Because I don't recall seeing any.

*Deposition of Brian Reeves, p. 29*

Plaintiffs next infer that Bill Kay (1) does not monitor customer complaints, or (2) NHTSA's website. (Response, pp. 2-3). Apart from ignoring the affirmative evidence that Bill Kay monitored Ford's dealer website and Ford's technical service bulletins (and received no information of sudden acceleration or airbag concerns in the 2004 Focus as a result), plaintiffs provide no evidence that there were *any* customer complaints of sudden acceleration in the 2004 Ford Focus or *any* information on NHTSA's website on that subject. This kind of unconnected, open-ended innuendo does not, it goes without saying, rise to the level of a genuine issue of fact.

Next, plaintiffs confuse an engine misfire, which can occur in *any* vehicle, with sudden acceleration from a binding throttle (the defect alleged). The witness described the two situations as "completely different." *Deposition of Brian Reeves, p. 42.* Plaintiffs confuse the record and

- 5 -

mislead the Court that an engine misfire creates a genuine issue of fact of Bill Kay's foreknowledge

of "sudden acceleration." Plaintiffs fail to advise the Court that Mr. Reeves also testified:

Q. Mr. Reeves, you gave some testimony about a so-called surge phenomenon being experience by owner or operators of various vehicles of all makes and models, including the Ford Focus?

A. Correct.

Q. What do you mean by a surge issue? And can you tell me if that's the same thing in the knowledge and experience of a service director like yourself as the concept of sudden unintended acceleration?

A. Well, a surge would not be accelerated, such as unintended. A surge in the case of a drive train would be as the vehicle was slowing or stopping, the vehicle would miss a gear so it would cause almost like a jerk or a - - if you want to use the term hiccup or something like that.

It's a feeling through the vehicle to where your vehicle is still under control, you're still stopping the vehicle, but it might not as smoothly come down from a gear change.

Q. And that phenomenon can be experienced as a result of a problem with an engine or problem with a transmission?

A. That's correct.

Q. And is that just a mechanical issue that would warrant some kind of a repair?

A. Yes.

Q. Is that the same thing as the diver not being able to bring his vehicle under control as a result of an engine racing and him not being able to control the vehicle with the service brake.

A. No, completely different.

Q. And to the extent that you have given any testimony here today about surges as a consequence of drive-train issues, transmission issues, or engine misfiring, is that, in your mind,

or the mind of a reasonably well-qualified service director like yourself, anything remotely similar to sudden unintended acceleration?

A.    No.

*Deposition of Brian Reeves, pp. 53-54.*

**b.    William Koloseike.**

Plaintiffs ignore that Mr. Koloseike, Bill Kay's owner and president, communicated directly with and relied on Mr. Reeves', Bill Kay's service director, regarding knowledge of the alleged conditions, if any in the 2004 Ford Focus, available to Bill Kay. *Koloseike Deposition, pp. 24-25.* As demonstrated, Mr. Reeves relied on his own service experience, including communications with technicians, and Ford's information such as TSB's regarding the 2004 Ford Focus. *Koloseike Deposition, pp. 30-32.*

Plaintiffs then suggest that Mr. Koloseike failed to check a NHTSA website or "Google" unknown websites to further investigate the Ford Focus, when the record is devoid of any facts that divulge that such efforts, would have alerted Bill Kay to *any* information on the alleged conditions in the 2004 Ford Focus. Similarly, the record is devoid of any facts that any technician at Bill Kay received any customer complaint regarding the 2004 Ford Focus pertaining to the alleged defects. There is nothing in Mr. Koloseike's testimony remotely giving rise to a genuine issue of fact that Bill Kay *should have known* of problems with sudden acceleration or airbag non-deployment in the 2004 Ford Focus prior to the sale of that vehicle to plaintiffs.

**4.    Conclusion**

While parties opposing a summary judgment motion are not required to prove their case, they are under a duty to present a factual basis which would arguably entitle them to judgment in their

favor, based on the applicable law. *Soderlund Brothers, Inc. v. Carrier Corp.*, 278 Ill. App.3d 606,

615 (1995). Plaintiffs have raised only speculation that Bill Kay should have known of the alleged

defective design conditions in the subject vehicle. Analogizing to a medical malpractice case,

plaintiff suggests that there were other tests the doctor could have done, without suggesting what

those tests were, or what they would have revealed. Plaintiffs' cited evidence is woefully short of

that required to raise a genuine issue of material fact adequate to defeat Bill Kay's motion. For all of

the above reasons, Bill Kay Ford, Inc. prays for the entry of an order entering judgment in its favor

and against plaintiffs.

Respectfully submitted,

BILL KAY FORD, INC.

By:    _____
       One of Its Attorneys

I.D. #32878
DONOHUE BROWN MATHEWSON & SMYTH LLC
John A. Krivicich
Michael J. Borree
140 South Dearborn Street, Suite 800
Chicago, IL 60603
Telephone:    (312) 422-0900
Facsimile:    (312) 422-0909

- 8 -

Page 1

```
 1   STATE OF ILLINOIS   )
 2                       )   SS:
 3   COUNTY OF C O O K   )
 4       IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
 5           COUNTY DEPARTMENT - LAW DIVISION
 6   EVELYN LaJEUNESSE,           )
 7           Plaintiff           )
 8       -vs-                     ) No. 02 L. 8252
 9   FORD MOTOR COMPANY, et al.,  )
10           Defendants.         )
11   -------------------------------- )
12   FORD MOTOR COMPANY,          )
13           Third-Party Plaintiff,  )
14       -vs-                     )
15   HENRY LaJEUNESSE,            )
16           Third-Party Defendant.  )
17
18           The deposition of BRIAN REEVES, called
     as a witness for examination, taken pursuant to the
19   provisions of the Code of Civil Procedure and the
     Rules of the Supreme Court of the State of Illinois
20   pertaining to the taking of depositions for the
     purpose of discovery, taken before MICHELLE M.
21   PAOLETTI, a Notary Public within and for the County
     of Cook, State of Illinois, and a Certified
22   Shorthand Reporter of said state, CSR No. 84-4531,
     at Bill Kay Ford, 14633 South Cicero Avenue,
23   Chicago, Illinois, on the 9th day of June, A.D.
     2008, at 11:15 a.m.
24
```

RECEIVED
070568
JUN 2 5 2008
By JAK/MJB

COPY

**Page 1**

```
 1   STATE OF ILLINOIS  )
 2                      )  SS:
 3   COUNTY OF C O O K  )
 4      IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
 5          COUNTY DEPARTMENT - LAW DIVISION
 6   EVELYN LaJEUNESSE,           )
 7             Plaintiff          )
 8        -vs-                    )No. 02 L. 8252
 9   FORD MOTOR COMPANY, et al.,  )
10             Defendants.        )
11   ------------------------------)
12   FORD MOTOR COMPANY,          )
13             Third-Party Plaintiff, )
14        -vs-                    )
15   HENRY LaJEUNESSE,            )
16             Third-Party Defendant.  )
17
18          The deposition of BRIAN REEVES, called
     as a witness for examination, taken pursuant to the
19   provisions of the Code of Civil Procedure and the
     Rules of the Supreme Court of the State of Illinois
20   pertaining to the taking of depositions for the
     purpose of discovery, taken before MICHELLE M.
21   PAOLETTI, a Notary Public within and for the County
     of Cook, State of Illinois, and a Certified
22   Shorthand Reporter of said state, CSR No. 84-4531,
     at Bill Kay Ford, 14633 South Cicero Avenue,
23   Chicago, Illinois, on the 9th day of June, A.D.
     2008, at 11:15 a.m.
24
```

COPY

**Page 2**

```
 1   PRESENT:
 2
 3        CORBOY & DEMETRIO,
 4        (33 North Dearborn Street, 21st Floor,
 5        Chicago, Illinois 60602,
 6        312-346-3191), by:
 7        MR. DANIEL S. KIRSCHNER
 8             appeared on behalf of the Plaintiff;
 9
10
11        DONOHUE, BROWN, MATHEWSON & SMYTH, LLC,
12        (140 South Dearborn Street, Suite 800,
13        Chicago, Illinois 60603,
14        312-422-0900), by:
15        MR. JOHN A. KRIVICICH,
16             appeared on behalf of the Defendant
17             Ford Motor Company;
18
19
20
21
22
23   REPORTED BY:  MICHELLE M. PAOLETTI, CSR, RPR,
24             Illinois CSR No. 84-4531.
```

**Page 3**

```
 2                             was duly sworn.)
 3                    BRIAN REEVES,
 4   called as a witness herein, having been first duly
 5   sworn, was examined and testified as follows:
 6                    EXAMINATION
 7   BY MR. KIRSCHNER:
 8        Q.   Good morning, sir.  Thank you for
 9   joining us.
10        A.   Good morning.
11        Q.   My name a Dan Kirschner.  I'm going to
12   ask you some questions today?  Have you ever given
13   a deposition before?
14        A.   No.
15        Q.   Michelle's our court reporter.  She's
16   taking down everything being said.  She can only
17   take down one person talking at a time, so if you
18   could wait until I finish my question before you
19   answer it, even if you know where I'm going with
20   the question, so we can get the entire question on
21   the record and we get your entire answer on the
22   record, okay?
23        A.   Okay.
24        Q.   If at any point in time you do not
```

**Page 4**

```
 1   understand my question or if I misspeak, please let
 2   me know, and I'll be happy to rephrase it or we can
 3   have it read back, whatever your preference.
 4        A.   Okay.
 5        Q.   Lastly, you need to keep all of your
 6   answers out loud and verbal because Michelle can't
 7   down nods of the head, shrugs of the shoulders,
 8   uh-huhs and uh-uhs.
 9        A.   I understand.
10        Q.   What is your birthdate?
11        A.   19-23-1969.
12        Q.   And where do you reside.
13        A.   LaGrange, Illinois.
14        Q.   And what is you're address there in
15   LaGrange?
16        A.   40 North Waiola Avenue.
17        Q.   Are you married, sir?
18        A.   Yes, I am.
19        Q.   Do you have kids?
20        A.   One.
21        Q.   Congratulations.
22             What is your present employment?
23        A.   Bill Kay Ford.
24        Q.   How long have you been employed in any
```

**Page 5**

```
 1   capacity at Bill K...
 2       A.   Well, Bill Kay Ford bought the
 3   dealership in 2004.  Been here since he bought the
 4   dealership.  I was here prior.
 5       Q.   What is your highest level of education?
 6       A.   I'm about one course away from my
 7   bachelor's degree.  I'm in the process right now.
 8       Q.   Where did you graduate from high school?
 9       A.   From Rich East -- Rich Township East
10   Campus, Park Forest, Illinois.
11       Q.   What year would that be?
12       A.   '87.
13       Q.   And where did you -- was all your
14   college credit in the same place?
15       A.   No, that's a high school.
16       Q.   You're one credit away from --
17       A.   From getting my bachelor's.  No, I'm
18   attending Northwood University.
19       Q.   And are you getting a bachelor's in any
20   particular area?
21       A.   Business management and marketing.
22       Q.   Are you still actively in school?
23       A.   Mm-hm.
24       Q.   What is your anticipated graduation
```

**Page 6**

```
 1   date?
 2       A.   Anticipated graduation date, depending
 3   on course offerings, would be, hopefully, probably
 4   the winter term of this upcoming year.  It all
 5   depends upon if the two required seminars are
 6   available.
 7       Q.   And I won't tell your boss, but after
 8   graduating, do you plan on maintaining your
 9   employment here?
10       A.   Oh, yeah.
11       Q.   Let's move back a little bit.  You first
12   started with Bill Kay when he bought the dealership
13   in 2004.  Were you employed at the prior dealership
14   at this location?
15       A.   Yes, I was.
16       Q.   What was the prior dealer?
17       A.   Domino Ford.
18       Q.   What was your position with Domino Ford?
19       A.   I was service manager.
20       Q.   And how long did you hold that position
21   for?
22       A.   With Domino Ford?  Well, it switched to
23   Domino Ford in, I think, 2001.  Prior to that, it
24   was Fairfield Ford, which was the same owner.  I
```

**Page 7**

```
 1   ...since he ma... bought ...field.  So
 2   I would say, guesstimate, four to five years.
 3       Q.   Taking you back to '96, '97?
 4       A.   No, '96, '97 would be about ten years so
 5   I would say probably about '98, total time before
 6   Bill Kay came in.
 7       Q.   I got you.  Okay.  And have you worked
 8   at any Ford dealership prior to Fairfield?
 9       A.   No.
10       Q.   Had you worked at any other dealerships
11   other than a Ford prior to Fairfield?
12       A.   No.
13       Q.   Was your position at Fairfield your
14   first job in the automotive industry?
15       A.   No.
16       Q.   What previous employment have you had in
17   the automotive industry?
18       A.   I used to sell automotive parts as far
19   as aftermarket components.  I started as a counter
20   person and was in management and all the way up to
21   outside sales for independent companies and
22   warehouses.  Selling to the distributors and
23   selling to installers and warehouses --
24   dealerships, I should say.
```

**Page 8**

```
 1       Q.   Do you presently hold any certificates
 2   or degrees in any field of automotive engineering
 3   or automotive service?
 4       A.   Engineer and service?  No.
 5       Q.   Are you a certified mechanic?
 6       A.   Am I a certified mechanic?  No.
 7       Q.   In your position as service manager here
 8   at Bill Kay, do you personally have any hands-on
 9   servicing of cars?
10       A.   No.
11       Q.   What are your duties and
12   responsibilities as a service manager here at Bill
13   Kay?
14       A.   Like any manager, I run the operations
15   of the service department and the parts department.
16       Q.   And, I apologize, prior to becoming
17   service manager here at Bill Kay, what was your
18   position, or was that your starting position?
19       A.   I started as a service manager but now
20   I'm service director.
21       Q.   What is the difference between service
22   manager and service director?
23       A.   I gained a different department.  Now
24   instead of being in charge of service, I'm in
```

**Page 9**

1  charge of service managers and technicians in

2      Q.    Are you familiar with the technical

3  service bulletins that are issued by Ford to its

4  dealers?

