IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EVELYN LaJEUNESSE, Individually and )
as Independent Administrator of the Estate )
of HENRY LaJEUNESSE, deceased, )
)
      Plaintiff(s), )
) Case No. 08 C 4436
  v. )
) Magistrate Judge Nan R. Nolan
FORD MOTOR COMPANY, a corporation, )
)
      Defendant/Counter-Plaintiff, )
)
  v. )
)
EVELYN LaJEUNESSE, as Independent )
Administrator of the Estate of HENRY )
LaJEUNESSE, deceased, )
)
      Counter-Defendant(s). )

## MEMORANDUM OPINION AND ORDER

Counter-Defendant Evelyn LaJeunesse, as independent administrator of the Estate of Henry LaJeunesse (the "Estate"), has filed a Motion for Good Faith Finding and Dismissal of Counterclaim. After considering the parties written and oral arguments on this matter, the Court finds that the settlement meets the good faith requirement of the Joint Tortfeasor Contribution Act (740 ILCS 100/2(c)) and grants the Estate's Motion [#26].

**A.**     **Background**

Evelyn LaJeunesse filed a complaint against Defendant Ford Motor Company ("Ford") alleging strict liability and negligence with respect to a vehicle accident that occurred on August 10, 2005, when a 2004 Ford Focus driven by her late husband, Henry LaJeunesse, allegedly sustained sudden unintended acceleration, jumped a curb in a K

Mart parking lot and collided with the brick wall of an adjacent condominium garage in Crestwood, Illinois. The complaint contains claims of negligence and strict liability. Evelyn LaJeunesse alleges defects in the subject 2004 Ford Focus in the form of a stuck throttle, entrapped cruise control activator, failure of the airbags to deploy and of the seatbelt to safely restrain her. Evelyn suffered severe fractures of her right radius and ulna, and bilateral hip fractures as a result of the accident. Evelyn LaJeunesse claims $147,342 incurred in medical bills for her injuries to date. She also seeks damages for disfigurement, disability, loss of a normal life and pain and suffering.

Evelyn LaJeunesse, as Independent Administrator of the Estate of Henry LaJeunesse ("the Estate"), seeks wrongful death and survival act damages arising from the same accident and the death of Henry LaJeunesse. The Estate alleges the same defects in the subject Ford Focus vehicle and the Estate's complaint also sounds in strict liability and negligence. The Estate seeks to recover $99,756 in medical bills incurred to date, as well as damages for conscious pain and suffering, pecuniary injury and loss of society to the next of kin.

Ford denies the existence of the defects alleged in the subject vehicle, denies that the condition of the vehicle was the proximate cause of plaintiffs' damages and denies all liability to plaintiffs. Ford contends that the conduct of Henry LaJeunesse in mistaking the accelerator pedal for the brake pedal, in otherwise driving the vehicle negligently and in failing to properly wear the available occupant restraint was the sole proximate cause of the accident and the Estate's damages. Ford has counterclaimed against the Estate for contribution for its responsibility in causing the damages of Evelyn LaJeunesse, individually. Ford asserts that Evelyn LaJeunesse's damages were also proximately

caused by her failure to utilize the available restraint. The Estate and Evelyn LaJeunesse, individually, deny Ford's claims.

The Estate says it reached a settlement with Evelyn LaJeunesse. The Hardford ("Hartford"), the insurance carrier for Henry and Evelyn LaJeunesse, agreed to pay $250,000.00 to Evelyn LaJeunesse. Evelyn LaJeunesse released her rights to make a claim against Hartford on the uninsured motorist section of her and her husband's insurance policy, in exchange for payment in the amount of $250,000. The release agreement executed by Evelyn LaJeunesse on April 26, 2006 states:

RELEASE AGREEMENT

> TO ALL WHOM THESE PRESENTS SHALL COME OR MAY CONCERN: KNOW YE, THAT I Evelyn LaJeunesse ("Releasor") in consideration of the sum of Two Hundred and Fifty Thousand Dollars $250,000.00, to me in hand paid by Hartford Insurance of Illinois and its affiliates (hereinafter referred to as "Hardford") . . . hereby remise, release and forever discharge Hartford . . . of and from all debts, dues, sums of money, obligations, reckoning, promises, covenants, agreements, contracts, endorsements, bonds, specialties, controversies, suits, actions, causes of action, trespasses, variances, judgments, executions, damages, claims or demands in law or in equity which against The Hartford I ever had, or now have or in the future may have, without limitation, arising out of or pertaining to UNINSURED motorist coverage provided under an automobile insurance policy, bearing policy number 55 PHE 949700 issued by Hartford to Henry J & Evelyn F LaJeunesse and resulting from an accident which occurred on 08/10/2005 in Crestwood, Illinois."

Doc. # 26, Exh. D. The agreement was executed prior to the filing of this lawsuit against Ford on August 6, 2007. The Estate asks this Court to find that the settlement was reached in good faith and therefore bars any contribution claims by Ford against Henry LaJeunesse pursuant to Section 2(c) of the Joint Tortfeasor Contribution Act, 740 ILCS 100/2(c). The Estate further moves to dismiss the counterclaim by Ford.

## B. Discussion

The issue here is whether the settlement was made in good faith pursuant to the Joint Tortfeasor Contribution Act (the "Act"). The Act creates a statutory right of contribution "where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death . . . ." 740 ILCS 100/2(a). The right of contribution "exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share." 740 ILCS 100/2(b). The tortfeasor who settles in good faith with a claimant is discharged from all liability for any contribution to any other tortfeasor. 740 ILCS 100/2(c), (d).

"The 'good faith' of a settlement is the only limitation which the Act places on the right to settle and it is the good-faith nature of a settlement that extinguishes the contribution liability of the settling tortfeasor." Johnson v. United Airlines, 784 N.E.2d 812, 818 (Ill. S.Ct. 2003.). The Illinois Supreme Court has held that a settlement is not in good faith if: (1) the settling parties engaged in wrongful conduct, collusion, or fraud; or (2) the settlement conflicts with the terms of the Act or is inconsistent with the policies underlying the Act. Id. at 821. The Contribution Act seeks to promote two important public policies–the encouragement of settlements and the equitable apportionment of damages among tortfeasors. Id.

To evaluate whether a settlement was made in good faith, a court may consider: (1) "whether the amount paid by the settling tortfeasor was 'within the reasonable range of the settlor's fair share;'" (2) "whether there was a close personal relationship between the settling parties;" (3) "whether the plaintiff sued the settlor;" and (4) whether a calculated

effort was made to conceal information about the circumstances surrounding the settlement agreement." Wreglesworth v. Arctco, Inc., 740 N.E.2d 444, 449 (Ill. App. 2000). "No single factor is seen as determinative." Id. Whether a settlement was made in good faith is determined by considering all of the surrounding circumstances. Dubina v. Mesirow Realty Development, Inc., 756 N.E.2d 836, 840 (Ill. S.Ct. 2001).

The settling parties bear the initial burden of making a preliminary showing of good faith. Johnson, 784 N.E.2d at 820. "At a minimum, the settling parties must show the existence of a legally valid settlement agreement. However, not all legally valid settlements satisfy the good-faith requirements of the Contribution Act." Id. Once the preliminary showing of good faith has been made, the party challenging the good faith of the settlement "need prove the absence of good faith by a preponderance of the evidence." Id.

The Estate argues that the settlement agreement between Evelyn LaJeunesse and Hartford is a valid and binding settlement agreement of Henry LaJeunesse's tort liability exposure. The insurance policy issued to Henry and Evelyn LaJeunesse contained bodily injury limits of $250,000 per person and $500,000 per occurrence. The liability coverage of the policy contains an household exclusion for bodily injury to "you or any family member." Although the exclusion goes on to state that it does not apply "[w]hen a third party acquires a right of contribution against you or any family member," the release agreement was executed prior to the filing of Evelyn's lawsuit against Ford. Because of the policy's household exclusion, Henry was deemed uninsured at the time of the settlement. Evelyn therefore had a claim for uninsured motorist coverage arising out of Henry's alleged negligence.