5      A.    Yes, I am.

6      Q.    In your role as either the service

7  manager or service director, did you have any

8  responsibilities for monitoring the technical

9  service bulletins?

10     A.    Technical service bulletins are -- they

11  don't just send them to you.  Well -- if you have a

12  vehicle that has a problem, when you log on to

13  Ford's website, you put in the problem that you're

14  having, and if any technical bulletins for any

15  particular year or model are out there, a list will

16  surface.

17         They do send out publications with new

18  ones, but, obviously, whenever there's a change or

19  something, you access the Ford's website.

20     Q.    The publications they send out, is that

21  a yearly summary of all the technical bulletins?

22     A.    No, there's too many to do anything like

23  that.  It's basically anything that's in the

24  forefront or anything they're seeing an abundance

**Page 10**

1  of that they need to bring to someone's attention.

2      Q.    How often are those publications sent

3  out to dealers?

4      A.    I think Ford tries to send them out at

5  least once a month.

6      Q.    And in your capacity as either the

7  service manager or now service director, does that

8  fall upon you to review those as they come in?

9      A.    Yeah, I do review.

10     Q.    Who was the service director prior to

11  you becoming service director?

12     A.    That would have been Tom Wright.

13     Q.    And what year did you become service

14  director?

15     A.    Did I become service director?  The year

16  Bill Kay bought it, 2004.

17     Q.    Do you know about what month?

18     A.    Probably around December.

19     Q.    In the course of your work for either

20  Bill Kay or prior to Bill Kay with Domino or

21  Fairfield, did you ever have occasion to review any

22  technical service bulletins pertaining to the

23  failure of air bags to properly deploy?

24     A.    The failure of air bags to properly

**Page 11**

2      Q.    Yes.

3      A.    Nothing to my knowledge that is out

4  there.  I mean, nothing that I can think of.

5      Q.    With respect to your tenure as the

6  service manager or service director for either Bill

7  Kay, Domino, or Fairfield Ford, have you ever

8  reviewed any service bulletins that were issued by

9  Ford pertaining to sticking of the cruise control

10  throttle on the Ford Focus for any year?

11     A.    I've never heard of any problems like

12  that.

13         The only time we ever experienced any

14  type of throttle binding or sticking of that, it's

15  normally customer-induced by having more than the

16  factory mat in the foot well or by hitting both

17  pedals at the same time, by not having their foot

18  properly placed.

19     Q.    Can you explain to me how an improper

20  mat or improper foot placement would cause the

21  cruise control throttle to stick?

22     A.    Well, the cruise control doesn't have

23  a -- the cruise control is just an electronic

24  device that's attached to the actual accelerator.

**Page 12**

1         So it's not like it has its own

2  throttle.  It's all computer-generated off the

3  accelerator pedal.

4         If a customer -- which, unfortunately,

5  we have a lot of customers that do this, usually

6  elderly customers do it because they want to

7  protect the vehicle's interior -- on top of the

8  factory floor mats, they will put a secondary mat

9  or, in most cases, a chunk of household carpet.

10         And what happens at that point is, as

11  you're getting in and out -- because most people

12  get in and out, they use their feet -- those

13  carpets move up because they slide.  And when they

14  slide, they will impede the accelerator pedal,

15  which then gives the effect of a racing throttle.

16         In most cases, removing of the carpet or

17  pulling it down will take care of situation.

18     Q.    Have you, in preparation for your

19  deposition today, reviewed any documents?

20     A.    Yeah, I actually glanced over Bill's

21  deposition, and I did review just the TSBs and SSMs

22  that I provided at the time.

23     Q.    Did you review Bill's affidavit?

24     A.    No, I did not.

Page 13

1      Q.    Have you ever had the vehicle
2  inspected or seen any reports of an inspection of
3  the vehicle that was involved in the occurrence on
4  August 10th, 2005?
5      A.    Inspection reports, no.  Yeah, the only
6  time I had the vehicle was just when it was in my
7  shop for -- after it was brought to us from Texas,
8  we cut a second key, and, after that, I think,
9  like, five or 600 miles, the customer brought it in
10  for an oil change.
11      Q.    With respect to the vehicle at issue
12  here that the LaJeunesses had purchased, the Ford
13  Focus, do you have any information or reason to
14  believe that there was anything other than the
15  factory-installed floor mats in that car?
16      A.    No.  Customer never experienced or
17  complained of any situations that would have
18  brought us to look for that.  They never brought to
19  our attention that they had a problem with an
20  accelerator revving or I think the main issue is an
21  air bag --
22      Q.    That's a little more complex than my
23  question.  Let's back up.
24            You mentioned that sometimes you have

Page 14

1  situations --
2      A.    Right.
3      Q.    -- with elderly customers putting
4  carpeting in there --
5      A.    Right.
6      Q.    You don't have any information that
7  that's the situation here.
8      A.    No, we won't look at something unless
9  the customer complains of a concern.
10            When a car comes in, if they only come
11  in for an oil change and they don't have any other
12  issues or concerns, that's -- we do what they ask
13  for.
14      Q.    Let me ask you -- I'm not talking about
15  while it was being serviced, I'm talking about
16  after the occurrence.
17      A.    After the occurrence?
18      Q.    Right.  Did you ever learn that, at the
19  time of the occurrence --
20      A.    No, I never physically looked in the
21  floor, so I have no idea.  You asked if I had ever
22  heard or seen and that's the most common case I had
23  ever seen.
24      Q.    I just wanted to make sure you're not

Page 15

2      A.    No --
3      Q.    -- particular situation.
4      A.    No, it's a very common occurrence.
5      MR. KRIVICICH:  I think you're both talking
6  over each other, which is going to make it very
7  difficult for her.
8            Hold off until he's done asking the
9  question, and then you can let him answer.
10  BY MR. KIRSCHNER:
11      Q.    In addition to the technical service
12  bulletins that are issued by Ford, you indicated
13  that you -- when you log on with a problem or some
14  type of warranty issue into the Ford system, does
15  the Ford system let you know whether there are
16  other similar occurrences that have happened?
17      A.    If you put in the key codes.  Basically,
18  you log into what's called Ford's Oasis Database.
19  Oasis gives you any -- it gives you the information
20  on the vehicle, when it was made, and vital
21  information you might need for repairing a vehicle.
22            And then there's a screen or assistance.
23  Basically, you're tapping into Ford's engineering
24  base and it works off of codes.  You put in a

Page 16

1  certain code for, say, engine, put in a certain
2  code for performance, and you put in a code while
3  accelerating.
4            You put in those three things, and the
5  computer queries Ford's database and any
6  information Ford has on their engineering or on
7  their technical side, will then spit out if there's
8  and TSBs or any SSMs or even if there there's any
9  open campaigns or recalls.
10      Q.    Of the examples you provided earlier in
11  situations where a throttle may stick where there's
12  some type of aftermarket carpeting inserted, are
13  those examples that you've personally experienced
14  in your work as either a service manager or service
15  director?
16      A.    Yes.
17      Q.    Approximately how many occasions have
18  there been reports to you by customers of throttles
19  sticking in a Ford vehicle?
20      A.    In a Ford vehicle?  I've had them in
21  used cars, so I've had them in all kinds of
22  vehicles.  And if it's referring to a mat, it's not
23  uncommon in the wintertime or the Fall or if it's a
24  newer vehicle.

1    So it's a -- it's a Ford concord;
2  we've had it happen on used vehicles which are
3  other manufacturers.
4       Q.    And approximately how many times have
5  you had those types of reports on a Ford vehicle?
6       MR. KRIVICICH:  We're talking about with the
7  mat on the carpet?
8       MR. KIRSCHNER:  That type of example.
9  BY THE WITNESS:
10      A.    I've never kept a log.  It's something
11 that, you know, is fairly common, so it's not like
12 I keep a database or a log, "I had another mat
13 binding," nothing of that nature.
14 BY MR. KIRSCHNER:
15      Q.    Other than mat binding, have you had
16 complaints of throttles sticking which you've
17 attributed to other causes?
18      A.    On what type of vehicle?
19      Q.    On any type of vehicle.
20      A.    On any type of vehicle?  I think Ford
21 had a concern with Tauruses where they had an
22 issue, I think, possibly -- I don't remember what
23 the actual cause of the part was.  It might have
24 been a bushing or something within the throttle

1  body which can cause for a binding accelerator.
2       Q.    Have you ever received any technical
3  service bulletins or viewed in any Ford system,
4  online system, any complaints of sticking throttles
5  which have not been attributed to aftermarket
6  carpeting?
7       A.    I just gave you that example.
8       Q.    With respect to the Taurus?
9       A.    Right.  Yeah, I can't think of any
10 others.
11      Q.    Have you ever, yourself, had any
12 complaints from customers about throttles sticking
13 involving a Ford Focus?
14      A.    None.
15      Q.    If a customer comes in and complains of
16 a throttle sticking in a Ford vehicle, whatever
17 kind of Ford vehicle, and your service technician a
18 attributes it to an aftermarket carpeting, is that
19 an example that you would still put into the Ford
20 system?
21      A.    No, because there's -- it's not Ford's
22 manufacturing or engineering fault.  It's
23 customer-induced.  That's why when a customer comes
24 in and does have a concern of any throttle or

1  mats -- we ask them, you know, "Do you
2  have additional mats" or we look.  And if there
3  are, we instruct the customer to remove those and
4  proceed from there.
5       Q.    How is the determination made -- strike
6  that.
7            Is it you that makes the determination
8  as to what information is forwarded on to Ford?
9       A.    I'm not understanding what you mean.
10      Q.    Sure.  If there's a technical issue with
11 respect to a vehicle that comes in for service, how
12 do you make the determination whether to plug the
13 repair issue into the Ford system or not report it
14 to Ford?
15      A.    Ford has access to every repair order we
16 write, whether it's customer-pay or warranty.  So
17 if Ford wants to query -- using F150s as an
18 example -- how many F150s were in a dealership
19 between a certain period, they have access to our
20 information.
21      Q.    How do they have access to your
22 information?
23      A.    They dial in through our computer
24 system.  It's the same way we submit warranty

1  claims.  I assume it's part of the franchise
2  agreement.
3       Q.    Are warranty claims the only type of
4  claims or service matters that you submit directly
5  to Ford?
6       A.    That we submit directly to Ford?
7       Q.    Yes.
8       A.    Just items that Ford is responsible for.
9       Q.    And that's so payment can be made back
10 to the dealership?
11      A.    Absolutely.
12      Q.    Are there ever times with vehicles,
13 perhaps after the warranty period has ended, where
14 you would submit reports directly to Ford because
15 there might be a safety-related or a
16 mechanical-integrity issues that you want Ford to
17 know about?
18      A.    In terms of where we see something that
19 might be a potential problem?
20      Q.    Correct.
21      A.    There's a method.  It's on the Ford
22 website.  Basically, it's in their technical
23 section.  If you have an issue or you see something
24 that's abnormal, you can document it and submit it

Page 21

1    with the information when she bragged
2    and whatever Ford does on their side.
3        Q.    Was the 2004 Ford Focus equipped with
4    cruise control standard?
5        A.    I'm sure -- no.  Cruise control isn't
6    standard on any vehicle, it's an option.
7        Q.    Do you know whether the vehicle that was
8    sold to the LaJeunesses was equipped with cruise
9    control?
10       A.    I could not tell you.
11       Q.    Would there be documents that reflect
12   whether it was included?
13       A.    You'd have to look at the window
14   (unintelligible).
15       Q.    I'm sorry?
16       A.    The window sticker.
17       Q.    Would it be indicated on any of the
18   paperwork reflecting the sale of the vehicle?
19       A.    I don't know what paperwork you have
20   there.  Would you like me to look?
21       Q.    I would like you to look.
22
23
24

Page 22

1                (WHEREUPON, a certain document
2                was marked Deposition
3                Exhibit No. Group 1, for
4                identification, as of 6-09-08.)
5    BY MR. KIRSCHNER:
6        Q.    Sir, I'm going to you hand you what
7    we've marked as Group Exhibit 1 for identification.
8    If you could take a look through these documents
9    and I'll ask you some questions after you have a
10   chance to look through them.
11       A.    There's nothing in there that would
12   state what the vehicle was built on.  More than
13   likely, since this vehicle wasn't sold directly to
14   Bill Kay, that is why.  It's provably still with
15   the original buying facility.
16       Q.    And what original facility was that?
17       A.    I believe this vehicle was bought
18   somewhere in Texas.  I could not tell you who or
19   where, all I know is that it was originally shipped
20   from Ford to another facility, and we bought it
21   from that facility.
22       Q.    And then when you say, "we," you mean
23   Bill Kay?
24       A.    Bill Kay.