Under the uninsured motorist coverage, Hartford paid compensatory damages to Evelyn which she was entitled to recover from Henry. With regard to uninsured motorist coverage, the Hartford policy states: "We will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury." The Estate explains that the policy limits for uninsured motorist claims was $100,000 but Evelyn's attorneys argued that the bodily injury limits of $250,000 per person applied because Hartford failed to obtain written confirmation of the lower limit when the policy was renewed. Hartford agreed with this argument because Illinois law provides that Uninsured Motorist (UM) limits must equal the Bodily Injury (BI) limits of auto insurance policies unless there is a signed application with a decision to elect UM limits which are lower than the BI limits.

Here, Hartford was legally obligated to bring the UM limits up to the full BI limits of $250,000 because no signed elections were obtained from the LaJeunesses when the policy was renewed. Evelyn signed the release agreeing to reimburse, indemnify and save harmless Hartford against any further claims under the policy resulting from the accident in question. The Estate maintains that the settlement amount represented the full policy limits available to Evelyn under the policy for compensatory damages owed by Henry as a result of his allegedly negligent driving. The fact that the full extent of the insurance policy that was available was paid indicates, the Estate contends, that the settlement was in good faith.

Ford opposes the Estate's motion for a good faith finding and dismissal of Ford's counterclaim. Ford advances two arguments in support of its opposition: (1) the Estate has not provided a settlement agreement that releases Henry (or the Estate) from any

liability for the subject occurrence and (2) the policy provides coverage to the Estate based upon Henry's liability for the occurrence and thus, the settlement amount does not represent the full policy limits available to Evelyn. Neither argument prevents a finding of good faith. The Court addresses Ford's later argument first.

Ford challenges the Estate's argument that its payment of $250,000 exhausts all coverage arising out of injury to Evelyn. Ford argues that the policy explicitly provides that the household exclusion for liability coverage "does not apply when a third-party acquires a right of contribution against you or any family member." This exception to the household exclusion is required by subsection 143.01(a) of Illinois' Insurance Code. Subsection 143.01(a) states: "A provision in a policy of vehicle insurance described in Section excluding coverage for bodily injury to members of a family of the insured shall not be applicable when a third-party acquires a right of contribution against a member of the injured person's family." 215 ILCS 143.01(a). Ford, as a third-party, has a right of contribution against the insured, Mr. LaJeunesse (and as an extension, his estate). Ford contends that by operation of sub-section 143.01(a) of the Illinois Insurance Code there is coverage under the liability portion of the policy for Ford's contribution claim and this liability coverage should be made available if the Estate intends on settling Ford's claim for contribution based upon the liability of Henry as a joint tortfeasor. Ford argues, in essence, that the uninsured-motorists-coverage limit of $250,000 per person can be stacked with the bodily injury liability, making a total of $500,000 available for Evelyn's injuries.

Whether an insurance policy prohibits or permits stacking is a legal issue. <u>Hobbs v. Hartford Ins. Co. of the Midwest</u>, 823 N.E.2d 561, 564 (Ill. S.Ct. 2005). An insurance policy is a contract and the general rules of contract interpretation apply to interpretation

of insurance policies. Id. "If the policy language is unambiguous, the policy will be applied as written, unless it contravenes public policy." Hobbs, 823 N.E.2d at 564. The Illinois Supreme Court "has determined that antistacking clauses in general do not contravene public policy." Id; Grinnell Select Ins. Co. v. Baker, 362 F.3d 1005, 1006 (7th Cir. 2004) (stating "Illinois enforces clear anti-stacking clauses.").