Page 23

1    it to the LaJeunesses?
2
3        A.    Yeah, it was obviously bought for
4    inventory.
5        Q.    Other than the paperwork you've looked
6    for, is there any other paperwork typically
7    maintained by Bill Kay that would reflect whether
8    or not this particular vehicle was equipped with
9    cruise control?
10       A.    Just what you had there.
11       Q.    You had mentioned earlier that there was
12   some technical service bulletins that you pulled in
13   response to this case?
14       A.    Correct.
15       Q.    At whose direction were those pulled?
16       A.    Bill Kay actually called and inquired.
17       Q.    And what did he ask you to look for?
18       A.    He called to see if there were any TSBs
19   or SSMs, which are Special Service Messages,
20   pertaining to an '04 Focus for -- I mean, I don't
21   remember the exact conversation, but I'm sure it
22   was towards anything within the safety restraint
23   or, you know, throttle concerns.
24       Q.    And what did you find?

Page 24

1        A.    I did not find anything that was in
2    there that was pertaining.
3        Q.    You said you turned over several
4    technical service bulletins?
5        A.    No, I printed that year of bulletins,
6    and there was nothing that was actually pertaining
7    to those concerns.
8        Q.    Were any of the technical service
9    bulletins that you printed for the year contained
10   in Group Exhibit 1?
11       A.    Let me look again.  I don't believe they
12   were.
13       MR. KRIVICICH:  I believe he said he pulled a
14   list --
15       THE WITNESS:  Yeah, pulled a list --
16       MR. KRIVICICH:  -- TSBs themselves.
17       THE WITNESS:  -- TSBs themselves.
18   BY THE WITNESS:
19       A.    No, there's nothing here.
20   BY MR. KIRSCHNER:
21       Q.    The printout that you generated from the
22   technical service bulletins, you indicated is a
23   list of all safety-related issues for that model
24   year?

Page 25

1    A.    No, it doesn't matter. Do you
2  have the list? I can see if the query is on it.
3    Q.    I don't.
4    A.    The list, more than likely, was just a
5  blanket for '04 Focus, and, more than likely, it
6  was any particular bulletins that were out there
7  for assistance and diagnosis for repair.
8    MR. KRIVICICH: For the record, I'll
9  voluntarily produce, just to move this along, the
10  list of technical service bulletins for the 2004
11  Ford Focus that I believe Mr. Reeves searched for
12  Mr. Kay.
13    MR. KIRSCHNER: Is this a copy I can have
14  marked?
15    MR. KRIVICICH: You can have it marked. It's
16  my only copy.
17    MR. KIRSCHNER: We'll have that marked as 2.
18         (WHEREUPON, a certain document
19         was marked Reeves Deposition
20         Exhibit No. 2, for
21         identification, as of 6-09-08.)
22    MR. KRIVICICH: There's a few more pages, but
23  Mr. Reeves can describe those pages.
24

Page 26

1  BY MR. KIRSCHNER:
2    Q.    Sir, I'm going to hand you what's marked
3  as Exhibit 2. Take a look at that, and tell me
4  what that document is.
5    A.    The first three pages are a blanket
6  listing of any TSBs that Ford Motor company had for
7  2004 Focus.
8    Q.    Is that the document that you would have
9  printed out at Bill Kay's request?
10    A.    Yes.
11    Q.    And then what are the pages that come
12  after that document?
13    A.    The fourth page is a TSBs for a surge
14  and steady cruise for '04 Focus, SVT model only.
15  And "SVT" stands for Special Vehicle, which is not
16  the type of Focus in question. This basically is a
17  high-performance vehicle.
18         The next page or two pages are a copy of
19  what would be performed by the original buying
20  dealership from Ford. It's a new-car prep sheet.
21  It's the inspection form that they fill out.
22    Q.    Do you know what the difference is
23  between the cruise control as equipped on the
24  vehicle at issue versus a cruise control that's

Page 27

2    A.    Sure. SVT.
3    Q.    "SVT"?
4    A.    Yes, Special Vehicle.
5         And it's a different motor, so it's a
6  complete different system, complete different
7  network.
8    MR. KRIVICICH: The question also assumes
9  facts not in evidence. I thought he didn't know
10  whether this vehicle had cruise control.
11    MR. KIRSCHNER: I'm just responding to the
12  question. He's indicating it's different on this
13  vehicle --
14  BY THE WITNESS:
15    A.    It states right there, "SVT only."
16  BY MR. KIRSCHNER:
17    Q.    Where it states on Page 4, "SVT only,"
18  does that mean that the bulletin is for SVT only or
19  the cruise control system on the SVT model is
20  unique to the SVT model?
21    A.    It's saying that this bulletin applies
22  only to Focuses that are SVT that might exhibit
23  these concerns.
24    Q.    Do you know whether or not the cruise

Page 28

1  control mechanism on the SVT is different than the
2  cruise control installed on non-SVT models for the
3  2004 Ford Focus?
4    A.    More than likely, the SVT, in most
5  cases, probably does not have a cruise control;
6  most of them are probably going to be manual shift.
7  Not that that matters, but with an SVT, I honestly
8  couldn't tell you. I didn't engineer it so...
9         But I would assume it would be different
10  because it is two different type of setups.
11    Q.    Other than printing out the bulletin, do
12  you have any knowledge as to the reason or cause
13  for the sudden surge in the 2004 Ford Focus SVT
14  model?
15    A.    Just what -- that known concern that
16  could happen that Ford provided.
17    Q.    Was that something -- strike that.
18         Were any surges involving a 2004 Ford
19  Focus SVT model ever reported to Bill Kay?
20    A.    No, we weren't a certified SVT, so,
21  therefore, we would not have had them.
22    Q.    Did you run any technical service
23  bulletin searches for sudden surges in Ford Focus
24  models for years other than 2004?

```
 1      A.    No, this...
 2      Q.    As you sit here today, do you know
 3  whether or not there have been any reports of
 4  sudden surges in any other Ford Focus models other
 5  than for the year 2004?
 6      A.    To my knowledge, no.
 7      Q.    And would that be because you haven't
 8  run the report for the years?
 9      A.    Because I don't recall seeing any.
10      Q.    Do you know whether or not the cruise
11  control mechanism and computer system for the
12  cruise control on the 2004 model was any different
13  than the 2003 model?
14      A.    I don't know.
15      Q.    Are you involved in the sales aspect of
16  Bill Kay operations?
17      A.    On the sales as far as --
18      Q.    I'm sorry, sales of new vehicles.
19      A.    No.
20      Q.    Do you have any direct interaction with
21  customers at the front-end sales point of new
22  vehicles?
23      A.    As far as when they're buying a vehicle?
24      Q.    Correct.
```

```
 1      A.    Only if a customer has a question that
 2  the sales department cannot answer.
 3      Q.    Some type of technical question and then
 4  they bring you in?
 5      A.    Correct.
 6      Q.    Other than the periodic technical
 7  service bulletins that Ford would distribute to its
 8  dealers, did you or have you personally had any
 9  other either initial training or periodic updates
10  from Ford as to mechanical or design aspects of its
11  vehicles?
12      A.    Yes.
13      Q.    What type of training have you had?
14      A.    We have training that's performed
15  through Ford Motor Company.  It doesn't go into
16  detail such as the actual engineering, but it's a
17  basics of information of what we might see or come
18  across and the aspects of performing the duties on
19  a service desk; such as taking care of the customer
20  concerns and basic fundamental knowledge of the
21  different types of systems on the vehicles.
22      Q.    And how is that training administered?
23      A.    How is that training administered?
24      Q.    Yes.
```

```
 1  ...to... primarily
 2  just basically through a system called Ford Star,
 3  which is a satellite feed from the facility to a
 4  training facility at Ford with a direct link for
 5  communication back and forth while looking at the
 6  TV.  Kind of like a video teleconference.
 7            But primarily now, because of
 8  technology, 98 percent of it is done online with
 9  online scenarios and stuff of that nature.
10      Q.    Online through the computer as opposed
11  to DVDs and --
12      A.    Correct.  DVDs, they stopped using those
13  quite a time ago because you cannot update them as
14  you can an online course.
15      Q.    Has any of the training you received
16  from Ford, either through manuals, DVDs or online,
17  ever touched upon issues of non-deployment of
18  passive restraint systems?
19      A.    No, that would be more of -- on
20  something of that nature, it would probably be more
21  of an engineering issue.  It would not be something
22  we see on the dealership level because the vehicles
23  are equipped with their own self test-out issues.
24            So if there's a problem with an air bag
```

```
 1  system on a vehicle, it will not pass or clear the
 2  self test, so, therefore, you will get a warning
 3  light, which is the air bag light.  So if the air
 4  bag light is on, then there's a problem within the
 5  system.  And if the customer then checks the
 6  Owner's Manual, it says to contact the dealership
 7  for service.
 8            So that's about the extent of what
 9  you're given on that issue.  The air bag system
10  itself tests out.  Every time you put the key in on
11  every car, the air bag self-tests.  If there's a
12  problem, the air bag light turns on and deactivates
13  the air bag system, and you get your vehicle in for
14  service.
15      Q.    Would you agree, in terms of your
16  experience as service director and service manager
17  as well as your training through Ford, that if
18  there is any type of potential problem with the
19  performance of an air bag, you should receive an
20  air bag light?
21      A.    If there's a malfunction in the safety
22  restraint system.  That is not limited to the air
23  bag.  The safety restraint system requires on
24  multiple pieces for it to work.
```

1    Q.    I know that there's sales

2 of new automobiles, but, in your experience, is

3 there any training that you're aware of given to

4 the sales staff in terms of educating the consumer

5 as to what situations an air bag may deploy versus

6 what situations an air bag may not deploy?

7    A.    No, that would be something more so of

8 an engineering aspect because it's a safety

9 concern.  You can't make a statement that at 35

10 miles per hour, if you hit something with your

11 front bumper, your air bag's going to deploy.  The

12 conditions might not me right, it might not be safe

13 for that air bag to deploy.

14        That's why the technology is to make the

15 system smart; to know where the driver is at in the

16 vehicle, have the seatbelts been pulled.  There's

17 lots of things that go in before an air bag is

18 deployed.

19    Q.    With respect to the 2004 Ford Focus, do

20 you know whether, for that model year, Ford had

21 smart air bags?

22    A.    Yes, the technology by that point is --

23 it's a sensoring (sic) system, so the seatbelts are

24 monitored.  There's probably more than likely a

1 sensor in the seat for the passenger compartment so

2 where they know if there's a passenger.

3        It knows -- it monitors everything.  It

4 monitors the speed of the vehicle, I believe the

5 contacts probably have a gold contact.  For that to

6 break, it has to be under certain conditions for

7 the air bag -- I don't design it, I'm just going

8 off of just...

9    Q.    As you sit here, do you have any

10 firsthand or personal professional knowledge as to

11 why the air bag did not deploy in the LaJeunesse

12 2004 Ford Focus?

13    A.    I do not.

14    Q.    For those 2004 Ford Focuses that were

15 equipped with cruise control, do they have a

16 "resume" function?

17    A.    If a vehicle has cruise control, then it

18 has a "resume" function.

19    Q.    Do you recall where the cruise control

20 was mounted on the 2004 Ford Focus?

21    A.    Well, it depends; is it a

22 factory-installed cruise control or an aftermarket

23 cruise control?

24    Q.    Would aftermarket include cruise control

2    A.    If it's after market?  No.

3    Q.    That would be considered factory

4 installed?

5    A.    Factory installed would be an

6 installation unit that is mounted on the steering

7 wheel with finger controls.

8        You can obtain and buy an aftermarket

9 system, which sometimes they have finger controls,

10 but more times than not, they have what's called a

11 stalk mount, which is almost like a turn signal

12 where the stalk sticks out and it has the controls

13 on there.

14    Q.    The paperwork I showed you from Group

15 Exhibit 1, if cruise control was installed by Bill

16 Kay, would that be reflected on the --

17    A.    Yes, it would.

18    Q.    -- purchase contract?

19        What's your understanding of how the

20 "resume" function works?

21    A.    What is my understanding on how it

22 works?  After you hit the brake to cancel the

23 cruise control, you hit the "resume," providing you

24 have not turned off the cruise control or shut the

1 ignition off, and it returns to the speed you were

2 at.

3    Q.    Is there a minimum speed at which you

4 have to be moving in order to use the "resume"

5 function?

6    A.    On most vehicles, you have to be going

7 over 30 -- I believe it's 30 to 35 miles per hour

8 for the cruise control system to work at all.

9    Q.    Back on the date of purchase by Bill Kay

10 in 2004 at the dealership to the present, has Bill

11 Kay instituted any type of system for monitoring or

12 keeping track of any recurrent complaints or

13 problems with Ford vehicle?

14    A.    Just what we obtain through Ford motor

15 company.

16    Q.    I'm speaking in terms of complaints that

17 are made to Bill Kay by its customers.  Is there

18 any system to keep track of recurrent complaints?

19    A.    As far as -- complaints as far as on

20 personnel or complaints on vehicles?

21    Q.    On vehicles.

22    A.    On vehicles, no.

23    Q.    What is Ford's Service System?

24    A.    Ford's Service System?

**Page 37**

1    Q.    Ford's [illegible] that

2  term?

3    A.    It's not ringing any bell.  Might not

4  have the correct name.  Are you talking about --

5    Q.    Well, the technical service bulletins,

6  you get those by receiving them from Ford or by

7  logging on, correct?

8    A.    Correct.

9    Q.    What is it your logging on to?

10    A.    You're logging on to Ford's dealer

11  website.  It's a dealership-only, it's a

12  franchisee-only website.