Here, the relevant policy terms are clear and unambiguously prohibit stacking of uninsured motorist benefits with liability benefits. Hartford's limits-of-liability clause contains express language limiting the insurer's liability for damages to one person as a result of one accident, regardless of the number of insureds or claims made. The first anti-stacking clause is labeled "Limit of Liability" and states:

> The limit of liability shown in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injury sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for bodily injury resulting from any one auto accident.

This means "one injured person is matched against 'limit' of liability shown in the declarations [for this policy, $250,000] rather than against multiple limits." Grinnell, 362 F.3d at 1006. Explicit anti-stacking language follows this text and states:

> This is the most we will pay regardless of the number of:
>
> 1. Insureds;
> 2. Claims made;
> 3. Vehicles or premiums shown in the Declarations; or
> 4. Vehicles involved in the auto accident.

Under Part C, the uninsured and underinsured section of the Hartford policy, similar anti-stacking language is found regarding uninsured motorist coverage for bodily injury

-8-

sustained by one person in one accident. In a case involving identical anti-stacking clauses, the Seventh Circuit stated, "[i]t is hard to imagine clearer language" prohibiting stacking. Grinnell, 362 F.3d at 1006. The second paragraph in the limit of liability section reinforces the anti-stacking point and states, "No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and: 1. Part B or Part C of this policy; or 2. Any Underinsured Motorist Coverage provided by this policy." In other words, Part A of the policy, the liability coverage, will not make payment if Part C, the uninsured motorist, has already been exhausted. Hartford's anti-stacking clauses clearly and unambiguously set forth the maximum amount Hartford will pay for one injured person in one auto accident ($250,000) regardless of the number of insureds or claims made. Despite the above policy language and Hartford's payment of $250,000, Ford asserts the liability coverage has not been "exhausted (or even touched for that matter)." Doc. #39 at 13.

The Illinois Appellate Court's opinion in Mercury Indemnity Co. of Illinois v. Kim, 830 N.E.2d 603 (Ill. App. Ct. 2005) is instructive on the situation presented here. In that case, the plaintiffs were passengers in a single-car accident. They sought payments under both the liability and underinsured motorist coverage under the driver's policy. The plaintiff insurance company denied the claim on the basis of an exclusion in the underinsured motorist coverage which stated that an underinsured motor vehicle does not include a vehicle covered under the liability provisions of the policy. The court of appeals held that the policy's insured-vehicle exclusion which prevented stacking of underinsured and liability coverage under the same policy did not violate the provisions of the underinsured motorist statute. The Kim court reviewed other states' courts' decisions which permitted insured

vehicle exclusions to prevent the stacking of underinsured motorist coverage on to liability coverage under a single policy. The Illinois Appellate Court noted that "[t]hese courts have held that allowing a person to receive benefits under both the liability and underinsured motorist provisions of a single policy would amount to an impermissible rewriting of the policy to increase the liability coverage." Id. at 610.

Ford's argument here would have the same prohibited outcome with respect to the Hartford policy by increasing the maximum per person limit to $500,000 or two separate BI limits–a result not intended by the Insurance Code or by the parties to the Hartford insurance contract. Hartford does not deny coverage under the liability section for the contribution claim but contribution claims arising out of injuries sustained by one person do no negate the limits of liability provision in the policy and do not increase the limits of coverage. The most Hartford is obligated to pay under either the liability portion and/or the uninsured motorist portion of the policy is $250,000. Ford's argument otherwise reads the anti-stacking clauses out of the policy. Having provided the full policy limits available to Evelyn for bodily injury as a result of Henry's allegedly negligent driving, Hartford's anti-stacking clauses meant only that Evelyn may not recover under both the liability portion and the uninsured motorist portion of the same policy. The Court declines to rewrite the Hartford policy to, in effect, find $500,000 rather than $250,000 in liability coverage for Evelyn's injuries.