13    Q.    Are you familiar with the National

14  Highway Transportation Safety Administration?

15    A.    Yes, I'm familiar.

16    Q.    Have you ever visited their website?

17    A.    No, I have not.

18    Q.    Do you know whether or not their website

19  maintains a listing of reported problems with

20  various vehicles?

21    A.    I've never visited, so I would not know

22  that.

23    Q.    Has anyone ever told you that?

24    A.    No.

**Page 38**

1    Q.    As part of your training, either with

2  Bill Kay or Fairfield or Domino, were you ever

3  trained to monitor or look at the NHTSA website?

4    A.    No.

5    Q.    You mentioned earlier the

6  throttle-sticking issue with respect to aftermarket

7  floor mats?

8    A.    Mm-hm.

9    Q.    Have you ever had a customer report to

10  you or to Bill Kay a problem with an engaging

11  throttle?

12    A.    With an engaging throttle?  Not being

13  able to depress the throttle?

14    Q.    No, with unexpected acceleration.  A

15  throttle engaging when it's not expected to engage.

16  MR. KRIVICICH:  Asked and answer.  He's

17  already given you testimony on his experience with

18  sticking throttles.

19  MR. KIRSCHNER:  I'm not asking about sticking

20  throttles.

21  BY MR. KIRSCHNER:

22    Q.    You can answer the question.

23  MR. KRIVICICH:  Same objection.

24    Go ahead and answer.

**Page 39**

2    A.    What do you mean by "engaging throttle"?

3  BY MR. KIRSCHNER:

4    Q.    Have you ever had a customer report to

5  you an incident or concern that a throttle has

6  engaged when it wasn't expected to?

7    A.    That a throttle has engaged when it

8  wasn't expected to?  Yeah, I mentioned that

9  earlier; on the Tauruses they had an issue where

10  there was, I believe, something within the throttle

11  body or something of that nature that would

12  malfunction.

13    Q.    The Taurus issue, is that something you

14  learned about through technical service bulletins,

15  or is that something you experienced through

16  customer reports personally?

17    A.    Normally, the method or the chain of how

18  you learn of a situation like that, when you get

19  the technical service bulletin from Ford, you

20  glance through them to bring yourself aware.

21  You're not going to study them as if you're

22  studying for a test.

23    If a customer comes in, that's when you

24  start to realize and start to remember a situation.

**Page 40**

1  We don't go anywhere without a concern.  If a

2  customer comes in and states they have a concern,

3  then we investigate it.

4    We don't just randomly say, "That's a

5  2007 Ford500.  This TSBs says you might have a

6  problem on this.  Why don't you bring your car in."

7  It doesn't work that way.  The customer has to

8  experience a problem.  Because, since it's a

9  technical service bulletin or an SSM, doesn't mean

10  it applies to all vehicles.  It's not -- every

11  vehicle's made differently.  They're all made

12  independently, so not all vehicles are going to

13  experience a problem.

14    Q.    With respect to the technical service

15  bulletins -- strike that.

16    With respect to the sudden-acceleration

17  issue with the Ford Taurus, was that something you

18  learned about --

19    A.    By customer --

20    Q.    -- by customer's coming in?

21    Okay.  That's what I was trying to find

22  out, whether it was a firsthand issue or whether

23  you read it somewhere --

24    A.    No, firsthand issue.

```
 1      Q.   And when ___ would have in ___
 2  is that something you would have then put in the
 3  Ford service system because it's a warranty issue?
 4      A.   That is correct.
 5      Q.   And then, at that point, you would have
 6  learned about other occurrences?
 7      A.   Well, what would have happened is -- if
 8  I remember correctly, on the Tauruses, the issues
 9  were that the vehicles already had to be at a
10  cruising speed, which is probably 55 miles per hour
11  or higher, because, again, most cruise control
12  systems don't work below 30 to 35 miles per hour.
13           When trying to deactivate the cruise
14  control system by pressing the brake pedal, it did
15  not deactivate.  So where the customer was
16  expecting the vehicle to slow, the vehicle would
17  hold steady so they would get the illusion that it
18  was actually accelerating, because, in their
19  opinion, they should have been stopping, when
20  that's not what was happening.
21           And, at that point, we would write a
22  warranty claim, we would repair the vehicle, if
23  there was any bulletins that pertained, we would
24  follow the repairs Ford recommends, and then, at
```

```
 1  that point, we would submit the payment through
 2  Ford, and that's where they would have the
 3  information that a vehicle was in and what repair
 4  was done.
 5      Q.   Do you know what percent of Bill Kay's
 6  overall new car sales are Ford Focuses?
 7      A.   I do not.
 8      Q.   Do you recall with respect to the
 9  Ford-Taurus issue what the cause was for the
10  non-disengagement of the cruise control?
11      A.   I believe it might have been something
12  within the throttle body.  I'm not 100 percent
13  sure.
14      Q.   Putting aside the Ford Taurus, have you
15  ever had a complaint by a customer regarding either
16  a surge or a sticking throttle that you could not
17  attribute to aftermarket floor mats or confusion of
18  pedals?
19      A.   You're combining two different aspects
20  of a vehicle.  You can get a surge from a
21  performance issue or from a misfire, which is
22  completely different from a binding throttle.
23      Q.   Explain to me what you mean by the
24  "misfire."
```

```
 1  ___ engine ___ ___ ___ es when
 2  the engine is not performing properly -- so use,
 3  for instance, a four-cylinder motor -- if one of
 4  those cylinders does not fire properly, when it
 5  fall to that cylinder for the performance and it's
 6  not there, the engine is going to lag.  When it now
 7  falls to the next cylinder that is firing, the
 8  engine's going to perform.  It's going to have a
 9  drop and then a return, so it's going to feel like
10  a surge.
11      Q.   What other reasons are there for a
12  surge?
13      A.   What other reasons are there for a
14  surge?  There could be numerous issues.  You can
15  have an issue with the drive train, an issue with
16  the transmission, anything.
17      Q.   Have you had any reports made to Bill
18  Kay by any customers regarding surges in any model
19  year Ford Focus that you attributed to either drive
20  train or the transmission?
21      A.   Sure.  Yes, we have.
22      Q.   In running your technical service
23  bulletin searches for 2004 Ford Focus, did you come
24  across any recurrent issues of surges involving
```

```
 1  drive-train issues or transmission issues?
 2      A.   I'd have to review the list, but I do
 3  not believe there was anything on there.
 4      Q.   Okay.  Review the list.
 5      A.   There are none listed.
 6      Q.   Was direction given to you by Bill Kay
 7  to only search for 2004?
 8      A.   Yes.  Is that not the year of the
 9  vehicle in question?
10      Q.   It is.  The experience that you've had
11  with sudden surges on account of drive train issues
12  or transmission issues, do you know one way or the
13  other whether or not those have been with a 2004
14  Ford Focus?
15      A.   I'm sure there have been.
16      Q.   And are those issues which you would
17  have or someone from Bill Kay would have put into
18  the Ford warranty repair system?
19      A.   Only if the issue was verified and a
20  repair was made.
21      Q.   By that, you go through a process of
22  trying to recreate the problem in the service
23  department?
24      A.   Correct.
```

1    Q.    If the case it not there, what
2  do you do at that point?
3    A.    At that point, it's documented that the
4  concern cannot be verified, and, depending upon how
5  much time was spent by the technician, service
6  writer, or myself assisting the customer, a claim
7  may be filed to Ford if its justifiable.
8         If it's just a quick drive around the
9  block or something of that nature just to see if
10  there's a problem with the customer, more than
11  likely, nothing would be submitted to Ford.
12    Q.    In a situation where it can't be
13  recreated and if you don't submit to Ford, you
14  don't charge the customer for the drive around the
15  block?
16    A.    That is correct.
17    Q.    And you indicated that it's somehow
18  internally documented that the vehicle was in?
19    A.    If a repair order is opened.
20    Q.    And a repair order would only be opened
21  if you could find a problem or recreate a problem?
22    A.    Not necessarily.  If a customer comes in
23  and says they have a concern, if it's a
24  driveability issue or say, for instance, a surge

1  issue, and upon initially speaking to the customer
2  it seems kind of sporadic or doesn't sound -- maybe
3  it's possibly a characteristic they're not familiar
4  with -- because most of the vehicles, the drive
5  trains are electronically controlled so you can
6  make the transmission or the vehicle do all kinds
7  of funny things, such as surging.
8         Just by placement of the foot, you can
9  cause the transmission to engage or disengage.  So
10  the driver can create a surge, the driver can
11  create a lot of different feelings.
12         For that reason, we may take a quick
13  ride with the customer for their benefit, so they
14  don't have to leave the vehicle with us, and ours
15  if there's nothing wrong with the vehicle that we
16  can physically see by -- no warning lights or
17  unable to verify.  It's basically an education
18  course.
19         You teach a customer that when you have
20  a stop sign -- using that as an example -- you
21  can't come to a rolling stop, ease up, and then tip
22  back into it because you're going to confuse the
23  electronics; therefore, you're going to create a
24  bang or create a surge or you're going to create a

2    Q.    Is that type of education given to the
3  customer at the front end at the time of purchase
4  of the vehicle as well?
5    MR. KRIVICICH:  Object to the form of the
6  question.  You're talking about a customer that has
7  presented with a concern that they're responding
8  to, not the sale of a new vehicle.
9  BY MR. KIRSCHNER:
10    Q.    Is that kind of education about the
11  potential for the 2004 Ford Focus to surge in
12  certain situations given to the customer at the
13  front end at the time of purchase of the vehicle?
14    MR. KRIVICICH:  Same objection.
15         You can go ahead and answer if you
16  understand the question.
17  BY THE WITNESS:
18    A.    Again, I'm not involved in the sale of
19  the vehicle, so I don't know.  They are given an
20  Owner's Manual, and most of these cases are
21  resulted from not properly driving.
22  BY MR. KIRSCHNER:
23    Q.    When you say "not properly driving," you
24  mean an issue where the customer has to be educated

1  as to the nuances of that particular car's system?
2    A.    No, services like I -- the example I
3  gave you if a customer comes to a rolling stop
4  and -- "a rolling stop" refers to not stopping at a
5  stop sign, deaccelerating to the point where you
6  can see nobody's coming but not actually stopping
7  the vehicle and then tipping back into the
8  accelerator.
9         You're giving the vehicle the command to
10  stop, and then before you let that vehicle do that
11  command of stopping, you then now tell it to start.
12  You're going to cause that vehicle to jerk, you're
13  going to cause that vehicle to surge because you're
14  confusing the electronics of the vehicle.
15         You're not doing what you're supposed to
16  be doing; such as, if you're deaccelerating and
17  then suddenly tip into it, it's going left and now
18  you're telling it to go right.  There's going to be
19  a...
20    Q.    Is that the same type of condition which
21  someone would experience in stop-and-go traffic as
22  well?
23    A.    In stop-and-go traffic?  Stop-and-go
24  traffic, you're probably not coming down from a

1  cruise speed, so you're probably going to slow
2  pace so you won't be experiencing transmission
3  shifts.
4         Stop-and-go traffic you're probably only
5  in the first or second gear. But if you're
6  switching between gears, I suppose you could.
7     Q.  As the technical service director and
8  previously as the technical service manager, did
9  you ever have any training courses for the sales
10 personnel at Bill Kay on how to educate a customer
11 on the potential for sudden surges with various
12 types of slowing or stopping or stopping and
13 accelerating?
14    A.  Are you asking if I taught a course to
15 the sales department.
16    Q.  Doesn't have to be a formal course, but
17 did you ever give any training to the sales people?
18    A.  No.
19    Q.  Do you know anyone at Bill Kay that has
20 trained or educated the sales people on the
21 phenomenon that you just described with respect to
22 the transmission engaging in slowing and starting
23 traffic?
24    A.  More than likely not.

1     Q.  That addresses the transmission issue.
2  Let's talk about the drive train. What experience
3  have you had with sudden surges that you've had
4  with the drive train?
5     A.  Drive train is the transmission.
6     Q.  I thought you said drive train and
7  transmission --
8     A.  Well --
9     Q.  -- you're talking about one and the
10 same?
11    A.  Exactly.
12    Q.  I'm almost done.
13        The instances in which a client comes in
14 and registers a concern about an experience with
15 some type of sudden surge and it cannot be
16 recreated, if it's not reported to Ford through the
17 warranty system, is there any other means in which
18 that complaint by the customer is registered with
19 Ford? Would Ford have any way of knowing about it?
20    A.  If it wasn't registered as far as
21 submitted for payment to Ford?
22    Q.  Correct.
23    A.  And a repair order was -- no, there
24 would be no way for Ford to know.

1  would you have an opportunity to
2  review Bill Kay's deposition?
3     A.  I glanced through it, yes.
4     Q.  In glancing through it, was there
5  anything that he had testified to that you thought
6  maybe he misspoke about or got wrong?
7     A.  Nothing that comes to mind.
8     Q.  The salesperson for the LaJeunesse
9  vehicle, as I understand it, was Paris Haynes
10 H-a-y-n-e-s. Do you know Paris?
11    A.  No, I do not.
12    Q.  Any recollection of Paris?
13    A.  No.
14    Q.  You wouldn't know if Paris is working
15 today?
16    A.  Nowhere in the facility now.
17    Q.  The drive-train surge issues that you
18 indicated relating to transmission engagement,
19 would that also have predated the 2004 Ford Focus;
20 would that be in 2003, 2002?
21    A.  It would be on any vehicle, whether
22 Ford, GM, Chrysler Toyota.
23    Q.  So the answer to my question is yes?
24    MR. KRIVICICH:  No, that's not what he said.