Moreover, Hartford's anti-stacking clauses are not inconsistent with sub-section 143.01(b) where the driver torteasfor's liability and the insured passenger's uninsured motorist coverages under the same policy are equivalent and the policy limit has been exhausted. Subsection 143.01(b) of the Code merely provides that the insured's family

-10-

members may not be excluded from coverage for bodily injury under certain circumstances. Evelyn has received coverage for her personal injuries suffered as a result of the subject accident because she has recovered the full limits of the uninsured motorist coverage portion of the policy, which is also the full amount of the bodily injury limits. Since the insured's family member was not excluded from coverage for bodily injury under the circumstances here, sub-section 143.01(b) is not violated by the anti-stacking provisions.

Ford's second argument is that a release naming Henry (or his estate) must be provided in order to find a good faith settlement. No binding settlement has been executed between plaintiff Evelyn LaJeunesse and drier/counter-defendant Henry LaJeunesse (or his estate), releasing Henry's tort liability for the occurrence. Ford argues that Illinois' Contribution Act requires that a release of Henry's tort liability be provided and the settlement here violates that release requirement. Sections 2(c) and 2(d) of the Act provide:

> (c) When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater.
>
> (d) The tortfeasor who settles with a claimant pursuant to paragraph (c) is discharged from all liability for any contribution to any other tortfeasor.

740 ILCS 100/2(c) - (d). The Hartford policy reflects Illinois' law in this respect.

Ford contends that Evelyn has failed to present any evidence that Henry (or his estate) have been released from liability as a joint tortfeasor for the occurrence as required by Illinois' Contribution Act. Ford says that Evelyn has merely submitted a release

agreement between her and her insurance company, extinguishing Hartford's contractual liability for uninsured motorist coverage. The document is not a release between Henry and Evelyn, and Henry is not named as a party whose liability is being released. The release does not include any language releasing Henry from any tort liability that he may have as a result of the occurrence. Ford contends that the document is only a release executed by and between Evelyn and her own insurance company for any claims that she may have for uninsured motorist coverage on a policy of insurance issued to her. Because Henry LaJeunesse is not named on the release as a party whose liability is being released, Ford argues, the release directly contradicts Illinois' Contribution Act and the settlement was not made in good faith.

The Estate responds that the release agreement discharging Hartford's liability to Evelyn amounts to a release of the Estate's liability to Evelyn. Because this was a one car accident with no other drivers or potential tortfeasors other than Ford, the Estate says it is clear that the release extinguished the liability of the driver, Henry.

In the instant case, the lack of a release discharging Henry (or his estate) from liability as a joint tortfeasor is not fatal to a finding of good faith. "The Contribution Act does not set forth a specific form that a release must take and does not even require the release to be in writing." Lard v. AM/FM Ohio, Inc., 901 N.E.2d 1006, 1016 (Ill. App. Ct. 2009). Given the per person limit for bodily injury coverage on the Hartford policy, Evelyn's release of Hartford's liability for uninsured motorist coverage in exchange for the full policy limits achieved the same result as a release of Henry from tort liability. See Lard, 901 N.E.2d at 1016 (holding in a mass tort situation with over ninety plaintiffs that plaintiffs' acceptance of the settlement agreement "amounted to an implied release" satisfying the Contribution

Act's release requirement). The payment by Hartford to Evelyn was in recognition of Henry's potential tort exposure to Evelyn for the accident in question. Under these circumstances, the Court concludes that the release agreement executed by Evelyn releasing Hartford from liability for uninsured benefits can operate to release Henry from tort liability.[1]

Considering the totality of the circumstances surrounding the settlement in this case, the Court finds that the settlement of Evelyn's UM claim for the BI limits of $250,000 constitutes a good faith settlement discharging Henry's estate from liability under 740 ILCS 100/2(d). The settlement agreement represents the full amount available to Evelyn under