1  Object to the mischaracterization of the testimony.
2  BY MR. KIRSCHNER:
3     Q.  Then answer my question. Would it have
4  been on the 2003 Ford Focus?
5     A.  Could it have been on a 2003?
6     Q.  Yes.
7     A.  It could be on any vehicle. It's
8  driver-induced.
9     Q.  So it could be true with a 2002 Ford
10 Focus?
11    A.  It could be true with a 2009 Toyota.
12    Q.  Answer my question.
13    MR. KRIVICICH:  If you have that experience
14 and knowledge in that regard.
15 BY THE WITNESS:
16    A.  2003 Focus, I'm sure at some point
17 someone probably has had a surge issue in the drive
18 train.
19 BY MR. KIRSCHNER:
20    Q.  Have you had reports made to Bill Kay on
21 surge issues on a 2003 Ford Focus?
22    A.  I don't know of any exact or...
23    MR. KIRSCHNER:  That's all I have. Thank you,
24 sir.

1      (WHEREUPON, a recess was had.)

2

3                    EXAMINATION

4  BY MR. KRIVICICH:

5      Q.    Mr. Reeves, you gave some testimony

6  about a so-called surge phenomenon being experience

7  by owner or operators of various vehicles of all

8  makes and models, including the Ford Focus?

9      A.    Correct.

10      Q.    What do you mean by a surge issue?  And

11  can you tell me if that's the same thing in the

12  knowledge and experience of a service director like

13  yourself with the concept of sudden unintended

14  acceleration?

15      A.    Well, a surge would not be accelerated,

16  such as unintended.  A surge in the case of a drive

17  train would be as the vehicle was slowing or

18  stopping, the vehicle would miss a gear so it would

19  cause almost like a jerk or a -- if you want to use

20  the term hiccup or something like that.

21           It's a feeling through the vehicle to

22  where your vehicle is still under control, you're

23  still stopping the vehicle, but it might not as

24  smoothly come down from a gear change.

---

1      Q.    And that phenomenon can be experienced

2  as a result of a problem with an engine or problem

3  with a transmission?

4      A.    That's correct.

5      Q.    And is that just a mechanical issue that

6  would warrant some kind of a repair?

7      A.    Yes.

8      Q.    Is that the same thing as the driver not

9  being able to bring his vehicle under control as a

10  result of an engine racing and him not being able

11  to control the vehicle with the service brake?

12      A.    No, completely different.

13      Q.    And to the extent that you have given

14  any testimony here today about surges as a

15  consequence of drive-train issues, transmission

16  issues, or engine misfiring, is that, in your mind,

17  or the mind of a reasonably well-qualified service

18  director like yourself, anything remotely similar

19  to sudden unintended acceleration?

20      A.    No.

21      Q.    And you've had occasion to review the

22  sale and service records for the subject vehicle

23  that have been marked as Exhibit 1?

24      A.    Yes.

---

1  documents that indicate at any time that the

2  documents that indicate at any time that the

3  customer presented a complaint or a concern with

4  respect to acceleration of the vehicle or an engine

5  code or an engine problem or acceleration problem

6  of any kind?

7      A.    There was one repair order written that

8  was instituted by the vehicle owners.  It was here

9  strictly for an oil change.

10           Any of those concerns such as a misfire,

11  a hesitation, or a stumble or if the customer

12  perceives it as a surge, any malfunction of a motor

13  or the drive train would generate a warning light

14  because it will catch that.  It will put it in

15  memory for us to use as diagnoses.

16      Q.    Is there any evidence in the --

17      A.    No, there's --

18      Q.    -- records of this vehicle that that

19  occurred here?

20      A.    There is none.  It was strictly here for

21  an oil change.  There was no other issues brought

22  to mention.

23      Q.    And, similarly, is there any indication

24  in any of the records for this vehicle that there

---

1  was any air bag light or false code or anything of

2  that kind detected on the supplemental restraint

3  system of this vehicle; was that a concern

4  presented by the customers?

5      A.    The only other repair order on this

6  vehicle was before it was sold, and that was to cut

7  and program a second key.  No other issues.

8      Q.    You looked at the list of TSBs that are

9  applicable to the 2004 Ford Focus?

10      A.    Yes, I have.

11      Q.    And that's been marked as Exhibit 2?

12      A.    Correct.

13      Q.    And is there any TSB that is applicable

14  to a cause or a concern for sudden unintended

15  acceleration?

16      A.    No, there are not.

17      Q.    Is there any TSBs that's applicable to

18  an air bag fault concern or failure of an air bag

19  to deploy in a situation where it's designed to

20  deploy?

21      A.    There are not.

22      Q.    And apart from the service records for

23  the vehicle, what the customer presented in terms

24  of complaints, if any, on this vehicle, and the

**Page 57**

1  TSBs applicable to this vehicle, or any
2  other sources of reliable information that a
3  dealership of Bill Kay Ford would rely upon or
4  could rely upon in terms of assessing whether a
5  particular vehicle like this one has a concern with
6  sudden acceleration or or a failure of an air bag
7  to deploy in an accident?
8       A.    Well, it would have to start with an
9  actual concern from the customer, at which point we
10  would then contact Ford engineering upon assisting
11  us in diagnosis and/or repair.
12      Q.    And is there any evidence of that here?
13      A.    No.
14      Q.    And apart from customer concern or the
15  TSBs applicable to this vehicle, is there anything
16  else that a dealership normally -- a dealership
17  like Bill Kay Ford normally would look to in
18  determining whether a particular vehicle has
19  problems or issues along the lines of those
20  subjects?
21      A.    The only place any type of facility
22  dealership would go to would be the manufacturer,
23  and that's, again, if the customer has brought a
24  concern forward.

**Page 58**

1       Q.    And you've identified the sources from
2  the manufacturer that the dealership can rely on?
3       A.    Right.
4       Q.    And you've had experience now in the
5  automotive service industry for many, many years;
6  is that right?
7       A.    That is correct.
8       Q.    And the way in which Bill Kay Ford
9  addresses these kinds of issues, is that similar to
10  the way other Ford dealerships would address these
11  kinds of issues if they were presented to it?
12      A.    Yes.
13      Q.    And, as far as you're concerned, and
14  based on your experience, the way in which Bill
15  Ford would address those kinds of concerns if they
16  existed to a vehicle is similar to the way other
17  new and used car dealerships address similar
18  concerns?
19      A.    I would believe so, yes.
20      MR. KRIVICICH:  That's all.  Thank you.
21           FURTHER EXAMINATION
22  BY MR. KIRSCHNER:
23      Q.    Other than the Ford Taurus, are you --
24  and other than the one TSB for the Focus SVT, are

**Page 59**

1  you aware of any other reported cases of unintended
2  acceleration issues with Ford vehicle in the last
3  ten years?
4       MR. KRIVICICH:  Let me object to the form of
5  the question.  I don't know that the TSBs as to the
6  SVT documented a sudden acceleration issue.  It
7  just talked about a surge at steady-state cruise.
8  BY MR. KIRSCHNER:
9       Q.    Answer the question.
10      A.    None that I'm aware of.
11      Q.    Other than the Ford Taurus issue you
12  talked about earlier, is it your testimony that the
13  only time customers have made complaints of sudden
14  unintended acceleration to Bill Kay, it has been
15  attributed solely to either aftermarket carpeting
16  or confusion of pedals?
17      A.    Other than the Ford Taurus?  Again, when
18  you're speaking surge, are you -- it's -- a
19  surge --
20      Q.    I didn't say, "surge," I said sudden
21  unintended acceleration.
22      A.    Nothing to my knowledge, no.
23      Q.    And if a customer did make such a
24  complaint and there was -- and such complaint could

**Page 60**

1  not be recreated and there's no warranty service
2  payment to be made, there's no internal
3  documentation here that would be maintained with
4  respect to that complaint by a customer, is there?
5       A.    No, whenever a technician even
6  road-tests on a vehicle, for insurance purposes,
7  there's a repair order opened.
8            So if a customer made a concern or a
9  complaint of an issue and even a road-test was
10  taken, because of the simple fact that you need to
11  have accountability for your personnel, there would
12  be a repair order.  There would be a paper trail if
13  a concern was issued.
14      Q.    And in this day and age, is it an actual
15  paper trial, or is it electronic, in a computer
16  system?
17      A.    There's always paper.  They have to sign
18  it.
19      Q.    Is the paper then duplicated into the
20  system?
21      A.    The computer system generates the paper.
22  It's entered into the computer first, such as the
23  in-house computer system, and then a repair order
24  is generated.

**Page 61**

1    Q.   So the ... computer
2    and you hit "Print" and it prints out the page?

3    A.   Correct.

4    Q.   Is there any way to search within the
5    Bill Kay existing computer system specific terms
6    such as, "sudden acceleration" or "unintended
7    acceleration" or "surge"?

8    A.   No, there is not.

9    MR. KIRSCHNER:  That's all I have.

10   MR. KRIVICICH:  Signature is reserved.  If you
11   could attach the two exhibits, and I will order a
12   copy if the original is ordered.

13        FURTHER DEPONENT SAITH NAUGHT.

---

**Page 64**

1    ... WITNESS ... to set my
2    hand and affix my seal of office at Chicago,
3    Illinois, this 23rd day of June, 2008.

8                        *Michelle M. Paoletti, CSR*

11   C.S.R. Certificate No. 84-4531.

---

**Page 63**

1    STATE OF ILLINOIS )
2                     ) SS:
3    COUNTY OF C O O K )

4        I, MICHELLE M. PAOLETTI, a Certified
5    Shorthand Reporter within and for the County of
6    Cook, State of Illinois, do hereby certify:

7        That previous to the commencement of the
8    examination of the witness, the witness was duly
9    sworn to testify the whole truth concerning the
10   matters herein;

11       That the foregoing deposition transcript
12   was reported stenographically by me, was thereafter
13   reduced to typewriting under my personal direction
14   and constitutes a true record of the testimony
15   given and the proceedings had;

16       That the said deposition was taken
17   before me at the time and place specified;

18       That I am not a relative or employee or
19   attorney or counsel, nor a relative or employee of
20   such attorney or counsel for any of the parties
21   hereto, nor interested directly or indirectly in
22   the outcome of this action.

---

**Page 65**

1                    I N D E X

2    WITNESS                    EXAMINATION

3    BRIAN REEVES

4        By Mr. Kirschner          3, 58

5        By Mr. Krivicich          53

8                  E X H I B I T S

9    NUMBER                     PAGE/LINE

10   DEPOSITION EXHIBITS

11       No. 1                   22

12       No. 2                   25

Page 1

```
 1    STATE OF ILLINOIS )
                       )  SS:
 2    COUNTY OF C O O K )

 3
           IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
 4               COUNTY DEPARTMENT - LAW DIVISION

 5
      EVELYN LaJEUNESSE,              )
 6            Plaintiff,              )
                                     )
 7       -vs-                         )
                                     )
 8    FORD MOTOR COMPANY, et al.,     )
              Defendants.            )
 9    _____)
                                     ) No. 07 L 8251
10    FORD MOTOR COMPANY,            )
              Third-Party Plaintiff,)
11                                   )
         -vs-                         )
12                                   )
      HENRY LaJEUNESSE,              )
13            Third-Party Defendant.)

14

15            The deposition of WILLIAM KOLOSEIKE, taken

16    in the above-entitled cause pursuant to the Code of

17    Civil Procedure of the State of Illinois, and the

18    Rules of the Supreme Court thereof, pertaining to

19    the taking of depositions, for the purpose of

20    discovery, taken before Maria E. Shockey, CSR and

21    Notary Public within and for the County of Kane and

22    State of Illinois, at 601 Ogden Avenue, Lisle,

23    Illinois, commencing at the hour of 3:05 p.m. on the

24    5th day of February, A.D., 2008.
```

Page 2

1  A P P E A R A N C E S :
2
3  CORBOY & DEMETRIO,
   33 North Dearborn Street, 21st Floor
   Chicago, Illinois 60602
4  (312) 346-3191
   BY:  MR. SHAWN S. KASSERMAN
5
6       Appeared on behalf of the Plaintiff;
7
   DONOHUE, BROWN, MATHEWSON & SMYTH, LLC,
8  140 South Dearborn Street, Suite 800
   Chicago, Illinois 60603
9  (312) 422-0900
   BY:  MR. JOHN A. KRIVICICH
10
11      Appeared on behalf of the Defendant;
12
   LAW OFFICES OF THADDEUS J. GUSTAFSON
13  Two North LaSalle Street, Suite 210
   Chicago, Illinois 60602
14  (312) 782-7191
   BY:  MS. CLAUDIA A. HALLORAN
15
16      Appeared on behalf of the Third-Party
        Defendant.
17
18
19
20
21
22
23
24

Page 3

1            I N D E X
2
   WITNESS               EXAMINATION
3
   WILLIAM KOLOSEIKE
4
5  By Mr. Kasserman             4
   By Mr. Krivicich            41
6
7
8
9
10
11
12
13
14       *** NO EXHIBITS MARKED ***
15
16
17
18
19
20
21
22
23
24

Page 4

1            (Witness sworn.)
2          WILLIAM KOLOSEIKE
3  called as a witness herein, having been first duly
4  sworn, deposeth and saith as follows:
5          E X A M I N A T I O N
6  BY MR. KASSERMAN:
7      Q.    Could you state your full name,
8  please?
9      A.    William August Koloseike.
10     Q.    And is it okay if I call you Bill?
11     A.    Bill is fine.
12     Q.    Okay.  My name is Shawn Kasserman.
13  I'm here to ask you some questions with regard to an
14  affidavit you filed in response to a complaint that
15  I filed.  If at any time I ask you a question that
16  you don't understand, let me know and I'll rephrase
17  or re-ask the question, okay?
18     A.    Okay.
19            (Whereupon, a cellular phone
20             interruption was had in the
21             deposition proceedings.)
22     Q.    I'm not sure where I left off, but if
23  I ask you a question that you don't understand, let
24  me know.