---

[1] Farmers Automobile Ins. Ass. v. Kraemer, 857 N.E.2d 691 (Ill. App. Ct. 2006), cited by Ford, does not compel a different result. In Kraemer, the automobile insurer for a tort victim brought a declaratory judgment action against its insured. The insurance company, Farmers Auto, sought a finding that it was not obligated to pay the benefits of underinsured motorist coverage to its insured. The insured was involved in an auto accident caused by third-party Rudy Teason. Teason's insurance company, Allstate, offered Teason's policy limits of $25,000 to settle Kraemer's claim against tortfeasor Teason, in exchange for a settlement release extinguishing any claim that Kraemer might or could have against Teason (and his insurer). Farmers Auto argued that the release entered into between kraemer and Teason operated to extinguish the liability that it had for underinsured motorist coverage. Farmers' policy provided for underinsured-motorist coverage limits of $100,000 per person and $300,000 per occurrence. The appellate court declined to find that Kraemer, by executing an agreement intended to release Allstate and Teason from liability in excess of Allstate's $25,000 policy limit, released Farmers from its contractual obligation to pay underinsured-motorist-coverage benefits pursuant to the policy issued to Kraemer. The Kraemer court reasoned that "[i]f Farmers, who had accepted Kraemer's underinsured-motorist-coverage premiums, were discharged by the release, it would receive a windfall never intended by the parties." Id. at 696. In this case, the surrounding circumstances indicate that a discharge of Hartford's duty to pay liability coverage to Evelyn is consistent with the parties' intention that $250,000 exhausts all coverage arising out of injury to Evelyn for this accident. Hartford was a party to the release and gave $250,000, the policy limit available to Evelyn for compensatory damages owed by Henry, in consideration for the release. Unlike the case in Kraemer, Hartford will not receive a windfall if Hartford's duty to pay liability coverage to Evelyn is effectively discharged by the release between Evelyn and Hartford.

the policy issued by Hartford and represents payment to Evelyn as a result of Henry's potential tort exposure. There has been no showing made that any other assets are available to satisfy Evelyn's claim against Henry or Ford's contribution claim. Further, there is no evidence that Evelyn and Hartford colluded with one another or engaged in wrongful conduct or fraud. Evelyn was represented during the settlement negotiations by experienced counsel familiar with this type of case, and the settlement was negotiated at arms length between counsel for Evelyn LaJeunesse and Hartford.

In addition, the settling parties have revealed the entire circumstance surrounding the settlement agreement. At the time of the settlement, the household exclusion prevented liability coverage for Evelyn's claim against Henry arising out of Henry's allegedly negligent driving. Evelyn did have a claim for uninsured motorist coverage arising out of Henry's allegedly negligent driving under the policy based on Part C of the policy whereby Hartford would pay compensatory damages to Evelyn which she was entitled to recover from Henry. The settlement agreement and release were supported by mutual consideration. Hartford paid the full limits available to one person under the policy of $250,000 and in return Evelyn agreed to indemnity and save harmless Hartford against any further claims under the policy resulting from the accident. Had the settlement agreement been reached as part of the present litigation, there is no doubt that a settlement with Evelyn for the full limits of Henry's policy ($250,000) would constitute a good faith settlement.

**C.    Conclusion**

For these reasons, the Court finds that the settlement agreement between Plaintiff Evelyn LaJeunesse and the Estate was made in good faith pursuant to Section 2(c) of the

Joint Tortfeasor Contribution Act, 740 ILCS 100/2(c). The contribution claim of Ford Motor Company is dismissed with prejudice. Ford is entitled to a set-off in the amount of $250,000 in the event of an adverse verdict against Ford at trial in this case. The Court also determines pursuant to Rule 54(b) that there is not just reason to delay entering final judgment in favor of the Counter-Defendant Estate and against Counter-Plaintiff Ford Motor Company on Ford's contribution claim. The Clerk is directed enter judgment accordingly.

**E N T E R:**

*[signature: Nan R. Nolan]*

**Nan R. Nolan**
**United States Magistrate Judge**

**Dated: July 27, 2009**