Page 5

1      A.    Yes.
2      Q.    Have you given a deposition before?
3      A.    Yes.
4      Q.    Generally on how many occasions?
5      A.    Two or three, maybe.
6      Q.    Did you review anything in preparation
7  for today's deposition?
8      A.    Yes.
9      Q.    What did you review?
10     A.    My affidavit.
11     Q.    You have in front of you a pile of
12  documents?
13     A.    Yeah, that is my affidavit.  That's
14  what I, you know -- you said you were going to ask
15  me questions about it.  I don't know why I went and
16  got it.  I don't really need it.
17     Q.    Well, actually with your permission
18  and -- I suppose I'd like John to -- take a look at the
19  stack of materials that you have to see if it's okay
20  that I look through it.  I don't want to see
21  anything that your attorney gave you.
22            MR. KRIVICICH:  Sure.  Let me see if
23  there's anything that you might want.
24            MR. KASSERMAN:  Okay.

2 (Pages 2 to 5)

Page 6

1       (Counsel perusing the
2       documents.)
3       (Off-the-record colloquy.)
4       MR. KRIVICICH:  The only thing that I
5   am going to -- there's a tender of defense
6   letter -- defense and indemnity letter.  I'm
7   going to pull that.
8       (Off-the-record colloquy.)
9       The rest of it has to deal with the
10  tender of defense and --
11      MR. KASSERMAN:  I know that I can
12  trust you.  You're declaring certain aspects
13  of Mr. Koloseike's file is, I guess,
14  privileged, right?
15      MR. KRIVICICH:  There's communications
16  between counsel for Ford and counsel for the
17  dealership and Mr. Koloseike as well, so ...
18  BY MR. KASSERMAN:
19      Q.    Okay.  Well, one of the documents in
20  this pile of documents that you brought with you to
21  the deposition is just -- it looks like a blank
22  piece of paper and a scrap paper?
23      A.    Yeah, I just wrote something on there.
24      Q.    And it says across the top:  Brian?

Page 7

1       A.    Brian is my service director.
2       Q.    Okay.  And then it says:  Any TSBs on
3   this car?
4       A.    Yes.
5       Q.    What does that mean?
6       A.    Technical service bulletins.
7       Q.    And is this your handwriting?
8       A.    That's my handwriting.
9       Q.    So is that a question you asked of
10  Brian?
11      A.    Yes.
12      Q.    And then it says:  Airbags -- question
13  mark -- and cruise control?
14      A.    Anything that would be relative to
15  those -- if there were any kind of issues with any
16  kind of technical service bulletins.
17      Q.    And what's Brian's last name?
18      A.    Reeves.
19      Q.    R-E-E-V-E-S?
20      A.    Yes.
21      Q.    And his title is what?
22      A.    Service manager, service director if
23  you're asking him or me.
24      Q.    At Bill Kay Ford?

Page 8

1       A.    At Bill Kay Ford, correct.
2       Q.    Okay.  And the back of that document,
3   is that just scrap paper?
4       A.    Yeah.  What I wrote on this is -- it's
5   for recycling.
6       Q.    And then there's what was attached to
7   defendant's motion, which is Exhibit B.  This is the
8   document that you brought with you today?
9       A.    Uh-huh.
10      Q.    Were there any other variations of
11  this document; in other words, was there a draft
12  sent to you that you made changes to and sent back?
13      A.    No.  That's the only document I'm
14  aware of.
15      Q.    Do you know who drafted this document
16  -- or let me ask you a better question.
17      Did you draft this document?
18      A.    No.
19      Q.    What input did you have with regard to
20  the contents of this document?
21      MR. KRIVICICH:  Let me assert an
22  objection that the question calls for
23  attorney/client privileged information.  He
24  and I had communications that resulted in

Page 9

1   that affidavit.
2       MR. KASSERMAN:  Okay.
3       MR. KRIVICICH:  You're free, of
4   course, to ask him about the contents of the
5   affidavit, but if you're asking him questions
6   that pertain to what I said to him and what
7   he said to me about --
8       MR. KASSERMAN:  Which I don't want to
9   do.
10      MR. KRIVICICH:  Okay.
11      MR. KASSERMAN:  And your objection is
12  acknowledged.
13  BY MR. KASSERMAN:
14      Q.    In terms of the affidavit that you
15  brought here with you and is attached as Exhibit B
16  to defendant's motion, did you draft any part of it?
17      A.    No.
18      Q.    Okay.  Now, you have a copy also of
19  the motion for summary judgment filed by --
20      A.    Yes.
21      Q.    Have you ever read that?
22      A.    No.  In its entirety, no.
23      Q.    Okay.
24      A.    Just a cursory overview.

AMICUS COURT REPORTERS, INC
CHICAGO, ILLINOIS 312.641.3500

Page 10

1    Q.    Okay. Why don't you tell me your
2   current title and position?
3    A.    My current title?
4    Q.    Yes.
5    A.    Owner and president of WJK Corp.
6    Q.    And what is WJK Corp?
7    A.    The owner of the dealership group. So
8   there's an entity that owns all of the stock in the
9   dealerships. I'm president of that and I'm
10  individually president of Bill Kay Ford, Inc.
11   Q.    How many different dealerships are
12  made up of -- or is WJK Corporation made up of?
13   A.    Nine.
14   Q.    How many of them are Ford dealerships?
15   A.    One.
16   Q.    And what are the others?
17   A.    Chrysler, Dodge, Honda, Nissan,
18  Chevrolet, Buick, Pontiac, GMC, Kia. I think that's
19  it.
20   Q.    And the Ford dealership is located
21  where?
22   A.    147th and Cicero, Midlothian,
23  Illinois.
24   Q.    How often are you there?

Page 11

1    A.    Weekly.
2    Q.    And for what reason do you visit the
3   dealership?
4    A.    I oversee the financial operations.
5   So I have a meeting with my general manager once a
6   week and we discuss the performance of the
7   dealership.
8    Q.    Who is your general manager?
9    A.    Mark Bowen, B-O-W-E-N.
10   Q.    How long has he been the general
11  manager at Bill Kay Ford?
12   A.    Since the day it opened, so it would
13  have been --
14   Q.    Which was when?
15   A.    May 29th or something of 2004.
16   Q.    Do you know what he did before he was
17  general manager there?
18   A.    He was a sales manager at Bill Kay
19  Chevrolet.
20   Q.    How does one become a Ford dealership?
21   A.    To buy a Ford dealership?
22   Q.    Yeah.
23   A.    Find someone that's selling a Ford
24  dealership would probably be the first step.

Page 12

1    Q.    And it sounds basic to you, but to us
2   it's a little foreign.
3    A.    Well, you need to be qualified in
4   order to be approved by the manufacturer. You enter
5   into a sales and service agreement with the
6   manufacturer.
7    Q.    Who did you buy the Bill Kay Ford
8   dealership from?
9    A.    Vince Domino.
10   Q.    And what was it before it was the Bill
11  Kay Ford dealership?
12   A.    Domino Ford.
13   Q.    How does one become qualified to own a
14  dealership?
15   A.    Experience in the automobile industry.
16   Q.    So is there an application that you
17  have to make?
18   A.    Yes. There's an application for a
19  franchise that the manufacturer would allow you to
20  fill out and they would subject it to a group of
21  people that make those decisions subject to
22  verification of, you know, experience, history, and
23  the financial capability of being able to buy the
24  dealership.

Page 13

1    Q.    And is that something that you did in
2   this particular case before you went shopping for a
3   dealership or did you see the dealership, determined
4   you wanted to purchase it, and make your
5   application?
6    A.    I found the dealership before I made
7   the application. That's typically --
8    Q.    And the application, that goes to
9   Detroit?
10   A.    Yes -- or Dearborn, Michigan in this
11  case.
12   Q.    Right. Tell me about the application.
13   A.    In-depth knowledge of, you know --
14  they're looking for your educational background and
15  then your experience, your financial capabilities,
16  balance sheet, that type of thing, personal,
17  financial, a business pro forma, certain
18  requirements for facilities and things that need to
19  be answered in that application. If you're buying
20  an existing facility, then all those plug right in.
21   Q.    Do you have to demonstrate or gain any
22  knowledge in the product line?
23   A.    No. I mean, is there like a test?
24   Q.    Yes.

4 (Pages 10 to 13)

Page 14

1   A.   No.
2   Q.   In other words --
3   A.   There's no test.
4   Q.   -- do you have to know --
5   A.   They don't ask you if you know
6 anything about Fords, no.
7   Q.   Did you know anything about Fords when
8 you bought the dealership?
9   A.   Just my knowledge from experience
10 dealing in used Fords.
11   Q.   Okay. As the general manager, what
12 are Mark Bowen's responsibilities?
13   A.   He manages the sales staff and gives
14 direction to the service manager.
15   Q.   And is that Brian Reeves?
16   A.   That's Brian Reeves, correct.
17   Q.   Now, has Brian Reeves been with Bill
18 Kay since the onset?
19   A.   Yes.
20   Q.   And has he been the service director
21 or service manager that entire time?
22   A.   No.
23   Q.   What was his original position?
24   A.   Well, he was service manager. There

Page 15

1 was another gentleman that was a service director,
2 and I determined months after purchasing the
3 dealership that I didn't need two people to manage
4 the service department, so Brian was --
5   Q.   Okay. What was the --
6   A.   -- just made the service director.
7   Q.   name of the individual who was the
8 service director, who was the service manager or the
9 service director?
10   A.   Brine would have been the manager at
11 that time and then I had a service director named
12 Tom. I can't recall his last name.
13   Q.   You let him go and decided --
14   A.   I let him go and made Brian the
15 service manager, slash, director.
16   Q.   About when?
17   A.   December of '04.
18   Q.   In terms of Bill Kay Ford dealership,
19 what training do your salespeople have with regard
20 to the safety features incorporated into the
21 different vehicles?
22   A.   Instructional DVDs that they would
23 watch or VHS tapes depending on their format. I'm
24 not sure if it's DVDs. I'm assuming it is. They're

Page 16

1 provided manuals that offer an explanation of
2 product features and benefits that they study, and
3 they are required to go on line and take quizzes,
4 exams, if you will, about features and benefits to
5 help sell the Ford product.
6   Q.   And what's the purpose of requiring
7 that that be done by your salespeople?
8   A.   Ford's requirement or my dealership
9 requirement?
10   Q.   Both.
11   A.   Well, from the dealership requirement,
12 I mean, a knowledgeable salesperson can answer
13 questions intelligently so it helps them sell
14 vehicles. But from a Ford standpoint, they want to
15 make sure that every customer is satisfied when they
16 take delivery of the new vehicle, so they require
17 the salesmen to follow certain procedures to
18 enlighten them with the operation of a vehicle.
19   Q.   And the different training features or
20 options that you described, were those Bill Kay Ford
21 requirements or Ford Motor Company requirements?
22   A.   They would be requirements of both.
23   Q.   Is there any safety feature training
24 techniques that Bill Kay Ford uses that Ford doesn't

Page 17

1 or vice-versa?
2   A.   Not that I'm aware of.
3   Q.   Okay. Now, just so I'm clear,
4 generally you're talking about instructional DVDs,
5 manuals and on-line testing and training?
6   A.   Correct.
7   Q.   Now, in terms of the information
8 provided -- well, strike that.
9       Prior to signing Exhibit B, did
10 you look at the instructional DVDs or examine the
11 manuals or the on-line testing and training that
12 would have been required by Bill Kay Ford for its
13 salespeople to complete?
14   A.   No.
15   Q.   Did you have somebody else do that?
16   A.   To review that specifically as a
17 result of this, no.
18   Q.   Okay. Do you know what the
19 instructional DVDs or the manuals or the on-line
20 testing and training materials say or don't say
21 about possible sudden unintended acceleration or the
22 airbag system on the 2004 Ford Focus?
23   A.   When you ask specifically did I read
24 that, no.

5 (Pages 14 to 17)

Page 18

1    Q.    Do you know whether or not those
2   materials cover either the risk of sudden
3   acceleration and/or the passive restraint system or
4   the airbag system?
5        MR. KRIVICICH:  Let me object to the
6        form of the question.  The question assumes
7        facts not in evidence that there is a risk of
8        unintended acceleration.
9             In your question, how did you
10        describe the airbags, I'm sorry?
11        MR. KASSERMAN:  Passive restraint
12        system or airbags.
13        MR. KRIVICICH:  Okay.  Well, I'll
14        object to the first part.  I'm not sure I
15        heard anything objectionable on the second
16        part.
17             Go ahead and answer the question
18        if you understand it.
19        THE WITNESS:  I believe there are some
20        instructional materials inside the vehicle
21        that are left there intentionally for the
22        customers to be aware of the operation or the
23        deployment of the airbags, I believe, in the
24        glove box and in the steering column, that

Page 19

1   type of thing.
2             With regard to the materials as it
3        is written, I have not read any materials
4        directly published by Ford with regard to the
5        operation of the airbags and I've never heard
6        anything with regard to any kind of
7        acceleration.
8   BY MR. KASSERMAN:
9    Q.    Is it fair to say that you don't know
10   whether or not the instructional DVDs or the manuals
11   or the on-line testing and training materials that
12   are provided to salespeople cover or don't cover the
13   risk of sudden acceleration and/or the risk of the
14   airbag system in the 2004 Ford Focus?
15        MR. KRIVICICH:  Objection to the
16        first --
17        THE WITNESS:  Well, I think that --
18        (Simultaneous colloquy.)
19        THE REPORTER:  I'm sorry, one at a
20        time, please.
21        THE WITNESS:  The airbags, yes.
22        MR. KRIVICICH:  Let me finish the
23        objection.
24        THE WITNESS:  Oh, go ahead.

Page 20

1        MR. KRIVICICH:  Same objection to the
2        first part of the question and also,
3        compound; it is two questions.  And he seems
4        to understand it, so I'm going to let him
5        answer.  But if we could separate those out,
6        it might make for a better record.
7        THE WITNESS:  Well, I do have
8        firsthand knowledge that there are
9        instructional materials in the cars for the
10        airbags.  I've never heard anything with
11        regard to any kind of instructional thing
12        with regard to sudden acceleration.
13   BY MR. KASSERMAN:
14    Q.    Well, have you watched the
15   instructional DVDs and have you looked at the
16   manuals and do you know what the on-line testing and
17   training indicates about this stuff?
18    A.    No.
19    Q.    Okay.  But that is something that your
20   sales representatives are required to complete or
21   review prior to --
22    A.    Delivery of a new vehicle.
23    Q.    What system, if any, does Bill Kay
24   Ford use to monitor problems that customers --

Page 21

1   strike that.
2             What system do you use at Bill Kay
3   Ford to monitor or keep track of different problems
4   that are occurring with the use of Ford vehicles?
5        MR. KRIVICICH:  Object to the form of
6        the question, vague and ambiguous.
7        THE WITNESS:  Boy, that's hard to pin
8        down.
9   BY MR. KASSERMAN:
10    Q.    Well, I'll get more specific with you
11   in the future, but what I want to know right now is
12   whether or not, as you sit here, you're able to
13   describe for me what tools are out there or what
14   ability you have to, for instance, determine whether
15   or not a product has been recalled?
16    A.    They are on-line sources available to
17   check for a particular product problem that would be
18   available to us.
19    Q.    And how do you know that?
20    A.    Just general knowledge.  Every
21   manufacturer has it.
22    Q.    With regard to the Ford Focus, have
23   you checked the on-line sources to determine whether
24   or not there have been any problems with either

6 (Pages 18 to 21)

Page 22

1  sudden acceleration or airbag deployment failure on
2  the 2004 Ford Focus?
3          MR. KRIVICICH:  Apart from that check?
4          THE WITNESS:  Apart from that check on
5      that list there, no.
6  BY MR. KASSERMAN:
7      Q.   Okay.  And these on-line sources that
8  you're referring to, can you be more specific, where
9  they would be located or what they're called or what
10 you Google?
11     A.   It's not on line with regard to the
12 general public.  It's specifically a log-in that's
13 available to the dealership.  I forget the --
14 there's an acronym for it, but I don't know what it
15 is.
16     Q.   And you may have answered this
17 question and if you did, I apologize to both you and
18 your lawyer, but did you conduct that search
19 pursuant to the on-line log-in system that's
20 available to the dealerships?
21         MR. KRIVICICH:  I'll just object,
22     asked and answered.  He made a request for a
23     search of TSB applicable to the vehicle and
24     that's what he testified to before.

Page 23

1  BY MR. KASSERMAN:
2      Q.   Okay.  And I just want to make sure I
3  understand that you're referring to the same thing
4  that you just described.
5          MR. KRIVICICH:  Right.  And if you're
6      asking him about something else, by all means
7      go ahead and ask.  I don't know that there is
8      but ...
9  BY MR. KASSERMAN:
10     Q.   I'm trying to find out if there is
11 anything else.
12     A.   Any other source for information other
13 than that?
14     Q.   Yes.
15     A.   No, just the general discussion
16 amongst technicians if they're experiencing a
17 recurring problem within the shop and would advise
18 each other as to the repair or the frequency of it.
19 If cars come in on a regular basis with a similar
20 problem, then they might identify it.
21     Q.   And did you discuss this with any of
22 the technicians at Bill Kay Ford?
23     A.   No.
24     Q.   And when I say discuss this, did you

Page 24

1  inquire as to whether or not they had experienced
2  any problems with sudden acceleration or airbag
3  deployment failure in 2004?
4      A.   No, the technicians directly, no.
5      Q.   Okay.  You did have that conversation
6  with Mr. Reeves; is that correct?
7      A.   Yes.
8      Q.   Anybody else?
9      A.   No.
10     Q.   Tell me about your conversation with
11 Mr. Reeves.
12     A.   Well, I believe when we received the
13 lawsuit that was filed, I asked -- I read briefly,
14 you know, what the extent of the lawsuit read and
15 that it was a problem with a Ford product, and I
16 needed to ask him if there was anything that -- if
17 he was familiar with any kind of problem with that
18 and he said no, he was not.
19     Q.   Where were you when you had that
20 conversation?
21     A.   It could have been at the dealership;
22 it could have been on the phone.  I couldn't tell
23 you exactly.
24     Q.   Okay.  So you know the conversation

Page 25

1  took place, but --
2      A.   Yeah, right.
3      Q.   -- you really don't have an
4  independent --
5      A.   No.
6      Q.   -- recollection of it; is that right?
7      A.   Right.
8      Q.   Do you know what Brian Reeves did to
9  determine whether or not the technicians had had any
10 of these types of problems?
11     A.   I believe his first would be to
12 recollect if this ever came up in his memory, if he
13 ever had experience with this kind of problem and
14 then his second course would be to run that TSB,
15 bulletin to see if there were ever any issues with
16 the car or with that particular model car.  He may
17 never have experienced anything.
18     Q.   And do you know whether he talked to
19 any of the technicians to determine --
20     A.   I don't know.
21     Q.   -- whether they had experience with
22 those types of problems?
23     A.   I don't know.
24     Q.   Who was the salesperson that sold the

7 (Pages 22 to 25)

Page 26

1   car to the LaJeunesses?
2       A.   I don't know.
3       Q.   Can you tell by looking at the --
4       A.   I can.
5       Q.   And that's Exhibit 1 to your affidavit
6   if I remember right.
7       A.   Paris Haynes.
8       Q.   And is Paris Haynes still employed at
9   Bill Kay Ford?
10      A.   No.
11      Q.   Do you know where Paris Haynes is
12  employed?
13      A.   I have no idea.  I don't even know who
14  Paris Haynes was.  I don't recall him.
15      MS. HALLORAN:  A man or a woman?
16      THE WITNESS:  I believe it was a man.
17  BY MR. KASSERMAN:
18      Q.   Do you know why Paris Haynes left Bill
19  Kay Ford?
20      A.   No.
21      Q.   Did you ever talk to Paris Haynes
22  about what he said or didn't say to the LaJeunesses
23  with regard to the safety features on this vehicle?
24      A.   No.

Page 27

1       Q.   Do you know the LaJeunesse family?
2       A.   No.
3       Q.   You just had a chance to look at
4   Exhibit 1 of your affidavit, but can you tell
5   whether or not the car had been driven by anybody
6   else prior to it being sold to the LaJeunesses?
7       A.   Do I know that?
8       Q.   Right.
9       A.   Well, it made it onto the lot, so
10  somebody must have driven it.
11      Q.   Okay.  Is the mileage on the new car
12  listed somewhere on this sheet?
13      A.   Yes, I believe it is.
14      Q.   Feel free to take a look.
15      A.   Where it says mileage about the center
16  at the top.
17      Q.   Twelve miles?
18      A.   Yeah, 12 miles.
19      Q.   Okay.  And with regard to that
20  vehicle, would there be a record or evidence of
21  people who test-drove it?
22      A.   No accurate document, no.
23      Q.   Okay.  In the 12 miles, you can kind
24  of tell that it wasn't a car that one of your

Page 28

1   salespeople drove; is that fair to say?
2       A.   I'm sorry?
3       MR. KRIVICICH:  Object to the form.
4   BY MR. KASSERMAN:
5       Q.   Let me ask you another question.
6            From time to time, do you give
7   demos to your salespeople or to employees of Bill
8   Kay Ford?
9       A.   Yes.
10      Q.   And when you do that, do you keep a
11  record as to who had what vehicle?
12      A.   As a demonstrator, yes.
13      Q.   And are you able to tell by looking at
14  this document either from the mileage or anything
15  else whether or not that vehicle had been used as a
16  demonstrator with any of your employees?
17      A.   From the mileage I would say no
18  because it had 12 miles on it.
19      Q.   In your capacity -- I'm just going to
20  call you an owner of a Ford dealership.  I don't
21  know if that's technically accurate or not, but
22  that's generally the description, correct?
23      A.   (Indicating.)
24      Q.   As an owner of a Ford dealership, have

Page 29

1   you from time to time become aware of defects in the
2   design of any Ford vehicles?
3       MR. KRIVICICH:  Object to the form as
4   vague and ambiguous.  Any defect of any kind?
5       THE WITNESS:  As a Ford dealer?
6       MR. KRIVICICH:  Paint defects?  I
7   mean --
8       THE WITNESS:  I'm sure I may have had
9   a discussion of a defect at some point of a
10  Ford product having been a dealer now for
11  four years.
12  BY MR. KASSERMAN:
13      Q.   Well, that's what I'm trying to figure
14  out.  Over the four years that you've been a dealer,
15  is there a time that sticks out in your mind as to
16  when you learned that, hey, there was a Ford
17  Explorer with a problem or --
18      A.   Other than what I see on the news like
19  anybody else.
20      Q.   So just like all of us, you would have
21  access to that?
22      A.   Yeah, like if they have a recall on
23  the news and then they make a big deal about how
24  many units are being recalled.  And that's typically

Page 30

```
1    news-worthy, so that's where I would hear it.
2         Q.    But there isn't any means by which you
3    were able to communicate with Ford as a Ford dealer
4    regarding potential or actual recalls as opposed to
5    just --
6         A.    Well, they have a system, a Ford
7    service system where they make notifications of
8    repairs for things and to make any kind of
9    correction to maybe production problems and things
10   after they have been shipped out, you know.
11        Q.    And how does that Ford service system
12   work, is that computerized, is it automated?
13        A.    It's computerized as far as I know.
14   They may send actual mail, but I don't believe so.
15   But they do send notifications if you have a recall
16   to every owner of a vehicle so ...
17        Q.    And is there any means by which you as
18   a Ford dealership owner are able to learn of
19   complaints that Ford owners are making to the
20   dealerships where they purchase cars about different
21   problems and defects?
22        A.    No, not really, not that I can think
23   of.
24        Q.    Okay.  Now, describe for me at least
```

Page 31

```
1    your understanding as to the search you had Brian
2    Reeves do.
3         A.    He ran a listing of any and all
4    technical service bulletins that were ever issued on
5    a 2004 Ford Focus.
6         Q.    And what is your understanding as to
7    what a technical service bulletin is?
8         A.    It's an information-sharing of
9    potential issues with cars that have been
10   experienced either through the warranty system that
11   they've made either computer-generated records or
12   accumulating that a particular repair has been done
13   on a model and then they come up with a repair for
14   it and they notify the dealer's service departments
15   on what corrective action to take with regard to
16   that problem.
17              And sometimes it has to do with a
18   particular, you know, run of material that might be
19   defective from a different supplier. It's hard to
20   say what causes it. They do have a sytem of
21   communicating that to dealerships.
22        Q.    And what is the process at Bill Kay
23   Ford in terms of monitoring that system?
24        A.    I don't believe it has to be
```

Page 32

```
1    monitored.  I believe they just automatically send
2    you either an e-mail or the bulletins by some sort
3    of response system either printed out, fax-wise or
4    review them on your computer. I'm not sure what the
5    technology was in 2007.
6         Q.    Yeah, I'm probably asking a trickier
7    question than it needs to be.
8              Who reads these TSBs as they come
9    into the dealership, is that something you do?
10        A.    The service director, yeah.
11        Q.    Okay.  In your affidavit you used the
12   phrase standard of care, if I recall correctly.
13   What do you mean when you say standard of care?
14        A.    General practice, you know, the level
15   of skill that we have in our dealership, the level
16   of training that they need in order to be trained up
17   to a certain level that I think you can find as
18   standard in any Ford dealership that they would hold
19   you to to have your technicians trained at a certain
20   level and follow certain guidelines when they treat
21   customers in a particular way.
22        Q.    And what involvement have you had with
23   other Ford dealerships?
24        A.    Involvement with other Ford
```

Page 33

```
1    dealerships?
2         Q.    In terms of learning what they do and
3    don't do, if they develop your understanding as to
4    what the standard of care is.
5         A.    With other Ford dealers -- could you
6    restate that question again?
7         Q.    What familiarity do you have with
8    other Ford dealerships which would have contributed
9    to your understanding of what the standard of care
10   is?
11        A.    It wouldn't be direct interaction with
12   other dealerships, it would have been having been in
13   this business, you know, for 25, 30 years that I
14   would have accumulated a working knowledge of what a
15   level of care would be at a new car dealership,
16   whether it be Ford and/or Chrysler, Chevrolet,
17   whatever.
18        Q.    Okay.  So in your opinion or your -- I
19   guess your opinion that it would be pretty much the
20   same for a dealership whether a Chevy or --
21        A.    Yeah, a new car dealership. It would
22   have certain standards that it would follow and you
23   can expect to receive that in pretty much any
24   dealership.
```

AMICUS COURT REPORTERS, INC
CHICAGO, ILLINOIS 312.641.3500

1    Q.    Do you know what NHTSA is?

2    A.    I'm sorry?

3    Q.    NHTSA, N-H-T-S-A.

4    A.    The National Highway Traffic Safety

5  Administration, yes.

6    Q.    Okay. Have you ever in your -- strike

7  that.

8         Do you know whether or not NHTSA

9  has a website which would list consumer complaints

10  regarding different make and model vehicles?

11    A.    No, I don't know.

12    Q.    So if the NHTSA website contained --

13  or let me ask you a better question.

14         Is there anybody at Bill Kay Ford

15  whose responsibility it would be to follow and track

16  whether or not any vehicles that Bill Kay Ford is

17  selling has been listed in the -- or had service

18  bulletins published in the NHTSA website regarding

19  potential problems?

20    A.    I didn't know there was a NHTSA

21  website with that information, so ...

22    Q.    So the answer would be --

23    A.    There wouldn't be anybody assigned to

24  that task to monitor it.

1    Q.    And, again, because you didn't know

2  that website existed, you never talked to

3  Brian Reeves about whether he checked it or was

4  aware of it?

5    A.    No.

6    Q.    Have you ever been informed by a

7  customer that you sold a car to or that one of your

8  salespeople sold a car to -- and I'm not just

9  talking about Fords, any of your dealerships that

10  the car had a problem with sudden acceleration?

11    A.    Yes.

12    Q.    Tell me generally what you recall

13  about those instances.

14    A.    It was a Chevy Lumina -- it goes back

15  maybe seven, eight years ago. A friend of mine's

16  father bought a new car, was pulling it in the

17  garage and ended up in the family room. And there

18  was no reason for the sudden acceleration other than

19  I believe he admitted later had stepped on the gas

20  instead of the brake.

21    Q.    Well, that would be the reason for the

22  sudden acceleration.

23    A.    Well, that was his sudden acceleration

24  into his family room. But that was one of my only

1  experiences with that and it was a friend of mine's

2  father.

3    Q.    Okay. Anybody else, any other --

4    A.    No, not on a professional level.

5    Q.    How about the failure of airbags to

6  deploy, have you ever heard of that being a problem?

7    A.    No.

8    Q.    You made reference to an inspection

9  that would have been performed at the time of the

10  sale on the vehicle in your affidavit?

11    A.    You have to refresh my memory on that.

12  What specific document you're talking about?

13    Q.    On Page 5, I think, of your -- no,

14  that's the motion, maybe Paragraph 7. The second

15  sentence reads: As a new vehicle sold to a retail

16  customer, Bill Kay would have performed a routine

17  multipoint inspection prior to the sale.

18    A.    Uh-huh.

19    Q.    Can you tell me about that inspection

20  and what it consists of?

21    A.    It would be an inspection of the fluid

22  levels, tire pressures, make sure any shipped-with

23  accessories were installed on the vehicle, an

24  appearance review and making sure that all the parts

1  are where they're supposed to be, there's no dings,

2  dents on it so the customer can take delivery of it

3  without any problems and that all the accessories

4  worked on the vehicle, the radio, you know, the

5  gauges worked, the lights worked, taillights, turn

6  signals, all that kind of thing.

7    Q.    Airbag function would not have been

8  tested?

9    A.    No. It has a system that tells you if

10  there's something wrong. It flashes on the

11  dashboard or something if it's not functioning

12  correctly.

13    Q.    Is there a list that Mr. Hays (sic)

14  would have filled out or somebody would have filled

15  out when the car was sold?

16    A.    Mr. Hays (sic)?

17    Q.    Paris Hays -- or Haynes.

18    A.    There would have been a delivery form.

19  It should be somewhere.

20    Q.    Okay.

21    A.    It would be reviewing the appearance

22  of the vehicle more than anything.

23    Q.    What is the process you follow when a

24  customer who has purchased a vehicle from you comes

Page 38

1    to you with a complaint regarding the performance of
2    the vehicle?
3        A.    As a dealer or as a dealership?
4        Q.    Tell me the distinction.
5        A.    Well, generally speaking, I'm not on
6    the service drive taking complaints, you know,
7    writing up service repair orders.  If it gets to the
8    level where somebody is unhappy with the way they
9    were treated, they went to the service manager and
10   didn't find satisfaction, it would get to me and
11   then I would, you know, follow through and try to
12   find out where the problem was and then what we
13   could do to correct it.
14       Q.    Okay.
15       A.    As a dealership, if you had a problem
16   with your car, you would bring it into the service
17   department and report it to a service advisor and
18   then they would ask you, you know, what's wrong and
19   when does it happen and that type of thing.  And
20   then we would write a repair order and have a
21   technician diagnose it if there was in fact a
22   problem, try to get it to duplicate the problem.
23       Q.    And I'm assuming none of that would
24   rise to your level unless it was a real problem?

Page 39

1        A.    No, I wouldn't normally talk to every
2    customer.
3        Q.    It would be Mr. Reeves or somebody
4    working for Mr. Reeves?
5        A.    The technician, yeah.  Somebody that
6    would be working for Mr. Reeves would be the service
7    advisor, which when you pull into a dealership, the
8    service entrance, the door opens, you go inside and
9    the first person to greet you would be the service
10   advisor.
11       Q.    Now, is the service department
12   required to make any formal notice to Ford when
13   there is a problem reported with one of the safety
14   features of a vehicle?
15       A.    It would be reported through the
16   warranty repair system if there was in fact a
17   problem.  If it was a condition that a customer
18   reported, the same process would take place.  There
19   would be a repair order that would be generated and
20   then the repair would be written up, it's condition,
21   and then what the cause of it was and then what the
22   repair would have been.  And it would have been
23   submitted to Ford for reimbursement because we
24   repair things under warranty and get reimbursed by

Page 40

1    Ford.
2        Q.    And is that a computerized process or
3    is that --
4        A.    It's a computerized process.
5        Q.    And the warranty repair system, do you
6    have access to that on a computer at the dealership?
7        A.    Yes.
8        Q.    And are you able to search the
9    warranty repair system for a listing of all
10   complaints related to, for example, airbags?
11           MR. KRIVICICH:  As to a specific
12       vehicle or -- because that's the way it's
13       reported to Ford.
14           THE WITNESS:  I don't have a working
15       knowledge of that myself.
16   BY MR. KASSERMAN:
17       Q.    Who would know that?
18       A.    The service director would certainly
19   know that.
20       Q.    Mr. Reeves?
21       A.    Yeah, he would have a better knowledge
22   of that.
23           MR. KASSERMAN:  Okay.  I don't have
24       any other questions of you.

Page 41

1            MR. KRIVICICH:  Anything else?
2            MS. HALLORAN:  No.
3            MR. KRIVICICH:  Okay.  We'll reserve
4        signature -- actually, I do have one
5        question.
6               E X A M I N A T I O N
7    BY MR. KRIVICICH:
8        Q.    Are you aware of any new motor vehicle
9    dealer that routinely monitors NHTSA's website in
10   the course of your 25 to 30 years of experience?
11       A.    No, I'm not aware of that.
12           MR. KRIVICICH:  That's all.
13           Signature is reserved.
14           AND FURTHER DEPONENT SAITH NOT...
15
16
17
18
19
20
21
22
23
24

11 (Pages 38 to 41)

Page 42

```
 1   STATE OF ILLINOIS )
                       ) SS.
 2   COUNTY OF C O O K )

         IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
                COUNTY DEPARTMENT - LAW DIVISION
 5   EVELYN LaJEUNESSE,        )
              Plaintiff,       )
 6                            )
           -vs-               ) No. 07 L 8251
                              )
 8   FORD MOTOR COMPANY, et al.,  )
              Defendants.      )

 9   _____
     FORD MOTOR COMPANY,       )
10        Third-Party Plaintiff,)
                              )
11        -vs-                )
                              )
12   HENRY LaJEUNESSE,         )
          Third-Party Defendant.)
13
         I hereby certify that I have read the
14   foregoing transcript of my deposition given on
     February 5, 2008 at the time and place aforesaid,
15   consisting of Pages 1 through 41, inclusive, and I
     do again subscribe and make an oath that the same is
16   a true, correct and complete transcript of my
     deposition so given as aforesaid.
17
           please check one:
18              _____ I have submitted errata sheet(s)
                _____ No corrections were noted
19
20              _____
                   WILLIAM KOLOSEIKE
21
22   SUBSCRIBED AND SWORN TO
     before me this _____ day
23   of _____, A.D., 2008.
24   _____
            Notary Public
```

Page 43

```
 1   STATE OF ILLINOIS  )
                        )  SS.
 2   COUNTY OF KANE     )

 3

 4       I, MARIA E. SHOCKEY, a notary public
 5   within and for the County of Kane and State of
 6   Illinois, do hereby certify that heretofore, to-wit,
 7   on the 5th day of February, A.D., 2008, personally
 8   appeared before me at 601 Ogden Avenue, in the City
 9   of Lisle, County of DuPage and State of Illinois,
10   WILLIAM KOLOSEIKE, a witness, called by the
11   Plaintiff in a certain cause now pending and
12   undetermined in the Circuit Court of Cook County,
13   Illinois, wherein Evelyn LaJeunesse is the plaintiff
14   and Ford Motor Company, et al., are the defendants.
15       I further certify that the said
16   witness, WILLIAM KOLOSEIKE, was by me first duly
17   sworn to testify the truth, the whole truth and
18   nothing but the truth in the cause aforesaid; that
19   the testimony then given by him was by me reduced to
20   writing by means of shorthand in the presence of
21   said witness and afterwards transcribed upon a
22   computer, and the foregoing is a true and correct
23   transcript of the testimony so given by him as
24   aforesaid.
```

Page 44

```
 1       I further certify that the reading
 2   and signing of said deposition was reserved by the
 3   witness.
 4       I further certify that the taking of
 5   the deposition was pursuant to notice, and that
 6   there were present at the taking of the deposition
 7   the aforementioned parties.
 8       I further certify that I am not
 9   counsel for nor in any way related to any of the
10   parties to this suit, nor am I in any way interested
11   in the outcome thereof.
12       In testimony whereof I have hereunto
13   set my hand and affixed my notarial seal this 12th
14   of February, A.D., 2008.
15
16   _____
17       MARIA E. SHOCKEY, CSR
         Notary Public, Kane County, IL
         Illinois License No. 084-004411
18
19
20
21
22
23
24
```

12 (Pages 42 to 44)

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

Evelyn La Jeunesse, Individually et al, *Plaintiff(s)*

v.

Ford Motor Company, *Defendant(s)*

Case No. 07 L 8251

Motion Call " _____ " Line #: _____

## MASTER CALENDAR MOTION COURTROOMS CASE MANAGEMENT ORDER

(Please check off all pertinent paragraphs and circle proper party name.)

(8230) ____ 1. **Category #1 (18 Month Discovery)**          (8232) ____ 1a. **Category #2 (28 Month Discovery)**

(4296) X 2. Written discovery & 213(f)(1) and (2) disclosures to be completed by 8/27/08 ;

(4218) OK 3. Oral Discovery & 213(f)(1) and (2) depositions to be completed by _____ ;

(4218) ____ 4. Treating physicians depositions to be completed by _____ ;

(4288) ____ 5. Subpoenas for treating physicians depositions to be issued by _____ ;

(4296) ____ 6. _____ shall complete outstanding written discovery by _____ ;

(4218) ____ 7. _____ shall be presented for deposition by _____ ;

(4206) ____ 8. Plaintiff/Defendant/Add. Party shall answer 213 (f)(3) interrogatories by _____ ;

(4218) ____ 9. Plaintiff's 213(f)(3) witnesses to be deposed by _____ ;

(4218) ____ 10. Defendant's 213(f)(3) witnesses to be deposed by _____ ;

(4218) ____ 11. Additional party's 213(f)(3) witnesses to be deposed by _____ ;

(4619) ____ 12. The matter is continued for subsequent Case Management Conference on ~~12/22/08~~ OK 12/19/08 at 10:00 AM/PM in Room 2205 for:

(A) ___ Proper Service   (B) ___ Appearance of Defendants   (C) ___ Case Value

(D) ___ Pleading Status   (E) ___ Discovery Status   (F) ___ Pre-Trial/Settlement

(G) ___ Other: Fact depositions of plaintiff + first responders to be completed by November 27, 2008, Counter Defendant Estate to answer counter-complaint by 8/13/08.

(4005) ____ 13. Case is dismissed for want of prosecution.(4040) ____ The case is voluntarily dismissed under 735 ILCS 5/2-1009.

**NOTICE:**

* Failure of any party to comply with this Case Management Order will be a basis for Rule 219(c) sanctions.
* Failure of any party to enforce this Case Management Order will constitute a waiver of such discovery by that party.
* All cases arriving on the Trial Call in Courtroom 2005 must have all discovery in Lines 2 through 11 completed.
* A copy of this order is to be sent to each party by his/her counsel within 10 (ten) days of the initial Case Management Date.

Atty. No.: 32877

Name: KRIVICICH

Atty. for: DONOHUE BROWN (FORD)

Address: 140 S. Dearborn

City/State/Zip: Chicago, Ill. 60603

Telephone: 312-422-0972

JUDGE JAMES D. EGAN   AUG 06 2008

Judge's Stamp

ENTERED:

_____   _____
Judge                 Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**